IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

UNITED STATES OF AMERICA,   ) Court of Appeals No. 20-10072
                              )
              Plaintiff,  ) District Court No. 19-00012
                              )
       vs.                  )
                              )
MICHAEL LOUIS MCCARRON,     )
                              )
_____ Defendant. _)


TRIAL TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE FRANCES TYDINGCO-GATEWOOD,
CHIEF JUDGE
OCTOBER 30, 2019; 10:24 A.M.
HAGATNA, GUAM



**Day 2**

**Opening Statements, Government's Case in Chief**


Proceedings recorded by *mechanical stenography*.

Veronica F. Flores, CSR-RPR
Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

APPEARANCES


Appearing on behalf of plaintiff:


OFFICE OF THE UNITED STATES ATTORNEY
BY: STEPHEN LEON GUERRERO, AUSA
J. JUSTIN COLLINS, SPECIAL ASSISTANT USA
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910
(671) 472-7332


Appearing on behalf of defendant:


OFFICE OF THE FEDERAL PUBLIC DEFENDER
BY: JOHN T. GORMAN, FPD
400 Route 8, Suite 501
FHB Building
Mongmong, Guam 96910
(671) 472-7111


ALSO PRESENT:

Michael McCarron, Defendant

Adam Ring, AFOSI

Christina Albo, NCIS

Renate Grimes, FPD

<pre>
                   I N D E X
</pre>

<u>Government
Witness</u>:

|  | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Adam Ring | 66 | 101 | 119 | (None) |
| Christine Albo | 125 | 133 | | |

EXHIBITS:

| | Description | Admitted |
|---|---|---|
| 21 | Excerpts of video | 130 |
| 22, 23 | Adam Ring training certificates | 31 |
| 2 | Craigslist ad | 66 |
| 3-6 | Craigslist conversation | 66 |
| 7 | Craiglist/Gmail conversation | 66 |
| 8-19 | Gmail conversation | 66 |
| A-F | E-mail conversations | 66 |

09:58:18AM

-------------------------------------------------

| | |
|---|---|
| Government rests | 140 |
| Defense rests | 145 |
| Opening Statement by Government | 19 |
| Opening Statement by Defense | 24 |

Veronica F. Flores, CSR-RPR
Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

1          October 30, 2019; 10:24 a.m.; Hagatna, Guam

2                              * * *

3                                                                    10:24AM

4          THE CLERK:  Good morning, Your Honor.  This is          10:24AM

5   Criminal Case No. 19-00012, the *United States of America*     10:24AM

6   *versus Michael Louis McCarron*, Jury Trial, Day 2, Opening    10:24AM

7   Statements, Commencement of Government's Case in Chief.        10:24AM

8               Counsel, please state your appearances.           10:24AM

9               MR. LEON GUERRERO:  Buenas yan hafa adai, Your     10:24AM

10  Honor, Stephen Leon Guerrero on behalf of the United States.   10:24AM

11  Also present is Special Assistant U.S. Attorney Justin         10:24AM

12  Collins, NCIS Agent Christine Albo, and OSI Agent Adam Ring.   10:24AM

13              THE COURT:  Okay.  Good morning, everyone.         10:24AM

14  Mr. Leon Guerrero, Ms. Albo -- Agent Albo, Adam Ring, and      10:24AM

15  Attorney Collins, okay.                                        10:24AM

16              MR. COLLINS:  Good morning, Your Honor.            10:24AM

17              THE COURT:  You may be seated.                     10:24AM

18              MR. GORMAN:  Buenas yan hafa adai, Your Honor,     10:24AM

19  John Gorman, Federal Public Defender, with Mr. McCarron, he's  10:24AM

20  now seated to my right, and also with us is Renate Grimes from 10:25AM

21  our office.                                                    10:25AM

22              THE COURT:  Okay.  Very well.  Good morning,       10:25AM

23  Mr. Gorman, and the defendant, Mr. McCarron, and Ms. Grimes.   10:25AM

24  All right.  Did you have a chance to review the cases, Mr. --  10:25AM

25              MR. GORMAN:  Yes, we have dropped our objection    10:25AM

1   to the excerpts.

2           THE COURT:  Okay.  Good move.  Well, no, I mean,

3   the cases -- generally, I think the cases are pretty clear

4   that -- about the rule of completeness, so -- and I read the

5   case that you gave and, really, I was disappointed, I think if

6   Counsel wanted there to be a motion to include it, that should

7   have happened ahead of time because it would take up a lot of

8   time now during trial, but you are withdrawing your motion?

9           MR. GORMAN:  Yes, Your Honor.

10          THE COURT:  Very well.  Okay.  The jurors are

11  present, as I understand it, Counsels?

12          THE CLERK:  Yes, Your Honor.

13          THE COURT:  Okay.  You all have a list of your --

14  all the present jurors?

15          MR. LEON GUERRERO:  Yes, Your Honor.

16          THE COURT:  The selected jurors.  All right.

17  Let's go ahead and call the jurors in.  Anything else,

18  Counsels, then?  We'll go till 12:00, have lunch at 12:00,

19  we'll go from 12:00 to 1:00 -- usually we'll have like

20  45 minutes but I think we'll go 12:00 to 1 o'clock for lunch,

21  Counsels, and then we'll start again from 1:00 to 4:30.  All

22  right.  We'll call in the jury.  We'll have them sworn in

23  first and then the Court -- let me just ask, Mr. Gorman, are

24  you going to give your -- give an opening statement after the

25  prosecutor gives theirs or --

| | | |
|---|---|---|
| 1 | MR. GORMAN:  Yes, Your Honor. | 10:26AM |
| 2 | THE COURT:  -- is that reserved? | 10:26AM |
| 3 | MR. GORMAN:  No, I'm going to give it after the | 10:26AM |
| 4 | government's. | 10:26AM |
| 5 | THE COURT:  Okay.  Very well. | 10:26AM |
| 6 | (Pause.) | 10:26AM |
| 7 | THE COURT:  And you guys have -- you have a copy | 10:26AM |
| 8 | of the standard opening jury instruction, Counsels? | 10:27AM |
| 9 | MR. LEON GUERRERO:  I'm sorry.  Were those the | 10:27AM |
| 10 | ones provided by the Court or -- | 10:27AM |
| 11 | THE COURT:  We normally submit them -- we give | 10:27AM |
| 12 | you the standard ones.  Did you guys send them to the | 10:27AM |
| 13 | counsels? | 10:27AM |
| 14 | (Discussion with clerk.) | 10:27AM |
| 15 | THE COURT:  Okay.  Yeah, we'll send it to them | 10:27AM |
| 16 | then the standard ones.  Let me give them to you.  Those are | 10:27AM |
| 17 | the standard ones of the Ninth Circuit.  Do you want to review | 10:27AM |
| 18 | them real quickly before I give them to the jurors? | 10:27AM |
| 19 | MR. LEON GUERRERO:  Yes, Your Honor. | 10:27AM |
| 20 | MR. GORMAN:  Briefly. | 10:27AM |
| 21 | THE COURT:  Okay.  Hold on.  Hold on one second. | 10:27AM |
| 22 | All right.  Okay.  Hold on.  Let me hand this to you now. | 10:27AM |
| 23 | They are from the Ninth Circuit, criminal jury instructions, | 10:27AM |
| 24 | there's 13 of them, Counsels. | 10:27AM |
| 25 | MR. GORMAN:  I don't anticipate any problem but | 10:27AM |

| | | |
|---|---|---|
| 1 | I'll just -- | 10:27AM |
| 2 | THE COURT:  Yeah, it's a standard one that we | 10:27AM |
| 3 | normally do for the ones that... | 10:27AM |
| 4 | (Pause.) | 10:27AM |
| 5 | MR. LEON GUERRERO:  Your Honor, while we're | 10:28AM |
| 6 | waiting for the jury instructions -- | 10:28AM |
| 7 | THE COURT:  Yes. | 10:28AM |
| 8 | MR. LEON GUERRERO:  -- can I just ask the -- at | 10:28AM |
| 9 | least just in preparation for the first witness. | 10:28AM |
| 10 | THE COURT:  Yes?  Who will be your first witness? | 10:28AM |
| 11 | MR. LEON GUERRERO:  It will be Adam Ring with | 10:28AM |
| 12 | OSI. | 10:28AM |
| 13 | THE COURT:  Okay. | 10:28AM |
| 14 | MR. LEON GUERRERO:  And just so -- I was just | 10:28AM |
| 15 | kind of looking to see if the Court had the exhibits that the | 10:28AM |
| 16 | government had, but we're planning on admitting 2 through 19. | 10:28AM |
| 17 | THE COURT:  Oh, the CDs, the ones that you gave | 10:28AM |
| 18 | yesterday? | 10:28AM |
| 19 | MR. LEON GUERRERO:  Yes, Your Honor.  The hard | 10:28AM |
| 20 | copy because we're gonna be talking to him about the e-mails. | 10:28AM |
| 21 | THE COURT:  Okay.  I do have that.  You gave me | 10:28AM |
| 22 | the -- | 10:28AM |
| 23 | MR. LEON GUERRERO:  Yes. | 10:28AM |
| 24 | THE COURT:  The three-ring binder?  I have that. | 10:28AM |
| 25 | MR. LEON GUERRERO:  Yeah.  Okay. | 10:29AM |

| | | |
|---|---|---|
| 1 | THE COURT:  Defense, you have that too? | 10:29AM |
| 2 | MR. GORMAN:  Yes, Your Honor. | 10:29AM |
| 3 | THE COURT:  All right. | 10:29AM |
| 4 | MR. LEON GUERRERO:  Thank you. | 10:29AM |
| 5 | THE COURT:  Okay.  I'm just going to place them | 10:29AM |
| 6 | on the witness stand.  Here are the -- thank you, Brian. | 10:29AM |
| 7 | Okay, question 13, I'm not going to -- that's an option but | 10:29AM |
| 8 | I'm not going to -- we're not going to have -- I mean, | 10:29AM |
| 9 | Instruction No. 13 is not going to be necessary.  This is not | 10:29AM |
| 10 | like a complex trial. | 10:29AM |
| 11 | MR. GORMAN:  I'm sorry, on bench conferences? | 10:29AM |
| 12 | MR. LEON GUERRERO:  Page 13? | 10:30AM |
| 13 | THE COURT:  No, I'm sorry, Instruction No. 13, | 10:30AM |
| 14 | page 15, Question to witnesses by jurors during trial. | 10:30AM |
| 15 | MR. GORMAN:  Oh, that's -- on my copy, it's | 10:30AM |
| 16 | Instruction No. 12. | 10:30AM |
| 17 | THE COURT:  12, that's right.  12, you're right | 10:30AM |
| 18 | sorry.  You're right, Mr. Gorman, 12.  Instruction 12 is not | 10:30AM |
| 19 | going to -- we're not going to use that. | 10:30AM |
| 20 | MR. GORMAN:  Good. | 10:30AM |
| 21 | MR. LEON GUERRERO:  Yes, Your Honor. | 10:30AM |
| 22 | MR. GORMAN:  Everything looks good to me, Your | 10:30AM |
| 23 | Honor. | 10:30AM |
| 24 | MR. LEON GUERRERO:  Everything is fine with the | 10:30AM |
| 25 | government, Your Honor. | 10:30AM |

1    THE COURT:  Everything is fine?  Very well.  So    `10:30AM`

2   that's the only one I'll pull out.  Okay.  We'll call in the    `10:30AM`

3   jurors now.  Thank you.  I'm sorry about that glitch there.    `10:30AM`

4    Please rise for the jury.    `10:30AM`

5    (Jury in at 10:30 a.m.)    `10:30AM`

6    THE COURT:  Hafa adai and good morning, ladies    `10:31AM`

7   and gentlemen.  How are you doing?    `10:31AM`

8    JURY:  Fine, Your Honor.    `10:31AM`

9    THE COURT:  Okay.  Thank you for being prompt,    `10:31AM`

10   and we just had a few preliminary matters to take care of    `10:31AM`

11   regarding the standard opening jury instructions.  At this    `10:31AM`

12   time, I'll have the clerk swear you in.  Please rise.    `10:31AM`

13    (Jury stood.)    `10:31AM`

14    THE CLERK:  Please raise your right hand.  You    `10:31AM`

15   and each of you do solemnly swear that you will well and truly    `10:31AM`

16   try and true deliverance make in the case now for trial and    `10:31AM`

17   render a true verdict according to the law and the evidence,    `10:31AM`

18   so help you God?    `10:31AM`

19    JURY:  We do.    `10:31AM`

20    THE CLERK:  Thank you.  Please be seated.    `10:31AM`

21    THE COURT:  Okay, good morning, again, ladies and    `10:31AM`

22   gentlemen.  Let me go ahead and put up the instructions on the    `10:31AM`

23   -- on your monitor here and you'll be able to see.  I'm going    `10:32AM`

24   to read them to you, and there are 12 instructions I'm going    `10:32AM`

25   to read.  They're pretty short but some of you, I think -- a    `10:32AM`

1  lot of jurors like to see it as the judge reads it, so you          10:32AM
2  will see it both on your monitor and on the big screen.  All        10:32AM
3  right.                                                              10:32AM
4          Are you all comfortable in there?  Can you see?           10:32AM
5  Do you all have a screen and everything?  And all the screens       10:32AM
6  are working?  They should be, they're pretty new, we just           10:32AM
7  replaced them.                                                      10:32AM
8          JURY:  (Nodded head.)                                      10:33AM
9          THE COURT:  Okay.                                          10:33AM
10         (Pause.)                                                    10:33AM
11         THE COURT:  Okay.  Ladies and gentlemen, this is           10:33AM
12 the *United States of America versus Michael Louis McCarron*.       10:33AM
13 These are the opening instructions and let me start with the        10:33AM
14 first instruction, duty of jurors -- jury.  "Jurors, you are        10:33AM
15 now the jury in the case and I want to take a few minutes to        10:33AM
16 tell you something about your duties as jurors and to give you      10:33AM
17 some preliminary instructions.                                      10:33AM
18         At the end of the trial, I will give you more              10:33AM
19 detailed written instructions that will control your               10:33AM
20 deliberations.  When you deliberate, it will be your duty to        10:33AM
21 weigh and to evaluate all the evidence received in the case         10:33AM
22 and in that process to decide the facts.  To the facts as you       10:33AM
23 find them, you will apply the law as I give it to you, whether      10:33AM
24 you agree with the law or not.  You must decide the case            10:33AM
25 solely on the evidence and the law before you.  Perform these       10:33AM

1    duties fairly and impartially.  You should not be influenced    10:33AM

2    by any person's race, color, religious beliefs, national    10:34AM

3    ancestry, sexual orientation, gender identity, gender, or    10:34AM

4    economic circumstances.  Also, ladies and gentlemen, do not    10:34AM

5    allow yourself to be influenced by personal likes or dislikes,    10:34AM

6    sympathy, prejudice, fear, public opinion, or biases,    10:34AM

7    including unconscious biases.    10:34AM

8              Unconscious biases are stereotypes, attitudes, or    10:34AM

9    preferences that people may consciously reject but may be    10:34AM

10   expressed without conscious awareness, control, or intention.    10:34AM

11   Like conscious bias, unconscious bias can affect how we    10:34AM

12   evaluate information and how we make decisions.    10:34AM

13             The charge, this is a criminal case brought by    10:34AM

14   the United States government, sometimes they're called the    10:34AM

15   prosecutor, as I've indicated earlier.  The government charged    10:34AM

16   the defendant with attempted enticement of a minor and    10:34AM

17   attempted transfer of obscene material to a minor.  The    10:34AM

18   charges against the defendant are contained in the indictment.    10:34AM

19   The indictment simply describes the charges the government    10:35AM

20   brings against the defendant.  The indictment is not evidence    10:35AM

21   and does not prove anything.  The defendant has pleaded not    10:35AM

22   guilty to the charges and he is presumed innocent unless and    10:35AM

23   until the prosecutor or the government proves the defendant    10:35AM

24   guilty beyond a reasonable doubt.  In addition, the defendant    10:35AM

25   has the right to remain silent and never has to prove    10:35AM

1   innocence or present any evidence.                                10:35AM

2          Ladies and gentlemen, what is evidence?  The               10:35AM

3   evidence you are to consider deciding what the facts are          10:35AM

4   consist of, one, the sworn testimony of any witness; two, the     10:35AM

5   exhibits that are received in evidence; and three, any facts      10:35AM

6   to which the parties agree.  What is not evidence?  The           10:35AM

7   following things are not evidence and you must not consider       10:35AM

8   them as evidence in deciding the facts of this case:  One,        10:35AM

9   statements and arguments of the attorneys; two, questions and     10:35AM

10  objections of the attorneys; three, testimony that I instruct     10:35AM

11  you to disregard; and four, anything that you may see or hear     10:35AM

12  when the court is not in session, even if what you see or hear    10:35AM

13  is done or said by one of the parties or by one of the            10:36AM

14  witnesses.                                                        10:36AM

15         Let's talks about direct and circumstantial                10:36AM

16  evidence.  Evidence can be both, it may be direct or              10:36AM

17  circumstantial.  Direct evidence is direct proof of a fact        10:36AM

18  such as testimony by a witness about what that witness            10:36AM

19  personally saw or heard or did.  Circumstantial evidence is       10:36AM

20  indirect evidence that is proof of one or more facts from         10:36AM

21  which one can find another fact.  You are to consider both        10:36AM

22  direct and circumstantial evidence, either can be used to         10:36AM

23  prove any fact.  The law makes no distinction between the         10:36AM

24  weight to be given to either direct or circumstantial             10:36AM

25  evidence.  It is for you to decide how much weight to give to     10:36AM

1    any evidence.                                                          10:36AM

2              There are rules of evidence that control what can            10:36AM

3    be received into evidence.  When a lawyer asks a question or           10:36AM

4    offers an exhibit in evidence and a lawyer on the other side           10:36AM

5    thinks that it is not permitted by the rules of evidence, the          10:36AM

6    lawyer may object, so you'll hear the lawyer say "'I object",          10:36AM

7    and then they'll say why.  If I overrule the objection, the            10:37AM

8    question may be answered or the exhibit received.  If I                10:37AM

9    sustain the objection, the question cannot be answered or the          10:37AM

10   exhibit cannot be received.  Whenever I sustain an objection           10:37AM

11   to a question, you must ignore the question and must not guess         10:37AM

12   what the answer would have been.  Sometimes I may order that           10:37AM

13   evidence be stricken from the record and that you disregard or         10:37AM

14   ignore the evidence, that means that when you are deciding the         10:37AM

15   case, you must not consider the evidence that I told you to            10:37AM

16   disregard.                                                             10:37AM

17             Let's talk about the credibility or believability           10:37AM

18   of witnesses.  In deciding the facts in this case, you may            10:37AM

19   have to decide which testimony to believe and which testimony         10:37AM

20   not to believe.  You may believe everything a witness says or         10:37AM

21   part of it or none of it.  In considering the testimony of any        10:37AM

22   witness, you may take into account the witness's opportunity          10:37AM

23   and ability to see or hear or know the things testified to,           10:37AM

24   the witness's memory, the witness's manner while testifying,          10:37AM

25   the witness's interest in the outcome of the case, if any, the        10:37AM

1   witness's bias or prejudice, if any, whether other evidence       10:38AM

2   contradicted the witness's testimony, the reasonableness of a      10:38AM

3   witness's testimony in light of all the evidence and any other     10:38AM

4   factors that bear on believability.  You must avoid bias,          10:38AM

5   conscious or unconscious, based on a witness's race, color,        10:38AM

6   religious beliefs, national ancestry, sexual orientation,          10:38AM

7   gender identity, gender, or economic circumstances in your         10:38AM

8   determination of credibility.  The weight of the evidence as       10:38AM

9   to a fact does not necessarily depend on the number of             10:38AM

10  witnesses who testify about it.  What is important is how          10:38AM

11  believable the witnesses are and how much weight you think         10:38AM

12  their testimony deserves.                                          10:38AM

13            I will now say a few words about your conduct as         10:38AM

14  jurors.  First, keep an open mind throughout the trial and do      10:38AM

15  not decide what the verdict should be until you and your           10:38AM

16  fellow jurors have completed your deliberations at the end of      10:38AM

17  the case.  Second, because you must decide this case based         10:38AM

18  solely on -- strike that.  Let me repeat that second one.          10:39AM

19            Second, because you must decide this case based          10:39AM

20  only on the evidence received in the case and on my                10:39AM

21  instructions as to the law that applies, you must not be           10:39AM

22  exposed to any other information about the case or to the          10:39AM

23  issues it involves during the course of your jury duties.          10:39AM

24  Thus, until the end of the case or unless I tell you               10:39AM

25  otherwise, do not communicate with anyone in any way and do        10:39AM

1  not let anyone else communicate with you in any way about the    10:39AM
2  merits of the case or anything to do with it.  This    10:39AM
3  restriction includes discussing the case in person, in    10:39AM
4  writing, by phone, or electronic means, via e-mail, via text    10:39AM
5  messaging, or internet -- or any internet chat room, blog,    10:39AM
6  website, application, including but not limited to Facebook,    10:39AM
7  YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other    10:39AM
8  forms of social media.  This restriction also applies to    10:39AM
9  communicating with your fellow jurors, until I give you the    10:39AM
10 case for deliberation, and it applies to communicating with    10:39AM
11 everyone else, including your family members, your employer,    10:40AM
12 the media, or press, and the people involved in the trial,    10:40AM
13 although you may notify your family and your employer that    10:40AM
14 have you been seated as a juror in the case and how long you    10:40AM
15 expect the trial to last.  But if you are asked or approached    10:40AM
16 in any way about your juror service or anything about this    10:40AM
17 case, ladies and gentlemen, you must respond that you have    10:40AM
18 been ordered not to discuss the matter.  In addition, you must    10:40AM
19 report the contact to the Court.    10:40AM
20          Because you will receive all the evidence and    10:40AM
21 legal instructions you properly may consider to return a    10:40AM
22 verdict, do not read, watch, or listen to any news or media    10:40AM
23 accounts or commentary about the case or anything to do with    10:40AM
24 it, although I have no information that there will be news    10:40AM
25 reports about this case, do not do any research, such as    10:40AM

consult the dictionary, searching the internet, or using other

reference materials, and do not make any investigation or in

any other way try to learn about the case on your own.  Do not

visit or view anyplace discussed in this case, do not use

internet programs or other devices to search for or view

anyplace discussed during the trial.  Also, do not do any

research about this case, the law, or the people involved,

including the parties, the witnesses, or the lawyers, until

you have been excused as jurors.  If you happen to read or

hear anything touching on this case in the media, turn away,

and report it to me as soon as possible.  These rules protect

each party's right to have the case decided solely -- decided

only, not solely -- only on evidence that has been presented

here in court.  Witnesses here in court take an oath to tell

the truth and the accuracy of their testimony is tested

through the trial process.  If you do any research or

investigation outside the courtroom or gain any information

through improper communications, then your verdict may be

influenced by inaccurate, complete, or misleading information

that has not been tested by the trial process.  Each of the

parties is entitled to a fair trial by an impartial jury and

if you decide the case based on information not presented in

the court, you will have denied the right -- the parties a

fair trial.  Remember, you take an oath to follow the rules

and it is very important that you follow these rules.  A juror

who violates these instructions jeopardizes the fairness of 10:42AM

these proceedings and a mistrial could result that would 10:42AM

require the entire trial process to start over.  If any juror 10:42AM

is exposed to any outside information, please notify the Court 10:42AM

immediately. 10:42AM

At the end of the trial, you will have to make 10:42AM

your decision based on what you recall of the evidence.  You 10:42AM

will not have a written transcript of the trial.  I urge you 10:42AM

to pay close attention to the testimony as it is given.  If 10:42AM

you wish, you may take notes.  So do you have a notebook and 10:42AM

pencil or papers, do you all have it? 10:42AM

JURY:  (Nodded head.) 10:43AM

THE COURT:  You should.  Okay.  You may take 10:43AM

notes to help you remember the evidence.  If you do take 10:43AM

notes, please keep them to yourself until you and your fellow 10:43AM

jurors go to the jury room to decide the case.  Do not let 10:43AM

note taking distract you from being attentive.  When you leave 10:43AM

court for recesses, your notes should be left in the jury 10:43AM

room, no one will read your notes.  Whether or not you take 10:43AM

notes, you should rely on your own memory of the evidence. 10:43AM

Notes are only to assist your memory, you should not be overly 10:43AM

influenced by your notes or those of your fellow jurors. 10:43AM

The next phase of the trial will now begin. 10:43AM

First, each side may make an opening statement.  An opening 10:43AM

statement is not evidence, it is simply an outline to help you 10:43AM

1   understand what that party expects the evidence will show.  A          10:43AM

2   party is not required to make an opening statement, and so, as         10:43AM

3   I understand it, it will be you, Mr. Leon Guerrero?                     10:43AM

4           MR. LEON GUERRERO:  Yes, Your Honor.                           10:43AM

5           THE COURT:  Mr. Leon Guerrero will give the                    10:43AM

6   opening statement on behalf of the government and Mr. Gorman           10:43AM

7   will be giving his opening statement on behalf of his client.          10:43AM

8   The government will then present evidence and Counsel for the          10:44AM

9   defendant, Mr. Gorman, may cross-examine.  Then if the                 10:44AM

10  defendant chooses to offer evidence, Counsel for the                   10:44AM

11  government may cross-examine, then after the evidence has been         10:44AM

12  presented, I will instruct you on the law that applies to the         10:44AM

13  case and the attorneys will make closing arguments.  After            10:44AM

14  that, you will go to the jury room to deliberate on your              10:44AM

15  verdict.                                                               10:44AM

16          Let's go to 13, Instruction 13.  Okay, which                   10:44AM

17  really becomes number 12, during the trial I may need to take         10:44AM

18  up legal matters with the attorneys privately either by having        10:44AM

19  a conference at the bench, so this part some of you may know.         10:44AM

20  This is called the bench, where I sit at, this structure in           10:44AM

21  front of me is called the bench and you saw the attorneys come        10:44AM

22  over to the left side of the bench, and so you hear the --            10:44AM

23  it's called the white noise from the -- from our machine here        10:44AM

24  to ensure that you don't hear what's going on at the bench           10:44AM

25  because it could be an issue, a legal issue, it has to be            10:45AM

```
 1   decided at the bench and so that's what I will do.  So as I          10:45AM
 2   said during trial, I need to take up legal matters with the          10:45AM
 3   attorneys, privately either by having a conference at the            10:45AM
 4   bench when the jury is present in the courtroom or by calling        10:45AM
 5   a recess.  So I could call a recess and you could go back to         10:45AM
 6   the jury deliberation room and then I'll speak to the lawyers        10:45AM
 7   here.  Please understand that while you are waiting, we were         10:45AM
 8   working.  The purpose of these conferences is not to keep            10:45AM
 9   relevant information from you, but to decide how certain             10:45AM
10   evidence is to be treated under the rules of evidence and to         10:45AM
11   avoid confusion and error.  Of course, we will do what we can        10:45AM
12   to keep the number and length of these conferences to a             10:45AM
13   minimum.  I may not always grant an attorney's request for a         10:45AM
14   conference.  Do not consider any granting or denying a request       10:45AM
15   for a conference as any indication of my opinion of the case         10:45AM
16   or what your verdict should be.                                     10:45AM
17              Okay.  Ladies and gentlemen, we will now begin            10:46AM
18   with the opening statements.  Mr. Leon Guerrero, you may            10:46AM
19   begin.                                                              10:46AM
20              (Opening Statement by Government)                         10:46AM
21              MR. LEON GUERRERO:  Yes, Your Honor.  Thank you.          10:46AM
22              "I really like imagining you with your fingers            10:46AM
23   touching your private parts, rubbing and playing.  I want you        12:02PM
24   to slowly rub between your legs, your privates, your vagina, I       10:46AM
25   would love to see how you like it.  I would love to see             10:46AM
```

underneath your shirt and shorts.  I would love to slowly

teach you about your body."  Ladies and gentlemen of the jury,

these are just some of the statements that this defendant,

Michael Louis McCarron, made to Brit, an individual that he

believed was a 13-year-old female.

Good morning.  Again, I'm assistant U.S.

Attorney, Stephen Leon Guerrero, and along with my co-Counsel

in this case, Justin Collins, we represent the government.

Now, as the Court told you, the government has the burden of

proving beyond a reasonable doubt that this defendant

committed the crime that he's charged with.  It's a burden

that we take very seriously and it's a burden that we gladly

accept.

Please be mindful that each and every one of you

were carefully chosen to sit as jurors in this case.  And,

therefore, we ask for your undivided attention and we also ask

that you bring some important tools with you as you listen to

the evidence that's going to be presented.  We ask that you

use your life experiences, we ask that you use your common

sense.  We ask that you use those tools when you listen to the

evidence that's gonna be presented and when you go and

deliberate in this case at the close of this case.

Now, think of an opening statement the same way

you would the table of contents of a book.  And like the table

of contents of a book, it doesn't give you all the specific

1  details of what a chapter is going to be about.  It's the same     10:47AM
2  thing with the opening statement.  I'm not going to give you       10:48AM
3  all the specific details of what the government intends to         10:48AM
4  show about the case against the defendant, rather, we're going     10:48AM
5  to let those details come out through the evidence and the         10:48AM
6  testimony that's going to be presented.                            10:48AM

7          So what then happened in this case, ladies and            10:48AM
8  gentlemen?  We believe the evidence is gonna show the              10:48AM
9  following:  That on or about October 31st, 2017, the defendant     10:48AM
10 responded to a Craigslist ad that was posted by an individual      10:48AM
11 named Brit and this post had indicated that Brit was stuck on      10:48AM
12 base, that she was bored, she couldn't drive, that she was         10:48AM
13 looking for friends and other military brats.  The defendant       10:48AM
14 responded to that post saying, "I have base access," but he        10:48AM
15 also provided a nude photo of himself which showed his penis.      10:48AM
16 A couple of days later, this defendant told Brit that he was       10:49AM
17 32 and when Brit stated that she was 13, the defendant had         10:49AM
18 later stated "No, thank you, I'm good, have a good night."         10:49AM
19 But you will learn that the communication from this defendant      10:49AM
20 didn't stop there.  A couple hours later, this defendant sent      10:49AM
21 Brit an e-mail asking Brit, "What's a 13 year old doing this,      10:49AM
22 are you really 13?"  He also asked "What were you thinking         10:49AM
23 about doing?"  The evidence will show that on or about            10:49AM
24 October 31st, 2017, to about November 30th, 2017, the             10:49AM
25 defendant and Brit had several e-mail each exchanges which        10:49AM

consisted of such discussions as the defendant saying he liked
to masturbate and asking Brit whether she liked masturbating.
You will learn that this defendant was eager to get Brit,
again saying that he had base access and that he would love to
get Brit, that he was excited to see her, and asked her what
was she most excited to do.  This defendant even asked what
was her address and when was it too late for him to come over.
You will also learn that this defendant sent Brit several
photographs and a video of his penis.  You will learn that at
least on one occasion, on or about November 8th, 2017, that
after the defendant had sent Brit a photograph of his penis,
as well as a video, he inquired with her "LOL.  Your reaction
is awesome.  Does it make you wet in your private parts?"  On
another occasion, on or about November 14th, 2017, when Brit
had asked the defendant or told the defendant that "you really
didn't care that I was -- that I'm 13," his reply "I care that
you are beautiful and I would love to see so much of you and
that I find you to be so sexy."

          Now, as the judge had instructed you, there's two
charges in this indictment against this defendant.  And with
respect to the first charge, attempted enticement of a minor,
as you listen to the evidence that's going to be presented,
you have to consider did the defendant attempt to persuade,
induce or entice a person that he believed to be a 13 year old
to do sexual acts or to engage in sexual acts.  And in

thinking about this as you go through the trial, you have to

look at two things:  What was this defendant's state of mind

at the time and what were the substantial steps that he took?

The evidence is gonna show what this defendant's state of mind

was, and it was to have sexual relations with a 13-year-old

female.  He wanted to induce and entice her to have sex with

him.  The evidence will also show that this defendant took

substantial steps to make Brit comfortable with him, and that

they tried to coordinate a time that he could meet up.

Now, with respect to the second offense,

attempted transfer of obscene materials to a minor, you have

to consider, did the defendant attempt to transfer obscene

visual representations to Brit or to a child.  And with

respect to whether it's considered obscene, what you're going

to have to look at it is looking at these images that the

defendant sent as well as the video, you have to ask

yourselves, would a reasonable person applying contemporary

adult community standards find that those images and video of

the defendant's penis appeal to the prurient interest, does it

appear to the lustful lascivious or erotic interest?  Do the

images that the defendant sent to the child depict sex in a

patently offensive way?  Did the images that this defendant

sent to the child lack any serious literary, artistic,

political, or scientific value?  Those are the things that

you're going to have to consider during the course of the

1    trial.  The law does not require or care that this was an    10:53AM

2    undercover operation or that Brit is a persona.    10:53AM

3              That, ladies and gentlemen, is what we expect the    10:53AM

4    evidence to show.  It's going to prove that on or about    10:53AM

5    October 31st, 2017, and November 30th, 2017, the defendant,    10:53AM

6    Michael Louis McCarron, committed crimes of attempted    10:53AM

7    enticement of a minor and attempted transfer of obscene    10:54AM

8    material to a minor.  At the end of this case, you will hear,    10:54AM

9    again, from my colleague and I in closing arguments and it    10:54AM

10   will be then that we will ask you to render the only just    10:54AM

11   verdict in this case and it will be then that we ask you to    10:54AM

12   find this defendant guilty as charged.  Thank you.    10:54AM

13             THE COURT:  Okay.  Thank you, Mr. Leon Guerrero.    10:54AM

14   Mr. Gorman on behalf of your client.    10:54AM

15                 (Opening Statement by Defense.)    10:54AM

16             MR. GORMAN:  May it please the Court.  This is an    10:54AM

17   unusual case.  It's actually kind of a weird case because --    10:54AM

18   well, you're going to hear all the evidence and what you're    10:54AM

19   going to hear in this case is -- really, what's the basis of    10:54AM

20   this case is, is e-mail communications between my client, Mike    10:54AM

21   McCarron, and this gentleman over here, Mr. Ring, agent for    10:54AM

22   the government.  So it's just these two dudes, who both look    10:55AM

23   to be about mid-thirties communicating with each other, that's    10:55AM

24   what the case is.  You notice in his opening statement, the    10:55AM

25   attorney for the government said "an individual named Brit."    10:55AM

There is no individual named Brit.  He also says he "made
comments to Brit."  Brit does not exist.  There is no Brit.
We have that gentleman over there, who is in communication
with that gentleman over there, that's what this case is.

So this whole thing of Brit this and Brit that,
we can just toss to one side because there is no Brit.  I
don't know if you remember this TV program from back, like in
the '90s called To Catch a Predator where they had a TV show
where they would lure people in and gentlemen would
communicate with what they thought was a minor and then they
would go to that person's house, they would show up, they
would drive up, they would walk up the walkway, they would
knock on the door and they would, you know, sometimes be
carrying beer and condoms and all kinds of things because they
thought they were going to have a sexual relationship with an
underage person.  And then, of course, the door opens and
there's a TV camera and they got him and the show is called To
Catch a Predator.  That's not what we have here.  We don't
have any evidence that he ever went near her because there is
no Brit, near where allegedly she lived, never got in the car,
in fact, this gentleman never left his hotel room.  He was
sitting in his hotel room, typing on a computer.  So there is
-- there is the problem right there with the government's
case.  You know, they're not charging him with enticing,
they're charging him with attempt.  And the judge will -- at

1    the end give you some instructions on how do you judge          10:57AM

2    "attempt."  And how do you judge "attempt?"  Mere -- and the    10:57AM

3    judge will tell you, mere preparation is not a substantial      10:57AM

4    step towards committing a crime, so mere preparation doesn't    10:57AM

5    cut it.                                                          10:57AM

6              To constitute a substantial step, his act or         10:57AM

7    actions must demonstrate that the crime will take place unless  10:57AM

8    interrupted by independent circumstances.  There's no           10:57AM

9    interruption by any independent circumstances.  There is no     10:57AM

10   actions.  He didn't take any actions and that's why it's not a  10:57AM

11   true attempt and we'll talk more on attempt, but that's really  10:57AM

12   the heart of this case, so I'd ask you to pay attention, what   10:57AM

13   was his attempt to do this crime and the fact that he got --    10:57AM

14   he did, he communicated with this agent for the government a     10:57AM

15   bunch of times -- and I will apologize in advance, there are    10:58AM

16   some offensive, kind of gross pictures that you're going to     10:58AM

17   see, pictures of his penis, nowadays people do all these weird  10:58AM

18   things on the internet.  So I apologize for that, you are       10:58AM

19   going to see that.  And we'll talk really at the end, also,     10:58AM

20   about what is obscene and not really what you say is obscene,   10:58AM

21   what is the community standards for obscene.  But I mean, one   10:58AM

22   of the main things is the difference in attempt, the            10:58AM

23   difference between talk and action.  And I think you could all  10:58AM

24   appreciate that idea, we could talk about something and that's  10:58AM

25   not an attempt, it's when you actually do something, you take   10:58AM

1    a step towards it.  And that's what's missing here in the
2    government's case.

3            Let me step back for a minute and just say
4    congratulations, you were chosen for the jury and I know
5    probably some of you don't think you won the lottery but it's
6    a high honor and it's a heavy responsibility and you notice
7    took the process of choosing you quite seriously, so we have
8    great faith in you and I know you might not be super excited
9    to be here but we are going to try to keep this trial moving
10   along in a very swift and efficient fashion.  It might only be
11   a two-day trial.

12           So in view of that, I'll ask you a couple other
13   things, one is, as the government and the judge said, pay
14   close attention, because this won't be a long trial.  I'd also
15   ask you to -- don't leave your common sense at the door,
16   especially when we get to the end and we're talking about, I'm
17   going to talk to you about this, but use your common sense and
18   keep an open mind.  Until you hear all the evidence, don't
19   make any decisions, hear all the evidence.  And then one of
20   the final things I'll ask you -- want to remind you is the
21   presumption of innocence.  As the judge told you, he sits
22   there, he is completely innocent.  And remember, we had that
23   kind of a little exchange during jury selection yesterday
24   where there was -- a potential juror wasn't chosen and she
25   said, "Yeah, I think I can be fair, I remember the presumption

1    of innocence," but it became clear that she kind of thought "I    11:00AM

2    think he's kind of guilty."  That's wrong.  He is 100 percent    11:00AM

3    completely innocent as he sits here before you until the    11:00AM

4    government -- you could think of it like a wall around him,    11:00AM

5    until the government tears down that wall, he is completely    11:00AM

6    innocent.    11:00AM

7            Also, remember the government has the burden of    11:00AM

8    proof.  They must prove this case beyond a reasonable doubt.    11:00AM

9    And the judge will tell you, reasonable doubt can arise from    11:00AM

10   the lack of evidence and that's what we have in this case.  We    11:00AM

11   have a hole in this case and it gets bigger and bigger and    11:00AM

12   that hole is regarding the attempt.  Was there an attempt?    11:00AM

13   And that's really where I'm going to ask you to focus on.  And    11:01AM

14   I think when you hear all the evidence in the case, after it's    11:01AM

15   all over, and I'll speak to you more at length in closing    11:01AM

16   argument, I think you'll agree with me that the government    11:01AM

17   can't and did not meet its burden in this case and you'll    11:01AM

18   return the correct verdict of not guilty for Mr. McCarron.    11:01AM

19   Thank you.    11:01AM

20           THE COURT:  Thank you, Mr. Gorman.  All right.    11:01AM

21   Prosecution, you may call your first witness.    11:01AM

22           MR. LEON GUERRERO:  Yes, Your Honor.  At this    11:01AM

23   time, we'd like to call OSI agent Adam Ring to the stand.    11:01AM

24           THE COURT:  Agent Ring.    11:01AM

25           THE CLERK:  Please raise your right hand.  You do    11:01AM

solemnly swear that the testimony you are about to give in the case now before the Court will be the truth, the whole truth, and nothing but the truth, so help you God?

    THE WITNESS:  So help me God, I do.

    THE CLERK:  Thank you, sir.  Please be seated. Please state your full name and spell your last name for the record.

    THE WITNESS:  Adam Ring, R-I-N-G.


       DIRECT EXAMINATION

BY MR. LEON GUERRERO:

  Q. All right.  Good morning, Agent Ring.

  A. Good morning.

  Q. Can you please tell the jurors where are you currently employed?

  A. I work with the Air Force Office of Special Investigations on Andersen Air Force Base.

  Q. And what are your current duties of being an OSI agent?

  A. I'm currently the chief of the counterintelligence branch there, formerly the chief of the criminal investigations branch.

  Q. And as part of your duties, do you also investigate crimes against children?

  A. Yes.

1    Q.   And what is that also referred as, is there a   11:02AM

2   training that you receive for that?                    11:02AM

3    A.   Yes.  It's referred to sometimes as Internet Crimes   11:02AM

4   Against Children with acronym ICAC.                    11:02AM

5    Q.   And have you received training for ICAC?         11:02AM

6    A.   I have.                                           11:02AM

7    Q.   Can you please tell the jurors some of the training   11:02AM

8   that you received?                                      11:03AM

9    A.   Sure, so in -- I was formerly in Georgia and I   11:03AM

10  attended the Georgia Bureau of Investigations introductory to   11:03AM

11  ICAC training.  And then after that, I attended the Homeland   11:03AM

12  Security Investigations introductory to online undercover   11:03AM

13  course in Alexandria, Virginia.                         11:03AM

14   Q.   And with respect to the undercover course, can you   11:03AM

15  just briefly tell the jurors what does that consist of?   11:03AM

16   A.   Sure.  It's a course that's designed to teach law   11:03AM

17  enforcement how to operate in an undercover capacity online,   11:03AM

18  specifically this one dealt with developing online personas   11:03AM

19  and communicating with individuals in relation to sex crimes   11:03AM

20  against children that are facilitated by the internet.   11:03AM

21   Q.   And to your knowledge, do any of these training   11:03AM

22  pertain to internet chats?                              11:04AM

23   A.   Yes.                                              11:04AM

24   Q.   Agent Ring, if I could have you look at Government's   11:04AM

25  Exhibits 22 and 23, can you take a look at that?        11:04AM

1    A.   Yes, sir.                                           11:04AM

2    Q.   And do you recognize Government's Exhibits 22 and 23?  11:04AM

3    A.   I do.                                               11:04AM

4    Q.   And what are those exhibits?                        11:04AM

5    A.   These are the certificates that I received after   11:04AM

6    attending those two training courses.                    11:04AM

7    Q.   And does it fairly and accurately reflect the      11:04AM

8    certificates that you received upon completion of your   11:04AM

9    training?                                                11:04AM

10   A.   Yes, sir.                                           11:04AM

11   Q.   Do you see any -- is there anything materially     11:04AM

12   altered on any of those certificates?                    11:04AM

13   A.   No, it just has the exhibit number and a few other  11:04AM

14   digits at the bottom of the certificates.                11:04AM

15        MR. LEON GUERRERO:  Your Honor, at this time, I     11:04AM

16   move Government's Exhibits 22 and 23 into evidence.      11:04AM

17        THE COURT:  Mr. Gorman?                             11:04AM

18        MR. GORMAN:  No objection.                          11:04AM

19        THE COURT:  All right.  Ladies and gentlemen of     11:04AM

20   the jury, Exhibits 22, 23 will be admitted without objection.  11:04AM

21   (Exhibits 22, 23 admitted)                               11:04AM

22   BY MR. LEON GUERRERO: (CONTINUING)                       11:05AM

23   Q.   Agent Ring, can you tell the jurors how many       11:05AM

24   investigations regarding -- or just how many investigations,  11:05AM

25   in general, have you participated in?                    11:05AM

1    A.    I don't have the exact number but between 90 and 100.    11:05AM

2    Q.    And how many of those investigations dealt with    11:05AM

3  crimes against children?    11:05AM

4    A.    A fair amount, probably about 15, 15 to 20.    11:05AM

5    Q.    Can you tell the jury how many chats with this    11:05AM

6  undercover training that you had and investigations that you    11:05AM

7  conducted, how many chats have you participated in?    11:05AM

8    A.    I've done ten.    11:05AM

9    Q.    Can you tell the jury what is a "chat"?    11:05AM

10    A.    Sure.  A chat is just an online communication through    11:05AM

11  some sort of online media, whether it be a chat room or a text    11:05AM

12  communication or e-mail or something like that with another    11:05AM

13  individual.    11:05AM

14    Q.    What is a "persona"?    11:05AM

15    A.    A persona is essentially an undercover identity    11:05AM

16  online, so it could be just the story of who you are online.    11:06AM

17    Q.    Can you give the jurors an example of a persona?    11:06AM

18    A.    Sure.  So for example, being a 13-year-old military    11:06AM

19  dependant, female, that resides on Andersen Air Force Base.    11:06AM

20    Q.    And Agent Ring, is that persona similar to the one    11:06AM

21  that you conducted in this investigation?    11:06AM

22    A.    It is.    11:06AM

23    Q.    When you conduct a chat, do you also use Craigslist?    11:06AM

24    A.    Yes.    11:06AM

25    Q.    And can you please the tell the jurors what is the    11:06AM

1    website Craigslist?                                      11:06AM

2        A.    So Craigslist is essentially -- it's an online buying    11:06AM

3    and selling and trading website where it's kind of like the    11:06AM

4    back page in the newspaper where you can list things for sale    11:06AM

5    and other people can contact you and purchase it.    11:06AM

6        Q.    In 2017, was there a personal section on Craigslist?    11:06AM

7        A.    There was.                                      11:07AM

8        Q.    Can you please tell the jurors what generally takes    11:07AM

9    place in the personal section on Craigslist?    11:07AM

10       A.    Sure.  So the personal section is kind of just very    11:07AM

11   similar to a personal section that you might be familiar with    11:07AM

12   from a newspaper, within that section, it's kind of subdivided    11:07AM

13   into different areas relating to if you're, you know, a woman    11:07AM

14   seeking a man, a man seeking a woman, things like that.    11:07AM

15       Q.    If an individual posts an ad on Craigslist, is there    11:07AM

16   a way to reply?                                         11:07AM

17       A.    Yes.                                           11:07AM

18       Q.    Can you please tell the jurors how does that work?    11:07AM

19       A.    Sure.  So whenever an advertisement is placed on    11:07AM

20   Craigslist and another person goes on to Craigslist and they    11:07AM

21   view the advertisement, there's just a big button in the    11:07AM

22   advertisement that says "reply" and whenever you click on it,    11:07AM

23   it opens up a window to send a message to the advertiser.    11:07AM

24       Q.    When a person posts an ad, do they need to have an    11:07AM

25   e-mail account?                                        11:08AM

| | | |
|---|---|---|
| 1 | A.    Yes. | 11:08AM |
| 2 | Q.    And would this be for the ad that they're posting? | 11:08AM |
| 3 | A.    Yes. | 11:08AM |
| 4 | Q.    How about the person who replies to that ad? | 11:08AM |
| 5 | A.    Yes, they would need an e-mail account as well. | 11:08AM |
| 6 | Q.    And if somebody was to reply to an ad that was | 11:08AM |
| 7 | posted, how do those replies generally look like? | 11:08AM |
| 8 | A.    So what Craigslist does to kind of protect the | 11:08AM |
| 9 | privacy of the people that are involved, is it essentially | 11:08AM |
| 10 | takes your message and it bounces it through their server and | 11:08AM |
| 11 | it kind of renames your e-mail name to a big string of | 11:08AM |
| 12 | characters and numbers and then it delivers the message to the | 11:08AM |
| 13 | advertiser and then it does the same on the way back, so | 11:08AM |
| 14 | essentially it just keeps it anonymous. | 11:08AM |
| 15 | Q.    And can text also appear on a reply? | 11:08AM |
| 16 | A.    Yes. | 11:08AM |
| 17 | Q.    Agent Ring, do you know whether photographs can be | 11:08AM |
| 18 | placed on Craigslist? | 11:09AM |
| 19 | A.    They can. | 11:09AM |
| 20 | Q.    And who can post photographs on Craigslist? | 11:09AM |
| 21 | A.    So the poster, the person that's creating the | 11:09AM |
| 22 | advertisement, they can post pictures of, you know, anything | 11:09AM |
| 23 | that -- like if they're selling a car on there, they could | 11:09AM |
| 24 | post a picture of their car. | 11:09AM |
| 25 | Q.    I'd like to direct your attention to on or about | 11:09AM |

1    October 31st, 2017, were you conducting an investigation in    11:09AM

2    this case?    11:09AM

3        A.   Yes.    11:09AM

4        Q.   Can you please tell the jurors -- tell us about that    11:09AM

5    investigation you were conducting.    11:09AM

6        A.   So at about that time, I had placed an advertisement    11:09AM

7    in the Craigslist personals section in the casual encounters    11:09AM

8    section for -- under the persona of a 13-year-old girl that    11:09AM

9    lives on Andersen Air Force Base.    11:09AM

10       Q.   And just to confirm, do you recall -- what was the    11:09AM

11   name of the persona?    11:10AM

12       A.   That was Brit.    11:10AM

13       Q.   And the age again?    11:10AM

14       A.   Thirteen.    11:10AM

15       Q.   And did this persona have an e-mail account    11:10AM

16   associated?    11:10AM

17       A.   Yes.    11:10AM

18       Q.   Do you recall what that e-mail account was?    11:10AM

19       A.   I believe that was "Brit the dork 2004."    11:10AM

20       Q.   And with this persona, did you post an ad on    11:10AM

21   Craigslist?    11:10AM

22       A.   Yes.    11:10AM

23       Q.   And the ad that you posted, where on Craigslist did    11:10AM

24   you post it?    11:10AM

25       A.   So that was on the personal section and then there's    11:10AM

1    a subcategory called casual encounters and then within that,      11:10AM
2    it would be in a women for men section.                           11:10AM
3        Q.   Agent Ring, if I can direct your attention to           11:10AM
4    Government's Exhibit No. 2.                                        11:10AM
5        A.   Yes, Your Honor.                                         11:10AM
6             MR. LEON GUERRERO:  And, Your Honor, pursuant to         11:10AM
7    our previous discussion with respect to Government's              11:11AM
8    Exhibits 2 through 19, there was a stipulation to the             11:11AM
9    admissibility, so at this time I'd like to move Exhibits 2 to     11:11AM
10   19 into evidence.                                                 11:11AM
11            THE COURT:  Is that -- Mr. Gorman?                       11:11AM
12            MR. GORMAN:  Well, I do have an objection but I          11:11AM
13   think it will be a lengthy objection.                             11:11AM
14            THE COURT:  On 2 through 19 or for all of them or       11:11AM
15   just some of them?  I thought yesterday you guys had a            11:11AM
16   stipulation?  I thought that you indicated that.                  11:11AM
17            (Pause.)                                                 11:11AM
18            THE COURT:  Why don't you guys come up to the           11:11AM
19   bench.                                                            11:11AM
20            MR. LEON GUERRERO:  Yes, Your Honor.                     11:11AM
21            (Sidebar.)                                               11:11AM
22            (Pause.)                                                 11:12AM
23            THE COURT:  I thought you said that yesterday?          11:12AM
24            MR. GORMAN:  No.                                         11:12AM
25            THE COURT:  I had my notes indicating -- didn't         11:12AM

1    you say that?                                                          11:12AM

2              MR. LEON GUERRERO:  Yes.                                     11:12AM

3              MR. GORMAN:  No.  I had no problem with those                11:12AM

4    coming in, the problem is under Rule 103 or Rule 106, the rule        11:12AM

5    of completeness, the other text messages have to come in.            11:12AM

6    There are 12 other -- see here, what we have here --                  11:12AM

7              THE COURT:  Okay.                                            11:12AM

8              MR. GORMAN:  -- is a series of text messages                 11:12AM

9    going about a month long.                                            11:12AM

10             THE COURT:  2 through 19?                                    11:12AM

11             MR. GORMAN:  2 through 19.                                   11:12AM

12             THE COURT:  So you have no objection on 2 through           11:12AM

13   19?                                                                   11:12AM

14             MR. GORMAN:  Yes, but under Rule 106 if they move            11:12AM

15   to admit, under rule of completeness, the rest of the text           11:12AM

16   message they cut out, an hour.  This was like an hour's worth        11:12AM

17   they cut out.                                                        11:12AM

18             THE COURT:  This is different from the --                    11:12AM

19             MR. GORMAN:  Oh, yeah, totally different.                    11:12AM

20             MR. LEON GUERRERO:  Your Honor, it's -- first we            11:12AM

21   heard that they're going to have a Rule 106 issue with these         11:12AM

22   e-mails, I mean --                                                   11:12AM

23             MR. GORMAN:  Yeah.                                          11:12AM

24             MR. LEON GUERRERO:  This is --                              11:12AM

25             THE COURT:  Why -- why didn't you bring this up             11:12AM

| | | |
|---|---|---|
| 1 | earlier, Mr. Gorman? | 11:12AM |
| 2 | MR. GORMAN: Because Rule 106 is clear -- | 11:12AM |
| 3 | THE COURT: No, no, I know -- | 11:13AM |
| 4 | MR. GORMAN: No, no. | 11:13AM |
| 5 | THE COURT: Go ahead. | 11:13AM |
| 6 | MR. GORMAN: Rule 106 is clear that at the time | 11:13AM |
| 7 | that they proffered admission, that's when you make your | 11:13AM |
| 8 | objection. You don't make it before, you don't make it after | 11:13AM |
| 9 | so it is kind of weird but I'm playing by the rule. If you | 11:13AM |
| 10 | look at the rule, it says when it's proffered. | 11:13AM |
| 11 | THE COURT: I know but -- | 11:13AM |
| 12 | MR. GORMAN: So -- | 11:13AM |
| 13 | THE COURT: But you already knew it was going to | 11:13AM |
| 14 | be offered. | 11:13AM |
| 15 | MR. GORMAN: Yeah, but I can't do it until they | 11:13AM |
| 16 | offer it. | 11:13AM |
| 17 | THE COURT: No. | 11:13AM |
| 18 | MR. GORMAN: Under the rule -- | 11:13AM |
| 19 | THE COURT: But if you knew about it ahead of | 11:13AM |
| 20 | time and you anticipated it, like I said in the scheduling | 11:13AM |
| 21 | order motions *in limine*. | 11:13AM |
| 22 | MR. GORMAN: This is not a motion *in limine,* this | 11:13AM |
| 23 | is objection at trial. It's clearly laid out in Rule 106. | 11:13AM |
| 24 | It's odd and I agree, but it is the rule and I'm just | 11:13AM |
| 25 | following the rule. | 11:13AM |

| | | |
|---|---|---|
| 1 | THE COURT:  What exactly are you talking about? | 11:13AM |
| 2 | MR. LEON GUERRERO:  I don't even know what | 11:13AM |
| 3 | e-mails he thinks should fall under Rule 106. | 11:13AM |
| 4 | THE COURT:  Are there any e-mails? | 11:13AM |
| 5 | MR. LEON GUERRERO:  Yes, Your Honor, but it's | 11:13AM |
| 6 | kind of in line with our position with the video.  I mean, | 11:13AM |
| 7 | there's e-mails that -- you know, that just really aren't | 11:13AM |
| 8 | relevant to what he's being charged with and I venture to say | 11:13AM |
| 9 | even some information there that is arguably self-serving, so | 11:14AM |
| 10 | again, this rule of completeness, you know, that's something | 11:14AM |
| 11 | that should have been brought prior -- | 11:14AM |
| 12 | MR. GORMAN:  Well, first of all -- | 11:14AM |
| 13 | MR. LEON GUERRERO:  We were caught off guard with | 11:14AM |
| 14 | this -- I mean, we had this understanding that we were going | 11:14AM |
| 15 | to be moving this and we weren't under the impression it was | 11:14AM |
| 16 | going to be a conditional admission, that it's going -- | 11:14AM |
| 17 | THE COURT:  I don't think he's saying it's a | 11:14AM |
| 18 | conditional admission -- well, maybe he is. | 11:14AM |
| 19 | MR. GORMAN:  I have no problem admitting it. | 11:14AM |
| 20 | THE COURT:  All right, 2 through 19. | 11:14AM |
| 21 | MR. GORMAN:  It's just -- | 11:14AM |
| 22 | THE COURT:  That's what I said, I remember you | 11:14AM |
| 23 | saying 2 through 19. | 11:14AM |
| 24 | MR. GORMAN:  Yeah. | 11:14AM |
| 25 | THE COURT:  You would stipulate to its | 11:14AM |

```
 1   authenticity?                                                11:14AM

 2              MR. GORMAN:  Yeah, yeah, yeah.                     11:14AM

 3              THE COURT:  And its admission, so those will be    11:14AM

 4   admitted, all right.  We'll proceed forward.                 11:14AM

 5              MR. LEON GUERRERO:  Yeah.                          11:14AM

 6              MR. GORMAN:  Now, at this time then we have to     11:14AM

 7   decide the final 12 sentences of this.  And it's -- really,  11:14AM

 8   have to give me an argument on this, Your Honor.  This is    11:14AM

 9   totally different from the confession.                       11:14AM

10              THE COURT:  No, no, but I'm just saying, really,  11:14AM

11   I think you should have brought this up earlier.             11:14AM

12              MR. GORMAN:  No, I can't.                          11:14AM

13              THE COURT:  Yes, you can.                          11:14AM

14              MR. GORMAN:  No, I cannot.  Judge, you have to     11:14AM

15   look at the rule and I would -- I am very clear.             11:15AM

16              THE COURT:  Calm down, you don't have to yell.     11:15AM

17              MR. GORMAN:  Sorry.                                11:15AM

18              THE COURT:  It's just like your objection          11:15AM

19   yesterday on the tape, that was wrong, because the rule of   11:15AM

20   completeness says if it's otherwise inadmissible, you can't  11:15AM

21   bring it in.                                                 11:15AM

22              MR. GORMAN:  This is totally different because     11:15AM

23   it's admissible.  This is totally different.                 11:15AM

24              THE COURT:  What is it in the other parts of the  11:15AM

25   e-mail though?                                               11:15AM
```

| | |
|---|---|
| 1 | MR. GORMAN:  It's all -- it's the continuing | 11:15AM |
| 2 | investigation, what happens is they have a month-long | 11:15AM |
| 3 | communication. | 11:15AM |
| 4 | THE COURT:  I'm sorry.  It's another law clerk, | 11:15AM |
| 5 | you can come up. | 11:15AM |
| 6 | MR. GORMAN:  So they have a month-long | 11:15AM |
| 7 | communication between this gentleman and my client and there | 11:15AM |
| 8 | is -- it goes up until the 28th. | 11:15AM |
| 9 | THE COURT:  Okay, but what's the content of that | 11:15AM |
| 10 | investigation? | 11:15AM |
| 11 | MR. GORMAN:  Yeah, it's all these e-mails back | 11:15AM |
| 12 | and forth between the two and then they continue.  So it's the | 11:15AM |
| 13 | final -- | 11:15AM |
| 14 | THE COURT:  But what -- why are you keeping it | 11:15AM |
| 15 | out? | 11:15AM |
| 16 | MR. GORMAN:  Yeah, why are they? | 11:15AM |
| 17 | THE COURT:  Lower your voice.  Lower your voice. | 11:15AM |
| 18 | Come on, you guys.  I'm very disappointed in many ways.  This | 11:15AM |
| 19 | is going completely -- | 11:15AM |
| 20 | MR. LEON GUERRERO:  We didn't include it because | 11:15AM |
| 21 | we didn't see it being relevant, it can be seen as cumulative. | 11:16AM |
| 22 | THE COURT:  What's in it? | 11:16AM |
| 23 | MR. LEON GUERRERO:  Your Honor, there's lots of | 11:16AM |
| 24 | e-mails and this is going on for lots of e-mails. | 11:16AM |
| 25 | THE COURT:  He said 12 sentences. | 11:16AM |

| | |
|---|---|
| 1 | MR. GORMAN:  12 sentences. | 11:16AM |
| 2 | MR. LEON GUERRERO:  What do you mean, "12 | 11:16AM |
| 3 | sentences"? | 11:16AM |
| 4 | THE COURT:  That's what he just said.  12 | 11:16AM |
| 5 | sentences of what? | 11:16AM |
| 6 | MR. GORMAN:  12 e-mails, they're 12 sentences | 11:16AM |
| 7 | long. | 11:16AM |
| 8 | MR. LEON GUERRERO:  There's a lot of e-mails. | 11:16AM |
| 9 | THE COURT:  He just said 12 sentences, 12 | 11:16AM |
| 10 | e-mails.  Does he know what he's talking about?  Do you know | 11:16AM |
| 11 | what he's talking about? | 11:16AM |
| 12 | MR. LEON GUERRERO:  No.  I just -- all I know is | 11:16AM |
| 13 | there's a lot of e-mails and through all of those e-mails -- | 11:16AM |
| 14 | THE COURT:  We're -- I'm going to let the jurors | 11:16AM |
| 15 | go and I want to see those e-mails up here. | 11:16AM |
| 16 | MR. GORMAN:  Okay. | 11:16AM |
| 17 | (End of sidebar.) | 11:16AM |
| 18 | THE COURT:  Okay.  All right.  Ladies and | 11:16AM |
| 19 | gentlemen, why don't we take a 15-minute recess.  I'm going to | 11:17AM |
| 20 | discuss a legal issue with the attorneys, so keep an open mind | 11:17AM |
| 21 | and just go back and drink a little water, coffee, or whatever | 11:17AM |
| 22 | you have back there.  All right.  See you in 15 minutes. | 11:17AM |
| 23 | Please rise for the jury. | 11:17AM |
| 24 | (Jury out at 11:17 a.m.) | 11:17AM |
| 25 | THE COURT:  We're in recess, show him the | 11:17AM |

1    exhibits, Mr. Gorman.                                        11:17AM

2              MR. GORMAN:  Show them to?                         11:17AM

3              THE COURT:  To the prosecutor, he doesn't know     11:17AM

4    what you're talking about.                                  11:17AM

5              MR. GORMAN:  Certainly.  Your Honor, should we --  11:17AM

6    you want to do it on the ELMO or do you want...             11:18AM

7              THE COURT:  Well, no, just show it to him first    11:18AM

8    and make sure he --                                         11:18AM

9              MR. GORMAN:  He knows it --                        11:18AM

10             THE COURT:  -- recognizes it.                      11:18AM

11             MR. GORMAN:  -- they're from his discovery.        11:18AM

12   There's no surprise.                                        11:18AM

13             THE COURT:  He said he doesn't know -- let him     11:18AM

14   see which one.                                              11:18AM

15             MR. LEON GUERRERO:  Your Honor, so these are all   11:18AM

16   -- so these are all like certain e-mails that were taken from  11:18AM

17   like chats that were going on between the defendant and Brit  11:18AM

18   and what I'm trying to explain is we have what was provided in  11:18AM

19   discovery from page 115 to 343, okay?  So you have a        11:18AM

20   significant amount of pages in discovery that contain these  11:18AM

21   e-mail chats between Brit and the defendant.  And so, again,  11:18AM

22   under Rule 801(d)(2), party opponent statements, the        11:18AM

23   government has the ability to be able to put selected e-mails,  11:18AM

24   which we did, and we've had these exhibits filed since, you  11:18AM

25   know -- a lengthy period of time, Your Honor , and there was  11:19AM

1   no issue with it.  But what the government's position and all
2   these others -- you know what they're talking about, like
3   what's your favorite food, like the fact that the defendant
4   likes to play games.  I mean, really, that's a lot of it,
5   unless Counsel can show me specific e-mail chats that he
6   thinks are relevant.
7                   THE COURT:  He just said he's got 12 sentences.
8                   MR. LEON GUERRERO:  Yeah, Your Honor, but even
9   with this, you know, I'd submit a lot of this is -- can be
10  looked at self-serving.  "Hey.  Oh, my God.  Are you for real?
11  You still want to come over?" "Oh, my God.  It's so late.  I'm
12  okay" but even with this Rule-of-Completeness argument he's
13  making, these e-mails are not even complete.  I mean, they're
14  selected lines from these e-mail chats that's being put here
15  but that's not put into the context of the e-mail exchange
16  that --
17                  THE COURT:  All right.  So you have -- as I
18  understand it, you both have agreed to the admission and
19  authenticity of e-mail chats.  I believe that's what it is --
20  or postings from number 2 through 19; correct?
21                  MR. GORMAN:  Yes, Your Honor.
22                  THE COURT:  All right.  Are these different, are
23  these separate from these e-mail chats or postings?
24                  MR. GORMAN:  They're a continuation.
25                  THE COURT:  Are they different e-mail chats?

|   |   |   |
|---|---|---|
| 1 | MR. GORMAN:  Yes. | 11:20AM |
| 2 | THE COURT:  But they're contained within the 2 to | 11:20AM |
| 3 | 19, that's what you're saying? | 11:20AM |
| 4 | MR. GORMAN:  No. | 11:20AM |
| 5 | THE COURT:  They're totally separate. | 11:20AM |
| 6 | MR. GORMAN:  They're part of the same | 11:20AM |
| 7 | communication. | 11:20AM |
| 8 | THE COURT:  I'm sorry, what do you mean?  Can you | 11:20AM |
| 9 | explain that.  Like are they -- could it be contained in | 11:20AM |
| 10 | e-mail number three?  Is that what you're saying? | 11:20AM |
| 11 | MR. GORMAN:  Absolutely not.  Here's the | 11:20AM |
| 12 | situation:  There was an investigation of my client by Adam | 11:20AM |
| 13 | Ring, it started in October and went until the 29th of | 11:20AM |
| 14 | November, so it's a month long.  Exhibits 2 through 19 are all | 11:20AM |
| 15 | the chats from the beginning of his communication with my | 11:20AM |
| 16 | client, you heard the Craigslist thing, until about 7 o'clock | 11:21AM |
| 17 | on the 29th of October -- 29th of November, so that's 2 | 11:21AM |
| 18 | through 19. | 11:21AM |
| 19 | THE COURT:  The beginning of the investigation to | 11:21AM |
| 20 | -- | 11:21AM |
| 21 | MR. GORMAN:  Exactly. | 11:21AM |
| 22 | THE COURT:  To what day? | 11:21AM |
| 23 | MR. GORMAN:  Until 11/29 at about 7 o'clock. | 11:21AM |
| 24 | THE COURT:  20 what?  What year? | 11:21AM |
| 25 | MR. GORMAN:  I'm sorry, 2017. | 11:21AM |

|    |                                                              |        |
|----|--------------------------------------------------------------|--------|
| 1  | THE COURT:  At what time, did you say?                       | 11:21AM |
| 2  | MR. GORMAN:  Let me look --                                  | 11:21AM |
| 3  | THE COURT:  It doesn't matter.                               | 11:21AM |
| 4  | MR. GORMAN:  Approximately 7 o'clock.                        | 11:21AM |
| 5  | THE COURT:  I thought you said that, right.  11              | 11:21AM |

1             THE COURT:  At what time, did you say?

2             MR. GORMAN:  Let me look --

3             THE COURT:  It doesn't matter.

4             MR. GORMAN:  Approximately 7 o'clock.

5             THE COURT:  I thought you said that, right.  11

6    -- okay, so you guys have agreed to this, this is something

7    totally separate now?

8             MR. GORMAN:  No, it's a continuation of the chat.

9             THE COURT:  So it's subsequent to this -- to

10   11/29/2017?

11            MR. GORMAN:  Right, it's the hour afterwards.

12            THE COURT:  That's --

13            MR. GORMAN:  Yeah.  Yeah.

14            THE COURT:  It's a totally different chat, it's

15   not within that period of time of the beginning to 11/29/2017,

16   it's subsequent to that time?  Subsequent --

17            MR. GORMAN:  Yeah, it starts -- their

18   communications go for a month and then cut out the final hour.

19            THE COURT:  Okay.

20            MR. GORMAN:  This is the final hour of their

21   communications.  The last communications they had, the final

22   hour.  That's why we're talking about the rule of completeness

23   in that they have taken this investigation that went on for a

24   month and then at the end, they chop off the final hour.

25   That's what the rule of completeness is designed to prevent,

| | |
|---|---|
| 1 | that if a party introduces all or part of a writing, an | 11:22AM |
| 2 | adverse party may require the introduction at that time -- | 11:22AM |
| 3 | THE COURT: Yup, that's true. | 11:22AM |
| 4 | MR. GORMAN: -- of any other part or any other | 11:22AM |
| 5 | writing or recorded statement that, in fairness, ought to be | 11:22AM |
| 6 | considered and that's the issue. So, first of all -- | 11:22AM |
| 7 | THE COURT: So the issue is really the fairness | 11:22AM |
| 8 | issue? | 11:22AM |
| 9 | MR. GORMAN: Exactly, but I do apologize -- and I | 11:22AM |
| 10 | know you're upset, I apologize, but there's no way I could get | 11:22AM |
| 11 | around it, because I didn't mean to cut you off. | 11:22AM |
| 12 | THE COURT: No, no, no but -- I mean, you can -- | 11:23AM |
| 13 | you -- you -- it says -- okay, so let's see, Rule 106 says if | 11:23AM |
| 14 | a party introduces all or part of a recorded statement, an | 11:23AM |
| 15 | adverse party may require the introduction at that time or any | 11:23AM |
| 16 | other part or any other writing or recorded statement that in | 11:23AM |
| 17 | fairness ought to be considered at the same time, that's what | 11:23AM |
| 18 | you just said. | 11:23AM |
| 19 | MR. GORMAN: Yeah. So I know you don't like that | 11:23AM |
| 20 | right when we started the trial, now we've got this, but the | 11:23AM |
| 21 | rule is clear it's at that time. I cannot -- you could let me | 11:23AM |
| 22 | bring it in on cross but -- | 11:23AM |
| 23 | THE COURT: No, no, you're relying on the evident | 11:23AM |
| 24 | time language. | 11:23AM |
| 25 | MR. GORMAN: I know, I have to. | 11:23AM |

11:23AM
1          THE COURT:  No, no, I know what the rule said.

11:23AM
2          MR. GORMAN:  Sorry.  It says refer -- when the

11:23AM
3    other writing should be introduced.  That's -- he's doing it

11:23AM
4    now, he's trying to introduce it now, yeah.

11:23AM
5          THE COURT:  But when -- I think it should have

11:23AM
6    been raised with the Court earlier.

11:23AM
7          MR. GORMAN:  But I can't because it's at that

11:23AM
8    time.

11:23AM
9          THE COURT:  No, but you could have brought it

11:23AM
10   under motion *in limine* because you want it to be brought in.

11:23AM
11   Oftentimes attorneys do say, "Hey, look, he's keeping this

11:23AM
12   out, now we're going to spend time --" you could have, Mr.

11:24AM
13   Gorman.

11:24AM
14         MR. GORMAN:  No, I think the rule is clear, it's

11:24AM
15   at that time.  That's the thing.  They're going to say it

11:24AM
16   isn't at that time.

11:24AM
17         THE COURT:  I'm saying you could object to it.

11:24AM
18   Right now, that's true, you could object to at that time but

11:24AM
19   also, you knew that the prosecutor was only going to bring

11:24AM
20   this in and not anything else and you had -- you knew that you

11:24AM
21   -- you wanted that particular final hour to be brought in.

11:24AM
22         MR. GORMAN:  Yeah.

11:24AM
23         THE COURT:  And, frankly, I think that you should

11:24AM
24   have filed a motion *in limine* so we could have discussed this

11:24AM
25   before trial so we didn't have to waste the jurors' time.  We

1   could have discussed it.  That's just my rule and we normally        11:24AM

2   handle all these matters ahead of time, so let's proceed.            11:24AM

3               MR. GORMAN:  I apologize, but I looked carefully         11:24AM

4   and I researched it and --                                           11:24AM

5               THE COURT:  Well, you're wrong -- well, you're           11:24AM

6   right about objecting to it but you're wrong about not               11:24AM

7   bringing it to the Court's attention or raising it with the          11:24AM

8   Court because -- so we could at least discuss this outside --        11:24AM

9   before we started the trial so we don't waste the jurors'            11:24AM

10  time, and you know better than that, Mr. Gorman.  All right.         11:24AM

11  Proceed.  What's the issue then?  Let's go, Counsels, final         11:24AM

12  hour, go ahead.  So let me look at it.                               11:25AM

13              MR. GORMAN:  Yes, so it is the final hour.  And          11:25AM

14  what they are is 12 communications between -- on that night on      11:25AM

15  11/29 between 7:03 and 8:01.                                         11:25AM

16              THE COURT:  All right.                                   11:25AM

17              MR. GORMAN:  These are the final communications,        11:25AM

18  so they introduced a month worth of communications that end         11:25AM

19  just before the final hour.                                          11:25AM

20              THE COURT:  You said there's 12 sentences, put --       11:25AM

21              MR. GORMAN:  Yes.                                        11:25AM

22              THE COURT:  Put them up.                                 11:25AM

23              MR. GORMAN:  Certainly.                                  11:25AM

24              THE COURT:  Put them up.                                 11:25AM

25              MR. GORMAN:  Here's the first one.                       11:25AM

|   |   |   |
|---|---|---|
| 1 | THE COURT:  Carmen is going to -- thank you, | 11:25AM |
| 2 | Carmen. | 11:25AM |
| 3 | MR. GORMAN:  Can Your Honor see that? | 11:25AM |
| 4 | THE COURT:  Okay, let's see.  Yes. | 11:26AM |
| 5 | MR. GORMAN:  Okay, so here's the first one. | 11:26AM |
| 6 | "Hey.  Oh, my God.  Are you for real?  You still want to come | 11:26AM |
| 7 | over?"  One thing to remember, unlike what we were discussing | 11:26AM |
| 8 | yesterday about, you know, hearsay and exculpatory statements, | 11:26AM |
| 9 | these are 12 statements basically, 12 sentences, six of them | 11:26AM |
| 10 | are the government agent, six of them are my client.  So this | 11:26AM |
| 11 | idea that they're inadmissible, at best it would be the six | 11:26AM |
| 12 | against my client but they're not exculpatory, so I don't know | 11:26AM |
| 13 | why.  But either way, here's the first one, and it happens at | 11:26AM |
| 14 | 7:03 p.m.  "Hey.  Oh, my God.  Are you for real?  You still | 11:26AM |
| 15 | want to come over?"  Should I move to the next one? | 11:26AM |
| 16 | THE COURT:  Yes -- or just put -- you know what, | 11:26AM |
| 17 | if it makes it easier, just leave it right there, go ahead, | 11:26AM |
| 18 | then just put the second one right underneath it. | 11:26AM |
| 19 | MR. GORMAN:  We'll run out of space quick but | 11:26AM |
| 20 | here's the second one.  "I do, but still working.  How are you | 11:26AM |
| 21 | today?" | 11:27AM |
| 22 | THE COURT:  The first one, is that written by | 11:27AM |
| 23 | Brit? | 11:27AM |
| 24 | MR. GORMAN:  The first one is from Agent Ring. | 11:27AM |
| 25 | THE COURT:  This is -- okay.  You're right, Agent | 11:27AM |

```
 1    Ring.                                                              11:27AM

 2            MR. GORMAN:  The second one is from my client.            11:27AM

 3    And the time on his -- you have to move over and you will see     11:27AM

 4    the time on this is 7:08.                                         11:27AM

 5            THE COURT:  So this is Ring asking your client,           11:27AM

 6    "are you for real, you still want to come over?"                  11:27AM

 7            MR. GORMAN:  Yes.                                         11:27AM

 8            THE COURT:  That's him.  And then --                      11:27AM

 9            MR. GORMAN:  Ring said that at 7:03.  It's 7:08,          11:27AM

10    my client responded "I do, but still working.  How are you        11:27AM

11    today?"  Third one, Agent Ring again, this is at -- at 7:10       11:27AM

12    from Agent Ring "oh, my God.  It's so late.  I'm okay.  HBU,"     11:27AM

13    which is, I think, slang for "how about you."                    11:28AM

14            THE COURT:  That sounds right.                           11:28AM

15            MR. GORMAN:  So that's at 7:10.  My client               11:28AM

16    responds at 7:10 also, "it's late, I'm okay.  Waiting for one    11:28AM

17    thing then gonna be able to work maybe."  At 7:14, Agent Ring    11:28AM

18    writes back, question marks, "I don't know what you mean,"       11:28AM

19    laugh out loud, "but okay, so you're gonna be working like all   11:28AM

20    night, huh?"                                                     11:28AM

21            THE COURT:  Okay.                                        11:28AM

22            MR. GORMAN:  The next one is from my client at           11:28AM

23    7:19, let's see here.  And he says "for a bit longer."  So you   11:28AM

24    notice, all these exchanges are one sentence long.               11:28AM

25            THE COURT:  Right.  Okay.                                11:29AM
```

MR. GORMAN:  Now we have the next one, which is at 7:19 again, this is from Agent Ring "oh, then what are you planning on doing?"  The next one from my client, at 7:20.  "Don't know, haven't thought about that."  At 7:24, Agent Ring responds, "oh.  Well, okay."  And then at 7:28, my client writes "what would you like me to do?"  And then at 7:29, Agent Ring writes back "um, IDK," which I believe stands for "I don't know."  And then the final, the 12th, which occurs -- it's from my client, it's at 8:01, "I am just now about to get off work, what are you up to, is it too late?  I am pretty tired right now."  So that's the last e-mail.  So there are 12 sentences, six from the government agent, six from my client.  And I think it -- unlike yesterday's, this clearly fits in the rule of completeness, because this is -- they've introduced all these e-mails and all these e-mails, Your Honor, are the complete communications between Agent Ring and my client, there isn't any extraneous things.  Everything that has gone on between Agent Ring and my client is contained in Government's Exhibits 2 through 19, all they cutout is these final 12 exchanges that happened in less than an hour on that night.  And you'll see -- and so they cut out the entire -- after a month-and-a-half of investigation, the only thing they left out is the final hour, so this is a classic case of completeness.  This is recorded statements from the government, there's no surprise to the government because they

1   know full well about this, this is all their discovery, this     11:31AM
2   is all their investigation, they gave this all to me.  There's   11:31AM
3   no surprise to them.  They don't like it, they didn't put it     11:31AM
4   in their exhibits because they don't like it, but still under    11:31AM
5   the rule of completeness, it comes in.                           11:31AM
6            You know, the case law is clear that the Courts         11:31AM
7   have wide discretion in applying the rule and if the             11:31AM
8   government's incomplete presentation paints a distorted          11:31AM
9   picture of the communication, it is unfair, and I think this     11:31AM
10  is a classic example -- they're cutting out the final hour.      11:31AM
11           THE COURT:  Yeah, the critical inquiry, is it           11:31AM
12  fair, has there been -- does the -- if the complete statement    11:31AM
13  does not serve to correct a misleading impression, so you're     11:32AM
14  saying that if we don't have this in, it's out of context in     11:32AM
15  terms of Exhibits 2 through 19?                                  11:32AM
16           MR. GORMAN:  Exactly.  Because --                       11:32AM
17           THE COURT:  That's your argument?                       11:32AM
18           MR. GORMAN:  Yes, because it's a distorted              11:32AM
19  picture.  There's no temporal differences between them,         11:32AM
20  they're cutting it out because they don't like it, but they're  11:32AM
21  not allowed to do that.  Imagine when it comes time for         11:32AM
22  cross-examination and I ask him about the communications,       11:32AM
23  which I'm allowed to do, and I say, "When did you end -- stop   11:32AM
24  communication with Mr. McCarron?"  The true answer is 8:01.     11:32AM
25  The jury is now going to look and see "wait a minute,           11:32AM

Exhibits 2 through 19 only go up to 7 o'clock, we're missing an hour," and I'm allowed to ask him about that investigation, absolutely, so there's gonna be this glaring hole and people are going to wonder what happened and I'm going to ask him, "were there further communications after Exhibit 19, the time frame 7 o'clock, did you have any further communications with my client?" He'll have to answer yes, but the jury won't know what they are. And certainly -- and first of all, they're not inadmissible hearsay, my client's statements, because they're not exculpatory. They just serve to further explain, but certainly his statements -- six of those statements are his, there's no reason to keep them out. So I mean, it's just -- the rule of completeness warrants admission when the government introduces only a portion of inextricably intertwined statements and they are, this is all part of this investigation, there's no temporal difference, and I would also -- this is -- the Court has been good in the past on this issue because I sat through the *Martinez Moser* case and I saw that there were extensive communications, tape recordings that were played *ad nauseam*, every single tape recording played, some of them were not even legible and they were still played, and I believe the Court made the correct ruling because the jury had to see all of the evidence regarding this investigation.

And I think in this case, they have to see all

1  the evidence regarding this investigation.  And it just leaves

2  a big hole that leaves the jury to wonder because I certainly

3  am allowed to ask him about this investigation and how many

4  times he had communication with him and now they're going to

5  wonder -- they're going to find out he talked to him six other

6  times.

7          THE COURT:  Well, the issue really right now is

8  whether or not these particular 12 lines should be brought in

9  because if you don't allow it in, you're saying it's unfair to

10  your client in terms of the content to the other e-mails.

11          MR. GORMAN:  Exactly.

12          THE COURT:  That's what you're saying.  So the

13  critical -- so the Court has looked at it, now the issue is

14  whether -- the fairness issue, so I don't know what the other

15  2 through 19 are.

16          MR. GORMAN:  Okay.

17          THE COURT:  So I don't know that.

18          MR. GORMAN:  I think when you see it, you'll

19  adopt my position.  We could hold off until -- if you want to

20  look at all the way through Exhibit 19, because I agree once

21  you figure it out, it bolsters my argument.

22          THE COURT:  Well, I have to figure out the

23  content of it.

24          MR. GORMAN:  Exactly.

25          THE COURT:  Okay.  According to the rule of

1    completeness, just because it's there doesn't mean you get

2    it --

3              MR. GORMAN:  Right.

4              THE COURT:  -- you have to make sure that the

5    Court can find that there will not be any misunderstanding or

6    distortion of what was already -- what was already admitted,

7    which will be 2 through 19.  Okay.  Mr. Leon Guerrero?

8              MR. LEON GUERRERO:  Yes, Your Honor.

9              THE COURT:  And there is the wording and they do

10   use the wording inextricably intertwined, so just focus on

11   this:  Are these 12 statements, one-liners, inextricably

12   intertwined, 2 through 19?

13             MR. LEON GUERRERO:  So I've got a possible

14   resolution, Your Honor.  First and foremost, I would -- you

15   know, defense counsel said government is not surprised, this

16   is our discovery.  We are surprised because, you know, there

17   was a time period to submit exhibits to the Court and, you

18   know, defense is looking to move these in as exhibits, so we

19   are surprised in that regard.  That's number one.  We would

20   also put on the record that we do believe that this argument

21   about these particular statements coming in is untimely filed

22   and it's untimely brought to the Court.  Not withstanding

23   though, Your Honor, after evaluating --

24             THE COURT:  Okay.

25             MR. LEON GUERRERO:  -- the -- the --

|     |                                                                              |        |
| --- | ---------------------------------------------------------------------------- | ------ |
| 1   | THE COURT:  The statements?                                                   | 11:36AM |
| 2   | MR. LEON GUERRERO:  -- the statements that                                    | 11:36AM |
| 3   | Counsel is looking to present, the government would be willing                | 11:36AM |
| 4   | to allow, I guess, these e-mail chats, but see, here's the                    | 11:36AM |
| 5   | thing Your Honor, these specific lines here -- again, Counsel                 | 11:36AM |
| 6   | is arguing about the rule of completeness, this is not                        | 11:36AM |
| 7   | complete, Your Honor.                                                         | 11:36AM |
| 8   | THE COURT:  Yeah, but he's saying that -- but                                 | 11:36AM |
| 9   | he's saying for purposes of his argument, that those                         | 11:36AM |
| 10  | particular statements, those one-line statements are                         | 11:37AM |
| 11  | inextricably intertwined with the other chats, so I assume                    | 11:37AM |
| 12  | that means that Mr. Gorman is trying to get rid of all the                    | 11:37AM |
| 13  | other stuff that may be irrelevant.                                          | 11:37AM |
| 14  | MR. LEON GUERRERO:  But that's the thing, you                                 | 11:37AM |
| 15  | can't have your cake and eat it too.                                         | 11:37AM |
| 16  | THE COURT:  Well, you can, because you have to                                | 11:37AM |
| 17  | evaluate every statement according to the Ninth Circuit case                 | 11:37AM |
| 18  | law and you have to evaluate every statement and look at each                 | 11:37AM |
| 19  | statement in the content of the rule of completeness argument.               | 11:37AM |
| 20  | MR. LEON GUERRERO:  We'd be willing to allow at                               | 11:37AM |
| 21  | least these e-mail chats pertaining to these specific                        | 11:37AM |
| 22  | statements that defense counsel is trying to get in, at least                | 11:37AM |
| 23  | in its entirety similar to what the government provided in                    | 11:37AM |
| 24  | Exhibits 2 through 19.  So he can reference these specific                    | 11:37AM |
| 25  | statements in that e-mail chat.                                              | 11:37AM |

|   |   |   |
|---|---|---|
| 1 | THE COURT:  I thought this was the chat? | 11:37AM |
| 2 | MR. LEON GUERRERO:  No, Your Honor, that -- | 11:37AM |
| 3 | that's the thing. | 11:37AM |
| 4 | THE COURT:  I didn't know there was anything | 11:37AM |
| 5 | else. | 11:37AM |
| 6 | MR. LEON GUERRERO:  There's a lot more content to | 11:37AM |
| 7 | these statements than just what's on this paper and that's my | 11:37AM |
| 8 | argument, is again, the rule of completeness, there's a lot | 11:37AM |
| 9 | more, and let me give you an example, Your Honor.  So I'm | 11:38AM |
| 10 | referring to, you know, the discovery here, but this is a | 11:38AM |
| 11 | statement that Counsel is wanting in, but again -- | 11:38AM |
| 12 | THE COURT:  Okay.  It says, "Hey, OMG, are you | 11:38AM |
| 13 | for real?  You still want to come over?"  That's the first one | 11:38AM |
| 14 | Mr. Gorman presented. | 11:38AM |
| 15 | MR. LEON GUERRERO:  Yes, Your Honor, but as you | 11:38AM |
| 16 | can see, there's other communications that are taking place. | 11:38AM |
| 17 | And so what the government' position is we can agree to allow | 11:38AM |
| 18 | Counsel to, you know, bring in those chats that have these | 11:38AM |
| 19 | statements that he wanted to inquire about, but at the same | 11:38AM |
| 20 | time for rule of completeness -- | 11:38AM |
| 21 | THE COURT:  How much more are you talking about, | 11:38AM |
| 22 | how many more lines, what are you talking about that looks -- | 11:38AM |
| 23 | MR. LEON GUERRERO:  There's different chats, Your | 11:39AM |
| 24 | Honor, so I mean with respect to "I do but still working, how | 11:39AM |
| 25 | -- | 11:39AM |

|   |   |   |
|---|---|---|
| 1 | THE COURT:  I'm sorry, I can't see that. | 11:39AM |
| 2 | MR. LEON GUERRERO:  I'm sorry, this ELMO -- | 11:39AM |
| 3 | THE COURT:  You just have to -- | 11:39AM |
| 4 | MR. LEON GUERRERO:  So there's this reference | 11:39AM |
| 5 | about "I do but still working.  How are you today?"  But, | 11:39AM |
| 6 | again, there's other -- | 11:39AM |
| 7 | THE COURT:  It might be easier to take it out of | 11:39AM |
| 8 | the binder, Carmen said.  Instead of... | 11:39AM |
| 9 | MR. LEON GUERRERO:  So again, there's this | 11:39AM |
| 10 | reference to "I do, still working.  How are you today?"  But | 11:39AM |
| 11 | again, there's all these other, you know, "oh, my God.  It's | 11:39AM |
| 12 | so late.  I'm okay.  How about you?" | 11:39AM |
| 13 | THE COURT:  I think he put that in, he did do | 11:39AM |
| 14 | that. | 11:39AM |
| 15 | MR. LEON GUERRERO:  But see, there's also a | 11:39AM |
| 16 | statement as to that, "what is your address" and "when is it | 11:39AM |
| 17 | too late to come over?" | 11:40AM |
| 18 | THE COURT:  Okay.  That's one thing "what is your | 11:40AM |
| 19 | address," what else?  You're saying there's a whole bunch | 11:40AM |
| 20 | more. | 11:40AM |
| 21 | MR. GORMAN:  That's part of Exhibit 19, that's | 11:40AM |
| 22 | coming in. | 11:40AM |
| 23 | THE COURT:  That's already coming in on another | 11:40AM |
| 24 | -- | 11:40AM |
| 25 | MR. GORMAN:  Yeah, 19. | 11:40AM |

1          MR. LEON GUERRERO:  So I guess that's the thing,

2   Your Honor, if -- if -- hold on.

3          MR. GORMAN:  I think I know -- not to interrupt

4   Stephen, sorry.  I think I know what he's talking about, I

5   have no problem doing that.  In fact, I prepared exhibits that

6   do just that, that have the same format as 2 through 19, and

7   it's Exhibits A through -- Defendant's Exhibits A through F.

8   So what I did earlier was I took them -- I took the actual

9   statements out but I didn't change them or anything.

10          THE COURT:  Do I have A through F?

11          MR. GORMAN:  No, these are what I would submit.

12   This is what I think -- is this what you want, Steve?

13          MR. LEON GUERRERO:  Yes.  Yes.

14          MR. GORMAN:  This is what Steve wants, I have no

15   problem, I already prepared them.

16          THE COURT:  Let me see it.  Let me see it.  Let

17   me see Defendant's Exhibits A through F.

18          MR. GORMAN:  Because --

19          THE COURT:  Go ahead.

20          MR. GORMAN:  I agree with Counsel for the

21   government.  I think he prefers they be in the same format as

22   his exhibits and I have no problem with that.

23          THE COURT:  All right.  All right.  You just

24   isolated the statement, that's all?

25          MR. GORMAN:  Yeah.  Yeah --

|   |   |   |
|---|---|---|
| 1 | THE COURT:  Maybe like a couple other lines that | 11:41AM |
| 2 | are -- that have been taken out but really it's the same | 11:41AM |
| 3 | thing, you just don't have -- you have his name but you don't | 11:42AM |
| 4 | have like the dates, you just have the times, don't you? | 11:42AM |
| 5 | MR. GORMAN:  Yeah.  I have the date and time but | 11:42AM |
| 6 | can I eliminate like the ads and all the clutter, I wanted to | 11:42AM |
| 7 | just focus on the actual content but I have no problem with | 11:42AM |
| 8 | doing it this way, because that's the way the other exhibits | 11:42AM |
| 9 | are. | 11:42AM |
| 10 | THE COURT:  Yeah, it doesn't seem like there's | 11:42AM |
| 11 | much more added to the 12 -- | 11:42AM |
| 12 | MR. GORMAN:  No, there is not.  As an officer of | 11:42AM |
| 13 | the Court, I will tell you those are the 12 statements in | 11:42AM |
| 14 | there. | 11:42AM |
| 15 | THE COURT:  Yeah, I don't know what you're -- Mr. | 11:42AM |
| 16 | -- it looks like Mr. Leon Guerrero, that the statements are | 11:42AM |
| 17 | exact chats.  There's nothing -- I don't think there's | 11:42AM |
| 18 | anything else added to it other that the ad on the side. | 11:42AM |
| 19 | MR. LEON GUERRERO:  Yeah, that was my request, | 11:42AM |
| 20 | Your Honor, was that -- | 11:42AM |
| 21 | THE COURT:  You just want it in the same format? | 11:42AM |
| 22 | MR. LEON GUERRERO:  -- if this is being provided | 11:42AM |
| 23 | to the jury, it be the same format that the Government's | 11:42AM |
| 24 | exhibits are gonna be admitted in, this format. | 11:42AM |
| 25 | THE COURT:  So not -- wait, wait.  It's not that | 11:43AM |

1    there's additional chats going on, it's just the chats there,    11:43AM

2    it's just the ad on the side and so forth, that's how you want    11:43AM

3    it brought in?    11:43AM

4            MR. LEON GUERRERO:  Yes.  Yes.    11:43AM

5            THE COURT:  You made it sound like there was    11:43AM

6    additional chatting going on.    11:43AM

7            MR. LEON GUERRERO:  No, it meant -- no, but    11:43AM

8    there's also -- yeah, there's discussions, Your Honor.  It's    11:43AM

9    not just the one sentence and that's what I was confused    11:43AM

10   about, about 12 lines and all that, because if you look at    11:43AM

11   these exhibits, there's a lot more than -- I mean, there's    11:43AM

12   discussions here that are taking place and I'm referring at    11:43AM

13   least to this particular -- all I'm saying, Your Honor, is    11:43AM

14   what's reflected here in defense Counsel's exhibits is fine    11:43AM

15   with the government.  It's in the format that I would ask that    11:43AM

16   it be presented and --    11:43AM

17           THE COURT:  All right.  Very well.  We'll call in    11:43AM

18   the jury.    11:43AM

19           MR. GORMAN:  I'm sorry, just one thing.  So how    11:43AM

20   -- they're marked defendant -- should we just wait and I will    11:43AM

21   introduce them during my case in chief?  If they're marked --    11:43AM

22           THE COURT:  That's up to the two of you, you guys    11:43AM

23   can decide.    11:44AM

24           MR. LEON GUERRERO:  Just so everyone is on the    11:44AM

25   same page, Your Honor, and there's no surprises, and I did    11:44AM

follow this in the -- to have the e-mails read allowed that

the government filed, there's gonna be a part during Agent

Ring's testimony where I am going to ask Agent Albo to just go

to the podium and she's gonna have this reading of the e-mails

between Brit and Michael McCarron -- she's going to pose as

Brit.

             THE COURT:  Brit.

             MR. LEON GUERRERO:  And --

             THE COURT:  He's going to pose as --

             MR. LEON GUERRERO:  The defendant.

             THE COURT:  The defendant?

             MR. LEON GUERRERO:  Yes, and I already talked to

Counsel.  He didn't have an objection to it.

             MR. GORMAN:  No.

             MR. LEON GUERRERO:  They're already instructed

they're not going to be doing a theatrical performance,

they're just going to read the chats.

             THE COURT:  All right.

             MR. GORMAN:  But I'm sorry, so what should we do

about these additional chats?  I can call both of those

individuals back during the defense in chief or we could just

have them do it now, it's up to the Court.

             THE COURT:  No.  If you want to bring it on your

-- if you want to put it on your case in chief, do it then.

If you're stipulating to it.

|   |   |   |
|---|---|---|
| 1 | MR. GORMAN:  I could do it on cross. | 11:45AM |
| 2 | THE COURT:  You could do it on cross or he could | 11:45AM |
| 3 | put it on his case in chief, either/or, because the Court will | 11:45AM |
| 4 | allow it now.  The prosecution is indicating he stipulates to | 11:45AM |
| 5 | it. | 11:45AM |
| 6 | MR. LEON GUERRERO:  Well -- | 11:45AM |
| 7 | THE COURT:  Now we wasted 30 minutes doing this | 11:45AM |
| 8 | outside the presence.  All right.  We'll proceed on. | 11:45AM |
| 9 | MR. LEON GUERRERO:  I just want to make sure it's | 11:45AM |
| 10 | -- through no fault of the government, Your Honor, I mean -- | 11:45AM |
| 11 | THE COURT:  My question is what do you want to | 11:45AM |
| 12 | do?  How do you want to proceed, Mr. Leon Guerrero? | 11:45AM |
| 13 | MR. LEON GUERRERO:  He can move to admit these | 11:45AM |
| 14 | exhibits now and we won't object to it but we're -- but we're | 11:45AM |
| 15 | not going to move it -- those are not our exhibits. | 11:45AM |
| 16 | THE COURT:  Well, you're going to stipulate to | 11:45AM |
| 17 | its admission and authenticity. | 11:45AM |
| 18 | MR. LEON GUERRERO:  Yes, but we're not going to | 11:45AM |
| 19 | use it with this particular witness.  So if it's admitted, | 11:45AM |
| 20 | Counsel is welcome to use it because it's already admitted, | 11:45AM |
| 21 | but I'm not going to move it in my case in chief. | 11:45AM |
| 22 | MR. GORMAN:  Okay. | 11:45AM |
| 23 | THE COURT:  Well, if you're going to stipulate to | 11:45AM |
| 24 | it, it's an admission of authenticity, then he could use it | 11:45AM |
| 25 | during cross-examination instead of trying to bring it in, | 11:45AM |

1    yeah, instead of recalling this witness at a later time.    11:45AM

2    That's what you're trying to say?    11:46AM

3                MR. GORMAN:  Yeah.    11:46AM

4                MR. LEON GUERRERO:  Well, we can just move it in    11:46AM

5    now, Your Honor.    11:46AM

6                MR. GORMAN:  I do, I move for admission now,    11:46AM

7    Defendant's Exhibits A through F.    11:46AM

8                MR. LEON GUERRERO:  I'm just saying I'm not using    11:46AM

9    it for this witness, in our case in chief.    11:46AM

10               THE COURT:  I've got it.  He can use it though    11:46AM

11   for cross-examination.    11:46AM

12               MR. LEON GUERRERO:  Yes.    11:46AM

13               THE COURT:  Very well.  Bring it in.  We'll call    11:46AM

14   in the jury.    11:46AM

15               (Pause.)    11:46AM

16               MR. GORMAN:  Your Honor, just to try to -- I    11:46AM

17   don't anticipate any more problems, evidentiary issues.    11:46AM

18               THE COURT:  We'll talk later, Mr. Gorman.    11:46AM

19               Please rise for the jury.    11:46AM

20               (Jury in at 11:47 a.m.)    11:47AM

21               THE COURT:  Thank you very much, ladies and    11:47AM

22   gentlemen of the jury, for your patience.  I'm sorry, we had    11:47AM

23   to handle a legal issue and it involves the Court and the    11:47AM

24   Counsels, so we were working on an issue that will help    11:47AM

25   facilitate the movement of the trial, so you may proceed,    11:47AM

1    Mr. Leon Guerrero.                                    11:47AM

2              MR. LEON GUERRERO:  Yes, Your Honor.  Thank you.   11:47AM

3              Your Honor, just on record, I don't know if it's   11:47AM

4    been already admitted but at this time, I'd move Government's   11:47AM

5    Exhibits 2 through 19 into evidence.                  11:47AM

6              THE COURT:  All right.  The Court -- Mr. Gorman,   11:47AM

7    you have no objections?                               11:47AM

8              MR. GORMAN:  No objection.  And I would move   11:47AM

9    Defense Exhibits A through F into evidence.           11:48AM

10             THE COURT:  Is it A through F?              11:48AM

11             MR. GORMAN:  Yes, Your Honor.               11:48AM

12             THE COURT:  All right, ladies and gentlemen of   11:48AM

13   the jury, the Court -- and the Court understands that this is   11:48AM

14   by stipulation for authentication and admissibility.  So both   11:48AM

15   parties have agreed to the admissibility of the exhibits, 2   11:48AM

16   through 19, this is United States Exhibits 2 through 19 and   11:48AM

17   Defense Exhibits A through F.                         11:48AM

18   (Exhibits 2-19, A-F admitted)                         11:48AM

19             THE COURT:  You may proceed.               11:48AM

20             MR. LEON GUERRERO:  Thank you, Your Honor.   11:48AM

21   BY MR. LEON GUERRERO: (CONTINUING)                    11:48AM

22      Q.   Now, Agent Ring, I'm showing you what has been   11:48AM

23   admitted into evidence as Government's Exhibit 2.    11:48AM

24      A.   Yes, sir.                                     11:48AM

25      Q.   Okay.  And can you please tell the members of the   11:48AM

```
 1   jury what's reflected in Exhibit No. 2?                    11:48AM

 2       A.   Sure.  So that's just a screen capture of what the   11:48AM

 3   Craigslist advertisement looked like once it was posted onto  11:48AM

 4   Craigslist.                                                11:48AM

 5       Q.   And --                                            11:48AM

 6            THE COURT:  Okay.  Why don't we -- Carmen, why    11:48AM

 7   don't we take out the -- his picture there and just blow up  11:49AM

 8   the exhibit.  That's fine.  The defendant's -- I mean, the   11:49AM

 9   witness.  That's okay.  We can just -- okay, there, that's   11:49AM

10   better.  That makes it... I wanted to see the exhibit, Carm, 11:49AM

11   blown up.                                                  11:49AM

12            Okay.  This is Exhibit 2?                         11:49AM

13            MR. LEON GUERRERO:  Yes, Your Honor.              11:49AM

14            THE COURT:  All right.                            11:49AM

15   BY MR. LEON GUERRERO: (CONTINUING)                         11:49AM

16       Q.   And it reads -- please tell the jurors what does the 11:49AM

17   "AF" on this exhibit referred to?                          11:49AM

18       A.   In the title block there?                         11:49AM

19       Q.   Yes.                                              11:49AM

20       A.   That stands for "as fuck."                        11:49AM

21       Q.   Okay.                                             11:49AM

22            THE COURT:  I'm sorry, it stands for what?        11:49AM

23            MR. LEON GUERRERO:  For "as fuck," Your Honor.    11:49AM

24            THE COURT:  Okay.                                 11:49AM

25   BY MR. LEON GUERRERO: (CONTINUING)                         11:49AM
```

| | | |
|---|---|---|
| 1 | Q.   And what about this reference to "W4M"? | 11:49AM |
| 2 | A.   That stands for "women for men." | 11:49AM |
| 3 | Q.   And can you tell the jurors what was the content of | 11:49AM |
| 4 | this ad? | 11:50AM |
| 5 | A.   As far as what the actual wording of it? | 11:50AM |
| 6 | Q.   Yes. | 11:50AM |
| 7 | A.   It states, "Hey, so I'm just bored, I don't know, I | 11:50AM |
| 8 | guess I just want to make some new friends or something.  I'm | 11:50AM |
| 9 | stuck on base cause I can't drive, but HMU," which stands for | 11:50AM |
| 10 | hit me up, "and we can talk or something.  Other mil brats," | 11:50AM |
| 11 | which is short for military brats, "would be cool." | 11:50AM |
| 12 | Q.   And do you recall the date that you posted this ad on | 11:50AM |
| 13 | Craigslist? | 11:50AM |
| 14 | A.   I believe it was the 30th of October. | 11:50AM |
| 15 | Q.   And does the -- do you see a reply button on this ad? | 11:50AM |
| 16 | A.   Yes. | 11:50AM |
| 17 | Q.   Okay.  Can you please -- and where is that on this | 11:50AM |
| 18 | particular exhibit? | 11:50AM |
| 19 | A.   Just above the title, there's a gray block on the | 11:50AM |
| 20 | left side of the advertisement that says "reply." | 11:50AM |
| 21 | Q.   Now, I'm pointing to the reference on this exhibit, | 11:50AM |
| 22 | "CL", do you know what CL stands for? | 11:51AM |
| 23 | A.   It stands for "Craigslist." | 11:51AM |
| 24 | Q.   Okay.  And then there's Micronesia here referenced; | 11:51AM |
| 25 | correct? | 11:51AM |

| | | |
|---|---|---|
| 1 | A.   Yes. | 11:51AM |
| 2 | Q.   And is this the category that you placed this ad in? | 11:51AM |
| 3 | A.   Yes, it is. | 11:51AM |
| 4 | Q.   And this was the personal section that you indicated; | 11:51AM |
| 5 | correct? | 11:51AM |
| 6 | A.   That's correct. | 11:51AM |
| 7 | Q.   Now, after you submitted this, this Craigslist ad, | 11:51AM |
| 8 | did you receive a response? | 11:51AM |
| 9 | A.   I did. | 11:51AM |
| 10 | Q.   And on this response, do you recall who responded to | 11:51AM |
| 11 | this Craigslist ad? | 11:51AM |
| 12 | A.   Well, I received several responses to this | 11:51AM |
| 13 | advertisement, but one of the responses was from the | 11:51AM |
| 14 | defendant. | 11:51AM |
| 15 | Q.   Okay.  And what was the name of the person that | 11:51AM |
| 16 | responded? | 11:51AM |
| 17 | A.   Michael McCarron. | 11:51AM |
| 18 | Q.   I'm going to show you what has been admitted into | 11:52AM |
| 19 | evidence as Exhibit 3.  And are you able to determine what the | 11:52AM |
| 20 | date of this response to that Craigslist ad was? | 11:52AM |
| 21 | A.   Yes. | 11:52AM |
| 22 | Q.   And what was -- when was the response? | 11:52AM |
| 23 | A.   This was on the 31st of October of 2017. | 11:52AM |
| 24 | Q.   And was this the reply that you had received from | 11:52AM |
| 25 | Michael McCarron? | 11:52AM |

|   |   |   |
|---|---|---|
| 1 | A.   Yes. | 11:52AM |
| 2 | Q.   And in looking at this particular exhibit on this | 11:52AM |
| 3 | page, do you see where it references Michael McCarron? | 11:52AM |
| 4 | A.   Yes, I do. | 11:52AM |
| 5 | Q.   And can you please draw a circle around that, please? | 11:52AM |
| 6 | A.   Sure. | 11:53AM |
| 7 | Q.   Thank you. | 11:53AM |
| 8 | THE COURT:  Okay.  Hold on a second.  Is he going | 11:53AM |
| 9 | to make any other -- | 11:53AM |
| 10 | MR. LEON GUERRERO:  I don't think so. | 11:53AM |
| 11 | THE COURT:  -- drawings?  Because if so, we have | 11:53AM |
| 12 | to capture it with the computer. | 11:53AM |
| 13 | MR. LEON GUERRERO:  I'll probably hold off just | 11:53AM |
| 14 | for now, Your Honor, capturing it. | 11:53AM |
| 15 | BY MR. LEON GUERRERO: (CONTINUING) | 11:53AM |
| 16 | Q.   Now, you see these -- these links here on this part | 11:53AM |
| 17 | of the page, what are those links? | 11:53AM |
| 18 | A.   Sure.  So those links are just -- those are what is | 11:53AM |
| 19 | called hyperlinks.  So the person using this can just click on | 11:53AM |
| 20 | those and it takes them to whatever web page it's talking | 11:53AM |
| 21 | about instantly. | 11:53AM |
| 22 | Q.   Okay.  And based on this particular page of the | 11:53AM |
| 23 | exhibit, what was the response that Michael McCarron had sent | 11:53AM |
| 24 | based on your Craigslist post? | 11:53AM |
| 25 | A.   It states, "I have base access and I can drive.  How | 11:53AM |

```
 1    are you?"                                                    11:54AM

 2              THE COURT:  Okay.  Hold on.                        11:54AM

 3              MR. LEON GUERRERO:  I'm sorry, Your Honor.  I      11:54AM

 4    apologize.                                                   11:54AM

 5              THE COURT:  There we go.  All right.  Just have    11:54AM

 6    to capture that.  Let me give Carmen time to do that.        11:54AM

 7              MR. LEON GUERRERO:  I apologize.                   11:54AM

 8              THE COURT:  No problem.  We'll have that marked    11:54AM

 9    as 3-A, where you have him circle Michael McCarron's name.   11:54AM

10              MR. LEON GUERRERO:  Thank you.                     11:54AM

11              THE COURT:  Hold on.  Wait till we get the okay    11:54AM

12    with the clerk.                                              11:54AM

13              (Pause.)                                           11:54AM

14              THE COURT:  Okay.  You may proceed, next          11:55AM

15    question.                                                    11:55AM

16              MR. LEON GUERRERO:  Thank you, Your Honor.         11:55AM

17              THE COURT:  So that will be 3-A with the computer  11:55AM

18    generated...                                                 11:55AM

19    BY MR. LEON GUERRERO:  (CONTINUING)                          11:55AM

20      Q.   Now, Agent Ring, based on your training and          11:55AM

21    experience and with respect to e-mail communications, chats 11:55AM

22    that occurred, how do you -- how are they generally read when 11:55AM

23    you review them?                                            11:55AM

24      A.   Generally, e-mails, whenever there's kind of a       11:55AM

25    conversation happening in e-mails, the e-mail system will put 11:55AM
```

the previous message just below the current one, so after back 11:55AM

and forth, basically, you would just read from the bottom to 11:55AM

upwards, towards the top message. 11:55AM

Q.   Okay.  And in reviewing Exhibits 2 through 19, does 11:56AM

it reflect the way that the e-mails are generally read based 11:56AM

on your experience? 11:56AM

A.   Yes. 11:56AM

Q.   And during the course of this investigation with 11:56AM

respect to the e-mails that are reflected in 2 through 19, 11:56AM

where were you when you were having these conversations? 11:56AM

A.   I was at -- in my office space on Andersen Air Force 11:56AM

base. 11:56AM

Q.   And were you using a computer? 11:56AM

A.   Yes. 11:56AM

Q.   And were you connected to the internet? 11:56AM

A.   Yes. 11:56AM

     MR. LEON GUERRERO:  Your Honor, at this time, I'm 11:56AM

going to ask Agent Albo to please come up and she's going to 11:56AM

be going through the e-mail chats. 11:56AM

     THE COURT:  Okay.  Go ahead.  Just go a couple of 11:56AM

minutes and then we'll take a lunch recess but go ahead. 11:56AM

     MR. LEON GUERRERO:  Yes, Your Honor. 11:56AM

     THE WITNESS:  "I have base access and I can 11:57AM

drive.  How are you?" 11:57AM

     AGENT ALBO:  "OMG.  LOL.  That is crazy.  Why did 11:57AM

1    you send that pic?  I'm stuck in base housing."                    11:57AM

2              THE WITNESS:  "Sharing is caring and why not?          11:57AM

3    That is okay, I have wheels and would love to help you out.        11:57AM

4    Besides, I want you to know all of what you would be getting       11:57AM

5    into if you so desired."                                           11:57AM

6              THE COURT:  Okay.  I'm sorry, what exhibit -- can        11:58AM

7    you just state what that exhibit number is each time?  The         11:58AM

8    first --                                                           11:58AM

9              AGENT ALBO:  Yes, Exhibit 3.                             11:58AM

10             THE COURT:  Okay.  That's 3?  The one you just          11:58AM

11   read --                                                            11:58AM

12             AGENT ALBO:  Yes.                                        11:58AM

13             THE COURT:  -- was 3?  Okay.  Go ahead.                 11:58AM

14             AGENT ALBO:  It was 3-2.  So there's 3-1, 3-2.          11:58AM

15             THE COURT:  Okay, can you just indicate to --          11:58AM

16   yeah, what that is then, each time you put it up.                  11:58AM

17             AGENT ALBO:  Okay.  So this is Exhibit 3-3.             11:58AM

18             THE COURT:  Okay.  Go ahead.                            11:58AM

19             AGENT ALBO:  It says, "OMH," which is a typo for        11:58AM

20   OMG, "you're crazy.  Well, I don't know what all the -- what      11:58AM

21   all that means or what.  How old are you?"                         11:58AM

22             THE WITNESS:  "32, and you?"                            11:58AM

23             AGENT ALBO:  "13, is that okay?"                        11:58AM

24             THE WITNESS:  "No, thank you.  I am good.  Have a      11:58AM

25   good night."                                                       11:58AM

THE COURT:  Okay.  So I'm sorry, you have to pull
that up because it's not showing for the -- I don't know why
we have to make it -- hold on a second.

THE WITNESS:  Again, it was "what is up with a 13
year old doing this?"

AGENT ALBO:  This is Exhibit 3-4.

THE WITNESS:  "Are you really 13?  What were you
thinking about doing?"

AGENT ALBO:  This is Exhibit 3-5.

THE WITNESS:  "I have to admit, I am curious.
Can I see what you look like?"

AGENT ALBO:  This is Exhibit 4-1.

THE COURT:  Okay.

AGENT ALBO:  "OMG.  IDK, I just don't know a lot
about that stuff, sorry, maybe tell me about you."

THE WITNESS:  "What do you want to know?"

AGENT ALBO:  "IDK, I just don't know about that
kind of stuff so when you ask me, I don't know what to say.
I'm kind of embarrassed that it makes me look young but it's
okay, like it's not too far, I just don't know what to say,
LOL, but you can tell me anything, I guess.  I want to know
about you."

THE WITNESS:  "Well, I don't know, I like to
gently touch myself while looking at someone cute --"

THE COURT:  Okay.  Let me just say, do we have to

```
 1   keep -- am I -- maybe I'm not reading the -- do you have to      12:01PM
 2   push this up?  Where are we?                                     12:01PM
 3              Okay.  There we go -- oh, right.  Okay.               12:01PM
 4              THE WITNESS:  "Well, I don't know, I like to          12:01PM
 5   gently touch myself while looking at someone cute, I like to     12:01PM
 6   kiss, and use my tongue on people."                             12:01PM
 7              AGENT ALBO:  This is Exhibit 4-2.                     12:01PM
 8              THE COURT:  Okay, 4-2.  Go ahead.                     12:01PM
 9              AGENT ALBO:  Yes, and it starts here from the         12:01PM
10   bottom.                                                         12:01PM
11              THE COURT:  Okay.  I'm looking from the top.          12:01PM
12   Okay, go ahead.                                                 12:01PM
13              AGENT ALBO:  "Oh, OMG."                              12:01PM
14              THE WITNESS:  "Too much?"                            12:01PM
15              AGENT ALBO:  This is Exhibit 4-3.                     12:02PM
16              THE COURT:  Okay.  Why don't you point to where       12:02PM
17   you're reading from, that might help too.  There we go.  All     12:02PM
18   right.                                                          12:02PM
19              AGENT ALBO:  "No, I just surprised, but it's          12:02PM
20   okay, you can tell me more."                                    12:02PM
21              THE COURT:  Thank you, that's 4-3.                    12:02PM
22              THE WITNESS:  "I really like imagining you with       12:02PM
23   your fingers touching your private parts, rubbing, and          12:02PM
24   playing."                                                       12:02PM
25              AGENT ALBO:  This is Exhibit 4-4.                     12:02PM
```

|   |   |   |
|---|---|---|
| 1 | THE COURT:  Okay.  Can you point -- please point | 12:02PM |
| 2 | to where you're going to start reading from, Agent.  There you | 12:02PM |
| 3 | go.  All right.  Go ahead. | 12:02PM |
| 4 | AGENT ALBO:  "LOL.  You're crazy.  When you think | 12:02PM |
| 5 | of me, what do I look like?  LOL." | 12:02PM |
| 6 | THE WITNESS:  "Small perky breasts with beautiful | 12:02PM |
| 7 | eyes." | 12:02PM |
| 8 | THE COURT:  Okay.  Why don't we go ahead and take | 12:03PM |
| 9 | a lunch recess at this time.  It's 12:04, ladies and gentlemen | 12:03PM |
| 10 | of the jury.  We'll take a one hour lunch, so I'll see you -- | 12:03PM |
| 11 | we'll start again at 1:05.  Please keep an open mind, do not | 12:03PM |
| 12 | form or express any opinion on this case until it's submitted | 12:03PM |
| 13 | to you.  So you can go back into the jury deliberation room | 12:03PM |
| 14 | and leave your notebooks and then if you have lunch and you -- | 12:03PM |
| 15 | here, you can just eat your lunch here or if you want to grab | 12:03PM |
| 16 | lunch, you can go ahead, all right?  Please rise for the jury. | 12:03PM |
| 17 | (Jury out at 12:04 p.m.) | 12:04PM |
| 18 | THE COURT:  All right.  Thank you.  Anyway, it | 12:04PM |
| 19 | just makes it easier -- | 12:04PM |
| 20 | AGENT ALBO:  Okay.  No problem. | 12:04PM |
| 21 | THE COURT:  -- because there's other things to | 12:04PM |
| 22 | look at.  We're just trying to scramble trying to figure out | 12:04PM |
| 23 | where you're going. | 12:04PM |
| 24 | AGENT ALBO:  Yeah, I'll point where I'm reading. | 12:04PM |
| 25 | THE COURT:  Just push it up, too, when he's | 12:04PM |

```
 1    reading.  Thank you.  I'll see you guys in an hour.        12:04PM

 2              (Recess taken at 12:04 p.m.)                      12:04PM

 3              (Back on the record at 1:14 p.m.)                 01:14PM

 4              THE COURT:  We're back on the record.  *United*   01:14PM

 5    *States of America versus McCarron*.  All Counsels present, 01:14PM

 6    defendant's present, witness present, and we're ready to go? 01:14PM

 7              MR. LEON GUERRERO:  Yes, Your Honor.              01:14PM

 8              MR. GORMAN:  Yes, Your Honor.                     01:14PM

 9              THE COURT:  Okay.  We'll call in the jury.        01:14PM

10              (Pause.)                                          01:14PM

11              THE COURT:  So were you at 4-4, were you just     01:15PM

12    starting at 4-4?                                            01:15PM

13              AGENT ALBO:  Just starting 5-1 and we had just    01:15PM

14    concluded with 4.                                           01:15PM

15              THE COURT:  You just concluded 4-4?               01:15PM

16              AGENT ALBO:  Yes.                                 01:15PM

17              THE COURT:  Please rise for the jury.             01:15PM

18              (Jury in at 1:15 p.m.)                            01:15PM

19              THE COURT:  Hafa adai, ladies and gentlemen.  How 01:15PM

20    was your lunch?                                             01:15PM

21              JURY:  Good.                                      01:15PM

22              THE COURT:  Okay.  All right.  Very good.  Are    01:15PM

23    you comfortable in the jury deliberation room?             01:16PM

24              JURY:  (Nodded head.)                             01:16PM

25              THE COURT:  If there's any problems, let us know. 01:16PM
```

| | | |
|---|---|---|
| 1 | Okay.  Yes.  Agent -- | 01:16PM |
| 2 | MR. COLLINS:  Christine Albo. | 01:16PM |
| 3 | THE COURT:  Yes, Agent Albo, you may proceed. | 01:16PM |
| 4 | AGENT ALBO:  Yes, Your Honor.  This is | 01:16PM |
| 5 | Exhibit 5-1. | 01:16PM |
| 6 | THE COURT:  Okay. | 01:16PM |
| 7 | AGENT ALBO:  "LOL, thank you." | 01:16PM |
| 8 | THE WITNESS:  "How are you today and would you | 01:16PM |
| 9 | like to see some pics of me?" | 01:16PM |
| 10 | AGENT ALBO:  "I'm okay.  Just had a lot of | 01:16PM |
| 11 | homework, so boring, LOL, and yeah, that's cool if you want to | 01:16PM |
| 12 | send some, sure." | 01:16PM |
| 13 | THE WITNESS:  "They would be dirty, just a | 01:17PM |
| 14 | warning." | 01:17PM |
| 15 | AGENT ALBO:  Exhibit 5-2. | 01:17PM |
| 16 | THE WITNESS:  This one just depicts a paperclip | 01:17PM |
| 17 | image on the top right screen indicating there's an attachment | 01:17PM |
| 18 | to this e-mail. | 01:17PM |
| 19 | THE COURT:  All right.  Okay, Agent Albo just | 01:17PM |
| 20 | pointed to that little paperclip there.  Okay. | 01:17PM |
| 21 | AGENT ALBO:  Exhibit 5-3. | 01:17PM |
| 22 | THE WITNESS:  And this shows the attachment that | 01:17PM |
| 23 | was on the e-mail. | 01:17PM |
| 24 | THE COURT:  Okay. | 01:17PM |
| 25 | AGENT ALBO:  Exhibit 5-4. | 01:17PM |

THE WITNESS:  "If I ever do too much, let me
know."

AGENT ALBO:  Exhibit 5-5.  "OMG, LOL, I didn't
know it was going to be like that, LOL."

THE WITNESS:  "Too much?"

AGENT ALBO:  Exhibit 5-6.  "Okay, I will, like
what do you mean, like what else is going to happen?  LOL."

THE WITNESS:  "Was going to send you more pics
like that, if you wanted."

AGENT ALBO:  Exhibit 5-7.  "Oh, okay.  Yeah, you
could send them if you want to, LOL.  Can I ask why?  LOL.
Sorry if that's weird, I just don't get it, I guess."

THE WITNESS:  "It makes me horny to send my
pictures to beautiful women, maybe I shouldn't, you know."

AGENT ALBO:  Exhibit 5-8.  "Oh, well, does it
bother you that I'm only 13?  If it doesn't, then I'm really
okay with it, I just was wondering why, that's all."

THE WITNESS:  "I don't know, would love to know
what you look like, you know?"

AGENT ALBO:  Exhibit 5-9.

THE WITNESS:  "I think it might be okay.  Like I
said, for some reason, I just like to show pictures of
myself."

AGENT ALBO:  Exhibit 5-10.  "Oh, well, I don't
know, like what does that mean?  LOL."

1    THE WITNESS:  "Well, it just means that when I

2  send off a picture of myself, that is naked, that is, it makes

3  me feel like it is time to have sex, it makes my blood pump

4  and that makes my penis very hard.  This in turn makes me want

5  to touch and feel myself."

6    AGENT ALBO:  Exhibit 5-11.  "Oh, I don't know

7  about all that, LOL, sorry if that makes me sound dumb."

8    THE WITNESS:  "Nope, not dumb at all, you sound

9  very innocent, which is okay.  Also, my cue not to send you

10  more pics if you don't want them.  Innocence should never be

11  wasted.  Treasure it always."

12    AGENT ALBO:  Exhibit 5-12.  "Oh, okay.  Well, I

13  never said I didn't want 'em, I just wanted to see what you

14  were wanting, that's all, LOL, but it's okay if you don't send

15  'em too."

16    THE WITNESS:  "Do you like them?  Because I would

17  love to send you more."

18    AGENT ALBO:  Exhibit 5-13.  "Is it weird if I say

19  yes?  Sorry, I have just never done this type of stuff

20  before."

21    THE WITNESS:  "No, that is the answer I would

22  love to hear."

23    AGENT ALBO:  Exhibit 6-1.

24    THE WITNESS:  Here we have a paperclip on the top

25  right corner, again indicating the message has an attachment.

|  |  |  |
|---|---|---|
| 1 | AGENT ALBO:  Exhibit 6-2. | 01:22PM |
| 2 | THE WITNESS:  And this shows one of the two | 01:22PM |
| 3 | attachments to the e-mail. | 01:22PM |
| 4 | AGENT ALBO:  Exhibit 6-3. | 01:23PM |
| 5 | THE WITNESS:  And this is a screenshot depicting | 01:23PM |
| 6 | the other attachment to the same e-mail. | 01:23PM |
| 7 | MR. LEON GUERRERO:  Your Honor, at this time, the | 01:23PM |
| 8 | government would move to play the video, Government's | 01:23PM |
| 9 | Exhibit 6-8. | 01:23PM |
| 10 | THE COURT:  Okay.  Which one? | 01:23PM |
| 11 | MR. LEON GUERRERO:  That's depicted in the -- | 01:23PM |
| 12 | 6-3. | 01:23PM |
| 13 | THE COURT:  Oh, the video, okay.  All right.  You | 01:23PM |
| 14 | want the picture up while you're playing the video? | 01:23PM |
| 15 | MR. LEON GUERRERO:  No, if we could just play the | 01:23PM |
| 16 | video, it's a short video, and then we'll go back up to the | 01:23PM |
| 17 | screen. | 01:23PM |
| 18 | THE COURT:  Oh, okay.  All right.  Very well. | 01:23PM |
| 19 | (Video played.) | 01:23PM |
| 20 | MR. LEON GUERRERO:  You have to turn back. | 01:23PM |
| 21 | THE COURT:  And what -- is that 6-3? | 01:24PM |
| 22 | MR. LEON GUERRERO:  6-A, alpha. | 01:24PM |
| 23 | THE COURT:  That's 6-A, I'm sorry. | 01:24PM |
| 24 | MR. LEON GUERRERO:  Yes, Your Honor. | 01:24PM |
| 25 | THE COURT:  The video is 6-A? | 01:24PM |

| | |
|---|---|
| 1 | MR. LEON GUERRERO:  Yes, Your Honor. | 01:24PM |
| 2 | THE COURT:  And the attachment -- | 01:24PM |
| 3 | AGENT ALBO:  The attachment was 6-3. | 01:24PM |
| 4 | THE COURT:  6-3, okay. | 01:24PM |
| 5 | AGENT ALBO:  6-4. "OMG.  You're so crazy, LOL.  I | 01:24PM |
| 6 | didn't know a video too." | 01:24PM |
| 7 | THE WITNESS:  "LOL.  Your reaction is awesome, | 01:24PM |
| 8 | does it make you wet in your private parts?" | 01:24PM |
| 9 | AGENT ALBO:  Exhibit 6-5.  "OMG.  LOL.  That's so | 01:24PM |
| 10 | embarrassing, LOL.  Hey, do you want to talk on like Yahoo | 01:24PM |
| 11 | chat or something?  This e-mail thing is acting dumb.  LOL." | 01:24PM |
| 12 | THE WITNESS:  "Do you have Skype?" | 01:25PM |
| 13 | AGENT ALBO:  Exhibit 6-6. | 01:25PM |
| 14 | THE WITNESS:  "We can message on that." | 01:25PM |
| 15 | AGENT ALBO:  Exhibit 6-7. | 01:25PM |
| 16 | THE WITNESS:  "I find it intriguing about you | 01:25PM |
| 17 | being beautiful, naked, and wet." | 01:25PM |
| 18 | AGENT ALBO:  6-8. | 01:25PM |
| 19 | THE WITNESS:  "Let me try to get Yahoo." | 01:25PM |
| 20 | AGENT ALBO:  Exhibit 7-1. | 01:26PM |
| 21 | THE WITNESS:  "Of course.  What do you want to | 01:26PM |
| 22 | talk about?  Anything you want." | 01:26PM |
| 23 | AGENT ALBO:  "Okay, cool.  Did you get Yahoo?" | 01:26PM |
| 24 | THE WITNESS:  "No.  I don't have a phone on me | 01:26PM |
| 25 | that works, and apparently it needs one.  Can I see a pic of | 01:26PM |

| | | |
|---|---|---|
| 1 | you?" | 01:26PM |
| 2 | AGENT ALBO: "Okay," frowning face, "that's okay, | 01:26PM |
| 3 | we can just talk on here then, I guess. Yeah, I have a pic if | 01:26PM |
| 4 | you want to see it. What is your e-mail to send it to?" | 01:26PM |
| 5 | THE WITNESS: E-mail spelled "TULZCHA@Gmail.com. | 01:26PM |
| 6 | I would love to see it, you sound really sexy." | 01:26PM |
| 7 | AGENT ALBO: Exhibit 7-2. "Okay. Don't laugh." | 01:27PM |
| 8 | And it's with the attachment, a picture. | 01:27PM |
| 9 | Exhibit 7-3. | 01:27PM |
| 10 | THE WITNESS: "That is very sexy, I love your | 01:27PM |
| 11 | eyes and your smile. I can't believe how beautiful you are," | 01:27PM |
| 12 | along with an attachment. | 01:27PM |
| 13 | And this depicts the attachment along with that | 01:27PM |
| 14 | message. | 01:27PM |
| 15 | THE COURT: What exhibit is that? | 01:27PM |
| 16 | AGENT ALBO: Exhibit 7-4, I apologize. | 01:28PM |
| 17 | THE COURT: All right. | 01:28PM |
| 18 | AGENT ALBO: Exhibit 7-5. | 01:28PM |
| 19 | THE WITNESS: "Wow, just wow. Can I see more?" | 01:28PM |
| 20 | AGENT ALBO: Exhibit 7-6. "LOL. OMG. You're | 01:28PM |
| 21 | crazy. LOL. No, I'm already like scared about sending that | 01:28PM |
| 22 | one. LOL, I don't even know you." | 01:28PM |
| 23 | THE WITNESS: "I absolutely love your smile. I | 01:28PM |
| 24 | can't believe how incredibly beautiful you are." | 01:28PM |
| 25 | AGENT ALBO: Exhibit 8-1. "OMG. LOL. For real? | 01:28PM |

Like that's so nice.  I was worried you were gonna be scared

cause I look so young.  You sure you're okay with my age?

Sorry to keep asking, I just get worried is all."

THE WITNESS:  "While your age does make me

nervous, you are so incredibly beautiful.  That is okay you

keep asking, that means you are real.  I can't help but be

nice to a lady with such a beautiful face."

AGENT ALBO:  Exhibit 8-2.  "OMG, you're so sweet.

LOL.  For real?  LOL.  For real, like I'm so happy you talked

to me," smiley face.  "So can you tell me more about you?"

THE WITNESS:  "Like what do you want to know?"

AGENT ALBO:  Exhibit 8-3.  "Um, LOL, I don't

know.  LOL.  TBH," which stands for to be honest, "I kind of

wondered why your e-mail is saying Michael but then like you

told me your name is Louis but like where are you from and how

old are you and what do you do for fun and I don't know, just

tell me about you.  LOL."

THE WITNESS:  "My middle name is Michael, I use

the name Michael with people I don't like.  I'm 32 and from

Washington, it is snowing back home.  For fun, I play video

games, mostly on computer through Steam," a digital service.

"While on travel, I have been playing a bunch of Binding of

Isaac, a twin six-shooter.  What about you?"

AGENT ALBO:  Exhibit 8-4.

THE WITNESS:  And this is the depiction of the

attachment that was with that message. 01:31PM

AGENT ALBO: Exhibit 8-5. "Aw, this is so cool. 01:31PM
So does that mean I'm special if you told me your name is 01:31PM
Louis? I never really played no video games but my dad does 01:31PM
Xbox or something and he really likes it. Do you have a GF," 01:31PM
which stands for girlfriend, "or anything?" 01:31PM

THE WITNESS: "It does mean you are special, no 01:32PM
girlfriend or anything, just looking for a special person to 01:32PM
make me feel alive." 01:32PM

AGENT ALBO: Exhibit 8-6. 01:32PM

THE WITNESS: "I can't stop looking at the 01:32PM
picture you sent me, so beautiful." 01:32PM

AGENT ALBO: Exhibit 9-1. "You're so sweet. 01:32PM
Thank you. Am I ever gonna get to see your face?" 01:32PM

THE WITNESS: "Sure. I tell you what, send me 01:32PM
another pic and I will send you a pic of my face or do you 01:32PM
just want to see my face?" 01:32PM

AGENT ALBO: Exhibit 9-2. 01:33PM

THE WITNESS: This -- 01:33PM

AGENT ALBO: "LOL. I just want to see your face 01:33PM
and then I gotta go. You're gonna get me in TRBL," which 01:33PM
stands for trouble. 01:33PM

THE WITNESS: "What can I say, sure, I will send 01:33PM
you a pic of my face." 01:33PM

AGENT ALBO: 9-3. 01:33PM

| | |
|---|---|
| 1 | THE WITNESS:  And this depicts the attachment | 01:33PM |
| 2 | that accompanied that message. | 01:33PM |
| 3 | AGENT ALBO:  Exhibit 10-1. | 01:33PM |
| 4 | THE WITNESS:  "I gotta go soon, too, early work. | 01:34PM |
| 5 | Good night." | 01:34PM |
| 6 | AGENT ALBO:  "Okay, night." | 01:34PM |
| 7 | THE WITNESS:  "Feel free to keep messaging me, I | 01:34PM |
| 8 | would love to hear anything about you, everything from | 01:34PM |
| 9 | interests to breast size, I want to know everything." | 01:34PM |
| 10 | AGENT ALBO:  Exhibit 10-2. | 01:34PM |
| 11 | THE WITNESS:  "I am just gonna finish my night | 01:34PM |
| 12 | with jacking off myself and dreaming of you." | 01:34PM |
| 13 | AGENT ALBO:  Exhibit 11-1.  "Hi.  Yeah, I'm up. | 01:34PM |
| 14 | What are you doing?" | 01:35PM |
| 15 | THE WITNESS:  "Trying to figure out what I want | 01:35PM |
| 16 | to do, I am really horny and really drunk and really happy. | 01:35PM |
| 17 | What are you up to?" | 01:35PM |
| 18 | AGENT ALBO:  "Um, okay.  I'm just hanging out, | 01:35PM |
| 19 | LOL." | 01:35PM |
| 20 | THE WITNESS:  "Oh, yeah?  Can I see a pic of you? | 01:35PM |
| 21 | I would love to see you.  I would love to meet you and teach | 01:35PM |
| 22 | you about everything sex one day, you are so beautiful." | 01:35PM |
| 23 | AGENT ALBO:  Exhibit 11-3. | 01:35PM |
| 24 | THE WITNESS:  This shows the attachment that | 01:35PM |
| 25 | accompanied that message. | 01:35PM |

1    AGENT ALBO:  Exhibit 11-4.  "OMG.  I didn't know    01:36PM

2  you were going to send me that, LOL.  Would you really meet me    01:36PM

3  and do all that?  I don't know much about all that stuff.  Is    01:36PM

4  that weird?"    01:36PM

5    THE WITNESS:  "I don't mind you knowing nothing    01:36PM

6  about that.  I would love to teach you very slowly or fast,    01:36PM

7  depending on what you wanted.  You would set the pace."  This    01:36PM

8  shows there's an attachment on this e-mail.    01:36PM

9    AGENT ALBO:  It's Exhibit 11-5.    01:36PM

10    THE WITNESS:  And this shows one of the two    01:36PM

11  attachments to this message.    01:36PM

12    AGENT ALBO:  11-6.  This is 11-7.    01:36PM

13    MR. LEON GUERRERO:  At this point Your Honor, the    01:37PM

14  government would ask to play Government's Exhibit 11-8, which    01:37PM

15  is the video that's depicted in 11-7.    01:37PM

16    THE COURT:  All right 11-8, very well.    01:37PM

17    (Video played.)    01:37PM

18    AGENT ALBO:  11-8.    01:37PM

19    THE COURT:  Was 11-8 the photo -- the second    01:37PM

20  photo?    01:37PM

21    AGENT ALBO:  11-7 had the video attachment so the    01:37PM

22  video was attached to 11-7.    01:37PM

23    THE COURT:  Oh, okay.  There were two photo --    01:37PM

24  the two photos were 11-7 then?    01:38PM

25    AGENT ALBO:  Yeah, so there was a -- there was a    01:38PM

video attachment as well as the photo attachment to 11-7.

THE COURT:  So 11-7, video and photo?

AGENT ALBO:  Yes, Your Honor.

THE COURT:  Okay, thank you.

AGENT ALBO:  11-8.  "OMG.  You really don't care that I don't know any of that and that I'm 13, for real?  This is so cool."

THE WITNESS:  "I care that you are beautiful and I would love to see so much more of you and that I find you to be so sexy."

AGENT ALBO:  11-9.

THE WITNESS:  And this shows that there's an attachment on this message.

AGENT ALBO:  11-10.

THE WITNESS:  It shows one of the two attachments that are on this message.

AGENT ALBO:  11-11.

THE WITNESS:  And that shows the second attachment to the same message.

AGENT ALBO:  11-12.  "OMG, that's so sweet.  Do you always things girls like my age are like or just me?  LOL. I just worry you are playing with me."

THE WITNESS:  "Just you, I want you to slowly rub yourself and send me a pic of your face while you do it."

AGENT ALBO:  11-13.  "OMG.  I keep getting

surprised by your pics, LOL, and uh, like I don't know what    01:40PM

you mean 'rub myself'?"    01:40PM

       THE WITNESS:  "I want you to slowly rub between    01:40PM

your legs, your privates, your vagina, would love to see how    01:40PM

you like it."    01:40PM

       AGENT ALBO:  11-14.  "OMG.  For real?  OMG, this    01:40PM

is kind of embarrassing.  I'm not really sure what I'm    01:40PM

supposed to really do or not.  Why do you want me to do that?"    01:40PM

       THE WITNESS:  "For real?  It may be but I would    01:40PM

love to see what you feel as you touch yourself for the first    01:40PM

time, it would make me so happy."    01:40PM

       AGENT ALBO:  11-15.  "OMG, you're crazy.  Hey,    01:41PM

how much longer before you leave?  LOL.  I'm sorry, I don't    01:41PM

know stuff like that.  It's all just new.  But I can do what    01:41PM

you say if you want me to, I'm curious."    01:41PM

       THE WITNESS:  "I am here for a couple more weeks,    01:41PM

please do.  I need to get ready for bed but I would love a pic    01:41PM

of you trying and after.  Would make me so happy."    01:41PM

       AGENT ALBO:  11-16.  "LOL.  Well, you know, I    01:41PM

don't send pics like you do.  LOL.  So I don't think I will do    01:41PM

that, sorry.  I just don't trust things getting sent out on    01:41PM

the internet or whatever sometimes, you know.  But maybe I    01:41PM

will send another pic of me some day or maybe one day we can    01:41PM

meet, like you said.  I don't know.  Okay.  Night."    01:42PM

       THE WITNESS:  "Good night.  Can't blame a guy for    01:42PM

trying to see a beautiful woman, LOL.  Sleep well." 01:42PM

AGENT ALBO:  12-1.  "Yeah, it was okay.  It was 01:42PM

awkward the first time, LOL." 01:42PM

THE WITNESS: "That's awesome.  Anything you want 01:42PM

to ask?" 01:42PM

AGENT ALBO:  "LOL.  Uh, I don't know, what am I 01:42PM

supposed to ask?" 01:42PM

THE WITNESS:  "Want to ask something about sex or 01:42PM

kissing?  Have you ever been naked with someone else?" 01:42PM

AGENT ALBO:  Exhibit 12-2. 01:43PM

"OMG.  I don't know what to ask, I don't know 01:43PM

much about that stuff.  And no, never been naked with someone. 01:43PM

Is that bad?" 01:43PM

THE WITNESS:  "No.  Have you ever wanted to? 01:43PM

Because you would be beautiful." 01:43PM

AGENT ALBO:  Exhibit 12-3.  "Aw, thank you.  I 01:43PM

love all the nice things you say.  Um, I mean, I'm curious, 01:43PM

but also like scared cause I don't really know what it all is 01:43PM

or what to do or whatever, LOL.  I don't know what I'm saying. 01:43PM

LOL." 01:43PM

THE WITNESS:  "I completely understand.  It is 01:43PM

hard to learn your body, especially with someone else there." 01:43PM

AGENT ALBO:  Exhibit 12-4.  "Yeah.  Have you ever 01:44PM

done that, like what you are saying?" 01:44PM

THE WITNESS:  "A few times.  I love to share my 01:44PM

1    naked body and let people explore it.  I try to touch myself    01:44PM

2    every day because I love the feeling.  Would you ever like to    01:44PM

3    see it, my body that is?"    01:44PM

4            AGENT ALBO:  Exhibit 12-5.  "You mean like in    01:44PM

5    real life, like is that what you mean?"    01:44PM

6            THE WITNESS:  "Yeah, or in pictures if I make you    01:44PM

7    too nervous."    01:44PM

8            AGENT ALBO:  Exhibit 13-1.  "I don't know, I    01:44PM

9    don't think so.  Why would it be?"    01:45PM

10           THE WITNESS:  "I don't know, I would love to see    01:45PM

11   underneath your shirt and shorts, I would love to slowly teach    01:45PM

12   you about your body.  Wish I could get some more pic --"    01:45PM

13   excuse me -- "wish I could get more pics of you."    01:45PM

14           AGENT ALBO:  "OMG.  LOL.  You aren't very shy,    01:45PM

15   are you?  LOL.  I would be okay with you teaching me though if    01:45PM

16   you really mean it.  Is that weird?"    01:45PM

17           THE WITNESS:  "No, that is not really weird and    01:45PM

18   no, not shy at all.  Can I see another pic of you?  I would    01:45PM

19   love to put my mouth around your nipples and grab your butt. "    01:45PM

20           AGENT ALBO:  Exhibit 13-2.    01:45PM

21           THE WITNESS:  This is the depiction of the    01:45PM

22   attachment that accompanied that message.    01:45PM

23           AGENT ALBO:  Exhibit 13-3.  "OMG.  LOL.  Yeah, I    01:46PM

24   can send one that I have, okay, but I gotta know if you're    01:46PM

25   like serious or just messing around.  Like would you really    01:46PM

<pre>
 1    want to do that stuff in real life?"                01:46PM

 2              THE WITNESS:  "I am really serious right now."   01:46PM

 3              AGENT ALBO:  Exhibit 13-4.               01:46PM

 4              "LOL.  Well, probably not right now.  LOL.  But  01:46PM

 5    here's a pic of me."                                01:46PM

 6              THE WITNESS:  "No, not right now but soon, maybe? 01:46PM

 7    LOL."                                               01:46PM

 8              AGENT ALBO:  13-5, and it just depicts the    01:47PM

 9    attachment.  Exhibit 13-6 is the attachment of the photo. 01:47PM

10    Exhibit 13-7.                                       01:47PM

11              THE WITNESS:  "You are -- no, not right now but 01:47PM

12    soon, maybe?  LOL.  You really are very beautiful, but alas, I 01:47PM

13    work tomorrow.  I need to be going to bed.  Have a great 01:47PM

14    night."                                             01:47PM

15              AGENT ALBO:  Exhibit 14-1.  "Okay, night."   01:47PM

16              THE WITNESS:  "Good night and sleep well."   01:48PM

17              AGENT ALBO:  "Hi.  Are you still there?"     01:48PM

18              THE WITNESS:  "I am.  How are you?  Sorry, got 01:48PM

19    busy.  Hey, how are you?  When do you think you might be able 01:48PM

20    to hang, make out?  I keep looking at the pictures you sent. 01:48PM

21    You are truly a beautiful lady."                    01:48PM

22              AGENT ALBO:  Exhibit 14-2.                01:48PM

23              THE WITNESS:  "Wish I could be with you right now 01:48PM

24    and wish we could both be exploring our naked bodies."  01:48PM

25              AGENT ALBO:  Exhibit 14-3.  "Hey, um, I think 01:48PM
</pre>

maybe like Monday I could?  Would that be okay for you?  I

don't know how this all works and like what would we would do

for real?"

WITNESS:  "I would like to maybe kiss, maybe let

you explore, anything you want, I would be down for whatever.

I am really into how beautiful you are."

AGENT ALBO:  Exhibit 14-4.

THE WITNESS:  "I wouldn't want to do anything you

wouldn't want do, you know?"

AGENT ALBO:  Exhibit 14-5.

THE WITNESS:  "That makes me so excited and

horny."

AGENT ALBO:  Exhibit 14-6.

THE WITNESS:  "I will take things slow, we would

talk a bit, kiss maybe a little, and then I would let you

touch me, maybe touch you.  You being nervous is natural, any

time you want to stop, I am okay.  You tell me 'no', okay.

You are in control."

AGENT ALBO:  Exhibit 14-7.

THE WITNESS:  "My entire body is okay to touch, I

will tell you if something is not okay.  If you are okay with

me touching you, I will touch you.  It will be up to you.  If

it is, you tell me what feels good and what doesn't.  I am

here to help you.  I am your faithful servant."

AGENT ALBO:  Exhibit 14-8.

1    THE WITNESS: "I just want you to be relaxed and `01:50PM`

2    having fun. You tell me when something doesn't work, you `01:50PM`

3    know? Are you okay with this?" `01:50PM`

4    AGENT ALBO: Exhibit 14-9. "Okay. Where do we `01:50PM`

5    touch? Like I'm confused, LOL, sorry, this -- TBH," which `01:50PM`

6    stands for to be honest, "I'm kind of embarrassed cause like I `01:50PM`

7    just don't know that stuff." `01:51PM`

8    THE WITNESS: "If you are okay, private parts. `01:51PM`

9    If not, okay." `01:51PM`

10   AGENT ALBO: Exhibit 14-10. "Oh, okay. Yeah, I `01:51PM`

11   think I can be okay with that. I mean, I don't really know `01:51PM`

12   what I'm doing, but if it that's okay, then I am okay with `01:51PM`

13   it." `01:51PM`

14   THE WITNESS: "I wish we could meet tonight. You `01:51PM`

15   seem so amazing." `01:51PM`

16   AGENT ALBO: Exhibit 15-1. "Oh, really? You're `01:51PM`

17   so sweet. I want to know more about you before Monday though, `01:51PM`

18   okay?" `01:51PM`

19   THE WITNESS: "What do you want to know?" `01:51PM`

20   AGENT ALBO: "LOL. I don't know, I guess just `01:52PM`

21   tell me like more about you. OMG, I just thought about like `01:52PM`

22   can you come to base to meet with me? I know you said before `01:52PM`

23   that you can, but like do you work on the base like my dad or `01:52PM`

24   no?" `01:52PM`

25   THE WITNESS: "Hell yeah, I got base access. I `01:52PM`

1    would love to come get you."                                    01:52PM

2            AGENT ALBO:  15-2.                                      01:52PM

3            THE WITNESS:  "Too much?"                               01:52PM

4            AGENT ALBO:  15-3.  "Oh, okay.  LOL.  Well, hmm,        01:52PM

5    so I know you said your name is Louis, what's your last name    01:52PM

6    though?  And do you want to go somewhere or do you want to      01:52PM

7    stay at my house?  Um, and what kind of car do you have?  LOL,  01:52PM

8    I don't know, I have so many questions now.  OMG.  I'm          01:52PM

9    excited.  LOL."                                                 01:53PM

10           THE WITNESS:  "I have a Ford Taurus, my last name       01:53PM

11   is McCarron, my middle name is Louis and I go by that.  Ask     01:53PM

12   anything you want, you sexy, beautiful lady.  I am yours to     01:53PM

13   command."                                                       01:53PM

14           AGENT ALBO:  Exhibit 15-4.  "Hmm, okay.  So do          01:53PM

15   you stay like in one of those really nice hotels here?  And     01:53PM

16   you never said like if you work for the military like my dad    01:53PM

17   does.  Is that what you do or no?  And you never said if we     01:53PM

18   are gonna go out or go or what, LOL.  OMG.  Are you excited     01:53PM

19   too?"                                                           01:53PM

20           THE WITNESS:  "I am at a nice hotel.  I do sort         01:53PM

21   of work with the military, but weird area.  Yeah, so that is    01:53PM

22   what I sort of do and yeah, you excite me, so yeah, I am        01:53PM

23   excited."                                                       01:53PM

24           AGENT ALBO:  Exhibit 15-5.  "OMG.  Really?              01:54PM

25   That's awesome.  Which one?  We stayed in the Westin, I think?  01:54PM

LOL.  It was crazy and like right on the beach.  LOL.  It was

way nicer than our house now, LOL."

THE WITNESS:  "I am in the Sheraton --" excuse me

-- "Sheraton Laguna resort, room 342.  I can't wait to see

you."

AGENT ALBO:  Exhibit 15-6.

THE WITNESS:  "You make me so horny, I am so

excited.  What are you most excited to do?"

AGENT ALBO:  15-7.

THE WITNESS:  And this shows there's an

attachment accompanying this message.  And that is what the

attachment to the message was.

THE COURT:  What exhibit is that?

AGENT ALBO:  15-8.

THE COURT:  Eight?  Okay.

AGENT ALBO:  Exhibit 16-1.

THE WITNESS:  "What are you excited to do?"

AGENT ALBO:  "OMG.  Okay.  I G2G," got to go, "so

I don't get in trouble, okay?  I'm really, really excited and

can't wait to see you.  Sorry I couldn't talk longer, okay,

but here is a pic I thought you would maybe like, I don't

know.  LOL.  Okay, I'll talk to you tomorrow, okay?  I am

super excited."  16-2 has the photo attached.  Exhibit 16-3.

THE WITNESS:  "I can't wait to be with you in

person.  God, you are hot."

|   |   |   |
|---|---|---|
| 1 | AGENT ALBO: Exhibit 16-4. | 01:56PM |
| 2 | THE WITNESS: "What you wearing? I am so horny." | 01:56PM |
| 3 | AGENT ALBO: Exhibit 16-5. | 01:56PM |
| 4 | THE WITNESS: This message has an attachment. | 01:56PM |
| 5 | AGENT ALBO: Exhibit 16-6. | 01:56PM |
| 6 | THE WITNESS: This shows the first of two | 01:56PM |
| 7 | attachments. | 01:56PM |
| 8 | AGENT ALBO: Exhibit 16-7. | 01:57PM |
| 9 | THE WITNESS: And this shows the second | 01:57PM |
| 10 | attachment accompanying the message. | 01:57PM |
| 11 | AGENT ALBO: And "um, okay. Night." | 01:57PM |
| 12 | THE WITNESS: That's the store. | 01:57PM |
| 13 | AGENT ALBO: Exhibit 16-8. | 01:57PM |
| 14 | THE WITNESS: "I love you, I am going to bed." | 01:57PM |
| 15 | AGENT ALBO: Exhibit 17-1. | 01:57PM |
| 16 | THE WITNESS: "We could have fun and talk and | 01:57PM |
| 17 | maybe other things." | 01:57PM |
| 18 | AGENT ALBO: "The only thing is I have no clue | 01:58PM |
| 19 | what you look like." | 01:58PM |
| 20 | THE WITNESS: "The only thing is I have no clue | 01:58PM |
| 21 | what you look like without your clothes on, you know, might be | 01:58PM |
| 22 | a bit interesting. It might make me nervous." | 01:58PM |
| 23 | AGENT ALBO: "I make you nervous, for real?" | 01:58PM |
| 24 | THE WITNESS: "Maybe a little bit. As a guy, you | 01:58PM |
| 25 | never quite know where and what to touch first. It always | 01:58PM |

1    makes me nervous a bit."                                          01:58PM

2              AGENT ALBO:  "Oh.  Well, what do you think you         01:58PM

3    would do?"                                                       01:58PM

4              THE WITNESS:  "I don't know.  I might just start       01:58PM

5    by grabbing your waist and seeing how you feel about it.  Do     01:58PM

6    you have anywhere you want to be touched?  Maybe somewhere you   01:58PM

7    have touched yourself?"                                          01:58PM

8              AGENT ALBO:  Exhibit 16-2.                             01:58PM

9              MR. LEON GUERRERO:  17.                                01:58PM

10             AGENT ALBO:  17-2.  Excuse me.  "LOL, I don't          01:58PM

11   know, that stuff is all really just up to you, I think.  LOL.   01:58PM

12   I'm scared and nervous about any of this stuff, so I am just     01:58PM

13   going with whatever you say.  LOL."                              01:58PM

14             THE WITNESS:  "Have you ever considered seeing         01:59PM

15   how touching yourself feels?"                                    01:59PM

16             AGENT ALBO:  Exhibit 17-3.  "LOL.  So personal,        01:59PM

17   LOL.  That's embarrassing, right?  LOL."                         01:59PM

18             THE WITNESS:  "Does it help if I tell you I touch      01:59PM

19   myself every day?"                                               01:59PM

20             AGENT ALBO:  17-4.                                     01:59PM

21             THE WITNESS:  "Too much?"                              01:59PM

22             AGENT ALBO:  17-5.  "Hmm, maybe a little, yeah.        01:59PM

23   Why do you want to know about me and that stuff though?"         01:59PM

24             THE WITNESS:  "Curiosity mostly, and because you       01:59PM

25   are cute."                                                       01:59PM

1          AGENT ALBO:  Exhibit 18-1.  "LOL.  I really like    02:00PM

2    BK," as in Burger King, "chicken fries, LOL, and I really like    02:00PM

3    Jelly Belly jelly beans.  OMG.  The popcorn is so good, LOL."    02:00PM

4          THE WITNESS:  "Wow.  That is awesome.  Sauce or    02:00PM

5    no sauce with the chicken fries?  I thought about you most of    02:00PM

6    the day, wish you and I could have hung out.  Wished I could    02:00PM

7    have been able to kiss you and have fun with you."    02:00PM

8          AGENT ALBO:  "LOL.  Well, we can tomorrow if you    02:00PM

9    want.  My dad is doing like a dive thing from -- or a boat or    02:00PM

10   something.  LOL.  I don't know, but he's gonna be gone for all    02:00PM

11   day.  IDK," which is I don't know, "if you want to hang out,    02:00PM

12   then that would be okay."    02:00PM

13          THE WITNESS:  "What would you want to do,    02:00PM

14   something sexual or just chill out and see where it goes?"    02:00PM

15          AGENT ALBO:  Exhibit 18-2.  "I am up for    02:01PM

16   whatever.  I mean, like it just seems like you are a really    02:01PM

17   nice guy and I feel safe when we talk and stuff, so I guess I    02:01PM

18   don't know, maybe it's weird but yeah, that would be okay, but    02:01PM

19   it's okay either way.  LOL.  Does that make sense?  LOL."    02:01PM

20          THE WITNESS:  "Yeah, it does.  I gotta go for    02:01PM

21   now, I gotta work tomorrow.  Good night."    02:01PM

22          AGENT ALBO:  Exhibit 18-3.  "Wait, are you coming    02:01PM

23   tomorrow or no?  LOL.  I gotta know what the heck is going    02:01PM

24   on."    02:01PM

25          THE WITNESS:  "I want to, it will depend on work.    02:01PM

```
 1    I will messages when I get off."                          02:01PM
 2            AGENT ALBO:  18-4.  "Um, okay.  Well, like what   02:01PM
 3    time do you think?  And do you think you are gonna or no?  02:01PM
 4    Like I am a planner, I gotta know.  LOL.  I'm sorry but I'm 02:01PM
 5    not super experienced like you, that is all just crazy about 02:02PM
 6    stuff."                                                    02:02PM
 7            THE WITNESS:  "It would be sometime after          02:02PM
 8    3:00 p.m. and I really want to but that is the best I can do." 02:02PM
 9            AGENT ALBO:  Exhibit 19-1.  "OMG.  Um, okay, I     02:02PM
10    guess I will just wait for you, okay?  But you gotta write me 02:02PM
11    like right away, okay, cause I'm kinda freaking out.  LOL.  02:02PM
12    Okay?"                                                     02:02PM
13            THE WITNESS:  "Still at work, thinking about how   02:02PM
14    beautiful you are."                                        02:02PM
15            AGENT ALBO:  19-2.                                 02:02PM
16            THE WITNESS:  It shows that there's an attachment  02:02PM
17    on this image or on this message.                          02:02PM
18            This shows --                                      02:03PM
19            AGENT ALBO:  19-3.                                 02:03PM
20            THE WITNESS:  This shows the image that was        02:03PM
21    attached to the message.                                   02:03PM
22            AGENT ALBO:  19-4.                                 02:03PM
23            THE WITNESS:  "What is your address and when is    02:03PM
24    too late to come over ?"                                   02:03PM
25            AGENT ALBO:  That's all the exhibits.              02:03PM
```

|   |   |   |
|---|---|---|
| 1 | THE COURT:  Okay.  Thank you, Agent. | 02:03PM |
| 2 | MR. LEON GUERRERO:  Your Honor, at this time the | 02:03PM |
| 3 | government has no other questions for the witness. | 02:03PM |
| 4 | THE COURT:  Okay.  No further questions. | 02:03PM |
| 5 | Cross-exam, Mr. Gorman? | 02:03PM |
| 6 | | 02:03PM |
| 7 | CROSS-EXAMINATION | 02:03PM |
| 8 | | 02:03PM |
| 9 | BY MR. GORMAN: | 02:04PM |
| 10 | Q.    Good afternoon, Agent Ring. | 02:04PM |
| 11 | A.    Good afternoon, Mr. Gorman. | 02:04PM |
| 12 | Q.    So your communication with Mr. McCarron began when, | 02:04PM |
| 13 | back on October 31st, 2017? | 02:04PM |
| 14 | A.    That is correct, sir. | 02:04PM |
| 15 | Q.    My records indicate it was like 4:03 in the | 02:04PM |
| 16 | afternoon; is that correct? | 02:04PM |
| 17 | A.    That sounds right.  I'd have to reference. | 02:04PM |
| 18 | Q.    And when did your communication with him end? | 02:04PM |
| 19 | A.    On the -- I'd have to reference but I believe the | 02:04PM |
| 20 | 29th of November. | 02:04PM |
| 21 | THE COURT:  I'm sorry, what day was that? | 02:04PM |
| 22 | THE WITNESS:  I'd have to look back at the | 02:04PM |
| 23 | messages, if I could. | 02:04PM |
| 24 | MR. GORMAN:  Certainly. | 02:05PM |
| 25 | THE WITNESS:  The 29th of November. | 02:05PM |

02:05PM
02:05PM
02:05PM
02:05PM
02:05PM
02:05PM
02:05PM
02:05PM
02:05PM
02:05PM
02:05PM
02:05PM
02:05PM
02:05PM
02:05PM
02:05PM
02:05PM
02:06PM
02:06PM
02:06PM
02:06PM
02:06PM
02:06PM
02:06PM
02:06PM

1    BY MR. GORMAN: (CONTINUING)

2      Q.    What time?

3      A.    I don't recall the specific time of the last message,

4   sir.

5      Q.    So are you -- I would direct your attention to -- it

6   was marked Government's Exhibit 19-4. It looks like the last

7   message on 19-4 is "what is your address," and "when is it too

8   late to come over;" is that correct?

9      A.    Correct.

10      Q.    And then the time there is November 29th, at

11   5:39 p.m.?

12            THE COURT:   What's the date -- year?

13            MR. GORMAN:   It's Government's Exhibit 19-4.

14            THE COURT:   Okay.

15   BY MR. GORMAN: (Continuing)

16      Q.    So as of your testimony, that was the last thing you

17   read on the government exhibits; is that correct?

18      A.    Yes, sir.

19      Q.    But that wasn't your last communication with

20   Mr. McCarron, was it?

21      A.    No, sir.

22      Q.    There were more communications after that?

23      A.    That's correct.

24      Q.    How many were there?

25      A.    I don't recall. I believe somewhere in the

1  neighborhood of 12 more message exchanges.                   02:06PM

2      Q.   Why didn't you talk about those?                    02:06PM

3      A.   I'm not directing what gets read up here, sir.      02:06PM

4      Q.   So it's not your fault that all the messages after  02:06PM

5  5:39 on November 29th were not read to this jury, not your   02:06PM

6  fault?                                                       02:06PM

7           MR. LEON GUERRERO:  Your Honor, I'm gonna object,   02:06PM

8  argumentative, unresponsive.                                 02:06PM

9           THE COURT:  Well, maybe -- yeah, sustained.  The    02:06PM

10 Court will sustain the objection.                            02:06PM

11          MR. LEON GUERRERO:  I ask to --                     02:06PM

12          THE COURT:  Don't answer that question.             02:06PM

13          What's that?                                        02:06PM

14          MR. LEON GUERRERO:  No, nothing.  Nothing.          02:06PM

15          THE COURT:  Go ahead.                               02:06PM

16 BY MR. GORMAN: (Continuing)                                  02:06PM

17     Q.   But there were other communications after the last  02:06PM

18 one that you read just a little while ago on direct; is that 02:07PM

19 correct?                                                     02:07PM

20     A.   Yes, sir.                                           02:07PM

21     Q.   All right.  I'm gonna show you what's been marked   02:07PM

22 Defendant's Exhibit A.  Now, do you recognize this exhibit?  02:07PM

23     A.   Yes, sir.                                           02:07PM

24     Q.   And so on direct, you ended here "what is your      02:07PM

25 address?"  And "when is it too late to come over?"  Right?   02:07PM

1    A.   Yes, sir.                                                  02:07PM

2    Q.   But actually there were communications after that;        02:07PM

3    correct?                                                        02:07PM

4    A.   As previously stated, yes, sir.                           02:07PM

5    Q.   Yup.  And that was -- then you wrote because you were      02:07PM

6    posing as "Brit the dork", you wrote "hey.  OMG.  Are you for   02:07PM

7    real?  You still want to come over?"  Correct?                  02:07PM

8    A.   Yes, sir.                                                  02:07PM

9    Q.   And then Mr. McCarron wrote back "I do but still           02:07PM

10   working.  How are you today?"  Correct?                         02:07PM

11   A.   Yes, sir.                                                  02:08PM

12   Q.   And that was at 7:08 p.m., Mr. McCarron's message;         02:08PM

13   correct?                                                        02:08PM

14   A.   Yes.                                                       02:08PM

15   Q.   I'm gonna show you what's now been marked Defendant's      02:08PM

16   Exhibit B.  So we left off here with the -- Mr. McCarron said   02:08PM

17   "I do, but still working.  How are you today?"  Then you said   02:08PM

18   -- you wrote, "Oh, my God.  It's so late.  I'm okay.  HBU?"     02:08PM

19   Correct?                                                        02:08PM

20   A.   Yes, sir.                                                  02:08PM

21   Q.   And you wrote that at 7:10 p.m. on the 28th of             02:08PM

22   November?                                                       02:08PM

23   A.   29th of November, sir.                                     02:08PM

24   Q.   Oh, 29th, you're right.  And then Mr. McCarron             02:08PM

25   responded, "it is late.  I'm okay.  Waiting for one thing,      02:08PM

1   then gonna be able to work, maybe."  Correct?                    02:08PM

2       A.   Yes, sir.                                                02:09PM

3       Q.   Then I'm gonna show you what's been marked Defense       02:09PM

4   Exhibit C.  Now, we last left off with... I'm sorry, "it's       02:09PM

5   late.  I'm okay, waiting for one thing, then gonna be able to    02:09PM

6   work, maybe."  Then you wrote back, question marks, "I don't     02:09PM

7   know what you mean, LOL, but okay.  So you're gonna be working   02:09PM

8   like all night, huh?"  And that was at 7:14 on the 29th of      02:09PM

9   November; correct?                                               02:09PM

10      A.   Yes, sir.                                                02:09PM

11      Q.   And then Mr. McCarron wrote back, "for a bit longer."   02:09PM

12  And he wrote that back at 7:15; correct?                         02:09PM

13      A.   Yes, sir.                                                02:09PM

14      Q.   I'm gonna show you what's marked Defendant's Exhibit    02:10PM

15  D.  So we left off with Mr. McCarron's response "for a bit       02:10PM

16  longer."  Then you wrote back, "Oh, then what are you planning  02:10PM

17  on doing?"  Correct?                                             02:10PM

18      A.   Correct, sir.                                            02:10PM

19      Q.   And you wrote that at 7:19 p.m.?                         02:10PM

20      A.   Yes, sir.                                                02:10PM

21      Q.   And then Mr. McCarron wrote back, "don't know,         02:10PM

22  haven't thought about that."  And that was at 7 :20 p.m.;        02:10PM

23  correct?                                                         02:10PM

24      A.   Yes, sir.                                                02:10PM

25      Q.   I'm gonna show you what's been marked Defense Exhibit   02:10PM

1   E.  We left off with "don't know, haven't thought about that."

2   Then you wrote back at 7:24 "oh.  Well, okay."  Correct?

3       A.   Yes, sir.

4       Q.   And then he wrote back, "what would you like me to

5   do?"  And he said that on the 29th of November at 7:28;

6   correct?

7       A.   Yes, sir.

8       Q.   I'm gonna show you Defendant's Exhibit F.  We left

9   off at "what would you like me to do," from Mr. McCarron.

10  Then you wrote back at 7:29 p.m. on the 29th, "um, IDK;" is

11  that correct?

12      A.   Yes, sir.

13      Q.   And then he wrote back "I am just now about to get

14  off work.  What are you up to?  Is it too late?  I am pretty

15  tired right now."  Is that correct?

16      A.   That's correct.

17      Q.   So that was the last communication that you had with

18  Mr. McCarron; is that correct?

19      A.   Yes, sir.

20      Q.   So his last communication to you was "I am pretty

21  tired right now."

22      A.   Yes, sir.

23      Q.   I'm gonna show you what's been marked Government's

24  Exhibit 15-1.  Do you remember this exhibit that you testified

25  to earlier?

1    A.    Yes, sir.                                              02:13PM

2    Q.    And I'm going to direct your attention to the         02:13PM

3  communication that you sent on Tuesday, November 21st, at      02:13PM

4  7:08 p.m., and in that communication, you said, "Can you come  02:13PM

5  to base to meet with me?"  Correct?                            02:13PM

6    A.    Yes, sir.                                              02:13PM

7    Q.    So that was the first time that you invited my client 02:13PM

8  to come meet with you; is that correct?                        02:13PM

9    A.    That was me asking for the second time if he had base  02:13PM

10 access, that's why the next line it says "I know you said      02:13PM

11 before that you can."                                          02:13PM

12   Q.    But this was the first time that you said to him "can  02:14PM

13 you come to base to meet with me," would that be fair to say?  02:14PM

14   A.    Yes.  That's what the words say, yes, sir.             02:14PM

15   Q.    Yes.  So that was the first time you invited him to    02:14PM

16 come on to the base to meet with you?                          02:14PM

17   A.    Again, that was wasn't an invitation, that was         02:14PM

18 confirming that he can come on to the base.                    02:14PM

19   Q.    Let me show you what's been marked Defendant's         02:14PM

20 Exhibit -- I'm sorry, Government's Exhibit 15-3.  That was      02:14PM

21 that -- so I'm going to direct your attention to the           02:14PM

22 communication that happened up here at 7:14 p.m. on that same  02:14PM

23 date, November 21st, and in that, this is what you testified   02:15PM

24 to earlier, "do you -- do you want to go somewhere or do you   02:15PM

25 want to stay at my house?"  Correct, that's what you wrote to  02:15PM

1    Mr. McCarron?                                          02:15PM

2        A.    Yes.                                          02:15PM

3        Q.    Okay.  So that was another invite to come meet with    02:15PM

4    you; is that correct?                                  02:15PM

5        A.    That was a separate question.                02:15PM

6        Q.    So that was an invite to come meet with you; correct?    02:15PM

7        A.    That was just the question of where do you want to    02:15PM

8    go, somewhere or stay at the house.                    02:15PM

9        Q.    So you're not saying when you wrote to him "do you    02:15PM

10   want to go somewhere or do you want to stay at my house," that    02:15PM

11   wasn't an invitation to meet?                          02:15PM

12       A.    That was trying to draw up plans, I'm not sure what    02:15PM

13   do you mean by "invitation"?                           02:16PM

14       Q.    Invitation, you're asking him "can we get together,"    02:16PM

15   you're inviting him to have a meeting.  "Do you want to go    02:16PM

16   somewhere or do you want to stay at my house?"          02:16PM

17       A.    Correct --                                    02:16PM

18       Q.    Would you agree that's an invitation by you?  02:16PM

19       A.    I would say I'm trying to find out what his    02:16PM

20   intentions are.                                        02:16PM

21       Q.    You're inviting him, "do you want --" you said, "do    02:16PM

22   you want to stay at my house?"  Is that not an invite, if    02:16PM

23   someone said -- if I said to you "do you want to stay at my    02:16PM

24   house," would you not take that as an invitation?      02:16PM

25            MR. LEON GUERRERO:  Objection, Your Honor, asked    02:16PM

1    and answered.  The witness has already gave the answer to the    02:16PM

2    question.    02:16PM

3                  THE COURT:  Overruled.  Go ahead.    02:16PM

4                  MR. GORMAN:  Yeah --    02:16PM

5                  THE COURT:  Overruled.    02:16PM

6    BY MR. GORMAN: (Continuing)    02:16PM

7        Q.    If I said to you, "do you want to stay at my house,"    02:16PM

8    wouldn't you take that as an invitation to come stay at my    02:16PM

9    house?    02:16PM

10       A.    That's -- the question is do you want to do this    02:16PM

11   thing, so the -- the question to the person is whether or not    02:16PM

12   they want to do that.    02:16PM

13       Q.    Okay, but let me reference what you wrote; correct?    02:16PM

14   Did you not write, "do you want to stay at my house?"    02:16PM

15       A.    I --    02:17PM

16       Q.    You did write that; correct?    02:17PM

17       A.    Yes.    02:17PM

18       Q.    Then that's an invitation.    02:17PM

19              (Pause.)    02:17PM

20              THE WITNESS:  Again, I would just say that's    02:17PM

21   trying to find out what his desire was.    02:17PM

22   BY MR. GORMAN: (CONTINUING)    02:17PM

23       Q.    "Yes" or "no", if I say to you "do you want to stay    02:17PM

24   at my house?"  "Yes" or "no", is that an invitation?    02:17PM

25              MR. LEON GUERRERO:  Your Honor, I'm going to    02:17PM

1    object, asked and answered.                                02:17PM

2              MR. GORMAN:  I haven't got a "yes" or "no" out of   02:17PM

3    him.                                                       02:17PM

4              MR. LEON GUERRERO:  Yes --                        02:17PM

5              THE COURT:  What was your objection?              02:17PM

6              MR. LEON GUERRERO:  Asked and answered.  The      02:17PM

7    question has been posed different ways and the witness has  02:17PM

8    been giving the same answer, he doesn't view it as being an  02:17PM

9    invitation, he viewed it as --                             02:17PM

10             MR. GORMAN:  Your Honor, he's not --              02:17PM

11             MR. LEON GUERRERO:  -- plans.                      02:17PM

12             MR. GORMAN:  We don't need his interpretation.     02:17PM

13             THE COURT:  Let's not get into narrative.  The    02:17PM

14   objection is asked and answered?                           02:17PM

15             MR. LEON GUERRERO:  Yes, Your Honor.               02:17PM

16             THE COURT:  Overruled.  Go ahead.  He asked a     02:17PM

17   different question.                                        02:17PM

18   BY MR. GORMAN: (CONTINUING)                                 02:17PM

19      Q.   Please "yes" or "no", if I say to you "do you want to  02:17PM

20   come stay at my house," would you not take that as an      02:17PM

21   invitation, "yes" or "no"?                                 02:18PM

22      A.   That's not a question that you can answer "yes" or   02:18PM

23   "no" to.  I -- it's going to depend on the context.        02:18PM

24      Q.   There's no context.  It's a simple question.  Do you  02:18PM

25   want to stay at my house?  Is that an invitation, "yes" or  02:18PM

1  "no"?                                                            02:18PM

2      A.    It could be an invitation.                              02:18PM

3      Q.    (Laughing.)                                             02:18PM

4            MR. GORMAN:  If I may have a moment, Your Honor?        02:18PM

5            THE COURT:  Yes.                                        02:18PM

6  BY MR. GORMAN: (CONTINUING)                                      02:18PM

7      Q.    I'm going to direct your attention to what's been      02:18PM

8  marked for Government's Exhibit 18-1.  I'm going to direct       02:18PM

9  your attention to this section here, which was Tuesday,          02:19PM

10 November 28th, at 8:31 p.m., did you write to Mr. McCarron and   02:19PM

11 say, "IDK if you wanna hang out, then that would be okay,"       02:19PM

12 correct?                                                         02:19PM

13     A.    Yes.                                                    02:19PM

14     Q.    So I'm going to ask you the question again, that's an  02:19PM

15 invitation?                                                      02:19PM

16     A.    It could be.                                           02:19PM

17     Q.    Thank you.                                             02:19PM

18            THE COURT:  What exhibit was that?                     02:19PM

19            MR. GORMAN:  Oh, I'm sorry, that was 18-1.            02:19PM

20            THE COURT:  Thank you.                                 02:19PM

21 BY MR. GORMAN:  (Continuing)                                     02:19PM

22     Q.    Directing your attention to what's been marked         02:19PM

23 Government's Exhibit 18-3.  This section up here, Tuesday,       02:19PM

24 November 28th, at 8:38 p.m., and you wrote to him and said,     02:19PM

25 "Wait, are you coming now or no?  LOL.  I gotta know what the    02:20PM

```
 1   heck is going on."                                           02:20PM

 2        A.   For context, sir, it's "are you coming tomorrow or 02:20PM

 3   no".                                                         02:20PM

 4        Q.   Yeah -- oh, I'm sorry, I missed that word, you're   02:20PM

 5   right.  I -- so what it says is "wait, are you coming tomorrow 02:20PM

 6   or no?"                                                       02:20PM

 7        A.   Yes, sir.                                           02:20PM

 8        Q.   "LOL.  I gotta know what the heck is going on."     02:20PM

 9        A.   Yes, sir.                                           02:20PM

10        Q.   Sounds to me like you're nagging him, would that be 02:20PM

11   fair to say?                                                  02:20PM

12        A.   No, sir.                                            02:20PM

13        Q.   When you say, "Hey, I gotta know what's going on, are 02:20PM

14   you coming or no?"  If your wife said that to you, wouldn't   02:20PM

15   you take that as she's kind of nagging you?                   02:20PM

16        A.   I would --                                          02:20PM

17             MR. LEON GUERRERO:  Objection, Your Honor, as to    02:20PM

18   the form of the question.                                     02:20PM

19             THE COURT:  Overruled.                              02:20PM

20             THE WITNESS:  I would interpret that as she's       02:20PM

21   trying to find out what's going on tomorrow.                  02:20PM

22   BY MR. GORMAN: (CONTINUING)                                   02:20PM

23        Q.   Would you consider that nagging?                    02:20PM

24        A.   I wouldn't consider that about my wife, no, sir.    02:21PM

25        Q.   That's nice.                                        02:21PM
```

|   |   |   |
|---|---|---|
| 1 | THE COURT:  No need to comment -- | 02:21PM |
| 2 | MR. GORMAN:  I'm sorry. | 02:21PM |
| 3 | THE COURT:  -- on the evidence. | 02:21PM |
| 4 | MR. GORMAN:  You're right, Your Honor, I | 02:21PM |
| 5 | apologize. | 02:21PM |
| 6 | BY MR. GORMAN: (CONTINUING) | 02:21PM |

1       THE COURT:  No need to comment --                     02:21PM

2       MR. GORMAN:  I'm sorry.                                02:21PM

3       THE COURT:  -- on the evidence.                       02:21PM

4       MR. GORMAN:  You're right, Your Honor, I              02:21PM

5  apologize.                                                 02:21PM

6  BY MR. GORMAN: (CONTINUING)                                02:21PM

7       Q.   And also going back to Government's Exhibit 18-3.  So   02:21PM

8  in response to that question or statement that "I gotta know   02:21PM

9  what the heck is going on," Mr. McCarron wrote back and said   02:21PM

10  "I want to, will depend on work.  I will message you when I   02:21PM

11  get off."  Correct?                                        02:21PM

12      A.   Yes, sir.                                         02:21PM

13      Q.   Kind of putting you off, wouldn't you say?  I'll get   02:21PM

14  back to you, basically, is what he's saying?               02:21PM

15      A.   He stated, "I want to, will depend on work.  I will   02:21PM

16  message when I get off."                                   02:22PM

17      Q.   Okay.  I'm going to direct your attention to what's   02:22PM

18  been marked Government's Exhibit 18-4.  So we have the message   02:22PM

19  that we just talked about, this is on the 28th of November, at   02:22PM

20  8:41:28, and in response to when he said, "I want to, will   02:22PM

21  depend on work, I'll message when I get off."  You wrote back   02:22PM

22  "um, okay.  Well, like what time do you think?  And do you   02:22PM

23  think you are gonna or no?  Like I am a planner, I gotta know,   02:22PM

24  LOL.  I'm sorry but I'm not super experienced like you, this   02:22PM

25  is all just crazy about stuff."                            02:23PM

1    A.   Yes, sir.                                          02:23PM

2    Q.   So remember, I'll ask you again, wouldn't you     02:23PM

3  consider that that she's nagging, saying "hey, are you coming   02:23PM

4  or not?"                                                 02:23PM

5    A.   She did -- she did ask what time he thought.      02:23PM

6    Q.   Kind of nagging, isn't it?                        02:23PM

7    A.   I guess that's an interpretation of what level    02:23PM

8  nagging this is.                                         02:23PM

9    Q.   Maybe, you said she said, it isn't what she said, 02:23PM

10 it's what you said.  There is no "she."                  02:23PM

11   A.   Correct.                                          02:23PM

12        MR. GORMAN:  If I may have a moment?              02:23PM

13        THE COURT:  Yes, that's fine.                     02:24PM

14 BY MR. GORMAN: (CONTINUING)                              02:24PM

15   Q.   So let me show you what was marked Defendant's    02:24PM

16 Exhibit A.  I want to direct you to the top up here.  So this  02:24PM

17 is again, Wednesday, November 28th, same day.  Later,    02:24PM

18 7:03 p.m., and she says, "hey --" I'm sorry, you wrote "hey,   02:24PM

19 oh, my God.  Are you for real?  You still want to come over?"  02:24PM

20 And that's what you wrote at 7:03 p.m. on the 29th of    02:24PM

21 November; correct?                                       02:24PM

22   A.   Correct.                                          02:24PM

23   Q.   I would characterize that as another invite, wouldn't  02:24PM

24 you?                                                     02:24PM

25   A.   I'd say it's the response to his previous message 02:24PM

1    where he states when he asks "when is it late to come over,"     02:25PM

2    and she expresses -- or excuse me, I expressed surprise and      02:25PM

3    said, "for real, you still want to come over?"                   02:25PM

4        Q.   And then he responded "I do, but still working."       02:25PM

5        A.   That's correct.                                        02:25PM

6        Q.   "How are you today;" correct?                          02:25PM

7        A.   That is correct.                                        02:25PM

8        Q.   So the last communication you had with Mr. McCarron    02:25PM

9    was on the 29th of November at 8:01 p.m., correct?              02:25PM

10       A.   Whichever was represented on the presentation you      02:25PM

11   show, sir.                                                       02:25PM

12       Q.   Okay.  Just to be clear, it was marked as Defendant's  02:25PM

13   Exhibit F.  So we see the last message from Mr. McCarron "just  02:25PM

14   now about to get off of work, what are you up to, is it too     02:26PM

15   late?  I'm pretty tired right now."  So that was the last       02:26PM

16   message; correct?                                               02:26PM

17       A.   To the best I recall, yes, sir.                        02:26PM

18       Q.   Well, you were the one that did all this messaging?    02:26PM

19       A.   Yes, sir.                                               02:26PM

20       Q.   Are there messages that we don't know about?          02:26PM

21       A.   As far as -- if it that's the last one, yes, but I    02:26PM

22   can't see the bottom of your exhibit, so -- correct.  Yes.     02:26PM

23       Q.   So that is the last message?                          02:26PM

24       A.   Yes, sir.                                               02:26PM

25       Q.   You're absolutely sure?                               02:26PM

1    A.   To the best that I recall, I -- there's no way that I    02:26PM

2  could memorize all of the messages that I exchanged.    02:26PM

3    Q.   Didn't you prepare for this testimony and this case    02:26PM

4  today --    02:26PM

5    A.   I did.    02:26PM

6    Q.   -- before you got on the stand to testify?    02:26PM

7    A.   Yes, sir.    02:26PM

8    Q.   And you got together with the agents from the    02:26PM

9  government here, look at them all here.  And you prepared for    02:26PM

10 this case, didn't you?    02:27PM

11   A.   Yes.    02:27PM

12   Q.   And you went over all of this evidence because you    02:27PM

13 want to be truthful with the jury; isn't that correct?    02:27PM

14   A.   Yes, sir.    02:27PM

15   Q.   So is there any more messages that you're hiding from    02:27PM

16 us?    02:27PM

17          MR. LEON GUERRERO:  Objection, Your Honor, form    02:27PM

18 of the question.    02:27PM

19          MR. GORMAN:  Is there any more messages?    02:27PM

20          THE COURT:  All right.    02:27PM

21          MR. LEON GUERRERO:  It's the form of the    02:27PM

22 question, Your Honor.    02:27PM

23          THE COURT:  Yeah, withdrawn.  Next question.    02:27PM

24          MR. GORMAN:  I withdraw that one.    02:27PM

25 BY MR. GORMAN: (CONTINUING)    02:27PM

1    Q.   And I ask:  Are there any more messages than what

2  we've already gone over?

3    A.   There are other messages that were not in this

4  binder.

5    Q.   Are there -- that would -- is there any more after

6  8:01 on November 29th?

7    A.   I honestly don't -- there's no way I could remember

8  date, timestamp, and things, not to my knowledge.

9    Q.   Well, whose knowledge would it be?  You're the one

10  sending all the messages.

11    A.   Off the top of my head, I do not remember if there

12  was any messages beyond that time.  I don't believe so.

13    Q.   In preparation for your testimony today, you did

14  prepare, how many hours did you spend preparing for your

15  testimony today?

16    A.   I spent several.

17    Q.   Several is one or two or seven, eight, what?  You're

18  under oath.

19    A.   At least six or seven.

20    Q.   Six or seven hours of preparation with the trained

21  prosecutors from the U.S. Attorney's office, and you can't

22  answer the question of "are there more e-mails --"

23        MR. LEON GUERRERO:  Objection, Your Honor.  The

24  witness did testify that to the best of his knowledge, there

25  was no e-mails after this date that Counsel brought to his

1    attention, so it's asked and answered, and we'd object to it.    02:28PM

2    BY MR. GORMAN: (CONTINUING)    02:28PM

3        Q.    Who else -- if you don't know, to the best of your    02:28PM

4    knowledge is there's no other messages, please tell us who    02:28PM

5    would know.    02:28PM

6        A.    Well, I suppose somebody from my office, maybe my    02:28PM

7    supervisor or I could reference my report that details the    02:28PM

8    messages.    02:29PM

9        Q.    Okay.  Do you have the report there?    02:29PM

10        A.    No, sir.    02:29PM

11        Q.    But you reviewed that report with your seven to    02:29PM

12    eight hours of testimony or preparation, you reviewed all your    02:29PM

13    reports, didn't you?    02:29PM

14        A.    Yes.    02:29PM

15        Q.    And?  Was there any more messages?    02:29PM

16        A.    Not to the best of my knowledge.    02:29PM

17        Q.    Wow.  I'm going to show you this --    02:29PM

18            THE COURT:  What exhibit is that?    02:30PM

19            MR. GORMAN:  Oh, I'm sorry.  It is Government's    02:30PM

20    Exhibit 16-2.    02:30PM

21            THE COURT:  Okay.  Thank you.    02:30PM

22    BY MR. GORMAN: (CONTINUING)    02:30PM

23        Q.    So I'm showing you what had previously been admitted    02:30PM

24    into evidence as Government's Exhibit 16-2 and this was an    02:30PM

25    image that you sent to Mr. McCarron saying this is a person    02:30PM

1  named Brit; correct?                                          02:30PM

2      A.   Yes.                                                 02:30PM

3      Q.   And this is an adult; correct?                       02:30PM

4      A.   Yes, sir.                                            02:30PM

5      Q.   How old is this person?                              02:30PM

6      A.   She's born in 1991... so the time this photo was     02:30PM

7  taken, she would have been approximately 25.                  02:30PM

8      Q.   Okay.  She is -- is she an OSI agent?                02:30PM

9      A.   She's a military police.                             02:31PM

10          MR. GORMAN:  Okay.  I have nothing further at         02:31PM

11 this time, Your Honor.                                        02:31PM

12          THE COURT:  All right.  Redirect?                     02:31PM

13          MR. LEON GUERRERO:  If I can just have one            02:31PM

14 moment, Your Honor.                                           02:31PM

15          THE COURT:  Mm-hmm.  Okay.                            02:31PM

16          MR. LEON GUERRERO:  So real briefly, Your Honor.      02:31PM

17                                                                02:31PM

18                  REDIRECT EXAMINATION                          02:31PM

19                                                                02:31PM

20 BY MR. LEON GUERRERO:                                         02:31PM

21     Q.   So, Agent Ring, you indicated that you spent about    02:31PM

22 six, seven hours of preparation for the trial; correct?       02:31PM

23     A.   Yes, sir.                                            02:31PM

24     Q.   Okay.  And based on your investigation, you were able 02:31PM

25 to review the e-mails, the correspondence between you and the  02:31PM

*Court of Appeals No. 20-10072, USA v. McCarron*

1    defendant in this case; correct?                                02:31PM

2        A.    Yes, sir.                                             02:32PM

3        Q.    Okay.  And you were able to -- the exhibits that we   02:32PM

4    just read previously on direct examination kind of reflect      02:32PM

5    some of those e-mails that you reviewed; correct?               02:32PM

6        A.    Yes, sir.                                             02:32PM

7        Q.    And when you say that Counsel is asking you about the 02:32PM

8    e-mails on November 29th, and he referenced the time period     02:32PM

9    with the past 7 o'clock, was this the last e-mail               02:32PM

10   correspondence you had with the defendant, you indicated that   02:32PM

11   to the best of your knowledge, that was all the e-mails you're  02:32PM

12   aware of, right?                                                02:32PM

13       A.    Yes, sir.                                             02:32PM

14       Q.    Okay.  Do you have any other reason to -- is there    02:32PM

15   any other reason that you would have to say that -- to explain  02:32PM

16   why there would be additionals [sic] that weren't provided or   02:32PM

17   you've provided everything that you believe you -- that was     02:32PM

18   pertinent to this case?                                         02:32PM

19       A.    As far as any other reason why I would believe there  02:32PM

20   would be messages beyond that point --                         02:32PM

21       Q.    Is there any other reason why you would withhold any  02:32PM

22   other e-mails and not give them to the government?             02:32PM

23       A.    Absolutely not.                                       02:33PM

24             MR. LEON GUERRERO:  No further questions, Your        02:33PM

25   Honor.                                                          02:33PM

```
 1            MR. GORMAN:  I have nothing further.              02:33PM

 2            THE COURT:  All right.  You may step down, sir.   02:33PM

 3            THE WITNESS:  Thank you.                          02:33PM

 4            THE COURT:  How are you doing, jurors?  Do you    02:33PM

 5    want to take a recess?  Ten minutes?  Yeah?  Okay.  You saw a  02:33PM

 6    lot of e-mails today.  So let me take -- ladies and gentlemen,  02:33PM

 7    keep an open mind, do not form or express any opinion on this  02:33PM

 8    case until it's submitted to you.  We'll take a 15-minute  02:33PM

 9    recess and you'll have your next witness.  You only have one  02:33PM

10    more witness, right?                                     02:33PM

11            MR. LEON GUERRERO:  That's correct.               02:33PM

12            THE COURT:  How long will that witness be         02:33PM

13    approximately?                                            02:33PM

14            MR. LEON GUERRERO:  A half hour.                  02:33PM

15            THE COURT:  A half hour, okay.  So let's take a   02:33PM

16    15-minute recess, you can stretch, and I'll see you in   02:33PM

17    15 minutes, okay?                                         02:33PM

18                    (Jury out at 2:34 p.m.)                   02:34PM

19            THE COURT:  All right, Counsels.  I'll see you in  02:34PM

20    15 minutes.                                               02:34PM

21            MR. GORMAN:  Your Honor, could we briefly talk    02:34PM

22    about the rest of the progress of our case?  I think we've  02:34PM

23    done pretty good.  Can we -- I was thinking close today and I  02:34PM

24    don't think we have any witnesses.  It sounds like they're  02:34PM

25    last witness.  Could we schedule closing for tomorrow morning?  02:34PM
```

1   Because we still have to go through jury.                          02:34PM

2            THE COURT:  We have to go through jury                    02:34PM

3   instructions.  Yeah, that's fine.  We can do that.                 02:34PM

4            MR. GORMAN:  Thank you.                                   02:34PM

5            MR. LEON GUERRERO:  Your Honor, that's --                 02:34PM

6            THE COURT:  But I want to go over the jury                02:34PM

7   instructions tonight.                                             02:34PM

8            MR. GORMAN:  Sure.                                        02:34PM

9            THE COURT:  Yeah.                                         02:34PM

10           MR. LEON GUERRERO:  And that may work because I           02:34PM

11  did file a jury instruction that just -- jury instruction that     02:34PM

12  dealt with undercover operations and it's from the Ninth           02:34PM

13  Circuit, Rule 4.10.  So it's just a proposed jury instruction      02:35PM

14  that I ask that Your Honor consider.                               02:35PM

15           THE COURT:  Did you just send that in now or you          02:35PM

16  had --                                                            02:35PM

17           MR. LEON GUERRERO:  No, I -- I followed it -- I           02:35PM

18  just filed it today, Your Honor.                                  02:35PM

19           THE COURT:  Did you --                                    02:35PM

20           MR. GORMAN:  He filed it this morning, I received        02:35PM

21  it, and I have no objections.                                     02:35PM

22           THE COURT:  Okay.  Let me pull that up then.             02:35PM

23  That's the only one?                                              02:35PM

24           MR. LEON GUERRERO:  Yes, Your Honor.                     02:35PM

25           THE COURT:  And then -- let's see.  I don't have         02:35PM

```
 1    -- let me verify this, let me just look at the instructions I      02:35PM
 2    do have here.                                                       02:35PM
 3               (Pause.)                                                 02:35PM
 4               I have both of your -- proposed verdict form, the        02:35PM
 5    defense does not object to the prosecution's proposed verdict       02:35PM
 6    forms that were submitted and then with regard to jury             02:35PM
 7    instructions, the only one I have is proposed jury                  02:36PM
 8    instructions and then I do have -- okay, did you submit any         02:36PM
 9    other ones.                                                         02:36PM
10               MR. GORMAN:  No, we just didn't object to theirs.        02:36PM
11               THE COURT:  Right, I see that.                           02:36PM
12               MR. GORMAN:  Yeah.                                       02:36PM
13               THE COURT:  But you don't have anything --               02:36PM
14    special instructions that you want?                                 02:36PM
15               MR. GORMAN:  None, Your Honor.  Just the basic,          02:36PM
16    standard criminal jury instructions.                               02:36PM
17               THE COURT:  All right.  So yeah, so the Court            02:36PM
18    only has -- just to be clear, you have two submissions then        02:36PM
19    from prosecution, right?  The one it was submitted on              02:36PM
20    October 11th and then today's submission?                          02:36PM
21               MR. LEON GUERRERO:  Yes, Your Honor.                     02:36PM
22               THE COURT:  Those are the two.  Okay.  I'll --           02:36PM
23    we'll look at those, we'll go over those then.  All right.         02:36PM
24    Very well.  See you in 14 minutes.                                 02:36PM
25               MR. LEON GUERRERO:  Thank you, Your Honor.               02:36PM
```

*Court of Appeals No. 20-10072, USA v. McCarron*

| | |
|---|---|
| 1 | MR. GORMAN:  Thank you, Your Honor. | 02:36PM |
| 2 | THE CLERK:  The Court is in recess. | 02:36PM |
| 3 | THE COURT:  They gave your client lunch here | 02:36PM |
| 4 | today, right? | 02:36PM |
| 5 | MR. GORMAN:  They did.  Thank you. | 02:36PM |
| 6 | (Recess taken at 2:36 p.m.) | 02:36PM |
| 7 | (Back on the record at 2:56 p.m.) | 02:56PM |
| 8 | THE COURT:  Please be seated.  All Counsels | 02:56PM |
| 9 | present, defendant's present, and we'll call in the jury. | 02:56PM |
| 10 | (Jury in at 2:57 p.m.) | 02:57PM |
| 11 | THE COURT:  Thank you, ladies and gentlemen of | 02:57PM |
| 12 | the jury.  The prosecution will now call their second witness. | 02:57PM |
| 13 | MR. COLLINS:  Yes, Your Honor, the government | 02:57PM |
| 14 | calls Special Agent Christine Albo. | 02:57PM |
| 15 | THE COURT:  Okay.  Thank you, Mr. Collins.  Agent | 02:57PM |
| 16 | Albo to the stand. | 02:57PM |
| 17 | THE CLERK:  Please raise your right hand.  You do | 02:58PM |
| 18 | solemnly swear that the testimony you are about to give in the | 02:58PM |
| 19 | case now before the Court will be the truth, the whole truth, | 02:58PM |
| 20 | and nothing but the truth, so help you God? | 02:58PM |
| 21 | THE WITNESS:  I do. | 02:58PM |
| 22 | THE CLERK:  Thank you.  Please be seated.  Please | 02:58PM |
| 23 | state your name and spell your last name for the record. | 02:58PM |
| 24 | THE WITNESS:  Christine Albo, A-L-B-O. | 02:58PM |
| 25 | DIRECT EXAMINATION | 02:58PM |

| | |
|---|---|
| 1 | 02:58PM |
| 2 | BY MR. COLLINS: | 02:58PM |
| 3 | Q.   Good afternoon, Special Agent Albo. | 02:58PM |

BY MR. COLLINS:

Q.   Good afternoon, Special Agent Albo.

A.   Good afternoon.

Q.   Special Agent Albo, can you tell the members of the jury where you're currently employed.

A.   I'm currently employed with the Naval Criminal Investigative Service, also known as NCIS, here on the naval base in Guam.

Q.   How long have you been with NCIS?

A.   I have been with NCIS for six years.

Q.   Can you describe your professional background?

A.   Prior to working for NCIS, I worked for the Air Force Office of Special Investigations, that does federal level investigations as well, and I was employed with them for five years.

Q.   Special Agent Albo, are you familiar with the defendant in this case, Mr. McCarron?

A.   Yes, I am.

Q.   How did you first become familiar with him?

A.   I became familiar with him when Special Agent Adam Ring had contacted me and told me that they had someone they suspected was a Department of Navy civilian who was communicating and sending nude images to an undercover agent.

Q.   And approximately when did you receive that contact

1    from Special Agent Ring?                                          02:59PM

2        A.    It was on the 29th of November.                         02:59PM

3        Q.    In 2017?                                                02:59PM

4        A.    In 2017, yes.                                           02:59PM

5        Q.    And why was Special Agent Ring reaching out to you or   02:59PM

6    NCIS?                                                             02:59PM

7        A.    Special Agent Ring was reaching out to me due to the    02:59PM

8    fact that he was a Naval Criminal Investigative Service and to    02:59PM

9    confirm that the defendant was indeed a Department of Navy        02:59PM

10   civilian.                                                         02:59PM

11       Q.    And was he?                                             02:59PM

12       A.    He was.                                                 03:00PM

13       Q.    Are you familiar with the defendant stationed on Guam   03:00PM

14   at the time?                                                      03:00PM

15       A.    It's my understanding that he was actually stationed    03:00PM

16   permanently at Kitsap, which is in Washington State, but that     03:00PM

17   he was actually TDY to Guam for approximately one month.          03:00PM

18       Q.    You said "TDY", can you explain what that means?        03:00PM

19       A.    TDY is temporary duty, so he would continue to be       03:00PM

20   assigned to Kitsap in Washington State, however, he would be      03:00PM

21   temporarily working here in Guam.                                 03:00PM

22       Q.    While he was temporarily here in Guam, do you know      03:00PM

23   where was staying?                                                03:00PM

24       A.    Yes, he was staying at the Sheraton Laguna Hotel.       03:00PM

25       Q.    And do you know how that information was discovered?    03:00PM

1      A.   That information was discovered through his posting            03:00PM

2  on Craigslist and his response.                                        03:00PM

3      Q.   So when Special Agent Ring reached out to you, what           03:00PM

4  did your role become in this investigation?                            03:00PM

5      A.   When he reached out to me, we opened an investigation         03:00PM

6  and then I was the lead case agent at that point due to the            03:01PM

7  fact that he was indeed a Department of Navy civilian.                 03:01PM

8      Q.   After becoming the lead case agent on this case, did          03:01PM

9  you ever apply for a search warrant?                                   03:01PM

10     A.   I did, on the 30th of November of 2017, I applied for         03:01PM

11 a search warrant for his hotel room at the Sheraton Laguna             03:01PM

12 Resort.                                                                03:01PM

13     Q.   How did you go about completion for that warrant?             03:01PM

14     A.   I composed an affidavit and presented that to the            03:01PM

15 federal judge here at the courthouse.                                  03:01PM

16     Q.   That's not Judge Tydingco-Gatewood; Judge Manibusan,         03:01PM

17 is that who you're referring to?                                       03:01PM

18     A.   Yes, it was Judge Manibusan.                                  03:01PM

19     Q.   And did Judge Manibusan grant the search warrant?            03:01PM

20     A.   Yes, he did.                                                  03:01PM

21     Q.   Did you participate in the execution of the search           03:01PM

22 warrant?                                                               03:01PM

23     A.   I did.                                                        03:01PM

24     Q.   What day did that occur?                                     03:01PM

25     A.   That was on the 30th of November 2017.                       03:01PM

1    Q.   Describe for the ladies and gentlemen of the jury how

2    the execution of that search warrant proceeded.

3    A.   It was myself and Special Agent Mark Albo and a task

4    force officer, Mark Garcia, and Special Agent Joshua Kipp from

5    the Federal Bureau of Investigation here in Guam and we went

6    to the hotel room, and we executed the search warrant and when

7    we entered the room, we secured the defendant who was in the

8    hotel room and then we also secured the room and then Special

9    Agent Joshua Kim and I took the defendant to a room that had

10   been provided for us by the hotel in order to speak to him.

11   Q.   Okay.  So tell us about how -- you said you took the

12   defendant to another room to speak to him.  What kind of --

13   what were you talking to him about?  Was this an interview,

14   interrogation?

15   A.   It was an interview.  We were talking to him about

16   the conversations that he had with Brit.  And we had informed

17   him that talking to us was voluntary, it was a noncustodial

18   interview, we told him that at any time he was free to leave.

19   Q.   You mentioned "noncustodial interview", can you just

20   briefly describe what that means?

21   A.   Basically he was not under arrest and at any point

22   that he decided he wanted to leave the room, he was free to go

23   and he was free to exercise his right not to answer our

24   questions.

25   Q.   And did the defendant agree to speak with you?

|  |  |  |  |
|---|---|---|---|
| 1 | A. | He did agree to speak with us. | 03:03PM |
| 2 | Q. | Did you record the interview? | 03:03PM |
| 3 | A. | Yes, the interview was recorded. | 03:03PM |
| 4 | Q. | And is that a standard procedure for these types of | 03:03PM |
| 5 | interviews? | | 03:03PM |
| 6 | A. | Yes. | 03:03PM |

1      A.   He did agree to speak with us.

2      Q.   Did you record the interview?

3      A.   Yes, the interview was recorded.

4      Q.   And is that a standard procedure for these types of

5  interviews?

6      A.   Yes.

7      Q.   I'd like to direct your attention to what's been

8  marked as Government's Exhibit No. 21 of the binder in front

9  of you.

10      A.   Number 21?

11      Q.   21; correct.

12      A.   Yes.

13      Q.   Are you familiar with that?

14      A.   I am.

15      Q.   And what do you recognize it to be?

16      A.   That's an excerpt from the interviews of the

17  defendant.

18      Q.   Are you familiar -- now, specifically, the page in

19  front of you, is it a photograph of a compact disc, a CD; is

20  that right?

21      A.   Yes.

22      Q.   Have you reviewed contents of that CD?

23      A.   Yes, I have.

24      Q.   Are you familiar with those -- the contents?

25      A.   I am familiar with the contents.

| | | |
|---|---|---|
| 1 | Q. What are the contents of the CD? | 03:04PM |
| 2 | A. It contains approximately 15 minutes of excerpts of | 03:04PM |
| 3 | the interview which Joshua Kipp and I conducted of the | 03:04PM |
| 4 | defendant. | 03:04PM |
| 5 | Q. And did these excerpts fairly and accurately capture | 03:04PM |
| 6 | the interview you conducted with the defendant? | 03:04PM |
| 7 | A. Yes. | 03:04PM |
| 8 | MR. COLLINS: Your Honor, at this time the | 03:04PM |
| 9 | Government moves what's been marked as Exhibit No. 21 into | 03:04PM |
| 10 | evidence. | 03:04PM |
| 11 | THE COURT: Okay. | 03:04PM |
| 12 | MR. GORMAN: No objection. | 03:04PM |
| 13 | THE COURT: All right. Ladies and gentlemen of | 03:04PM |
| 14 | the jury, Exhibit 21 is admitted without objection. | 03:04PM |
| 15 | (Exhibit 21 admitted: Excerpts of video) | 03:04PM |
| 16 | MR. COLLINS: Your Honor, at this time the | 03:04PM |
| 17 | government would move to publish Exhibit No. 21 to the jury. | 03:04PM |
| 18 | THE COURT: You may. | 03:04PM |
| 19 | (Exhibit No. 21 played.) | 03:05PM |
| 20 | (Pause.) | 03:08PM |
| 21 | BY MR. COLLINS: (CONTINUING) | 03:20PM |
| 22 | Q. Special Agent Albo, during the course of the | 03:20PM |
| 23 | interview, did the defendant knowingly admit to engaging in -- | 03:20PM |
| 24 | MR. GORMAN: Objection, Your Honor. | 03:20PM |
| 25 | THE COURT: What's the objection? | 03:20PM |

1    MR. GORMAN:  It's a leading question.                    03:20PM

2    THE COURT:  Sustained.                                   03:20PM

3  BY MR. COLLINS: (CONTINUING)                               03:20PM

4    Q.   Special Agent Albo, from your recollection, what did 03:20PM

5  the defendant say about his knowledge of who he was        03:20PM

6  communicating with?                                        03:20PM

7    A.   He said that he believed he was communicating with a 03:21PM

8  13-year-old female named Brit.                             03:21PM

9    Q.   At any point during this interview, did the name    03:21PM

10 Special Agent Adam Ring come up?                           03:21PM

11   A.   No.                                                 03:21PM

12   Q.   At any point did you talk about the fact that this  03:21PM

13 was an undercover operation?                               03:21PM

14   A.   No.                                                 03:21PM

15   Q.   At any point did you talk about the fact that Brit  03:21PM

16 wasn't a real person?                                      03:21PM

17   A.   No.                                                 03:21PM

18   Q.   From your knowledge, did the defendant make any     03:21PM

19 indications that he believed that Brit was a 13-year-old real 03:21PM

20 person?                                                    03:21PM

21   A.   Yes.  He said he believed her to be real and he even 03:21PM

22 discussed her syntax and how her words and writing seemed  03:21PM

23 childlike.                                                 03:21PM

24   Q.   Special Agent Albo, are you familiar with Title 9 of 03:21PM

25 Guam Code Annotated, specifically Chapter 25?              03:21PM

```
 1     A.   Yes, I am.                                        03:21PM

 2     Q.   Is that something that you reviewed prior to coming   03:21PM

 3  to Court today?                                            03:21PM

 4     A.   Yes, I reviewed that prior to coming to court.    03:21PM

 5     Q.   Specifically, with this chapter of Guam law, what  03:21PM

 6  does it address?                                           03:21PM

 7     A.   It addresses --                                   03:21PM

 8          MR. GORMAN:  Objection, Your Honor, relevance of  03:21PM

 9  Guam law here?  I just don't understand.                  03:21PM

10          MR. COLLINS:  It goes to one of the elements of   03:22PM

11  the offenses, Your Honor.                                 03:22PM

12          THE COURT:  Overruled.                            03:22PM

13  BY MR. COLLINS: (CONTINUING)                              03:22PM

14     Q.   And when --                                       03:22PM

15     A.   It discusses criminal sexual conduct.             03:22PM

16     Q.   And to your knowledge, Special Agent Albo, if the  03:22PM

17  conduct the defendant was mentioning during the course of your  03:22PM

18  interview had actually occurred, would it have been in    03:22PM

19  violation of Guam law?                                    03:22PM

20     A.   Yes.                                              03:22PM

21     Q.   Special Agent Albo, do you see the defendant in the  03:22PM

22  courtroom today?                                          03:22PM

23     A.   Yes.                                              03:22PM

24     Q.   Can you please state where he's located and identify  03:22PM

25  him with an article of clothing that he's wearing?        03:22PM
```

1    A.   He is sitting at that table and he's wearing a blue    03:22PM

2  shirt.    03:22PM

3          MR. COLLINS:  I have no further questions at this    03:22PM

4  time.    03:22PM

5          THE COURT:  The record will reflect that the    03:22PM

6  witness has identified the defendant.    03:22PM

7          Okay.  Thank you, sir.    03:22PM

8          MR. COLLINS:  Thank you, Your Honor.    03:22PM

9          THE COURT:  Okay.  Cross-exam, Mr. Gorman.    03:22PM

10          MR. GORMAN:  Thank you, Your Honor.    03:22PM

11    03:22PM

12                    CROSS-EXAMINATION    03:22PM

13    03:22PM

14  BY MR. GORMAN:    03:22PM

15    Q.   Agent Albo, so your first -- when was your first    03:22PM

16  contact in this case, was it on the 29th of November, 2017?    03:22PM

17    A.   Yes.    03:22PM

18    Q.   Okay.  And that's Agent Ring who called you?    03:22PM

19    A.   Yes.    03:22PM

20    Q.   So when did -- I notice you were using the text    03:23PM

21  messages during the interrogation of my client.  When did you    03:23PM

22  first review those text messages?    03:23PM

23    A.   We weren't using text messages, they were Craigslist    03:23PM

24  postings and e-mails.    03:23PM

25    Q.   Okay.  When did you first review those?    03:23PM

1    A.   I reviewed those after discussing the case with Adam    03:23PM

2  Ring.    03:23PM

3    Q.   When was that?    03:23PM

4    A.   I don't recall the exact date, I looked at them six    03:23PM

5  times over the course of the investigation.    03:23PM

6    Q.   When was the first time you looked at them?    03:23PM

7    A.   I don't recall the date, I could look at the report    03:23PM

8  and see.    03:23PM

9    Q.   Okay.  Let me backtrack.  So didn't you testify    03:23PM

10 earlier your first contact with this case was on the 29th of    03:23PM

11 November, 2017?    03:23PM

12   A.   Yes.    03:23PM

13   Q.   And you executed the search warrant the next day?    03:23PM

14   A.   Yes.    03:23PM

15   Q.   And when you executed that search warrant, then you    03:23PM

16 did an interrogation, and at that point, you had the messages?    03:23PM

17   A.   Yes.    03:23PM

18   Q.   Okay.  So when did you look at them?    03:23PM

19   A.   Sometime around the 29th or the 30th of November,    03:24PM

20 2017, but there were several times throughout the course of    03:24PM

21 the investigation that I looked at them.    03:24PM

22   Q.   Yeah, I'm not asking about that.  I'm asking for the    03:24PM

23 first time that you looked at those messages.    03:24PM

24   A.   It would be either --    03:24PM

25   Q.   Was it on the 29th?  It had to be either on the 29th    03:24PM

```
 1    or 30th; correct?                                          03:24PM
 2        A.   Yes.                                               03:24PM
 3        Q.   Okay.  When was it?                                03:24PM
 4        A.   The 29th or the 30th, I don't have an exact date.  03:24PM
 5        Q.   What time did he contact you on the 29th?          03:24PM
 6        A.   I would have to look at my call log, I don't know  03:24PM
 7    what time.                                                  03:24PM
 8        Q.   Was it 8 o'clock in the morning or 12 o'clock at   03:24PM
 9    night?                                                      03:24PM
10              MR. COLLINS:  Objection, Your Honor.              03:24PM
11              THE WITNESS:  I don't know what time.             03:24PM
12              MR. COLLINS:  Objection, Your Honor, asked and    03:24PM
13    answered.                                                   03:24PM
14              THE COURT:  Okay.  Sustained.                     03:24PM
15    BY MR. GORMAN: (CONTINUING)                                 03:24PM
16        Q.   And you also prepared for your testimony today?    03:24PM
17        A.   I did.                                             03:24PM
18        Q.   Yeah.  And you went over all your notes and        03:24PM
19    preparation because you wanted to testify to this jury fully 03:24PM
20    and truthfully; isn't that correct?                        03:24PM
21        A.   That is correct.                                  03:24PM
22        Q.   So you looked over your notes, so you -- but even  03:24PM
23    after -- how long did you spend prepping with all these people 03:24PM
24    here?                                                       03:25PM
25        A.   Several hours.                                     03:25PM
```

1    Q.   Please give us more specific --                    03:25PM

2    A.   I didn't watch the clock, so I don't have an exact  03:25PM

3    amount of hours.                                        03:25PM

4    Q.   Was it two hours?  Was it four hours?  Was it six,  03:25PM

5    was it eight?                                           03:25PM

6    A.   It was probably more than eight, I would --         03:25PM

7    Q.   More than eight?                                   03:25PM

8    A.   Yes.                                               03:25PM

9    Q.   Was it more than ten?                              03:25PM

10   A.   I can't really answer that question.               03:25PM

11   Q.   Why not?                                           03:25PM

12   A.   Because I did not calculate each and every time I   03:25PM

13   thought about the case or talked about the case or reviewed  03:25PM

14   the case file.                                          03:25PM

15   Q.   So you have spent -- so clearly, you spent over ten  03:25PM

16   hours reviewing the case file?                          03:25PM

17   A.   Yes, reviewing, not memorizing.                    03:25PM

18   Q.   A lot of time.  But you don't remember the first time  03:25PM

19   you started looking at these messages?                  03:25PM

20   A.   It would have been either the 29th or the 30th of   03:25PM

21   November, 2017.                                         03:25PM

22              THE COURT:  Yes?                             03:25PM

23              MR. COLLINS:  Again, Your Honor, asked and    03:25PM

24   answered.                                               03:25PM

25              THE COURT:  Okay, sustained.                 03:25PM

1    BY MR. GORMAN: (CONTINUING)                                  03:25PM

2        Q.    What time did you go to the hotel on the 30th of    03:26PM

3    November?                                                     03:26PM

4        A.    Approximately 1700.                                 03:26PM

5        Q.    That's 5 o'clock?                                   03:26PM

6        A.    Yes.                                                03:26PM

7        Q.    Okay.  So what time did you get the search warrant?  03:26PM

8        A.    I don't recall what time.  It would have been,     03:26PM

9    obviously, prior to 1700.                                     03:26PM

10       Q.    Did you get it first thing in the morning or did you  03:26PM

11   get it in the afternoon?                                      03:26PM

12       A.    I believe it was early afternoon.                   03:26PM

13       Q.    Early afternoon.  And before the search warrant, did  03:26PM

14   you review the text messages, did you review the messages in  03:26PM

15   this case?                                                    03:26PM

16       A.    Yes, I had seen them before we executed the search  03:26PM

17   warrant.                                                      03:26PM

18       Q.    So we know now that at least by the time in the early  03:26PM

19   afternoon of the 29th, you had reviewed the text messages?   03:26PM

20       A.    No, the 30th of November is when I obtained the     03:26PM

21   search warrant, not the 29th of November.                    03:26PM

22       Q.    Yes, you are correct.  So now we know at least you   03:26PM

23   had reviewed the messages before you got the search warrant in  03:26PM

24   the early afternoon; correct?                                 03:26PM

25       A.    Yes, that's why I said either the 29th or the 30th of  03:26PM

1    November.                                                                      03:27PM

2        Q.   And you don't have -- and what time, again, did you              03:27PM

3    first talk to Agent Ring on the 29th?                                     03:27PM

4        A.   As I said, I don't know.                                         03:27PM

5        Q.   And you can't remember if you looked at the messages            03:27PM

6    --                                                                         03:27PM

7             MR. COLLINS:  Objection, Your Honor.                            03:27PM

8             THE COURT:  So let me just hear what's the                      03:27PM

9    question.                                                                  03:27PM

10            MR. GORMAN:  She cannot recall if she looked at                 03:27PM

11   those text messages on the 29th of November, 2017.                        03:27PM

12            THE COURT:  I think she answered that.                          03:27PM

13            MR. GORMAN:  Okay.                                              03:27PM

14            THE COURT:  Asked and answered.                                 03:27PM

15   BY MR. GORMAN: (CONTINUING)                                               03:27PM

16       Q.   And when you -- so you went to my client's room and            03:27PM

17   that's where you first encountered him?                                   03:27PM

18       A.   Yes.                                                            03:27PM

19       Q.   And then you and Agent Kipp -- how many people went            03:27PM

20   to the room?                                                              03:27PM

21       A.   It was myself and Special Agent Joshua Kipp, Special           03:27PM

22   Agent Mark Albo, and a task force officer, Mark Garcia.                   03:27PM

23       Q.   So there was four of you?                                       03:27PM

24       A.   Yes.                                                            03:28PM

25       Q.   Okay.  And you knocked on the door and he voluntarily          03:28PM

```
 1    went with you to this room where you interviewed him; correct?      03:28PM
 2        A.   Yes.                                                        03:28PM
 3        Q.   And when he was there, he doesn't ask for an               03:28PM
 4    attorney?                                                            03:28PM
 5        A.   No.                                                         03:28PM
 6        Q.   How long was that interview?                                03:28PM
 7        A.   It was approximately 70 minutes.                            03:28PM
 8        Q.   And during that 70-minute interview, he answered all       03:28PM
 9    your questions; isn't that correct?                                  03:28PM
10        A.   Yes.                                                        03:28PM
11        Q.   During the 70-minute interview, he gave you               03:28PM
12    permission to search his car, didn't he?                             03:28PM
13        A.   Yes.                                                        03:28PM
14        Q.   And he gave you permission, also, to search all his       03:28PM
15    personal devices; correct?                                           03:28PM
16        A.   The ones that were located in the hotel room, yes.        03:28PM
17        Q.   And he even gave you the passwords for those devices;     03:28PM
18    isn't that correct?                                                  03:28PM
19        A.   Only one of the devices was password protected.           03:28PM
20        Q.   And he gave that to you?                                   03:28PM
21        A.   Yes.                                                        03:28PM
22             MR. GORMAN:  I have nothing further.                       03:28PM
23             THE COURT:  Okay.  Yes, Mr. Collins, any                   03:28PM
24    redirect?                                                            03:29PM
25             MR. COLLINS:  None necessary, Your Honor.                  03:29PM
```

| | |
|---|---|
| 1 | THE COURT:  I'm sorry, nothing further? | 03:29PM |
| 2 | MR. COLLINS:  No, Your Honor. | 03:29PM |
| 3 | THE COURT:  Okay.  Agent Albo, you may step down. | 03:29PM |
| 4 | Any further witnesses? | 03:29PM |
| 5 | MR. LEON GUERRERO:  The government has no further | 03:29PM |
| 6 | witnesses, Your Honor. | 03:29PM |
| 7 | THE COURT:  Prosecution rests? | 03:29PM |
| 8 | *(Government rests.)* | 03:29PM |
| 9 | MR. LEON GUERRERO:  Yes, Your Honor. | 03:29PM |
| 10 | THE COURT:  Okay.  All right.  So why don't we | 03:29PM |
| 11 | just take a recess.  We'll take a ten-minute recess, I have to | 03:29PM |
| 12 | handle a legal issue with the attorneys, and then you'll come | 03:29PM |
| 13 | back, okay?  So keep an open mind and we'll see you shortly. | 03:29PM |
| 14 | Have a nice break.  Please rise for the jury. | 03:29PM |
| 15 | (Jury out at 3:30 p.m.) | 03:30PM |
| 16 | THE COURT:  Please be seated, Counsels. | 03:30PM |
| 17 | (Pause.) | 03:30PM |
| 18 | THE COURT:  You're going to make a motion? | 03:30PM |
| 19 | MR. GORMAN:  Yes, Your Honor.  I have a motion | 03:30PM |
| 20 | for a judgment of acquittal pursuant to Rule 29, moving for | 03:30PM |
| 21 | judgment of acquittal on grounds of the prosecution has failed | 03:30PM |
| 22 | to provide sufficient proof from which any rational juror | 03:30PM |
| 23 | could conclude beyond a reasonable doubt that my client is | 03:30PM |
| 24 | guilty on either count. | 03:30PM |
| 25 | THE COURT:  Okay.  And do you have anything in | 03:30PM |

1   particular that you think they missed as it relates to any of    03:30PM

2   the elements in Count 1, first of all?    03:30PM

3            MR. GORMAN:  I think it's obvious, but I'm not    03:30PM

4   going to present any argument at this time.    03:30PM

5            THE COURT:  You think it's obvious?    03:30PM

6            MR. GORMAN:  I'm --    03:30PM

7            THE COURT:  Count 2, do you have any specific    03:30PM

8   argument with regard to Count 2?    03:31PM

9            MR. GORMAN:  No, I will rest on the motion.    03:31PM

10            THE COURT:  So you're saying that the prosecution    03:31PM

11   failed entirely to prove all the elements of the crimes?    03:31PM

12            MR. GORMAN:  Yes, Your Honor.  That no rational    03:31PM

13   juror could conclude beyond a reasonable doubt that my client    03:31PM

14   is guilty.    03:31PM

15            THE COURT:  All right.  Mr. Leon Guerrero -- is    03:31PM

16   it Mr. Leon Guerrero?  Okay.  Mr. Leon Guerrero, you may    03:31PM

17   proceed.    03:31PM

18            MR. LEON GUERRERO:  Yes, Your Honor.  In looking    03:31PM

19   at the evidence in the light most favorable to the government,    03:31PM

20   we would submit that we've satisfied the elements of the    03:31PM

21   offenses that are being brought against this defendant.    03:31PM

22            With respect to the testimony from Adam Ring, he    03:31PM

23   had indicated that he had utilized a computer and the internet    03:31PM

24   to communicate with the defendant.  It's clear from the    03:31PM

25   interview with the defendant that he acknowledged that he was    03:31PM

1    communicating with someone that he believed to be 13 years of          03:31PM
2    age, and that we've established that the offense had -- a              03:31PM
3    sexual offense had been committed with a minor, it would have          03:32PM
4    been in violation of Guam law, and then with respect to --            03:32PM
5                    THE COURT:  That Guam law is what, 25?                 03:32PM
6                    MR. LEON GUERRERO:  15(a)(1).                          03:32PM
7                    THE COURT:  Mm-hmm.                                    03:32PM
8                    MR. LEON GUERRERO:  9GCA 2515(a)(1).                   03:32PM
9                    THE COURT:  That's sexual penetration?                03:32PM
10                   MR. LEON GUERRERO:  Yes.                              03:32PM
11                   THE COURT:  Attempted sexual penetration?            03:32PM
12                   MR. LEON GUERRERO:  Correct, with an individual       03:32PM
13   under the age of 14 years of age.  And then with respect to          03:32PM
14   Count No. 2, we've established that there are approximately 12        03:32PM
15   images of the defendant's penis, to also include a video of          03:32PM
16   his penis as well that, again, he had sent and accompanied           03:32PM
17   these e-mails that he had sent to somebody he believed was 13        03:32PM
18   years old via the internet.  And so then it's the government's       03:32PM
19   belief we met the elements of the offenses that the defendant        03:33PM
20   has been indicted for and I would ask that Your Honor deny the       03:33PM
21   motion for judgment of acquittal.                                    03:33PM
22                   THE COURT:  All right.  Mr. Gorman?  Anything --      03:33PM
23                   MR. GORMAN:  Nothing further.  No argument at         03:33PM
24   this time.                                                           03:33PM
25                   THE COURT:  All right.  So under Rule 29 of the       03:33PM

1   Federal Rules of Criminal Procedure, after the prosecution          03:33PM

2   closes its evidence, the defendant may make a motion for             03:33PM

3   judgment of acquittal of any offense for which the evidence is       03:33PM

4   insufficient to sustain a conviction.                                03:33PM

5            Mr. Gorman, on behalf of his client, is making             03:33PM

6   that motion pursuant -- in relation to both Counts in the           03:33PM

7   indictment.  The Court notes that the Court must view the           03:33PM

8   evidence -- well, let me just -- "the evidence is insufficient      03:33PM

9   to sustain a conviction if after viewing the evidence in the        03:33PM

10  light most favorable to the prosecution, no rational trier of       03:33PM

11  fact could find the essential elements of the crime beyond a        03:34PM

12  reasonable doubt."  And the Court cites to *Jackson v.*             03:34PM

13  *Virginia, U.S. Supreme Court 443 US 307*.                          03:34PM

14           So the Court has listened to the evidence and             03:34PM

15  considered the evidence in trial in favor of the prosecution       03:34PM

16  and the Court finds that... that in determining whether the        03:34PM

17  evidence at trial, including any evidence of innocence could       03:34PM

18  allow any rational trier of fact to find the essential            03:34PM

19  elements of the crime beyond a reasonable doubt, the Court         03:34PM

20  does find that -- that, in fact, there is sufficient evidence      03:34PM

21  to deny the motion for judgment of acquittal.  Okay.  Very         03:34PM

22  well.  So let's -- are you going to call any witnesses?            03:34PM

23           MR. GORMAN:  No, Your Honor.  The defense rests.          03:34PM

24           THE COURT:  Okay.  So we'll just say the defense          03:34PM

25  rests.  Then are you just going to say you renew your motion       03:34PM

| | | |
|---|---|---|
| 1 | so we don't have to get let the jurors go out? | 03:34PM |
| 2 | MR. GORMAN:  Yes. | 03:35PM |
| 3 | THE COURT:  Same arguments, essentially? | 03:35PM |
| 4 | MR. GORMAN:  Yes, Your Honor. | 03:35PM |
| 5 | THE COURT:  Okay.  All right.  Call in the jury. | 03:35PM |
| 6 | You can be seated.  Hold on a second.  Let me verify.  They're | 03:35PM |
| 7 | going to see if they're ready to go. | 03:35PM |
| 8 | (Pause.) | 03:35PM |
| 9 | THE COURT:  Okay, yeah.  We'll call in the | 03:38PM |
| 10 | jurors.  So just an FYI, so you know I did the *Lopez* case, | 03:39PM |
| 11 | which has identical charges. | 03:39PM |
| 12 | MR. GORMAN:  Yes. | 03:39PM |
| 13 | THE COURT:  Same.  So I pulled the jury | 03:39PM |
| 14 | instructions -- | 03:39PM |
| 15 | MR. GORMAN:  I don't know if they're identical | 03:39PM |
| 16 | but I knew it was kind of the same but go on. | 03:39PM |
| 17 | THE COURT:  I think they are.  I think they're | 03:39PM |
| 18 | identical.  So first charge, there's no Ninth Circuit, as you | 03:39PM |
| 19 | know, Ninth Circuit instruction on the first charge.  And it | 03:39PM |
| 20 | was a modification using the Eighth Circuit, you submitted | 03:39PM |
| 21 | that.  But I just -- I'm -- I just pulled out the *Lopez* | 03:39PM |
| 22 | instruction because it is the same identical charge for | 03:39PM |
| 23 | Count 1.  Actually, each -- for Count 2, so you guys can look | 03:39PM |
| 24 | at that as well.  You can discuss that today. | 03:39PM |
| 25 | MR. LEON GUERRERO:  Sure. | 03:39PM |

|   |   |   |
|---|---|---|
| 1 | THE COURT:  Okay.  I think that's -- so I'll have | 03:39PM |
| 2 | -- my law clerk is just going to give you guys copies of both | 03:39PM |
| 3 | or give you copies of the instructions, the proposed | 03:39PM |
| 4 | instructions and we'll discuss that this afternoon. | 03:40PM |
| 5 | (Jury in at 3:40 p.m.) | 03:40PM |
| 6 | THE COURT:  Okay.  Welcome back, ladies and | 03:40PM |
| 7 | gentlemen.  Thank you very much for your patience and at this | 03:40PM |
| 8 | time, let me just ask -- the prosecution has rested so they | 03:40PM |
| 9 | will present no further evidence.  And as I indicated to you | 03:40PM |
| 10 | earlier, the defendant has no obligation whatsoever to present | 03:40PM |
| 11 | any evidence, so -- but let me just ask Mr. Gorman, anything | 03:40PM |
| 12 | further, sir? | 03:41PM |
| 13 | MR. GORMAN:  Nothing, Your Honor. | 03:41PM |
| 14 | THE COURT:  All right.  So the -- | 03:41PM |
| 15 | MR. GORMAN:  Defense rests. | 03:41PM |
| 16 | THE COURT:  Defense rests.  Is there any further | 03:41PM |
| 17 | motion? | 03:41PM |
| 18 | *(Defense rests.)* | 03:41PM |
| 19 | MR. GORMAN:  Just renewing the motion that I had | 03:41PM |
| 20 | made earlier. | 03:41PM |
| 21 | THE COURT:  All right.  Very well.  And same | 03:41PM |
| 22 | argument? | 03:41PM |
| 23 | MR. GORMAN:  Yes, Your Honor. | 03:41PM |
| 24 | THE COURT:  Same response? | 03:41PM |
| 25 | MR. LEON GUERRERO:  Yes, Your Honor. | 03:41PM |

1   THE COURT:  It's just that at the conclusion of          03:41PM

2   the entire case.  All right.  The Court will make the same   03:41PM

3   ruling.  Okay, so that was all the evidence you will hear.   03:41PM

4   That's like one of the fastest trials I ever had, probably one   03:41PM

5   of the fastest trials you'll ever sit through.          03:41PM

6       So at this time, ladies and gentlemen, what I       03:41PM

7   need is I need to speak to the lawyers, we're going over the   03:41PM

8   jury instructions.  And those are instructions that will be   03:41PM

9   given to you tomorrow after closing arguments.  So the   03:41PM

10  attorneys are going to come up and speak to you about --   03:41PM

11  they're going to argue, too, but what the evidence -- they   03:41PM

12  believe the evidence has shown and they're going to try to   03:41PM

13  convince you why you should believe the defendant is guilty on   03:41PM

14  behalf of the prosecution or not guilty on behalf of the   03:41PM

15  defense.  So they'll be able to present their closing   03:42PM

16  arguments.  That's what that is, closing arguments.  And I   03:42PM

17  will -- I will, as the judge, give you the law that applies to   03:42PM

18  this case.          03:42PM

19      So when you go back to the jury deliberation room   03:42PM

20  to begin your deliberation, you will have the law to consider   03:42PM

21  and you will also consider all the evidence that has been   03:42PM

22  brought in the courtroom and you could consider the arguments   03:42PM

23  made by Counsels as well as you enter your deliberations.   03:42PM

24      So we're going to go ahead and recess early today   03:42PM

25  because I would rather not have you wait and it's already   03:42PM

| | | |
|---|---|---|
| 1 | 3:43, so I was going to recess at 4:30 anyway. I'm going to | 03:42PM |
| 2 | ask you to be here at 9:00 a.m. -- no later than 9:00 a.m. | 03:42PM |
| 3 | we'll start at 9:00, okay? We'll start at 9:00 a.m., and so | 03:42PM |
| 4 | be here at no later than 8:45. The attorneys will give their | 03:42PM |
| 5 | closing arguments, then we'll go into the jury instructions, | 03:42PM |
| 6 | then you'll go into deliberations. It's my expectation that | 03:43PM |
| 7 | you'll have lunch here and so I'm -- yeah, so we'll provide | 03:43PM |
| 8 | the lunch for you. The Court will provide that. I will also | 03:43PM |
| 9 | just continue to give you that instruction to please keep an | 03:43PM |
| 10 | open mind, it's not yet over. I mean, we still have to hear | 03:43PM |
| 11 | from the lawyers and you still have to hear concluding | 03:43PM |
| 12 | instructions. | 03:43PM |
| 13 | Do not -- please do not speak to anyone on any | 03:43PM |
| 14 | subject connect with this trial. It's very important that you | 03:43PM |
| 15 | base your verdict only on what happens here in the courtroom, | 03:43PM |
| 16 | what you've seen, what you've heard in this courtroom. So I | 03:43PM |
| 17 | don't want you to -- if there's been any media coverage or if | 03:43PM |
| 18 | there is any media coverage, I want you to stay away from it , | 03:43PM |
| 19 | do not look at it. The Court does not -- it should not affect | 03:43PM |
| 20 | you at all, you should not allow it to affect you and you | 03:43PM |
| 21 | actually have a duty not to allow it to affect you or have it | 03:43PM |
| 22 | considered at all as you deliberate in this matter. This case | 03:43PM |
| 23 | must be based solely on what is in this courtroom, on the | 03:44PM |
| 24 | evidence that's presented here, not on my coverage of the | 03:44PM |
| 25 | case. | 03:44PM |

| | |
|---|---|
| 1 | All right.  Do not get on to like the social | 03:44PM |
| 2 | media, as I've already told you, that was that long | 03:44PM |
| 3 | instruction, remember that, about Facebook, Twitter, LinkedIn, | 03:44PM |
| 4 | social media, Instagram, etc.  You're ordered not to | 03:44PM |
| 5 | communicate in any way regarding this case.  So I will see you | 03:44PM |
| 6 | at 8:45 a.m. | 03:44PM |
| 7 | (Discussion with clerk.) | 03:44PM |
| 8 | THE COURT:  Carmen just reminded me, I have an | 03:44PM |
| 9 | 8:30 status hearing on another defendant, so why don't I ask | 03:44PM |
| 10 | you to be here at no later than 9:15 and we'll start at 9:30. | 03:44PM |
| 11 | Okay.  So I don't want to keep you waiting then and I'll | 03:44PM |
| 12 | handle that 8:30 case.  I completely forgot about that, but | 03:45PM |
| 13 | there's -- there is something going on with that case.  Any | 03:45PM |
| 14 | questions?  Are you all comfortable back there? | 03:45PM |
| 15 | JURY:  (Nodded head.) | 03:45PM |
| 16 | THE COURT:  Yeah?  I hope you have a nice evening | 03:45PM |
| 17 | and I'll see you tomorrow morning.  Okay.  Take care. | 03:45PM |
| 18 | (Jury out at 3:45 p.m.) | 03:45PM |
| 19 | THE COURT:  I'm going to give you my concluding | 03:45PM |
| 20 | jury instructions, then we can go through that.  The Ninth | 03:45PM |
| 21 | Circuit -- shouldn't take long, I'll give you a minute to look | 03:46PM |
| 22 | at that.  So my law clerk... | 03:46PM |
| 23 | (Pause.) | 03:46PM |
| 24 | THE COURT:  Any other issues, Counsels, do you | 03:46PM |
| 25 | have anything? | 03:46PM |

```
 1              MR. LEON GUERRERO:  (Shook head.)                03:46PM

 2              THE COURT:  No?  Just get through the             03:46PM

 3    instructions.  It's 3:40 -- 3:44, do you guys want to take a    03:46PM

 4    -- about ten minutes to look at the instructions before we --  03:46PM

 5    why don't we take 10, 15 minutes.                          03:46PM

 6              MR. LEON GUERRERO:  Yes, that will work, Your     03:46PM

 7    Honor.                                                     03:46PM

 8              THE COURT:  That will probably be better, you can  03:46PM

 9    look -- I think you can look at Mr. Leon Guerrero's submission  03:46PM

10    on Count 1 and then the one that we used in Lopez, okay, I'm  03:46PM

11    going to include that.  And then the other instructions that I  03:46PM

12    give really are -- just follows the Ninth Circuit, the general  03:47PM

13    concluding instructions we do in all cases, so let's take a   03:47PM

14    ten-minute -- let's take a 15-minute recess, I'll have my law  03:47PM

15    clerk -- I think he's going to get you the instructions right  03:47PM

16    now, so if you can just wait a few minutes but we'll go ahead  03:47PM

17    and take a 15-minute recess.  You want your client to go back  03:47PM

18    for 15 minutes?                                            03:47PM

19              MR. GORMAN:  I think he'll go in the back for     03:47PM

20    now.                                                       03:47PM

21              THE COURT:  Okay, then come back when we start    03:47PM

22    the instructions.                                          03:47PM

23              MR. GORMAN:  Yeah.                                03:47PM

24              THE COURT:  Okay.                                 03:47PM

25              MR. GORMAN:  Yeah.                                03:47PM
```

| | |
|---|---|
| 1 | THE COURT:  Very well. | 03:47PM |
| 2 | (Defendant exited at 3:47 p.m.) | 03:47PM |
| 3 | THE COURT:  Okay.  We are in recess. | 03:47PM |
| 4 | (Recess taken at 3:47 p.m.) | 03:47PM |
| 5 | (Back on the record at 4:27 p.m.) | 04:27PM |
| 6 | THE COURT:  Please be seated, Counsels.  Ready? | 04:27PM |

1   THE COURT:  Very well.

2   (Defendant exited at 3:47 p.m.)

3   THE COURT:  Okay.  We are in recess.

4   (Recess taken at 3:47 p.m.)

5   (Back on the record at 4:27 p.m.)

6   THE COURT:  Please be seated, Counsels.  Ready?

7   All Counsels present, defendant's present, ready for jury

8   instruction.

9   (Discussion with law clerk.)

10   THE COURT:  All right, Counsels.  If you can look

11   -- okay, standard opening jury instructions, it says with

12   citation but yours doesn't have a citation, I'm sorry about

13   that.  But I mean, let me just tell you what the citations

14   are.  So in the Ninth Circuit -- do you guys have a copy of

15   the Ninth Circuit instructions?

16   MR. GORMAN:  I do.

17   THE COURT:  Good.  Mr. Leon Guerrero, do you have

18   that too?

19   MR. LEON GUERRERO:  I can pull that up on the

20   Internet, Your Honor.

21   THE COURT:  All right.  So we'll just go straight

22   down, just indicate if you have any objections and these are

23   -- excuse me...

24   (Pause.)

25   THE COURT:  Okay.  Okay.  All right.  So the

1    first instruction is 3.1, Counsels, "Duties of jurors to find      04:29PM

2    facts and follow the law."  So if you can look at 3.1.             04:29PM

3              MR. GORMAN:  Acceptable.                                 04:29PM

4              THE COURT:  Okay.  Let me make sure it's the most        04:29PM

5    -- okay, so let me say to the extent that -- well, I want to       04:29PM

6    make sure it's the most recent, 3.1, and I'm going to have my      04:29PM

7    law clerk double-check that tonight, verify that, okay,            04:29PM

8    Counsel?                                                           04:29PM

9              MR. LEON GUERRERO:  Yes, Your Honor.                     04:29PM

10             THE COURT:  So prosecution, any objection?               04:29PM

11             MR. LEON GUERRERO:  No objection.                        04:29PM

12             THE COURT:  And defense, you indicated no                04:29PM

13   objection?                                                         04:29PM

14             MR. GORMAN:  Yes, no objection.                          04:29PM

15             THE COURT:  Okay.  So 3.1, all right.  So let me         04:29PM

16   go through these.  That will be -- I'm just going to push         04:29PM

17   through it.  Brian, you can look at it later; is that okay?        04:29PM

18             LAW CLERK:  Yeah.                                        04:29PM

19             MR. GORMAN:  Or Your Honor --                            04:29PM

20             THE COURT:  Yeah, you want to do it right now?           04:29PM

21             MR. GORMAN:  No, no, no.  We could just say              04:29PM

22   they're all good except for 1 or 2.                               04:29PM

23             THE COURT:  No, I have to say what they all have.        04:29PM

24             MR. GORMAN:  You want to go through each one?            04:29PM

25             THE COURT:  Yeah.  I don't want any issues on            04:30PM

1    appeal.                                                    04:30PM

2            MR. GORMAN:  Okay.                                 04:30PM

3            THE COURT:  So let's just do -- okay, so it will   04:30PM

4    be -- okay, 3.1, "Duties of jurors to find facts and follow  04:30PM

5    law."  The next one is 3.2 -- I'm sorry, it's just 3.1 you  04:30PM

6    guys have indicated no objection.  "Burden of proof,       04:30PM

7    presumption of innocence, 3.2," prosecution?               04:30PM

8            MR. LEON GUERRERO:  No objections, Your Honor.     04:30PM

9            THE COURT:  Defense?                               04:30PM

10           MR. GORMAN:  No objections.                        04:30PM

11           THE COURT:  All right.  Let's go to 3 point --     04:30PM

12   okay, this defendant's decision not to testify, let's see.  04:30PM

13   That is -- actually, let's go to that one real quickly.    04:30PM

14           MR. GORMAN:  I would object to that one.  I don't  04:30PM

15   want that one given.                                       04:30PM

16           THE COURT:  Right.  And I don't think -- I think   04:30PM

17   you can do that.  I want to be sure -- I'll look at notes --  04:30PM

18   if I'm not mistaken, if the defendant doesn't want this, the  04:30PM

19   Court should not give it, I believe.  3.4.  Yeah, 3.3; right?  04:30PM

20           MR. GORMAN:  Yes.                                  04:30PM

21           THE COURT:  Okay, 3.3, let me verify that.  Okay,  04:30PM

22   yeah.  "If this instruction is requested by the defendant, it  04:31PM

23   must be given.  Otherwise, it may be wise for a trial judge  04:31PM

24   not to give an instruction over defendant's objection."  You  04:31PM

25   don't want that, okay, so that's out.  3.3 is out.  Okay.  The  04:31PM

```
 1   next one that you have in front of you is reasonable doubt.     04:31PM

 2   3.5, any objection, prosecution?                                04:31PM

 3              MR. LEON GUERRERO:  No, objection, Your Honor.        04:31PM

 4              THE COURT:  Defense?                                  04:31PM

 5              MR. GORMAN:  No objection.                            04:31PM

 6              THE COURT:  The next one is what is evidence,         04:31PM

 7   3.6.  Prosecution?                                              04:31PM

 8              MR. LEON GUERRERO:  No objection.                     04:31PM

 9              THE COURT:  Defense?                                  04:31PM

10              MR. GORMAN:  No objection.                            04:31PM

11              THE COURT:  What is not evidence, 3.7,                04:31PM

12   prosecution?                                                    04:31PM

13              MR. LEON GUERRERO:  No objection.                     04:31PM

14              THE COURT:  Defense?                                  04:31PM

15              MR. GORMAN:  No objection.                            04:31PM

16              THE COURT:  3.8, direct and circumstantial            04:31PM

17   evidence, prosecution?                                          04:31PM

18              MR. LEON GUERRERO:  No objection.                     04:31PM

19              THE COURT:  Defense?                                  04:31PM

20              MR. GORMAN:  No objection.                            04:31PM

21              THE COURT:  Credibility of witnesses is 3.9,          04:31PM

22   these are all the Ninth Circuit committee on model jury         04:32PM

23   instructions.                                                   04:32PM

24              MR. LEON GUERRERO:  No objection.                     04:32PM

25              THE COURT:  Prosecution?                              04:32PM
```

|   |   |   |
|---|---|---|
| 1 | MR. LEON GUERRERO:  No objection. | 04:32PM |
| 2 | THE COURT:  Defense? | 04:32PM |
| 3 | MR. GORMAN:  No objection. | 04:32PM |
| 4 | THE COURT:  Activities not charged, do you think | 04:32PM |
| 5 | this applies? | 04:32PM |
| 6 | MR. GORMAN:  I would object. | 04:32PM |
| 7 | THE COURT:  He wasn't charged with any other | 04:32PM |
| 8 | activities. | 04:32PM |
| 9 | MR. GORMAN:  No, I think it makes him -- | 04:32PM |
| 10 | THE COURT:  Yeah, do you agree? | 04:32PM |
| 11 | MR. LEON GUERRERO:  That's fine, Your Honor.  We | 04:32PM |
| 12 | could strike. | 04:32PM |
| 13 | THE COURT:  That was 3.10.  Okay.  And I just | 04:32PM |
| 14 | want to double-check one thing on the notes, if you don't | 04:32PM |
| 15 | mind.  Ninth Circuit.  Yeah, there was no 404(b) evidence or | 04:32PM |
| 16 | anything like that. | 04:32PM |
| 17 | MR. LEON GUERRERO:  That's correct. | 04:32PM |
| 18 | THE COURT:  Yeah.  This should not be in.  So | 04:32PM |
| 19 | this is out.  3.10, I agree.  Okay.  Let's see.  The next | 04:32PM |
| 20 | instruction is -- let me ask you, do you want a single | 04:33PM |
| 21 | defendant instruction -- I mean a separate crime? | 04:33PM |
| 22 | MR. GORMAN:  No, Your Honor. | 04:33PM |
| 23 | THE COURT:  Well, let me tell you what it says. | 04:33PM |
| 24 | MR. GORMAN:  I'm sorry? | 04:33PM |
| 25 | THE COURT:  I think you might want it.  A | 04:33PM |

```
 1    separate crime is -- this is 3.11, so --                    04:33PM
 2               MR. GORMAN:  Oh.  Oh, yeah.                       04:33PM
 3               THE COURT:  "3.11, a separate crime charged       04:33PM
 4    against the defendant in each count, you must decide each    04:33PM
 5    count separately.  Your verdict on one count should not      04:33PM
 6    control your verdict on any other count."                    04:33PM
 7               MR. GORMAN:  My mistake, yes, we absolutely want  04:33PM
 8    that.                                                        04:33PM
 9               THE COURT:  I thought so.  So prosecution, you    04:33PM
10    would agree?                                                 04:33PM
11               MR. LEON GUERRERO:  I'm looking at the comments,  04:33PM
12    Your Honor.                                                  04:33PM
13               THE COURT:  Yeah.  Use this instruction when      04:33PM
14    there is one defendant charged with multiple counts.        04:33PM
15               MR. LEON GUERRERO:  No objection, Your Honor.     04:33PM
16               THE COURT:  All right.  So we're going to add     04:33PM
17    3.11, keep.  So let's see, next instruction, on or about,   04:33PM
18    3.20, prosecution?                                          04:33PM
19               MR. LEON GUERRERO:  No objection.                04:34PM
20               THE COURT:  Defense?                             04:34PM
21               MR. GORMAN:  No objection.                       04:34PM
22               THE COURT:  All right.  Now -- all right.  So     04:34PM
23    this one.  Brian, this is what the government would put in;  04:34PM
24    right?                                                       04:34PM
25               MR. LEON GUERRERO:  Yes, Your Honor.             04:34PM
```

|  |  |
|---|---|
| 1 | THE COURT:  So the instruction on Count 1, this | 04:34PM |
| 2 | is what the prosecutors put in and then the one right after | 04:34PM |
| 3 | that is Count 2, transfer of obscene material -- let's skip | 04:34PM |
| 4 | that for a second, let's go through the other ones real | 04:34PM |
| 5 | quickly okay, if you don't mind.  I'd rather get through the | 04:34PM |
| 6 | other ones first. | 04:34PM |
| 7 | MR. LEON GUERRERO:  Yes, Your Honor. | 04:34PM |
| 8 | THE COURT:  Okay.  So if you don't mind, if you | 04:34PM |
| 9 | all can go to the knowingly instruction.  That is 5.6, | 04:34PM |
| 10 | prosecution? | 04:34PM |
| 11 | MR. LEON GUERRERO:  No objection. | 04:34PM |
| 12 | THE COURT:  Defense? | 04:34PM |
| 13 | MR. GORMAN:  No objection. | 04:34PM |
| 14 | THE COURT:  All right.  Obscenity defined, this | 04:34PM |
| 15 | is -- it's one requested by the government.  Let's hold off on | 04:34PM |
| 16 | that one too.  Okay.  Although, I think that's similar to -- | 04:35PM |
| 17 | okay, let's hold off on that because we're going to come back | 04:35PM |
| 18 | to that.  Now, there is an instruction that's -- let's go to | 04:35PM |
| 19 | opinion evidence.  Counsel? | 04:35PM |
| 20 | MR. LEON GUERRERO:  Your Honor, we -- | 04:35PM |
| 21 | THE COURT:  Opinion evidence, is there any | 04:35PM |
| 22 | opinion evidence? | 04:35PM |
| 23 | MR. LEON GUERRERO:  No. | 04:35PM |
| 24 | MR. GORMAN:  No, Your Honor. | 04:35PM |
| 25 | THE COURT:  I didn't think so.  I think in the | 04:35PM |

| | |
|---|---|
| 1 | last case I had like this, the opinion evidence was like, you |
| 2 | know, the acronyms, you know, how the shortcuts -- the way |
| 3 | that young 13 year olds speak, they kind of used that at last |
| 4 | trial but that really was brought up as something like as an |
| 5 | expert would go -- so we'll keep that out? |
| 6 | MR. LEON GUERRERO:  Yes, Your Honor. |
| 7 | MR. GORMAN:  Yes, Your Honor. |
| 8 | THE COURT:  Because he wasn't -- Adam Ring wasn't |
| 9 | offered as an expert in that area, so that's out, 4.14.  Okay. |
| 10 | And then let's go to "statements by defendant", okay, 4.1. |
| 11 | Okay, prosecution, you requested this.  Did you not?  Did you |
| 12 | request this, prosecution? |
| 13 | MR. LEON GUERRERO:  Um, let me just look at what |
| 14 | we submitted.  4.1. |
| 15 | MR. GORMAN:  I don't think so.  Yeah, I don't -- |
| 16 | THE COURT:  No, they did. |
| 17 | MR. LEON GUERRERO:  We did, Your Honor, it's |
| 18 | page 6 of -- |
| 19 | THE COURT:  4.1. |
| 20 | MR. LEON GUERRERO:  Document -- |
| 21 | THE COURT:  Prosecution requested this. |
| 22 | MR. LEON GUERRERO:  Yes, Your Honor. |
| 23 | THE COURT:  Mr. Gorman? |
| 24 | MR. GORMAN:  No objection. |
| 25 | THE COURT:  Okay.  Okay, 4.1 is in.  All right. |

The times 04:35PM and 04:36PM appear in the right margin alongside the lines.

*Court of Appeals No. 20-10072, USA v. McCarron*

```
 1   All right.  Now, prosecution, you are asking for this,        04:36PM

 2   government's use of undercover agents and informants?         04:36PM

 3              MR. LEON GUERRERO:  Your Honor, I think just -- I   04:37PM

 4   did ask for that and I think just so there's like no confusion 04:37PM

 5   with respect to this instruction --                          04:37PM

 6              THE COURT:  What instruction number is that?        04:37PM

 7              MR. LEON GUERRERO:  4.10.                          04:37PM

 8              THE COURT:  Let me look at that real quick.  I      04:37PM

 9   think that -- is that used in conjunction with entrapment?    04:37PM

10              MR. LEON GUERRERO:  Um, let --                     04:37PM

11              THE COURT:  Let me verify that.  I haven't looked  04:37PM

12   at this instruction in a long time, 4.10.                    04:37PM

13              (Pause.)                                           04:37PM

14              MR. LEON GUERRERO:  Well, it did say here, Your    04:37PM

15   Honor --                                                     04:37PM

16              THE COURT:  Yeah, it's not -- it's -- but I don't  04:37PM

17   think it applies.                                            04:37PM

18              MR. LEON GUERRERO:  Well --                        04:37PM

19              THE COURT:  There's no entrapment defense being    04:37PM

20   asserted.                                                    04:37PM

21              MR. LEON GUERRERO:  Yeah, but in the next          04:37PM

22   sentence it says, "The Ninth Circuit has held if it was not  04:37PM

23   claimed," Your Honor, "to give this instruction in the absence 04:37PM

24   of any entrapment defense instruction."                     04:37PM

25              THE COURT:  Okay.  When the defendant contends     04:37PM
```

| | | |
|---|---|---|
| 1 | that the government agent acted improperly. | 04:37PM |
| 2 | MR. LEON GUERRERO:  So I mean -- | 04:37PM |
| 3 | THE COURT:  Are you going to argue that, that the | 04:37PM |
| 4 | government agent acted improperly? | 04:37PM |
| 5 | MR. GORMAN:  No. | 04:38PM |
| 6 | THE COURT:  You're not?  What's your defense? | 04:38PM |
| 7 | MR. GORMAN:  He didn't do it. | 04:38PM |
| 8 | THE COURT:  He didn't do it? | 04:38PM |
| 9 | MR. GORMAN:  Yeah, I mean -- I'm not arguing | 04:38PM |
| 10 | that.  I'm not arguing that they acted improperly. | 04:38PM |
| 11 | THE COURT:  You're not going to say that the law | 04:38PM |
| 12 | enforcement officers engaged in stealth and deception and I | 04:38PM |
| 13 | mean, through your questioning -- | 04:38PM |
| 14 | MR. GORMAN:  Well, there's no doubt they did, but | 04:38PM |
| 15 | I don't think that's illegal, unfortunately. | 04:38PM |
| 16 | THE COURT:  No, it's not, but -- | 04:38PM |
| 17 | MR. GORMAN:  I'm not going to argue it during my | 04:38PM |
| 18 | closing -- | 04:38PM |
| 19 | THE COURT:  So you have no objection to this, | 04:38PM |
| 20 | this instruction? | 04:38PM |
| 21 | MR. GORMAN:  I just -- I don't think it's | 04:38PM |
| 22 | necessary -- no objection really, but I don't think it's | 04:38PM |
| 23 | necessary because I'm not going to argue that but... | 04:38PM |
| 24 | THE COURT:  Okay.  So you have no objection to | 04:38PM |
| 25 | this? | 04:38PM |

```
 1              MR. GORMAN:  Yeah.  Yeah, I mean -- yeah.  No, no    04:38PM

 2    objection.                                                    04:38PM

 3              THE COURT:  Yeah.  Well, I bet you're gonna argue   04:38PM

 4    this.                                                         04:38PM

 5              MR. GORMAN:  No.                                    04:38PM

 6              THE COURT:  You already said, "hello, Mr. Adam      04:38PM

 7    Ring is not Brit," saying he used a false name.               04:39PM

 8              MR. GORMAN:  But I'm not saying that what he did    04:39PM

 9    was illegal.  I'm just saying it's what he did.               04:39PM

10              MR. LEON GUERRERO:  I ask that we just keep it,     04:39PM

11    Your Honor.                                                   04:39PM

12              THE COURT:  We're going to keep it in but I'm       04:39PM

13    just -- it's just interesting, Mr. Gorman saying I'm not going 04:39PM

14    to argue this.  You already started kind of arguing this      04:39PM

15    through your cross-examination, some of the stuff.            04:39PM

16              MR. LEON GUERRERO:  It --                           04:39PM

17              MR. GORMAN:  No, I'm just saying he's not Brit      04:39PM

18    but I'm not saying that he did something wrong by doing it.   04:39PM

19    They do it all the time, yeah.                                04:39PM

20              MR. LEON GUERRERO:  Can I ask Your Honor just to    04:39PM

21    make this instruction clean, that I'd ask that we redact any  04:39PM

22    reference to informants --                                    04:39PM

23              THE COURT:  Right, I agree.                         04:39PM

24              MR. LEON GUERRERO:  -- since that's not             04:39PM

25    applicable.                                                   04:39PM
```

|   |   |
|---|---|
| 1 | THE COURT:  I agree with you. | 04:39PM |
| 2 | MR. GORMAN:  Yeah. | 04:39PM |

THE COURT:  So on the title, Brian, on 4.10,
"government use of undercover agents" -- well, agent.  One
agent.  Yeah, just Mr. Ring.  Okay, so agent.  So title and
then instruction should be given in absence... okay, so it
says "the Ninth Circuit held it was not plain error --" okay,
look at the note here, "to give this instruction in the
absence of the entrapment defense," which that's what it is,
when the defendant contends the government agent acted
improperly.  That's when it says, I mean, it's got that
provision there.  He's going to say -- he said he's not going
to argue when the government agent acted improperly.

MR. LEON GUERRERO:  Well --

MR. GORMAN:  Actually I have no objection, the
only thing is --

THE COURT:  Well, if you're going to argue that,
I'm going to let it in.  If you're not going to argue that, I
don't know -- I'm going to pull up *Hoyt* to make sure that it
should be allowed because it has a pro visio, "no entrapment
and when the defendant contends government agent acted
improperly."

MR. GORMAN:  Well, you heard some of what I said
about the agent.  If you think that -- I'm going to continue
that, what I said, but I don't think I was saying that he did

1    anything improper but I am going to continue that.  If you          04:41PM
2    think -- if it's your impression that that is -- that I'm          04:41PM
3    doing that, then maybe you should leave it in, but -- because       04:41PM
4    you heard my argument.                                             04:41PM
5            THE COURT:  Well, I heard your cross-examination           04:41PM
6    of the --                                                          04:41PM
7            MR. GORMAN:  And my opening.                               04:41PM
8            THE COURT:  Your opening statements.                       04:41PM
9            MR. GORMAN:  When I said, you know, Agent Ring             04:41PM
10   isn't Brit, there is no Brit.  He just pretended to be Brit,       04:41PM
11   so I am going to hammer on that.  But --                          04:41PM
12           MR. LEON GUERRERO:  I'd ask Your Honor that it            04:41PM
13   remain, especially with Counsel not objecting to it.              04:41PM
14           THE COURT:  Well, we'll just double-check the            04:41PM
15   case law on that too.  You read the case.                         04:41PM
16           MR. LEON GUERRERO:  I have and I'm just referring        04:41PM
17   to the comment here, Your Honor.                                  04:41PM
18           THE COURT:  But just read the case anyway.  I'll         04:41PM
19   read the case too.  So right now I'll leave it in --              04:41PM
20           MR. GORMAN:  But there is one, also, on the              04:41PM
21   bottom it says you're going to take out informants so the        04:41PM
22   final sentence of Ring read "undercover agents may use false     04:42PM
23   names and appearances."                                          04:42PM
24           THE COURT:  Right.                                        04:42PM
25           MR. GORMAN:  And I would end it there, not assume        04:42PM

1   the roles of members in criminal organizations, because that          04:42PM

2   has no relevance here.                                                04:42PM

3               THE COURT:  Well, maybe just say "assume the role          04:42PM

4   of --" okay, yeah, that's right.  Assume the role of a --             04:42PM

5               MR. GORMAN:  Or assume roles --                            04:42PM

6               THE COURT:  -- 13-year-old girl.                           04:42PM

7               MR. GORMAN:  Well, that's kind of specific, or             04:42PM

8   just "assume roles".                                                  04:42PM

9               THE COURT:  Yeah.  Criminal organization, yeah             04:42PM

10  that's out.  So what do you want, assume the role of -- assume        04:42PM

11  the role -- because that's what he did, he assumed the role of        04:42PM

12  a 13-year-old girl.                                                   04:42PM

13              MR. GORMAN:  Sure.                                         04:42PM

14              THE COURT:  So that's what the facts are.  All             04:42PM

15  right, no objection to that?                                          04:42PM

16              MR. GORMAN:  None.                                         04:42PM

17              THE COURT:  Mr. Gorman.  All right.  So I'll have          04:42PM

18  Counsels look at that, *US v. Hoyt*, I haven't looked at that in      04:42PM

19  a long time, so let's see.  Then the Court will modify --            04:42PM

20  delete an undercover agent.  Okay, delete all -- I'm sorry, in       04:43PM

21  the undercover agent, keep undercover but delete any reference       04:43PM

22  to informants.                                                        04:43PM

23              MR. GORMAN:  Yes.                                          04:43PM

24              THE COURT:  And then delete "members in criminal          04:43PM

25  organization" and then make role singular and put the role of        04:43PM

| | |
|---|---|
| 1 | -- then insert a 13-year-old girl. | 04:43PM |
| 2 | MR. LEON GUERRERO:  Yes, Your Honor. | 04:43PM |
| 3 | THE COURT:  Okay.  All right.  So anyway, just an | 04:43PM |
| 4 | FYI, make sure you guys double-check that.  Okay.  Good thing | 04:43PM |
| 5 | we're looking at that.  Duty to deliberate, Counsels, that is | 04:43PM |
| 6 | Instruction No. 7.1.  Prosecution? | 04:43PM |
| 7 | MR. LEON GUERRERO:  No objection. | 04:43PM |
| 8 | THE COURT:  Defense? | 04:43PM |
| 9 | MR. GORMAN:  No objection. | 04:43PM |
| 10 | THE COURT:  Okay.  Consideration of evidence, | 04:43PM |
| 11 | conduct of the jury, 7.2, prosecution? | 04:43PM |
| 12 | MR. LEON GUERRERO:  No objection. | 04:43PM |
| 13 | THE COURT:  Defense. | 04:43PM |
| 14 | MR. GORMAN:  No objection. | 04:43PM |
| 15 | THE COURT:  7.3, Use of notes.  Prosecution? | 04:43PM |
| 16 | MR. LEON GUERRERO:  No objection. | 04:43PM |
| 17 | THE COURT:  Defense? | 04:43PM |
| 18 | MR. GORMAN:  No objection. | 04:43PM |
| 19 | THE COURT:  Okay.  Getting it.  Jury | 04:44PM |
| 20 | consideration of punishment, 7.4. | 04:44PM |
| 21 | MR. LEON GUERRERO:  No objection, Your Honor. | 04:44PM |
| 22 | MR. GORMAN:  No objection. | 04:44PM |
| 23 | THE COURT:  Defense? | 04:44PM |
| 24 | MR. GORMAN:  No objection. | 04:44PM |
| 25 | THE COURT:  Okay.  Verdict form.  Prosecution? | 04:44PM |

| | |
|---|---|
| 1 | MR. LEON GUERRERO:  No objection. | 04:44PM |
| 2 | THE COURT:  And that's 7.5.  Defense? | 04:44PM |
| 3 | MR. GORMAN:  No objection. | 04:44PM |
| 4 | THE COURT:  Okay.  And then finally, | 04:44PM |

1    MR. LEON GUERRERO:  No objection.

2    THE COURT:  And that's 7.5.  Defense?

3    MR. GORMAN:  No objection.

4    THE COURT:  Okay.  And then finally,

5  Communication with the Court, Instruction No. 7.6, Ninth

6  Circuit, prosecution?

7    MR. LEON GUERRERO:  No objection.

8    THE COURT:  Defense?

9    MR. GORMAN:  No objection.

10    THE COURT:  Okay.  So let's go back now and let's

11  go to the first charge, Count 1.  Let's go to Count 1.

12    (Discussion with law clerk.)

13    (Pause.)

14    THE COURT:  All right, Counsels, let's go to --

15  okay, so we're looking at Instruction 11, it says, "Defendant

16  is charged in Count 1 of the indictment.  Okay.  Let me just

17  give you something then.  So I have -- we're going to give to

18  Counsels then, we're going to give you -- thank you, Brian.

19  Brian is going to give you the prosecutor's proposed

20  instruction which you already have.  And then... okay.  Now,

21  do we -- did we give him *Wilfredo Lopez* one?  Are we giving

22  that one, Brian?  Can you do that?  Let me just let them

23  compare that.  So I think -- if you guys don't mind, what we

24  can do is take the prosecutor's proposed instruction, which

25  you have , right, you guys all have that?

|   |   |
|---|---|
| 1 | MR. LEON GUERRERO:  Yes, Your Honor. | 04:46PM |
| 2 | THE COURT:  And let's compare it to *Lopez*, | 04:46PM |
| 3 | because he was charged with the same crime, 2422(b) of | 04:46PM |
| 4 | Title 18. | 04:46PM |
| 5 | MR. GORMAN:  I'm sorry, where's the *Lopez* | 04:47PM |
| 6 | instruction? | 04:47PM |
| 7 | THE COURT:  We're pulling it up right now. | 04:47PM |
| 8 | MR. GORMAN:  Oh, I see.  I see. | 04:47PM |
| 9 | THE COURT:  We're pulling it up.  Yeah.  Yeah, | 04:47PM |
| 10 | this will changed to computer.  He used a -- he used a | 04:47PM |
| 11 | computer; right? | 04:47PM |
| 12 | MR. LEON GUERRERO:  (Nodded head.) | 04:47PM |
| 13 | THE COURT:  When he did his chats? | 04:47PM |
| 14 | MR. GORMAN:  Yes. | 04:47PM |
| 15 | MR. LEON GUERRERO:  Yes. | 04:47PM |
| 16 | THE COURT:  That's right, even his photos, he | 04:47PM |
| 17 | said he used the camera from the computer, right? | 04:47PM |
| 18 | MR. LEON GUERRERO:  Yes, Your Honor. | 04:47PM |
| 19 | THE COURT:  Okay.  All right.  This is coming | 04:47PM |
| 20 | from the model rule of criminal jury instruction, Eighth | 04:47PM |
| 21 | Circuit as well. | 04:48PM |
| 22 | Brian, you're giving them Count 1? | 04:48PM |
| 23 | (Discussion with law clerk.) | 04:48PM |
| 24 | LAW CLERK:  They were all together, so I -- | 04:48PM |
| 25 | THE COURT:  Count 1 and Count 2?  Okay, thank | 04:48PM |

04:48PM
04:48PM
04:48PM
04:48PM
04:48PM
04:49PM
04:49PM
04:49PM
04:49PM
04:49PM
04:49PM
04:49PM
04:49PM
04:49PM
04:49PM
04:49PM
04:49PM
04:49PM
04:49PM
04:50PM
04:50PM
04:50PM
04:50PM
04:50PM
04:50PM

1   you.  Yeah, give them Count 1 and Count 2.  So we're going to

2   compare it to *Lopez* because he was charged with the same

3   crime.  Okay, so -- so can you take your Government 1 and then

4   the *Lopez* one.  So everything is the same with Lopez and the

5   government except we just add his name, Wilfredo Lee Lopez.

6   That's on paragraph 1, right?  Okay.  Okay, next paragraph,

7   "Defendant knowingly used the mail, a computer, or any means

8   of interstate or foreign commerce, that is A, so we just have

9   to put a computer, that was correct, connected to the

10  Internet.  So we'll keep the way the prosecution does that,

11  too, and we -- you put "knowingly attempt to persuade"?

12          MR. LEON GUERRERO:  Yes, Your Honor.

13          THE COURT:  So he knowingly used the mail to

14  knowingly attempt to persuade -- knowingly used the computer?

15          MR. LEON GUERRERO:  Yeah, we can leave it at

16  attempt to persuade.

17          THE COURT:  Okay.  So just take that knowing --

18  again, you don't have to put that in twice.  Two, "the attempt

19  to persuade, induce, and entice an individual under the age of

20  18 years of age," that's the same thing with Lopez.  The

21  second, "defendant believed individual was less than 18 years

22  of age."  Three -- third, that sexual activity occurred,"

23  that's all the same.  Okay.  Okay.  So it's not necessary for

24  the government to prove that the individual is less than 18,

25  okay, I thought you -- yeah, it's pretty much similar, isn't

```
1    it?                                                          04:50PM

2             MR. LEON GUERRERO:  Yes.                            04:50PM

3             THE COURT:  All right.  For some reason I thought   04:50PM

4    the -- oh, I know what it was.  Okay.  Let's keep going down, 04:50PM

5    it's not necessary for the government to prove that they --  04:50PM

6    necessary for the government to prove, all right.  So the only 04:50PM

7    thing I think that what my law clerk was looking at and he   04:50PM

8    asked me to look at this with you guys, is that if you look at 04:50PM

9    the criminal sexual conduct, if you look at the criminal     04:50PM

10   sexual acts under the Guam law, I think -- I mean, was it    04:51PM

11   Agent Albo or somebody testified to that, it is attempt -- or 04:51PM

12   engaging in sexual penetration with a victim that's under    04:51PM

13   14 years of age.  Now, the statute just says generally that if 04:51PM

14   the sexual activity had occurred, the defendant could have   04:51PM

15   been charged with criminal offense with the laws of Guam and 04:51PM

16   they cite to that section.                                   04:51PM

17            So I guess the question is:  Do we need to give     04:51PM

18   those elements, sexual penetration?  I mean, they cite to it, 04:51PM

19   but the prosecution doesn't put into it -- but my law clerk, 04:51PM

20   if you see -- okay, if you see the government's proposed jury 04:51PM

21   instructions, I'm sorry, with citations and edits, you have  04:51PM

22   that, right?                                                 04:51PM

23            MR. LEON GUERRERO:  Yes, Your Honor.                04:51PM

24            THE COURT:  He gave that to you?                    04:51PM

25            MR. LEON GUERRERO:  Yes.                            04:51PM
```

| | |
|---|---|
| 1 | MR. GORMAN:  Mm-hmm. | 04:51PM |
| 2 | THE COURT:  Citations and edits, I think you'll | 04:51PM |
| 3 | see... because under Guam law, it's 14 years of age, which is | 04:52PM |
| 4 | still under -- because she was or less than 14.  What do you | 04:52PM |
| 5 | guys think, you want it in or out or just leave it clean, say | 04:52PM |
| 6 | "criminal offense"? | 04:52PM |
| 7 | MR. LEON GUERRERO:  Yeah, the -- | 04:52PM |
| 8 | THE COURT:  See the red line? | 04:52PM |
| 9 | MR. GORMAN:  No, I like the red line 1. | 04:52PM |
| 10 | THE COURT:  That's what I thought. | 04:52PM |
| 11 | MR. LEON GUERRERO:  I think the problem, Your | 04:52PM |
| 12 | Honor is the -- you know, we already have an instruction that | 04:52PM |
| 13 | was already given in a previous case that's analogous, similar | 04:52PM |
| 14 | in nature to the current case and the jurors were given those | 04:52PM |
| 15 | instructions, they deliberated, and a verdict was reached and | 04:52PM |
| 16 | the concern I would have is if we're treating this case and | 04:52PM |
| 17 | applying different jury instructions when really the charges | 04:53PM |
| 18 | are analogous to one another, that's a concern the government | 04:53PM |
| 19 | would have because that -- this may be a potentially | 04:53PM |
| 20 | appealable issue. | 04:53PM |
| 21 | THE COURT:  It may be what?  It -- | 04:53PM |
| 22 | MR. LEON GUERRERO:  It may be -- | 04:53PM |
| 23 | THE COURT:  I don't think so, because -- I mean, | 04:53PM |
| 24 | you guys cite to in the indictment, you actually cite to the | 04:53PM |
| 25 | section. | 04:53PM |

| | |
|---|---|
| 1 | MR. LEON GUERRERO:  No.  I understand, Your | 04:53PM |
| 2 | Honor, I guess the concern though is the instructions that | 04:53PM |
| 3 | were given in one case that's analogous to this case and a | 04:53PM |
| 4 | verdict was reached.  The government's concern is we wouldn't | 04:53PM |
| 5 | any basis to be any grounds for an appeal that they were given | 04:53PM |
| 6 | a different set of instructions given in another case that's | 04:53PM |
| 7 | similar in nature and they're basing a verdict off of | 04:53PM |
| 8 | different jury instructions. | 04:53PM |
| 9 | THE COURT:  All right.  We're editing -- we're | 04:53PM |
| 10 | editing these instructions because there's not a Ninth Circuit | 04:53PM |
| 11 | instruction. | 04:53PM |
| 12 | MR. LEON GUERRERO:  I understand, I'm just | 04:54PM |
| 13 | putting on the record, Your Honor, that that's just the | 04:54PM |
| 14 | government's concern with -- | 04:54PM |
| 15 | THE COURT:  Okay. | 04:54PM |
| 16 | MR. LEON GUERRERO:  -- the edits. | 04:54PM |
| 17 | THE COURT:  Mr. Gorman? | 04:54PM |
| 18 | MR. GORMAN:  No.  If it was done wrong before, it | 04:54PM |
| 19 | doesn't mean we continue doing it wrong, and it essentially | 04:54PM |
| 20 | would be a basis of appeal for me to say, "Oh, there was a | 04:54PM |
| 21 | case of couple years ago that was different," that's not an | 04:54PM |
| 22 | appellate reason. | 04:54PM |
| 23 | THE COURT:  Well, that's true.  That's true. | 04:54PM |
| 24 | It's not that it's right or wrong -- I mean, we don't have a | 04:54PM |
| 25 | decision from the Ninth Circuit whether it was right or wrong, | 04:54PM |

so defense is correct.  It has been charged.  I don't think

it's going to hurt you.  You're just clarifying.  I mean, this

is -- you know, you had the agent testify that it was -- she

said the specific section it was under the Guam law and it's

in the indictment; right?

MR. LEON GUERRERO:  Yes.  Yeah, she did, Your

Honor.

THE COURT:  She did testify to that.  I mean, so

it's part of the charge.  So let's look at the red line.

"First, the defendant used a computer connected to the

internet and he knowingly attempted to persuade or induce an

individual to engage in sexual penetration and then defendant

believed such individual was less than 14 years of age.  Under

Guam law, it's less than 14 years of age, which you guys have,

you've proven that.

MR. LEON GUERRERO:  Yes, Your Honor.

THE COURT:  I mean, you've -- you know, that's

your proof.  And -- okay, you don't have to put that if -- "if

the defendant could have been charged with a criminal

offense."  That was really your deal there.  It is not

necessary for the government to prove that the individual was,

in fact, less than 14 years of age but it's necessary for the

government to prove, okay.  How is that -- I mean, I think it

is actually -- it is actually an accurate representation of

what you put in the indictment, Mr. Leon Guerrero, before the

| | | |
|---|---|---|
| 1 | grand jury. Okay. So no objection, the defense wants this? | 04:55PM |
| 2 | MR. GORMAN: Yes. | 04:55PM |
| 3 | THE COURT: Prosecution, you do not want this? | 04:55PM |
| 4 | MR. LEON GUERRERO: It's our position, we'd ask | 04:55PM |
| 5 | that the instruction that was given in the previous case that | 04:55PM |
| 6 | was similar to it be the one given to this jury. | 04:56PM |
| 7 | THE COURT: All right. Very well. The Court | 04:56PM |
| 8 | finds that based on the fact that it's noted in the indictment | 04:56PM |
| 9 | and it's -- because the jury might come back and say, "Hey | 04:56PM |
| 10 | what does this --" I mean, the other jury didn't come back but | 04:56PM |
| 11 | they might say "what is a Guam offense," what is that? What | 04:56PM |
| 12 | is a first degree criminal sexual conduct? And you would have | 04:56PM |
| 13 | had to prove that, so that's an element -- that's an element | 04:56PM |
| 14 | of the indictment -- in the charge in the indictment. So the | 04:56PM |
| 15 | Court will edit it appropriately. Okay, so that's how we're | 04:56PM |
| 16 | going to do number 1, Count 1. Let's go to Count 2, transfer | 04:56PM |
| 17 | of obscene material to a minor. | 04:56PM |
| 18 | So you have with the attempted transfer of | 04:56PM |
| 19 | obscene material, which he did transfer it, why did you have | 04:56PM |
| 20 | "attempted"? Why do you have "attempted transfer of obscene | 04:57PM |
| 21 | material"? Didn't he effectuate a full transfer? | 04:57PM |
| 22 | MR. LEON GUERRERO: Well, Your Honor, because of | 04:57PM |
| 23 | the fact that the -- the minor was the agent. | 04:57PM |
| 24 | THE COURT: Okay. | 04:57PM |
| 25 | MR. LEON GUERRERO: So again, the attempted | 04:57PM |

```
1    transfer of the material was to a minor, he attempted to do it    04:57PM
2    but the minor --                                                  04:57PM
3                THE COURT:  Okay.                                      04:57PM
4                MR. LEON GUERRERO:  The minor himself -- yeah.         04:57PM
5                THE COURT:  Okay.  Let me look at that.  Mr.           04:57PM
6    Gorman, what do you think of that?                                04:57PM
7                MR. GORMAN:  No, it's true.  He didn't transfer        04:57PM
8    it to a minor, he transferred it to an adult.                     04:58PM
9                THE COURT:  Okay.                                      04:58PM
10                MR. GORMAN:  So it's the attempted transfer.          04:58PM
11                THE COURT:  All right.  That's right there, here      04:58PM
12   we go.  Let me look at that.  Count 2 of the indictment           04:58PM
13   charged defendant with attempted transfer of obscene material     04:58PM
14   to an individual who has not obtained the age of 16 years,        04:58PM
15   okay.  In order to find the defendant guilty, government must     04:58PM
16   prove each of the following elements.  Okay, that's right, he     04:58PM
17   knowingly attempted to transfer approximately -- well, was it     04:58PM
18   12 or not 12?  How many images were transferred?                  04:58PM
19                MR. LEON GUERRERO:  It was 12, Your Honor.            04:58PM
20                THE COURT:  So why don't we take out                  04:58PM
21   "approximately" if it was 12?  Why do you keep approximately      04:58PM
22   in?  It was 12 images and how many videos, was it two videos?     04:58PM
23                MR. LEON GUERRERO:  It was one video that was         04:58PM
24   sent twice.  The same video was sent twice.                       04:58PM
25                THE COURT:  So that was the same video?               04:58PM
```

|   |   |   |
|---|---|---|
| 1 | MR. LEON GUERRERO:  Yes, Your Honor. | 04:58PM |
| 2 | THE COURT:  Okay.  I don't know if the juries | 04:58PM |
| 3 | [sic] know that because we saw two videos, okay, so -- but he | 04:58PM |
| 4 | sent it twice, right? | 04:59PM |
| 5 | MR. LEON GUERRERO:  Correct. | 04:59PM |
| 6 | THE COURT:  He knowingly attempted to transfer 12 | 04:59PM |
| 7 | images and one video.  All right.  That's fine.  So the Court | 04:59PM |
| 8 | will take out "approximately".  So he took -- okay, so you | 04:59PM |
| 9 | also have "approximately" on number two, that's out.  Okay, | 04:59PM |
| 10 | let's take out "approximately".  Okay.  All right.  Any | 04:59PM |
| 11 | problems with that then, the cleaning up part, Counsels? | 04:59PM |
| 12 | MR. GORMAN:  No, no objection. | 04:59PM |
| 13 | MR. LEON GUERRERO:  No objection by the | 04:59PM |
| 14 | government. | 04:59PM |
| 15 | THE COURT:  Okay.  Very well.  And then -- let's | 04:59PM |
| 16 | see, what else do we have, "obscenity", right?  Let's talk | 04:59PM |
| 17 | about obscenity.  I think that's in instruction number -- let | 04:59PM |
| 18 | me pull that up.  So "obscenity instruction", 1470.  So the | 04:59PM |
| 19 | prosecution is bringing this in and what is your cite on this | 05:00PM |
| 20 | again? | 05:00PM |
| 21 | MR. LEON GUERRERO:  It was the Seventh Circuit, | 05:00PM |
| 22 | Federal Rules jury instruction, Your Honor, 1470. | 05:00PM |
| 23 | THE COURT:  Okay.  I'm just looking -- I'm just | 05:00PM |
| 24 | comparing this and do you guys have -- do you have that -- I | 05:00PM |
| 25 | gave you the one for -- did we give him the one from *Lopez* or | 05:00PM |

1  no?  We did, okay, we got *Lopez*.  You guys have *Lopez?*  They 05:00PM

2  do have that, right? 05:00PM

3             (Discussion with law clerk.) 05:00PM

4             THE COURT:  Let me just see if it's the same. 05:01PM

5             MR. GORMAN:  I don't think I have the *Lopez* -- 05:01PM

6             THE COURT:  It's -- I can tell you it's 05:01PM

7  identical. 05:01PM

8             MR. GORMAN:  Okay. 05:01PM

9             THE COURT:  Hold on a second.  Yeah, it's 05:01PM

10 identical.  It's actually Seventh Circuit, right? 05:01PM

11            MR. GORMAN:  Yeah, or -- 05:01PM

12            THE COURT:  I'm looking at this right now.  It's 05:01PM

13 identical, okay.  Yeah, so "obscenity" is -- yeah.  Is there 05:01PM

14 any other instruction that we have to look at?  I think that's 05:01PM

15 it, right, Brian? 05:01PM

16            MR. GORMAN:  I believe so. 05:01PM

17            THE COURT:  And then just the verdict form, you 05:01PM

18 don't have any objections to the verdict form; right? 05:01PM

19            MR. GORMAN:  None, Your Honor. 05:01PM

20            THE COURT:  Okay.  Anything else then?  I guess 05:01PM

21 we're ready -- that's it. 05:01PM

22            MR. LEON GUERRERO:  Yes, Your Honor. 05:01PM

23            THE COURT:  Okay, so nobody has any objections on 05:01PM

24 the last -- all the last instructions that we have just gone 05:01PM

25 over?  With the exception of including the elements of the 05:01PM

```
1    local statute that was cited in the indictment, that's the      05:02PM
2    only objection there from the prosecution?                      05:02PM
3                 MR. LEON GUERRERO:  Yes, Your Honor.               05:02PM
4                 THE COURT:  Correct?                                05:02PM
5                 MR. LEON GUERRERO:  That's correct.                05:02PM
6                 THE COURT:  All right.                              05:02PM
7                 MR. GORMAN:  We did just want to be safe, the      05:02PM
8    "attempt instruction"; correct?                                 05:02PM
9                 THE COURT:  Oh, and the attempted definition, you  05:02PM
10   want to add that?                                               05:02PM
11                MR. GORMAN:  Yes, we have to.                      05:02PM
12                THE COURT:  Did we not do that?                    05:02PM
13                MR. GORMAN:  That's what I was wondering, we       05:02PM
14   definitely need to add that.                                    05:02PM
15                THE COURT:  Let's see.  Okay.                      05:02PM
16                Is there a definition here?  Do we have one with   05:02PM
17   the Ninth Circuit, "attempt"?                                   05:02PM
18                MR. GORMAN:  Yes.                                  05:02PM
19                THE COURT:  What instruction is it?                05:02PM
20                MR. GORMAN:  Although I have it as 5.3, I think    05:02PM
21   the number might have changed under the Section 5.              05:02PM
22                (Pause.)                                           05:02PM
23                THE COURT:  Okay, let's look at 5.3, have you      05:03PM
24   guys look at it.                                                05:03PM
25                MR. LEON GUERRERO:  Pulling it up, Your Honor.     05:03PM
```

| | | |
|---|---|---|
| 1 | THE COURT: Okay. Let's look at that. 5.3, | 05:03PM |
| 2 | attempt. Let's look at that. That's our last one. Okay. | 05:03PM |
| 3 | Let's see, defendant is charged in the indictment with | 05:03PM |
| 4 | attempting to commit whatever the crime is. It should follow | 05:03PM |
| 5 | the elements, instructions for the substantive crime. | 05:03PM |
| 6 | (Pause.) | 05:03PM |
| 7 | THE COURT: So there's no model instruction | 05:03PM |
| 8 | attempting to cover the specific offense of the first offense; | 05:03PM |
| 9 | right? | 05:03PM |
| 10 | MR. LEON GUERRERO: That's correct, Your Honor. | 05:03PM |
| 11 | MR. GORMAN: Yes. | 05:04PM |
| 12 | THE COURT: Yeah, so this instruction should be | 05:04PM |
| 13 | used instead -- okay -- or such instruction should be used | 05:04PM |
| 14 | instead of the generic attempt instruction. Okay. Yeah, so I | 05:04PM |
| 15 | think that's right. The model instruction amendment contains | 05:04PM |
| 16 | -- anything else, no objections? Did you read the notes | 05:04PM |
| 17 | there, Mr. Leon Guerrero? | 05:04PM |
| 18 | MR. LEON GUERRERO: Yes, Your Honor. | 05:04PM |
| 19 | THE COURT: Okay. No objections? | 05:04PM |
| 20 | MR. LEON GUERRERO: No objection. | 05:04PM |
| 21 | THE COURT: I think that's it -- yeah, it could | 05:04PM |
| 22 | be brought in, I would agree. So 5.3, we'll add that -- we'll | 05:04PM |
| 23 | add that like right after knowingly -- | 05:04PM |
| 24 | MR. GORMAN: Yes. | 05:04PM |
| 25 | THE COURT: -- the knowingly definition. Okay. | 05:04PM |

1   All right.  Any other instructions that you all want or need          05:04PM

2   to cite -- yes.                                                        05:04PM

3             MR. LEON GUERRERO:  I guess the only question is            05:04PM

4   the clean copy, Your Honor, will we get that?                          05:05PM

5             THE COURT:  We'll e-mail it to you.                          05:05PM

6             MR. LEON GUERRERO:  E-mail, okay.                            05:05PM

7             THE COURT:  So what's the best way, just to send            05:05PM

8   it to your -- we have your e-mail address.  Tonight?  We can           05:05PM

9   e-mail it to you tonight so you can use it.                            05:05PM

10            MR. GORMAN:  I'll check with Carmen before I                05:05PM

11  believe but I believe she has mine.                                    05:05PM

12            THE COURT:  We have it; right?                               05:05PM

13            THE CLERK:  Yes, Your Honor, it's on the CMECF.             05:05PM

14            THE COURT:  Oh, it's on the CMECF, that's what             05:05PM

15  she said -- okay, we'll e-mail it to you.  We'll get a clean           05:05PM

16  copy and then we'll send it to you.  You guys look at it and           05:05PM

17  then we'll just double-check, make sure there's no issues, and        05:05PM

18  I'll look at it again tomorrow morning, and then whatever I            05:05PM

19  told the jurors to be here by --                                       05:05PM

20            MR. LEON GUERRERO:  9:30.                                    05:05PM

21            THE COURT:  9:30, we'll start at 9:45.  Is that             05:05PM

22  what I said?                                                           05:05PM

23            THE CLERK:  You told them to be here at 9:15 to             05:05PM

24  start at 9:30.                                                         05:05PM

25            THE COURT:  Oh, okay.  9:15, they're going to be           05:05PM

| | |
|---|---|
| 1 | here at 9:15 and we'll start at 9:30. Okay. How long is your | 05:05PM |
| 2 | closing approximately? | 05:05PM |
| 3 | MR. COLLINS: Approximately 30 minutes, Your | 05:05PM |
| 4 | Honor. | 05:05PM |
| 5 | THE COURT: Okay, Mr. Collins, you're going to do | 05:05PM |
| 6 | it, all right. | 05:05PM |
| 7 | MR. COLLINS: Yes. | 05:05PM |
| 8 | THE COURT: Oh, so they're double-teaming you? | 05:05PM |
| 9 | MR. GORMAN: Always. Look at them all. | 05:06PM |
| 10 | THE COURT: There's like four of 'em. | 05:06PM |
| 11 | MR. GORMAN: Five -- well, I guess he's just a | 05:06PM |
| 12 | spectator. | 05:06PM |
| 13 | THE COURT: What's that? | 05:06PM |
| 14 | MR. GORMAN: Nothing. | 05:06PM |
| 15 | THE COURT: All right. All right. And then Mr. | 05:06PM |
| 16 | Gorman, how long do you think yours will be? | 05:06PM |
| 17 | MR. GORMAN: 30 minutes. | 05:06PM |
| 18 | THE COURT: 30 minutes, you'll give -- who's | 05:06PM |
| 19 | going to give rebuttal? | 05:06PM |
| 20 | MR. LEON GUERRERO: I'll give rebuttal, Your | 05:06PM |
| 21 | Honor. | 05:06PM |
| 22 | MR. GORMAN: How long will that be? | 05:06PM |
| 23 | MR. LEON GUERRERO: 20. | 05:06PM |
| 24 | THE COURT: How long will your rebuttal be? | 05:06PM |
| 25 | MR. LEON GUERRERO: 15, 20 minutes. | 05:06PM |

1          MR. GORMAN:  I would say, in fairness, 15.  I            05:06PM

2    mean, they shouldn't really get double my time.                05:06PM

3          MR. LEON GUERRERO:  15, 20 minutes.                      05:06PM

4          THE COURT:  You know when I was prosecutor in            05:06PM

5    Missouri, they would keep it such that the time was limited.   05:06PM

6    Like if we had 50 minutes, they would say, okay, prosecution,  05:06PM

7    you have 15 minutes, depending on the judge, if the prosecutor 05:06PM

8    has 15 -- had 15 minutes total, they -- they could break it up 05:06PM

9    whatever way they wanted to and defense could have 15 minutes  05:06PM

10   but I don't know -- I'd give the prosecution a little more     05:06PM

11   time because it's their burden of proof.  So to be safe, 15 to 05:07PM

12   20, I don't think that's a problem.  You can handle it, Mr.    05:07PM

13   Gorman.  I'll allow that.  Okay, that's it?                    05:07PM

14         MR. LEON GUERRERO:  That's it, Your Honor.               05:07PM

15         MR. GORMAN:  Yes.                                        05:07PM

16         THE COURT:  See you tomorrow.  Thank you.  That          05:07PM

17   was a fast trial there.                                        05:07PM

18              (Proceedings concluded at 5:10 p.m.)                05:07PM

19                         * * *

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER

CITY OF HAGATNA          )
                         )  ss.
TERRITORY OF GUAM        )


          I, Veronica F. Flores, Official Court Reporter for
the United States District Court of Guam, do hereby certify
the foregoing pages, 1 to 180, to be a true and correct
transcript of the proceedings held in the above-entitled
matter to the best of my ability.

          Dated this 23rd day of April 2020.


                              /s/Veronica F. Flores
                              Veronica F. Flores