IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

UNITED STATES OF AMERICA,    ) Court of Appeals No. 20-10072
                             )
               Plaintiff,    ) District Court No. 19-00012
                             )
        vs.                  )
                             )
MICHAEL LOUIS MCCARRON,      )
                             )
_____ Defendant.  _)

TRIAL TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE FRANCES TYDINGCO-GATEWOOD,
CHIEF JUDGE
OCTOBER 31, 2019; 9:38 A.M.
HAGATNA, GUAM

**Day 3**

**Closing Arguments, Commencement of Jury Deliberations**       09:39:18AM

Proceedings recorded by *mechanical stenography*.

Veronica F. Flores, CSR-RPR
Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

APPEARANCES


Appearing on behalf of plaintiff:


OFFICE OF THE UNITED STATES ATTORNEY
BY: STEPHEN LEON GUERRERO, AUSA
J. JUSTIN COLLINS, SPECIAL ASSISTANT USA
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910
(671) 472-7332


Appearing on behalf of defendant:


OFFICE OF THE FEDERAL PUBLIC DEFENDER
BY: JOHN T. GORMAN, FPD
400 Route 8, Suite 501
FHB Building
Mongmong, Guam 96910
(671) 472-7111


ALSO PRESENT:

Michael McCarron, Defendant

Adam Ring, AFOSI

Christina Albo, NCIS

Renate Grimes, FPD

# I N D E X

|                                          | Page |
|------------------------------------------|------|
| Closing arguments by Government          | 8    |
| Closing arguments by Defense             | 23   |
| Rebuttal argument by Government          | 46   |
| Sentencing set for January 29, 2020      | 81   |

Veronica F. Flores, CSR-RPR
Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

```
 1              October 31, 2019; 9:38 a.m.; Hagatna, Guam

 2                            * * *

 3                                                              09:38AM

 4          THE COURT:  Good morning, everyone.  Okay, I        09:38AM

 5   think the jurors are here.                                 09:39AM

 6          THE CLERK:  Good morning.  Your Honor, this is      09:39AM

 7   Criminal Case No. 19-00012, United States of America v.    09:39AM

 8   Michael Louis McCarron; Jury Trial, Day 3, Closing Arguments, 09:39AM

 9   Commencement of Jury Deliberations.                        09:39AM

10          Counsel, please state your appearances.            09:39AM

11          MR. LEON GUERRERO:  Buenas and hafa adai, Your      09:39AM

12   Honor, Stephen Leon Guerrero, on behalf of the United States. 09:39AM

13   Also present is Special Assistant U.S. Attorney Justin     09:39AM

14   Collins, Greg Helm with the U.S. Attorney's office and Agents 09:39AM

15   Albo and Ring.                                             09:39AM

16          THE COURT:  Okay, good morning, everyone.           09:39AM

17          MR. COLLINS:  Morning, Your Honor.                  09:39AM

18          MR. GORMAN:  Buenas and hafa adai, Your Honor,      09:39AM

19   John Gorman, Federal Public Defender for Mr. McCarron, he's 09:39AM

20   seated to my right.  Also appearing with us is Renate Grimes 09:39AM

21   from our office.                                           09:39AM

22          THE COURT:  Good morning, everyone.  So the jury    09:39AM

23   instructions were mailed to you last night.  But anyway, I 09:39AM

24   reviewed them late last night too and I made some track    09:39AM

25   changes.  You have them with you?                          09:39AM
```

| | |
|---|---|
| 1 | MR. GORMAN:  I just received them. | 09:39AM |
| 2 | MR. LEON GUERRERO:  We just received. | 09:39AM |
| 3 | THE COURT:  So let's just go trough it real | 09:39AM |
| 4 | quickly, make sure that there's no issues here.  Look at | 09:39AM |
| 5 | Instruction 4, there were no -- there were no facts to which | 09:40AM |
| 6 | the parties have agreed, so I just deleted that. | 09:40AM |
| 7 | MR. LEON GUERRERO:  That's fine, Your Honor. | 09:40AM |
| 8 | THE COURT:  Correct?  Okay, if there are any | 09:40AM |
| 9 | issues, just let me know.  And then instruction number, let me | 09:40AM |
| 10 | verify.  Any track changes?  Okay, so attempted enticement of | 09:40AM |
| 11 | a minor, the only thing that we added the word *attempted* | 09:40AM |
| 12 | because this is an attempt crime for both crimes, so that's | 09:40AM |
| 13 | noted within the title.  And then also, Counsels, if you see | 09:40AM |
| 14 | -- I wanted them to just give you the track changes, to | 09:40AM |
| 15 | include the dates, number one, and then -- okay, and then | 09:40AM |
| 16 | number two, is just -- just moving the words around, just so | 09:40AM |
| 17 | it will flow.  Any problems with that?  This is | 09:40AM |
| 18 | Instruction 10, prosecution? | 09:41AM |
| 19 | MR. LEON GUERRERO:  No objection, Your Honor. | 09:41AM |
| 20 | THE COURT:  Defense? | 09:41AM |
| 21 | MR. GORMAN:  No objection. | 09:41AM |
| 22 | THE COURT:  Okay.  All right.  And then -- I | 09:41AM |
| 23 | don't know why knowingly was underlined.  Okay.  Oh, you know | 09:41AM |
| 24 | what it is?  What I did was because the first count is | 09:41AM |
| 25 | attempted enticement of a minor and they used the word | 09:41AM |

1   *knowingly* attempt.  I put those words, because it -- they're          09:41AM

2   definitions, I put them right after Count 1.  So we just moved          09:41AM

3   the location of them by one.  Any objection to that?                    09:41AM

4           MR. LEON GUERRERO:  No objection.                               09:41AM

5           MR. GORMAN:  No objection.                                      09:41AM

6           THE COURT:  All right.  Very well.  Instruction                 09:41AM

7   No. 13, I think it now becomes, it will just say "attempted            09:41AM

8   transfer of obscene material to minor," I already explained            09:41AM

9   why.  And again, that just changes the -- we just added the            09:41AM

10  dates as contained within the indictment between on or about.          09:41AM

11  Okay.                                                                   09:41AM

12          Then the knowingly attempt, you can see the only               09:41AM

13  thing, we just moved the location.  Obscenity defined, that's          09:41AM

14  as defined by the Seventh Circuit because the Ninth Circuit            09:42AM

15  doesn't -- you know, they don't have their own definition, the        09:42AM

16  Ninth Circuit instruction, but it does track *Miller*.  And I         09:42AM

17  think that's it.  Let me just ask Brian.                               09:42AM

18          (Pause.)                                                        09:42AM

19          Then we'll get you the verdict forms.  Okay,                   09:42AM

20  ready to go.                                                            09:42AM

21          MR. LEON GUERRERO:  Yes, Your Honor.                            09:42AM

22          MR. GORMAN:  Yes, Your Honor.                                   09:42AM

23          THE COURT:  Okay.  So I'll ask you, generally                  09:42AM

24  I'll give the instructions before closing arguments just so           09:42AM

25  that you can say, well, as the judge referred to, or I can            09:42AM

| | |
|---|---|
| 1 | give it after closing arguments.  You guys -- | 09:42AM |
| 2 | MR. GORMAN:  I prefer after. | 09:42AM |
| 3 | MR. LEON GUERRERO:  After, Your Honor. | 09:42AM |
| 4 | THE COURT:  After is fine with me too.  All | 09:42AM |
| 5 | right.  We'll call in the jury.  Are there any other issues | 09:43AM |
| 6 | with the instructions, Counsels? | 09:43AM |
| 7 | MR. LEON GUERRERO:  None from the government, | 09:43AM |
| 8 | Your Honor. | 09:43AM |
| 9 | MR. GORMAN:  None from the defense. | 09:43AM |
| 10 | THE COURT:  Okay, so I gave you the one with the | 09:43AM |
| 11 | citations and of course the jurors will get closing jury -- I | 09:43AM |
| 12 | mean I gave you the proposed instructions with the citations | 09:43AM |
| 13 | on the bottom.  You know, the sources.  But the jurors will | 09:43AM |
| 14 | get it without.  Okay.  And I'll give you the verdict forms, | 09:43AM |
| 15 | too.  I didn't like the way that verdict form was formatted so | 09:43AM |
| 16 | we're gonna -- we're changing the verdict form, I'll let you | 09:43AM |
| 17 | all see that.  Then you could all review it and let me know if | 09:43AM |
| 18 | you have any concerns, okay, Counsels? | 09:43AM |
| 19 | MR. LEON GUERRERO:  Yes, Your Honor. | 09:43AM |
| 20 | THE COURT:  Please rise for the jury. | 09:43AM |
| 21 | (Jury in at 9:43 a.m.) | 09:43AM |
| 22 | THE COURT:  Hafa adai and good morning, ladies | 09:44AM |
| 23 | and gentlemen.  How are you? | 09:44AM |
| 24 | THE JURY:  Fine. | 09:44AM |
| 25 | THE COURT:  So as I indicated, this would be a | 09:44AM |

```
1    short trial in terms of presentation and now we are at the        09:44AM
2    part of the trial called Closing Arguments.  This is the          09:44AM
3    concluding part of the trial.  So each side has an opportunity     09:44AM
4    to give a closing argument.                                        09:44AM
5              The prosecution, Mr. Collins, will be giving the         09:44AM
6    opening closing argument on behalf of the government.  And         09:44AM
7    then following his presentation, Mr. Gorman, on behalf of Mr.      09:44AM
8    McCarron, will be giving his closing argument and then the         09:44AM
9    prosecution then will come back and give a rebuttal closing        09:45AM
10   argument and that will be given by Mr. Leon Guerrero.  And the     09:45AM
11   reason why the prosecution gets to go twice is because it's        09:45AM
12   their burden of proof.  And that's just how the law is.            09:45AM
13             The Court does have some concluding jury                 09:45AM
14   instructions, but I won't be giving them to you until after        09:45AM
15   the parties -- after the attorneys give their closing.  So         09:45AM
16   please listen closely to the attorneys and we'll go ahead and      09:45AM
17   begin.  Very well.  Mr. Collins, you may begin.                    09:45AM
18             MR. COLLINS:  Yes, Your Honor.                           09:45AM
19             (Pause.)                                                 09:45AM
20             (Closing Arguments by Government)                        09:45AM
21             MR. COLLINS:  May it please the Court, Counsel,          09:46AM
22   ladies and gentlemen of the jury, when the defendant traveled      09:46AM
23   here to Guam in October of 2017, he did so to work on a            09:46AM
24   military project.  But he also came with another objective in      09:46AM
25   mind, and he told you in his own words what that objective         09:46AM
```

was, at first he called it *companionship*.  But when asked what
he meant by companionship, he told you in his own words what
he meant.  He was asked, were you looking for a dive partner?
No.  He was looking for one-time sexual relations.  That's
what he told you in the interview with law enforcement, what
he meant by companionship, one-time sexual relations.  And be
done.  And it was in the furtherance of that goal, in the
furtherance of that objective that the defendant met Brit, a
person he believed to be a 13-year-old female.  And despite
being told on multiple occasions by Brit that she was 13,
despite being asked if he was okay with her age, he persisted.
He continued to engage in sexually-explicitly conversations,
he continued to take steps to groom Brit, to make her more
comfortable with his age, with the sexual activities that he
was asking her to perform.

          And in doing so, he committed both of the crimes
in which he is charged today.  And when he was finally
confronted with the evidence before him by law enforcement, by
NCIS and the FBI, when he was confronted with those messages,
the messages you have all seen, what did the defendant say?
"It was definitely wrong.  It was definitely wrong.  It was
definitely wrong. " Those are the defendant's words and he
said them three times.  And he's right, members, it was wrong,
but more than being just wrong, it was criminal.  And what the
government has shown to you over the course of the trial is

1    the defendant has in fact committed both of the crimes to       09:48AM

2    which he has been charged, attempted transfer of obscene        09:48AM

3    material to a minor and attempted enticement of a minor.        09:48AM

4            I'll talk for a minute about both of those            09:48AM

5    charges.  Both of the charges have been charged as an attempt.   09:48AM

6    Counsel for the defendant has made a point during the course     09:48AM

7    of this trial that this was just a conversation between two      09:48AM

8    dudes.  And it was, it was in fact Special Agent Ring sitting    09:48AM

9    on the other end of the computer and thank goodness no          09:48AM

10   children, no actual children were harmed in the commission of   09:48AM

11   this crime.  But for the actions of the government, a child     09:48AM

12   would have been harmed by the defendant's crimes.              09:48AM

13           So in this case, because there was not an actual      09:49AM

14   child involved, that's why the government is charging these     09:49AM

15   two counts as attempts.  Attempted enticement, because there    09:49AM

16   was no minor.  Attempted transfer of obscene material to a      09:49AM

17   minor, because there was no minor.                            09:49AM

18           But remember, ladies and gentlemen, had there        09:49AM

19   actually been a 13-year-old girl on the other end of that      09:49AM

20   computer, we wouldn't be talking about attempt.  We would have  09:49AM

21   been talking about an actual victim.                          09:49AM

22           Now you've seen a lot of evidence over the course     09:49AM

23   of this trial.  I want to take a few moments to talk about     09:49AM

24   some of that evidence that you've seen.  Transfer of obscene    09:49AM

25   material; now at beginning of this trial, Counsel for the      09:49AM

defendant came forward and told you that he himself admitted

you were going to see some pretty disgusting photos and you

did.  And prior to retiring to the deliberations room to

decide what it means to be obscene, you're going to hear

instructions from the judge about what the definition of

obscenity means.  So I want to take a minute to refer to a

couple of those definitions now.

What the judge is going to instruct you is that

you have to apply an adult contemporary community standard.

And when we talk about a community standard, we're not talking

about any community.  We're talking about this community, the

communities in which you reside, the communities in which we

reside.  How would an average adult in our community right now

find this material to be?  They're going to ask you whether or

not that material appeals to the prurient interest.  Prurient

interest is something appeals to the prurient interest when

it's directed to an unhealthy or abnormally lustful or erotic

interest or to lascivious or degrading interest or to a

shameful or morbid interest in sex or nudity.  It's obscene

when it depicts or describes sexual conduct in a patently

offensive way and when a reasonable person would find that

material lacks serious literary, artistic, political or

scientific value.

Members, in deciding whether or not the material

involved in this case was obscene, these are all the exhibits,

1  the 12 exhibits on top, are all the exhibits that contain an          09:51AM

2  explicit photo by the defendant.  Also you see at the bottom          09:51AM

3  of the two exhibits where a defendant sent a video, an obscene        09:51AM

4  video to the person that he believed to be a 13-year-old             09:51AM

5  minor.  Now we're going to walk through each of these photos.        09:51AM

6          You don't need to rely on my telling you that              09:51AM

7  these photos are obscene.  The defendant told you in his own         09:51AM

8  words in Government's Exhibit No. 5 when he was talking to           09:51AM

9  Brit "Just a warning, they'll be dirty."  Counsel for the           09:51AM

10 defendant came before you in his opening statement and he told      09:51AM

11 you that they were going to be dirty and they were.                 09:51AM

12         Members, this is the defendant's opening saga.             09:51AM

13 This is the message that he sent to Brit, a person he believed      09:52AM

14 to be a 13-year-old female, exactly two years ago today.  Is        09:52AM

15 this something that an average adult in our community would         09:52AM

16 say appeals to the prurient interest?  This photo, is this          09:52AM

17 something that an average adult in our community would say is       09:52AM

18 unhealthily erotic?  Is this photo one that someone in our          09:52AM

19 community would say is abnormally lustful?  Is this something       09:52AM

20 that an average person in this community would say is               09:52AM

21 lascivious?  Is this something that an average adult in this        09:52AM

22 community would say is degrading?  Something that applies to a      09:52AM

23 shameful interest in sex?  A shameful interest in nudity.          09:53AM

24 Something that depicts or describes sexual conduct in a             09:53AM

25 patently offensive way?  Consider the people, the adults in        09:53AM

this community.  That's the standard in which we're applying. 09:53AM

Not the standard of the defendant, not the standard that 09:53AM

Counsel for defendant came before you in opening statements 09:53AM

and said people on the internet these days.  What would the 09:53AM

average adult in this community find to be obscene, that is 09:53AM

what the law is going to tell you that you need to apply in 09:53AM

determining whether or not material you've seen in this case 09:53AM

was obscene.  Is this something that has any literary value? 09:54AM

Is this something that has artistic value?  Is this something 09:54AM

that has scientific value? 09:54AM

Finally, members, is this something that has 09:54AM

political value?  Members, the answers to all of these 09:54AM

questions are no, and that's because the photos that you have 09:54AM

seen throughout the course of this trial absolutely fall under 09:54AM

the legal definition of obscenity, an average adult in this 09:54AM

community.  I implore you to find that they would find these 09:54AM

photos obscene and the law and the evidence before you 09:54AM

supports that conclusion.  But the defendant didn't just send 09:54AM

explicit photos to Brit.  He sent her a video.  And while it 09:54AM

was the same video, he sent it to her twice.  You all saw that 09:54AM

video. 09:54AM

Members, there is no question the material you've 09:55AM

seen in this case, the material the defendant sent to a person 09:55AM

he believed to be a 13-year-old female were in fact obscene. 09:55AM

There is no other reasonable conclusion supported by this.  So 09:55AM

1   when you retire to deliberate on Count 2 of this offense,                 09:55AM

2   there should be no question in your mind, no reasonable doubt             09:55AM

3   the material that you've seen before you today is obscene.                09:55AM

4           Members, I want to talk for a moment about                        09:55AM

5   government's count No. 2.  I'm sorry, count No. 1, attempted              09:55AM

6   enticement of a minor.  Now again, remember I told you at the             09:55AM

7   beginning of this trial that these counts were charged as an              09:55AM

8   attempt because there was no actual 13-year old female on the             09:55AM

9   other end.  But it was an attempt -- the reason it's charged             09:55AM

10  as an attempt is because -- because there was no actual 13               09:56AM

11  year old, he couldn't have actually entice a 13 year old.                09:56AM

12  Again, we're charging with attempt here.  But the crime is not           09:56AM

13  attempted sex with a minor.  The crime is attempted enticement           09:56AM

14  of a minor, a crime that can be committed entirely behind a              09:56AM

15  computer.                                                                09:56AM

16          Counsel for the defendant in his opening                         09:56AM

17  statement came before you and talked about To Catch a Predator           09:56AM

18  TV program.  Members, that's not what the legal standard in              09:56AM

19  this case is.  We're not talking about attempted traveling to            09:56AM

20  engage in sexual activity with a minor, we're talking about              09:56AM

21  attempted enticement of a minor and that's exactly what the              09:56AM

22  defendant did in this case.                                              09:56AM

23          In the instructions that the judge is going to                    09:56AM

24  provide for you today, she's going to tell you it's not                  09:56AM

25  necessary for the government to prove that the individual was            09:56AM

1  actually persuaded, induced, or enticed, but it is necessary  09:56AM
2  for the government to prove that the defendant intended to  09:57AM
3  engage in some sort of sexual penetration with the individual  09:57AM
4  and willfully and knowingly took some action as what's a  09:57AM
5  substantial step towards bringing about that sexual  09:57AM
6  penetration.  09:57AM
7  Remember what the defendant's own  09:57AM
8  explicitly-characterized intent was, what his goal was.  He  09:57AM
9  was here to do work on a military contract but he was also  09:57AM
10 here for one-time sexual relations.  He told you what his  09:57AM
11 intent was.  He told you exactly what he intended to do.  And  09:57AM
12 when the person that he found on the other end of that screen  09:57AM
13 was a 13-year-old girl, he was not about to let that stand in  09:57AM
14 his way.  09:57AM
15 Government's Exhibit 4 starts off by asking Brit,  09:57AM
16 "I really like imagining you with your fingers, touching your  09:57AM
17 private parts, and playing."  After sending the video of  09:57AM
18 himself, defendant says, "Does it make you wet in your private  09:57AM
19 parts?"  He's not talking about getting together and playing  09:57AM
20 board games.  He's talking about sex.  His goal of one-time  09:58AM
21 sexual relations and be done.  09:58AM
22 Government's Exhibit 12; I would love to teach  09:58AM
23 you -- excuse me, "I would love to meet you and teach you  09:58AM
24 about everything sex one day."  This, members, is where we  09:58AM
25 start to see the defendant take steps that we characterize as  09:58AM

grooming behavior, actions where he was trying to make Brit
more comfortable with his age, more comfortable with the acts
that he was asking her to perform.

Government's Exhibit 11; "I don't mind you
knowing nothing about that, I would love to teach you very
slowly or fast, depending on what you wanted."  More grooming
behavior, trying to make her more comfortable with what he's
asking her to do.

Government's Exhibit 13; Brit asks, "I'd be okay
with it if you really mean it."  Defendant's response, "No,
that's not weird.  I would love to put my mouth around your
nipples and grab your butt."  Again, members, all steps the
defendant is taking towards making Brit more comfortable,
enticing her.  Not traveling to meet her, enticing her to
engage in sexually-explicit activity.

Government's Exhibit 13; "Have you ever wanted to
be naked with someone?  Because you would be beautiful."
We're not talking in the abstract.  We're talking about being
naked with someone in real life.  And we already know what the
defendant's objective is, we know what his goal is:  One-time
sexual relations.

Government's Exhibit 14; Brit asks, "How would
all this work and what would we do?"  Defendant says, "I would
like to maybe kiss, maybe let you explore, anything you
wanted, I would be down for whatever."  Again, more grooming

behavior. More enticement of Brit. Government's Exhibit No. 14; "If you're okay with me touching you, I will touch you. You tell me what feels good and what doesn't. I am here to help you. I am your faithful servant." More steps towards grooming Brit, making her more comfortable. "That makes me so excited and horny." The defendant's words. "I would take things slow, we would talk a bit, kiss, maybe a little, and then I would let you touch me, maybe touch you. You being nervous is natural." Members, this is textbook grooming behavior where the defendant is continuing to try and engage Brit, entice Brit, make her more comfortable with the actions that he wants to perform, one-time sexual relations.

Brit asks, "Where do we touch? I'm confused. To be honest, I'm kind of embarrassed because I just don't know that stuff." And what's the defendant's response? "If you're okay, private parts." And when asked during his interview with law enforcement, he was asked what he meant by private part. And you heard in the defendant's own words what he intended. "Penis and vag." When asked what he meant by vag, vagina. He's talking about touching Brit's vagina, sexual activity.

Government's Exhibit 16; the defendant says, "I love you." Members, there might not be a better example of grooming behavior. The defendant here tried to tell Brit, trying to convince her that he's in love with her, a statement

1 he's making to try to get her to have sex with him, enticing 10:01AM

2 her to sexual activity. And is he serious about it, is he 10:01AM

3 messing around? "I am really serious right now." He goes on 10:02AM

4 to communicate, "really serious." But then he goes further, 10:02AM

5 he goes further into actually taking steps to bring about this 10:02AM

6 meeting. After he's already enticed her, after she's already 10:02AM

7 told him, that she's willing to get together, after he has 10:02AM

8 already committed the crime of enticement of a minor, he wants 10:02AM

9 to get together and actually engage. "When can we make out? 10:02AM

10 Hell yeah I got base access, I would love to come get you." 10:02AM

11 C-U-M. An obvious reference to ejaculate. 10:02AM

12 Government's Exhibit 15; "You make me so horny. 10:02AM

13 I am so excited, what are you most excited to do?" We're 10:02AM

14 moving out of the realm of just talking about enticement, he's 10:03AM

15 already committed the crime of enticement. Now we're talking 10:03AM

16 about actually engaging in the activity. "What are you most 10:03AM

17 excited to do with me in person? I cannot wait to be with you 10:03AM

18 in person. God, you are so hot." 13-year-old girl. 10:03AM

19 Government's Exhibit 18; "What would you want to 10:03AM

20 do? Something sexual?" Again, members, remember what he told 10:03AM

21 you in the interview with law enforcement, his objective was, 10:03AM

22 one-time sexual relations. 10:03AM

23 Government's Exhibit 15; tells her exactly where 10:03AM

24 he is. "Come and get me, I'm in room 342 and I can't wait to 10:03AM

25 see you." We've already moved past the enticement, they're 10:03AM

1   ready to get together.  And then finally he asks, "What is          10:03AM

2   your address and when is it too late to come over?"  Members,       10:03AM

3   he's not asking for her address because he wanted to be pen         10:04AM

4   pals.  He's not going to send her a Valentine's Day card.  He       10:04AM

5   wants one-time sex, sexual relations with a 13-year-old girl.       10:04AM

6           Members, there was a lot of discussion over the            10:04AM

7   course of this trial about two dudes having a conversation.        10:04AM

8   The words by Counsel for the defendant.  And as I mentioned        10:04AM

9   before, thank God that Special Agent Adam Ring was the person      10:04AM

10  sitting behind that computer, thank God there was no actual        10:04AM

11  child involved in the commission of this crime.  But when the      10:04AM

12  defendant's Counsel tries to tell you that this is two dudes       10:04AM

13  having a conversation, it doesn't matter, he's trying to           10:04AM

14  distract you from the actual legal standard.  And what the         10:04AM

15  judge is going to inform you is that it is not necessary for       10:04AM

16  the government to prove that the individual was in fact less       10:04AM

17  than 14 years of age.  It is necessary for the government to       10:05AM

18  prove that the defendant believed, the defendant believed such    10:05AM

19  person to be under 14 years of age.                                10:05AM

20          And you don't have to ask me about what the                10:05AM

21  defendant thinks about her being under 14 years of age.  "Does    10:05AM

22  it bother you that I'm only 13?"  "I think it might be okay."      10:05AM

23  "I don't know much about this, sorry if it makes me sound         10:05AM

24  dumb."                                                             10:05AM

25          Defendant:  "Nope, not dumb at all, you sound             10:05AM

1    very innocent, which is okay, innocence should never be     10:05AM

2    wasted.  Treasure it always."     10:05AM

3           He's making an explicit reference to a child, the     10:05AM

4    innocence of a child.  He's telling you exactly what's going     10:05AM

5    on inside his mind.     10:05AM

6           This is the photo that Brit sent to the     10:06AM

7    defendant.  Members, look at what's on her teeth.  It's a     10:06AM

8    retainer.  When you look at this photo, is it reasonable for     10:06AM

9    someone to look at this photo, after having been told that the     10:06AM

10    person that they're engaging with was 13 years old and still     10:06AM

11    think that that person is not a minor?  He absolutely knew who     10:06AM

12    he was talking to.     10:06AM

13           Brit asks him, "I was worried you were going to     10:06AM

14    be worried about my age because I look so young.  Are you     10:06AM

15    sure?  Are you sure you're okay with my age?"     10:06AM

16           "While your age makes me nervous, you are so     10:06AM

17    incredibly beautiful."  He pauses, he knows it's wrong and he     10:06AM

18    blows right past it.  He's not going to let the fact that the     10:06AM

19    person on the other end of that string is a 13-year-old female     10:06AM

20    get in the way of his objective.  One-time sexual relations.     10:06AM

21    "Oh my gosh, you really don't care that I don't know that,     10:07AM

22    that I'm only 13 for real?"  He doesn't care.  "I care that     10:07AM

23    you're beautiful and I would love to see so much more of you     10:07AM

24    and that I find you to be so sexy."  Doesn't care that she's     10:07AM

25    13.     10:07AM

10:07AM

1    Members, it's not just the messages that you saw,

2 it's not just the e-mail exchanges, it's the words that came

3 out of the defendant's own mouth to tell us exactly what he

4 knew during that interview, and remember when I asked Special

5 Agent Albo when she was on the stand, "At any point during

6 that interview, did you bring up the name Special Agent Adam

7 Ring?  Did you tell the defendant that it was an undercover

8 operation?  Did you tell him that Brit actually doesn't

9 exist?"  "No."  When this interview occurred, the defendant

10 believed that Brit was a real person, a real 13-year-old girl.

11                    (Exhibit played.)

12         MR. COLLINS:  Did you know she was 13?  "Yes."

13 Yes.  That's what's important here.  Not that it was two dudes

14 having a conversation, not that Brit isn't a real person, none

15 of that matters.  It matters what was in the defendant's mind,

16 what did he believe.

17                    (Exhibit played.)

18         "At that point, I think I did.  At that point, I

19 think I did."  And he said it in his communication, "It means

20 you're real, it means you're real, you're not Special Agent

21 Adam Ring.  You are Britthedork2004 and I want to have sex

22 with you."  This isn't two dudes having a conversation.  This

23 is a child predator having sex with a person he believed to be

24 13 years old.

25         Members, you have very important duty to exercise

1  today and that is to look at the evidence that you have seen.    10:09AM

2  So listen to the testimony that you have heard under oath and    10:09AM

3  to listen to the words that the defendant himself in deciding    10:09AM

4  whether or not to find him guilty of the two offenses for    10:10AM

5  which he is charged.    10:10AM

6          Members, the evidence in this case is    10:10AM

7  overwhelming and it is clear and it leaves no reasonable doubt    10:10AM

8  that the defendant has committed both of these crimes because    10:10AM

9  he told you himself, when confronted with that evidence, when    10:10AM

10  confronted with the evidence that you have seen, he said, "It    10:10AM

11  was definitely wrong."  But, members, it's more than wrong,    10:10AM

12  it's disgusting and it's criminal.  The defendant knew exactly    10:10AM

13  what he was doing.  He wanted one-time sexual relations and he    10:10AM

14  took every step he could to bring that about.  He sent her    10:10AM

15  nude photos, obscene photos, explicit videos, he enticed her.    10:10AM

16  There is no question about the fact that he actually enticed    10:10AM

17  the person that he believed to be a 13-year-old female.  The    10:10AM

18  fact that it was Special Agent Adam Ring is the only reason    10:10AM

19  we're talking about attempt.  There is no requirement under    10:11AM

20  the law for the defendant to travel anywhere, he doesn't need    10:11AM

21  to show up with Smirnoff and condoms.  There isn't a    10:11AM

22  made-for-TV moment.  That's not what the law requires.  And    10:11AM

23  most importantly, it doesn't matter that it's two dudes having    10:11AM

24  a conversation, it matters what the defendant believed.  And    10:11AM

25  what the defendant believed is that he was about to achieve    10:11AM

1   his objective, sexual relations with a 13-year-old female.   10:11AM

2           The evidence in this case only supports one   10:11AM

3   verdict, find the defendant guilty on both counts.  Thank you.   10:11AM

4           THE COURT:  Thank you, Mr. Collins.  Mr. Gorman,   10:11AM

5   you may proceed.   10:11AM

6           *(Closing arguments by Defense.)*   10:12AM

7           MR. GORMAN:  May it please the Court, Michael,   10:12AM

8   Counsel.  Well, one thing I'm not going to do is come up here   10:12AM

9   and scream at you like he just did because this is a serious   10:12AM

10  case, very serious consequences for my client and I want you   10:12AM

11  to look at the evidence and look at it carefully and   10:12AM

12  impartial, an unemotionally.  So I'm not going to yell at you,   10:12AM

13  like he just did for half an hour.  Why is he yelling?   10:12AM

14  Because I think he wants to distract you from what's really   10:12AM

15  going on in this case and there are two major gaping holes in   10:12AM

16  this case and there's a hole in each one of the charges that   10:12AM

17  are here.   10:12AM

18          So let's talk about it without yelling.  What are   10:12AM

19  they lacking in the first case?  The first case is attempted   10:12AM

20  enticement of a minor.  So the problem here -- excuse, sorry.   10:13AM

21          (Waiting for screen to come down.)   10:13AM

22          MR. GORMAN:  A little --   10:13AM

23          THE COURT:  We'll put it up.  You want to use the   10:13AM

24  -- okay.   10:13AM

25          MR. GORMAN:  I apologize, we'll be with you very   10:13AM

| | | |
|---|---|---|
| 1 | shortly. | 10:13AM |
| 2 | THE COURT:  Is it -- | 10:13AM |
| 3 | MR. GORMAN:  I don't know. | 10:13AM |
| 4 | THE COURT:  You're not using the ELMO.  You're | 10:13AM |
| 5 | going to use something else?  Is that it? | 10:13AM |
| 6 | MR. GORMAN:  Yeah, I thought we were hooked up to | 10:13AM |
| 7 | the screens but we will be shortly. | 10:13AM |
| 8 | THE COURT:  Yeah, no problem. | 10:13AM |
| 9 | MR. GORMAN:  So here we are.  Here's the first | 10:14AM |
| 10 | problem, it's an attempt instruction here.  And so we have to | 10:14AM |
| 11 | read it carefully because this is what this case is, and | 10:14AM |
| 12 | here's where the first big problem with this case here is the | 10:14AM |
| 13 | attempt.  That the defendant did something -- look at No. 2nd | 10:14AM |
| 14 | [sic], and remember, the government has to prove all of these | 10:14AM |
| 15 | elements beyond a reasonable doubt, not some of them, all of | 10:14AM |
| 16 | them.  So in this case, on the attempt instruction, they got | 10:14AM |
| 17 | to prove both of them.  And the second, "the defendant did | 10:14AM |
| 18 | something that was a substantial step towards committing the | 10:14AM |
| 19 | crime and corroborated his intent to commit the crime.  Mere | 10:14AM |
| 20 | preparation is not a substantial step towards committing a | 10:15AM |
| 21 | crime.  To constitute a substantial step, the defendant's act | 10:15AM |
| 22 | or actions must unequivocally demonstrate that the crime will | 10:15AM |
| 23 | take place unless interrupted by an independent | 10:15AM |
| 24 | circumstances." | 10:15AM |
| 25 | So there's some big words there, especially | 10:15AM |

1   unequivocal, and we'll talk about unequivocal later.  But keep    10:15AM

2   that in mind, mere preparation is not enough.  There has to be    10:15AM

3   the substantial step.  That's the hole, and it's a big hole in    10:15AM

4   the first count which is attempted enticement and that's one     10:15AM

5   of their first problems.    10:15AM

6           The second problem is the attempted transfer of     10:15AM

7   obscene material.  Well, here's unequivocal.  The definition     10:15AM

8   of unequivocal; leaving no doubt, clear and unambiguous.  And    10:15AM

9   that's going to be the problem and that's the problem for the    10:16AM

10  government when you review all the evidence in this case.  And   10:16AM

11  remember, they presented some evidence, but there's some    10:16AM

12  evidence they didn't give you.  I had to give it to you.  And    10:16AM

13  we'll talk later about that, as to why they were hiding     10:16AM

14  evidence from you.  Because this, when you talk about trust     10:16AM

15  and you got to trust that what they're doing and what they're    10:16AM

16  saying is true and correct, you want to trust that they're     10:16AM

17  telling you everything.  Not playing hide the ball.  And    10:16AM

18  that's what we caught 'em, we caught 'em hiding the ball,   10:16AM

19  we'll talk about that later with trust.   10:16AM

20          So why were they hiding the ball from you?    10:16AM

21  Because it goes to this whole question of substantial step and   10:16AM

22  unequivocal, leaving no doubt.  It's a substantial step    10:16AM

23  towards committing the crime and defendant's actions must    10:16AM

24  unequivocally demonstrate the crime will take place.   10:17AM

25          Now, the next big problem with their case is the    10:17AM

1 second charge when it comes to obscenity and this is again a

2 big hole because here the question is what are the -- from the

3 standpoint of an average adult in your community, it isn't

4 their opinion, they got up here and yelled and yelled and

5 yelled that it's obscene.  It's not his opinion.  And no

6 amount of yelling is gonna change it.  It's what you all

7 believe from your life experience, using your common sense.

8          So -- and then we'll talk about that a little

9 later on when we talk about the evidence.  And, again, you

10 know, he says it doesn't matter that -- it was Adam Ring that

11 my client was talking to all the time.  Well, if that's true,

12 why did this guy keep yelling "her, her, her, her"?  Because

13 they're trying to distract you.  It is Adam Ring and that's

14 why he keeps saying "her, her, her."  There is no her.  But he

15 thinks if he keeps yelling her longer and louder, that he'll

16 persuade you, but no yelling.  Let's just look at the facts

17 clearly and dispassionately.  This is a very important case.

18 You can't be guided by screaming.

19          So I'm going to do two things, first, I'll

20 discuss the law and then I'll discuss the evidence.  So I'm

21 going to talk briefly about the law.  And as the judge has

22 told you and it will be in the jury instructions, is that

23 Mr. McCarron is -- the presumption of innocence applies, so

24 it's a bedrock of American principle, just because you're

25 arrested or just because you're charged with a crime, you're

10:17AM
10:17AM
10:17AM
10:17AM
10:17AM
10:17AM
10:17AM
10:17AM
10:17AM
10:17AM
10:17AM
10:17AM
10:17AM
10:18AM
10:18AM
10:18AM
10:18AM
10:18AM
10:18AM
10:18AM
10:18AM
10:18AM
10:18AM
10:18AM
10:18AM

1    not guilty.  You're presumed innocent and he still is presumed    10:18AM

2    innocent until you decide differently.    10:18AM

3              Now, I'm sure some of you thought when you first    10:18AM

4    walked in, gee, I wonder what he did.  The law tells you, you    10:18AM

5    can't do that.  And you took an oath not to do it and it would    10:19AM

6    be illogical if you did it because then what would be the    10:19AM

7    purpose of the trial.    10:19AM

8              So one way to think about the presumption of    10:19AM

9    innocence is that there's a wall and there's a wall around    10:19AM

10   Mike and the government has to tear down that wall brick by    10:19AM

11   brick and that's when you look at the evidence, or more    10:19AM

12   appropriately, the lack of evidence, this time you will find    10:19AM

13   that they haven't met their burden.    10:19AM

14             Now, and the judge will tell you the government    10:19AM

15   must prove the case and that's -- when you look at the    10:19AM

16   charges, they're going to back to you in the jury room,    10:19AM

17   there's elements of each charge.  They must prove each and    10:19AM

18   every element beyond a reasonable doubt.    10:19AM

19             So what is a reasonable doubt?  That is a doubt    10:19AM

20   that's based on reason and upon common sense, not based on    10:19AM

21   speculation.  So, again, don't leave your common sense at the    10:19AM

22   door, use your common sense here.  It may arise from a careful    10:20AM

23   and impartial consideration of the evidence or the lack of    10:20AM

24   evidence, and that's the problem in this case is the lack of    10:20AM

25   evidence when it comes to attempt regarding whether he took a    10:20AM

substantial step.  Is it mere preparation, did he take the

substantial step?  They must prove that beyond a reasonable

doubt and that's the problem with the first charge.  So it

isn't any doubt when we talk about reasonable doubt.  But a

better way to say it is, I can convict if I have no reasonable

doubt and I think when you carefully consider all the

evidence, the evidence they presented, and the evidence that

they hid, that I presented --

        MR. LEON GUERRERO:  Your Honor, I'm going to

object.

        MR. GORMAN:  The testimony --

        THE COURT:  What's the objection?

        MR. LEON GUERRERO:  Improper argument about

hiding the evidence.

        MR. GORMAN:  Well -- they had a full and complete

opportunity --

        THE COURT:  All right.

        MR. GORMAN:  -- to present all the evidence in

this case and they didn't.  I had to present the evidence.

When you go back and you look at the evidence that I

presented, you'll see a little -- it's called a *Bates stamp* at

the bottom of it.  These are -- Defense Exhibits A through F.

And you will see a little Bates stamp that says MLM00339

through, I think, 342.  You know what that Bates stamp is,

that's from their discovery.  That's from the evidence they

10:21AM
10:21AM
10:21AM
10:21AM
10:21AM
10:21AM
10:22AM
10:22AM
10:22AM
10:22AM
10:22AM
10:22AM
10:22AM
10:22AM
10:22AM
10:22AM
10:22AM
10:22AM
10:22AM
10:22AM
10:23AM
10:23AM
10:23AM
10:23AM
10:23AM

1   gave me and you'll see it matches up with the Bates stamps of

2   Exhibits 1 through 19.

3           So they had this evidence, they gave it to me but

4   they wouldn't give it to you.  Now they say they didn't hide

5   it.  You make up your mind, he says he didn't hide it.  Well,

6   he certainly didn't present it.  And then when we look at it,

7   you'll see why they didn't present it and we did.

8           Also I want to talk a little bit about the

9   different burdens of proof because the burden of proof is

10  heavy here because it's a very serious case, we're dealing

11  with Mr. McCarron's life and his liberty.

12          So in civil court, the evidence, the

13  preponderance is -- I'm sorry, the standard is preponderance

14  of the evidence.  So that means if you had a scale, if one

15  side got 51 percent and the other side was at 49, the

16  51 percent side would win.  And it has to do -- civil cases

17  have to do with money and as a society, that's the standard we

18  use if we got a dispute about money.  We value money, but not

19  as much as we value liberty.  So that's the lowest standard in

20  the legal system is preponderance of the evidence.

21          The second standard is what they use in family

22  court, clear and convincing evidence, so that's higher, the

23  second level.  What's family court?  It has to do with

24  children, basically, the health and safety of children.  So as

25  a society, we value that very much.

So we use this intermediate standard and that's clear and convincing. But we reserve the highest standard for what we're doing here today and that's criminal court and that's the life and liberty of an American citizen on the line and that is beyond a reasonable doubt and that is their burden and they must prove it on each and every element. And I would urge you go carefully through the two charges and look at the elements because they can't prove the elements and the reason they can't prove the elements is he didn't do it.

All right. So now let's talk more about the evidence, and even more importantly, the lack of the evidence. Again, attempt, so what we're focused on is the difference between a substantial step towards a committing the crime, that corroborates his intent to commit it and mere preparation and it must unequivocally demonstrate that it would have taken place unless interrupted by an independent circumstance. What were the independent circumstances here? There are none. Because there wasn't ever gonna take place. The only steps that Mr. McCarron did was talk, talk, talk and he sent some pictures and he sent a video, but it was all talk, talk, talk with Mr. Ring. Never left his hotel room the whole time. Never set up any time to meet her. Never went anywhere to meet her. So it's idle talk, teasing, flirting and he's sending these pictures, but that's all it is. Talk, talk, talk. Where does it go from mere preparation to the

substantial step?  No follow through.  Government screamed,

"He's here for one-time sexual activity."  Really?  He never

did it.  Never even tried to do it.  They said how many times

did they say that his like purpose on Guam was one-time sexual

activity?  Well if that's true, then why didn't he get out of

his hotel room?  Never left his hotel room, he's in there

drinking and sending these stupid videos to Agent Ring.  "He's

dedicated to one-time sexual activity."  Oh, really?  How do

you get a one-time sexual activity without leaving your hotel

room?

          And you heard when I talked with Agent Ring

numerous, numerous invites from Agent Ring posing as this

girl, there were six different invites and you look at the

evidence and you'll see them.  On six different occasions, she

said "Come on, let's get together."  Who's grooming who?  Six

different invites and then she nags him.  You'll read their

things, "When are you coming?  Are you coming tonight?  Why do

you have to work?"  She's inviting him on six different

occasions and he never even gets out of the hotel room.  And

you know why they know that's bad?  Because remember when I

was cross-examining Agent Ring, remember Agent Ring on the

stand, he was so good when it was the government questioning

him.  But man, clear and concise and well-practiced.  Then I

asked him a few questions and he falls to pieces.  He won't

admit, remember that, and I saw you laughing and I can't blame

1   you, when she said "Are you gonna come over to my house," and
2   I read that to him, I said that's an invite, right?  And he
3   said no, that's not an invite and we went around and around on
4   that because he didn't want to admit it's an invite.  Why was
5   he so hung up on the whole invitation thing, "that's not an
6   invite."  Because he knows, that is a blow, a body blow to
7   their case that she keeps inviting and he said, he's just got
8   one excuse after another, I'm tired, I'm working.  That's why
9   he put up such a big fight on invite, because he knows how
10  destructive it is to their case.

11          All along and then you'll see the last
12  communication, I'll show you last communication in a little
13  while.  Remember, you never would have seen it unless I gave
14  it to you.  And what was his very last statement to Agent
15  Ring?  "I'm too tired."  I'm going to show you the exact
16  statement in a minute.  "I'm too tired."  What, the one time,
17  he's here for one-time sexual activity and when she keeps
18  inviting him, and when it comes down to crunch time, I'm
19  working, I'm too tired.  But they didn't want you to see that
20  because they know, they know how badly that hurts their case.

21          You know, and also, you know, the judge has told
22  you and we talked about earlier about using common sense.  So
23  you know, one way to look at it, think about FedEx, say you
24  order a package online from Amazon and you're tracking it all
25  the way, you know, it arrived in LA, you know it arrived

1   through the tracking in Hawaii, then you know it arrived here          10:28AM
2   in Guam.  But you never get it.  Where is my package?  And you         10:28AM
3   call up FedEx and you say "hey, I'm waiting for my package"            10:28AM
4   and they say, "yeah, we attempted to deliver it."  Well, then         10:28AM
5   you ask them some more questions and you find out the package         10:28AM
6   never left the warehouse.  Guy never put it in the truck,            10:28AM
7   never got in his truck and drove out to deliver it to you,           10:28AM
8   never rang your doorbell but they're still -- "well, we              10:28AM
9   attempted to deliver the package," no, they didn't.  That's          10:29AM
10  the same case here.  They're saying he attempted but he              10:29AM
11  didn't.  He never even left his hotel room despite all this          10:29AM
12  nagging and invitation from Agent Ring.                              10:29AM
13          You know what also becomes important here is the            10:29AM
14  timeline in this case and they don't talk about it because          10:29AM
15  they don't want you to look at it because, again, not good for       10:29AM
16  them.                                                                10:29AM
17          Okay, this is government exhibit, this is their             10:29AM
18  last exhibit, let's look at this, Exhibit 19-4.  So they had         10:29AM
19  19 exhibits.  This is the last page of their last exhibit.          10:29AM
20  And what does it say?  They left you with the impression that        10:29AM
21  the last communication was, "What is your address and when is       10:29AM
22  it too late to come over?"  I agree, that's not good.  That's        10:29AM
23  what they left you with the impression of.  If I had not given      10:30AM
24  you everything that happened after that, you would have             10:30AM
25  thought, hey, that's the end.  That isn't the end.  They            10:30AM

didn't want you to see the end because they know it hurts

their case.  Look at the Bates stamp on the bottom, you see

there's MLM00337 that's, how the government, you know,

classifies their evidence.  It's called a *Bates stamp*.

So this is what they gave you, they want you to

trust 'em, you got to trust them, if you're going to do -- if

you're going convict someone of these very serious charges,

you got to trust 'em.  Now the question is, can you trust 'em?

Look at our exhibit, it turns out, oh, I'm sorry,

let's go back for a minute.  Here's the time up here from the

last communication, November 29th, at 5:39.  So that's what

they wanted to give you the impression it all ended there at

5:39 p.m., it didn't.

Now we'll see the real evidence.  And you noticed

what it says?  Defendant's exhibit.  Why do I have to bring

this forward?  They had plenty of time to do it.  We see the

Bates stamp MLM00343, this is their evidence.  I'm not

speaking up and surprising them with anything.  This is their

own evidence, but they wouldn't show you, they would not give

it to you.  Now we know when the communication ended because

it didn't end on November 29th at 5:39.  It ended on

November 29th at 8:01.  "I am just now about to get off work,

what are you up to, is it too late?  I'm pretty tired now."

That is the last communication between my client

and Agent Ring.  He's here solely to have a one-time sex act

with somebody and when despite all the invites and a month of
conversations, that's the best you got?  "I'm pretty tired
right now."  It doesn't sound to me like he's so dedicated as
they were screaming about there and that's why they didn't
want you to see it, because it undercuts their whole case.
That's why they tried to -- well, they didn't hide it, that's
why they didn't present it to you.  But I presented it to you.

So now you got to think, can I just them?  And
when you think about trust, think about also Agent Ring when
he was on the stand, again, great on direct, not so good on
cross-examination.  And on cross-examination, I said, "Hey,
when was the last communication you had?  And he kept, "Well,
it's hard to say, I really don't know."  It's his case.  For a
month he's been doing it, he's the case agent been sitting
here the whole time.  He doesn't know.  Under oath, he said "I
don't know when the last communication was."  How can that be?
He spent all those eight hours.  They all got together.  All
of them here.  And they all got together and prepared for
eight hours.  Eight hours is a long time.  So think about it,
this trial didn't last eight hours.  And they all sat down and
practiced, practiced, practiced, practiced, practiced, but he
doesn't remember after reviewing all the reports, when the
communication ended.  So when it comes time for trust, and you
got to trust 'em for such a serious decision, are they telling
you everything?  And they're not.

1        Timelines are also important because as you see

2    the last communication was on the 29th, at 8:01.  Nothing

3    happens and they go to his hotel room the next day at about

4    5:30 on the 30th.  24 hours, nothing happened.  What's going

5    on there?  And, again, nobody wants to talk about what happens

6    there.  But you know what happens?  You can use your common

7    sense, they realize, that's the best we're gonna get out of

8    this deal.  He ended up with saying, "I'm tired," and they

9    said, oh, geez, we've been following him six times, we keep

10   nagging him and we can't get him out of that hotel room.

11       So they said you know that's -- it's the best

12   we're gonna get, let's go, you know, over there and talk to

13   him and seize his devices so -- because I'm pretty tired right

14   now, that's when they realized, it's the best we're ever gonna

15   get.  Problem is, it ain't good enough.  That's why they gave

16   up and just said, all right, we'll -- let's just go do this

17   now.

18       So, again, makes no attempt to see her.  What's

19   all this grooming for what?  For what?  To never go see her?

20   To never have this one-time sexual experience?  No, because he

21   never left his hotel room.

22       Again, when you think about trust, remember,

23   compare and contrast -- Government's Exhibit 19-4 versus our

24   Exhibit F and see what they didn't want you to see and then,

25   you know, they didn't want you to see it, why, why is because

it's a fatal blow to their case, it puts a big hole in their

case.  And you know, if someone -- what's the thing about

trust?  Well, you know, from common sense and your own

experience, if you're dealing with somebody and you ask 'em a

question and that guy doesn't tell you, really, the right

answer, and you find out later oh, man, what do you do?  You

never trust 'em from that time forward.  You know that from

your personal experience and that's what we have here.  We

have a lack of trust.  And when you don't have trust in what

they're telling you, that undermines their whole case.  And

why are they being untrustful, why are they being deceptive?

Because they're trying to cover up the holes in their cases.

           And then look at how -- you know, look at how

they acted when they got caught.  You saw them on the stand,

when I was questioning 'em, the difference between direct and

cross-examination.  I couldn't get a straight answer out of

either one, Agent Ring or Agent Albo.  Both of them have

amnesia suddenly.  What is this sudden onset amnesia, if we

give a name for it.  They were great on direct.  Suddenly on

cross-examination, oh, I can't remember nothing, I had all

that preparation, I prepared, I read all my reports, I did

everything, but I don't remember that.  What?  You're gonna

trust somebody like that?  So if somebody says that to you in

your personal experiences every day, "I don't remember" on

something this important, you're supposed to trust 'em?

And what did he want to trust?  Again, he didn't want to admit to all the invites, he kind of twisted himself into a pretzel all over this stuff with the invites and you saw it, and you were laughing, I don't blame you, but this is a serious matter and it's not laughable when these agents are not gonna testify truthfully.  They're not going to tell you, instead of ducking the question and just say, "Oh, I don't remember," because it blows a giant hole in their case.

Again, same with Agent Albo had the same problem, amnesia.  I'm asking her -- she was only involved in the case, she said she got involved on the case on 11-29-2017 and then her role big role was the next day when she was involved when they went to the hotel room on the 30th.  But -- so I mean that's the crux of the case.  That day between 11-29, what happened between 11-29 and 11-30, because nothing happened after 11-30.  She can't remember one 24-hour period that is her sole involvement in the case.  So her sole involvement in the case is for one day and after eight to ten hours of preparation where they all got together and practiced all their stories, she can't remember.  How is that possible?  How is that humanly possible that after ten hours of preparation and practice, you can't remember what happened on the one day you were involved in the case?  You know what, they're not being honest with you, they're not being truthful with you. And now you have to look at everything with a jaundiced eye

1   and look at it carefully and say, huh, we caught 'em on this,   10:39AM

2   what else do we know?  And this isn't just my opinion, this is   10:39AM

3   the Court's opinion.  When you look at the evidence and when   10:39AM

4   you look at witnesses, so I'd ask you to look at -- this is   10:39AM

5   the credibility instruction, it's the Court's instruction No.   10:39AM

6   7.  When you're looking at their witnesses and what they   10:39AM

7   testified to, what -- when you're trying it to figure out, can   10:39AM

8   I trust these people, can I believe what they say, the Court   10:39AM

9   has given you kind of a way to do it and here are the factors   10:39AM

10  when you're trying to figure out, can I trust these people,   10:39AM

11  here's what you got to look at:   10:39AM

12          The ability to see or hear or know the things   10:39AM

13  testified to; No. 2, the witness's memory.  Oh, boy, that's a   10:39AM

14  big problem for them, because they both got amnesia.  The   10:40AM

15  witness's manner while testifying.  So remember the difference   10:40AM

16  between direct and cross-examination.  On direct, they were   10:40AM

17  fantastic.  On cross-examination, oh, boy, twisting themselves   10:40AM

18  into a pretzel and no -- and amnesia.  The witness's interest   10:40AM

19  in the case.  Of course they have an interest in the case,   10:40AM

20  this is their case.  Their bias and prejudice, same thing.   10:40AM

21  Whether other evidence contradicts their testimony, whether   10:40AM

22  the evidence I presented to you contradicted what Agent Ring   10:40AM

23  gave you.  Agent Ring gave you the first 19, I gave you the   10:40AM

24  final six.  So there is contradictions.  And the   10:40AM

25  reasonableness of their testimony.   10:40AM

1    Reasonable, when he said "Can you come over to my
2   house," and he said under oath to your face, he said that's
3   not an invite, can you believe that?  That was the laughable
4   part.  Can you believe he did that?  So when you look at the
5   plea -- when you evaluate the evidence that they presented,
6   you got to look at the credibility of the witness, look at
7   Instruction 8, because it tells you, here's how you determine
8   their credibility.
9    Now -- and then the government, they had that
10  video where they said that's a confession.  Actually, no, when
11  you look at the -- when you look at the instructions, there'll
12  be instructions on defendant's statement that the judge will
13  give you, it doesn't say the defendant's confession.  It is a
14  statement.  It isn't a confession.  When they arrested him,
15  FBI agent, well, he's in the back there, the FBI agent very
16  clearly told them, "We are not arresting you" when they went
17  to talk that time.  And you'll see from the thing, they never
18  read any charges to him, there were no charges, this attempted
19  enticement or the transfer of obscenity.  They never talked to
20  him about that.
21   So when they say he confessed, no, he didn't, how
22  could he confess to something he didn't even know about, these
23  charges.  Read the charges.  They're pretty complicated.  They
24  never read those charges to him, much less arrested him on
25  those charges, so it's not a confession.

You know, they're presenting him obviously, they're yelling and screaming about my client, Mr. McCarron. And they had all the evidence because we know all the evidence ended on 11-29-2013 at 8:01. There was nothing else that happened. So they went there the next day and talked to him between 5, and about 7:30. They had no further evidence. They didn't arrest him at that time. He's such a bad character here to do evil things, why wouldn't they arrest him? They never arrested him at that time. So actions speak louder than words.

And there was a lot of talk about this term *grooming*. Who's grooming who? Agent Ring, you know gets online, pretends to be a 13-year-old girl and engages in all this conversation and then Agent Ring sends this picture with the pouty lips, showing a little cleavage. Who's grooming who? This is a 25-year-old woman. They admitted it. They sent this picture and said, oh, I'm a 13-year-old girl. That's not a 13-year-old girl, we know that. That's a 25-year-old woman. He's grooming. He's being the deceptive one.

Now, you noticed earlier during their -- the screaming portion of their opening statement, they showed that picture where the -- this 25-year-old woman had some braces on her teeth, "oh, look at her, she's only 13," no, that's not true. She's not 13 and this is one of the pictures they sent,

they're probably not going to show it you to again, but I'll showing it to you.  So if we talk about grooming, when you're sending a picture like that with the pouty lips, showing a little cleavage of a very pretty 25-year-old woman, who is doing the enticing?  Who's doing the alluring or who's doing the entrapment, who's doing the grooming?  That's all Agent Ring.  And despite all their enticement and their alluring and all the grooming by Agent Ring and they're sending photos like that, my client, when he's sitting alone in his hotel room, he never leaves his room.  She invites him six different times, read it, it's in the discovery and she nags him, "When are you coming over?"  And he never leaves his hotel room and they're gonna say that's an attempt.

Now, I wanted to talk also about the obscenity charge.  Is this material obscene?  Well, you know, remember, this is something that the government again has to prove beyond a reasonable doubt.  I agree, it's yucky.  No doubt about that.  But standards have changed over time.  You know, I'm 61 years old.  Never in my life have I ever sent somebody a picture of my private parts, it's just -- you know, when I grew up, people did not do that.  Women or men.  But as you know from your common sense and your experience, that's not true anymore in our society.  People are sending penis pictures and all kinds of things to each other on the internet all the time.  You know it's true.  I don't do it, you don't

do it or maybe you do, I don't know, but you certainly know people who have in your own family or your own friends.  It is, unfortunately, common.  I think it's yucky but it happens.  There's a lot of naked selfies roaming around in this community and in the United States in general.

So when you think of what is the contemporary standards for obscenity, yeah, nobody likes to look at those pictures up there but is that obscene, when everybody is engaging in naked selfies, not everybody but a lot of people are engaging in this naked selfies and sending pictures like that to each other, men and women, is that now obscene?  Is that now -- no, I don't think so obviously.

So the contemporary standards have changed over time.  In my youth, yeah, I'd say that's obscene, we're not in my youth anymore.  That's 45 years in the past.  We're in this timeframe.  So under this timeframe, are those pictures yucky though they are obscene, not when everybody is doing it.  Think of Kim Kardashian, that was only, eight, nine years ago, she did that obscene, not obscene, it's not obscene now, she did a sex video, very graphic sex video, I mean it was graphic.  And it wasn't just a selfie.  It was engaging in sex and it was long and it was out there and what happened after that?  When I was a kid, if there -- if a well-known woman engaged in a very graphic sexual tape and that was broadcast, oh, my God, she would be so shamed, she would have to

disappear, she'd have to move to Bali Bali or someplace to get
out of the public eye.  Did that happen?  No, that launched
her career.  That explicit graphic sex tape by Kim Kardashian
that launched her career.  She's worth millions, tens of
millions of dollars.  So that shows you that the contemporary
standards for obscenity have changed over the years.  So now
they have to prove to you that those pictures under the
contemporary today are considered obscene, but you're allowed
to use your common sense and say, yeah, forty years ago they
were, nowadays people are sending those pictures all around
whether we like it or not.

So we got nude selfies on social media, phone
sex, Skype sex, FaceTime sex, it's a different world and
different standards, but the standard for obscenity is the
contemporary standards now.  And even though I'm sorry you had
to sit through those pictures and that video, they don't meet
the contemporary standards of obscenity today.  And they have
to prove that beyond a reasonable doubt and I will submit to
you they haven't.

So let me wrap up, I don't want to keep talking
forever but remember, so when you go back to review the
evidence in this case, the two big holes and why do they have
the two big holes in their case?  Because they're lacking the
evidence.  Why are they lacking the evidence?  Because he
didn't do it.  He did some yucky things, but he never left his

hotel room.  The first hole for them, again, the attempted    10:49AM

incitement -- enticement of a minor, and again, the problem    10:49AM

for the government is the attempt instruction.  We have mere   10:50AM

preparation, but that is not a substantial step.  Again, a guy 10:50AM

never left his room despite numerous invites and nagging and   10:50AM

they're gonna say that's a substantial step, no, we have some  10:50AM

prep and we have a lot of prep by Agent Ring who reeled him in 10:50AM

like a fish, sent out pictures of a 25-year-old woman, said    10:50AM

she was 13.  So there is enticement but it's on the           10:50AM

government's part, but they fail.  The big hole is on attempt  10:50AM

right there.  That they have to prove it beyond a reasonable   10:50AM

doubt and they didn't because they can't.                     10:50AM

          And then the second problem is obscenity, where     10:50AM

they're saying that those pictures, yucky though they are,     10:50AM

violates contemporary, that means today's standards, not what  10:50AM

we feel things were 20, 30, 40 years ago; today, when people   10:51AM

are sending pictures like that all around all the time.        10:51AM

          Beyond a reasonable doubt, remember, it isn't,       10:51AM

well, you know what, I kind of think those pictures are        10:51AM

obscene, or they probably are obscene.  If you think that,     10:51AM

that's not guilty.  They have to prove beyond a reasonable     10:51AM

doubt that they're obscene.  You have to say I know without a  10:51AM

-- any doubt at all, without a reasonable doubt that those     10:51AM

pictures are obscene, and I would submit to you, you can't     10:51AM

because they aren't under our contemporary standards.          10:51AM

1      So he sent some very offensive, yucky pictures

2  but he's not guilty of the charge that they have pressed

3  against him, so I would urge you to review the evidence

4  carefully and I think when you do, you'll return the proper

5  verdict for Mr. McCarron and that is not guilty.  Thank you.

6          THE COURT:  Thank you, Mr. Gorman.  Okay.

7  Mr. Leon Guerrero, you may proceed with your rebuttal closing.

8          MR. LEON GUERRERO:  Yes, Your Honor.

9          THE COURT:  Okay.

10              (Rebuttal Argument by Government)

11          MR. LEON GUERRERO:  All right, ladies and

12 gentlemen of the jury, as the Court told you, the government

13 gets a rebuttal argument because it's our burden.  And so in

14 rebuttal, I'm going to touch on some of the points that

15 defense Counsel had raised to you during his closing

16 arguments.

17          So Counsel got up here and told you that, in

18 essence, the government was trying to hide information from

19 you and that he had to submitted some of these e-mails and

20 exhibits.  Well, the question you need to ask yourself, how

21 much evidence do you need?  You had the defendant's confession

22 on video.  You had the numerous e-mails that you saw of the

23 correspondence between him and Brit.  How much more

24 information do you need?  And I even challenge you, look at

25 the exhibits that they provided.  Look at those exhibits.  And

ask yourselves, does that change anything that the defendant

had previously sent to Brit?  Does it that change any of the

words that he told the agents in his video interview?  I

challenge you, and I submit to you that makes no difference

whatsoever.

At the end of the day, who better to tell you

about committing the offense than the defendant himself.

Okay.  And that interview with agents, it's so important,

because in that interview, he admitted that the purpose of

meeting up with Brit was for sexual relations, he admitted

that he sent 10 to 15 photos of himself to Brit.  He further

admitted that he sent one to two videos of himself to Brit.

He admitted to discussing sex and meeting up with Brit knowing

that she was 13, yet he still carried on this conversation.

Look at that video, look at his body language.  And when you

look at his body language at the interview, ask yourselves,

does that display the body language of a person that's

innocent of these charges?

There's something about the physical evidence

that's impossible to ignore, ladies and gentlemen.  It never

lies, it never forgets and it never disappears, it's simply

always there.  And it's there to prove which side is telling

the truth.  And in this case, what does the physical evidence

show with the e-mails, the numerous e-mails sent between Brit

and the defendant?  They conclusively prove that this

defendant knew that he was communicating with a 13-year-old child.

Now, Counsel's made a big deal about Brit was being played by Agent Ring and that he was the one doing the enticement, but you're gonna get a jury instruction and it's gonna tell you, you've heard testimony from an undercover agent who was involved in the government's investigation in this case, law enforcement officials may engage in stealth and deception, such as the use of undercover agents in order to investigate criminal activities. An undercover agent may use false names and appearances and assume the role of a 13-year-old girl. So contrary to what defense Counsel wants you to believe, there was nothing wrong with Agent Ring posing as Brit. And as my Counsel had indicated in closing argument, thank God he did, otherwise, we would have had a potential victim.

Now, you're fortunate enough and I'm bringing your attention back to this video because in the interview with the defendant, you're gonna have all these e-mails with you when you go deliberate, and those same e-mails, some of those e-mails you're gonna have -- you're gonna be able to recognize some of those e-mails that Agent Kipp had brought to defendant's attention. And when defendant was asked -- when the agent asked the defendant that she informed Brit that she would enjoy watching him masturbate and imagine Brit has small

perky breasts, beautiful eyes, the defendant acknowledged that

is what he was writing to a 13-year-old.  He was asked while

your age makes me nervous, you're so incredibly beautiful that

this is okay, you keep asking me that you're real.  The agent

was asking the defendant this.  The defendant stated he

understood who he was talking to.  He was asked by Agent Kipp,

he told Brit that I'm going to finish my night off jacking off

and dreaming of you.  Again, the defendant acknowledged that

he sent this e-mail to Brit.  He was also asked -- he also

acknowledged the e-mail when it was posed to him that he would

like to kiss and touch each other's private parts,

specifically the penis and vagina.

          So you're going to have those e-mails that he was

corresponding with Brit and you're going to have that

interview again where you can also see those same e-mails

being brought to the defendant and the defendant admitting

what was his state of mind really of those e-mail

communications.

          Now, Counsel's made a big issue about this

attempt in saying mere preparation is not a substantial step

toward committing the crime.  Well, begin, with the elements

of attempted enticement of a minor to engage in sexual

activity.  One of the elements that you're gonna see is, the

defendant, Michael Louis McCarron, knowingly attempted to

persuade, induce and entice an individual to engage in sexual

penetration using a computer connected to the internet.

So why is that so important?  That's important because he didn't need to leave his hotel room to commit this crime.  Okay.  That is just arguments that Counsel is trying to distract your attention from.  He didn't need to leave his hotel room.  He was able to commit this crime right in the comfort of his hotel room, which he did.  So consider that when you go and deliberate.

Counsel's also made a big issue about the burden of proof and he's making it seem like this burden is such a high burden that ultimately you guys are not going to be able to find this defendant's guilt.  And in reading the jury instruction, he had told you, he read one part of it.  A reasonable doubt is a doubt based upon reason, common sense and is not based purely on speculation.  It may arise from careful and impartial consideration of all the evidence or lack of evidence.  That's the part he read to you.  What he didn't read to you was the very first paragraph of that instruction, which you're gonna see.  "Proof beyond a reasonable doubt is proof that leaves you firmly convinced that the defendant is guilty.  It is not required that the government prove guilt beyond all possible doubt."  Okay, so that's important because contrary to what defense Counsel wants you to believe, it's not that high of a burden for you to find his client guilty.

1    Now, this defendant, what you also have to

2    consider what this defendant's intent was, his state of mind

3    and the fact that you've heard this term *groom* and the fact

4    that he was really grooming and making Brit comfortable with

5    him wanting to meet up for sexual relations again those are

6    his words, but it's all the details that he talked about.  The

7    fact that he told her that he had base access, that his middle

8    name is Michael and "I use this name with people I don't

9    like," that he's 32, he's from Washington.  He sent a photo of

10    his face.  He said his middle name is Louis, that he sort of

11    works for the military.  He even gave Brit his hotel room at

12    the Sheraton Laguna, room 342.  That he was so excited to meet

13    with her, asked what her address was.  But those, again, when

14    you're looking at these e-mails, the e-mail communications

15    between the defendant and Brit, ask yourselves was he really

16    making her comfortable?  Was he grooming her?  Because, did he

17    really want to have sex with her?  And was that the reason why

18    he gave all that personal information about himself to Brit?

19    And the at end of the day, you know, that's gonna show that

20    this defendant again committed the crimes that he's charged

21    with.

22    Now, before you go and deliberate, I ask again

23    that you look at that interview of the defendant.  As my

24    Counsel had -- co-Counsel told you three times, he stated,

25    "It's definitely wrong.  It's definitely wrong.  It's

1  definitely wrong."  Three times.  And when you go and                11:02AM

2  deliberate, you need to ask yourselves why would he make this         11:02AM

3  statement if he didn't do anything wrong?  Why would he make          11:02AM

4  this statement if he is truly innocent?                               11:02AM

5           I ask, ladies and gentlemen, when you use your               11:02AM

6  common sentence and your life experiences, you're gonna find          11:02AM

7  that this defendant committed the crimes that he's being              11:02AM

8  charged with, and I ask that you find this defendant guilty.          11:03AM

9  Thank you.                                                            11:03AM

10          THE COURT:  Okay.  Thank you, Mr. Leon Guerrero.             11:03AM

11 Ladies and gentlemen of the jury, that concludes all of the          11:03AM

12 closing arguments at this time.  We're going to take a                11:03AM

13 15-minute recess and then I'll ask you to come back and I will       11:03AM

14 read you the jury instructions.                                       11:03AM

15          And as I indicated to you earlier, you will each            11:03AM

16 receive your own packet of jury instructions but I'm required        11:03AM

17 to read them to you, so we'll have them read orally, then           11:03AM

18 we'll also have them up on the screen.  So go ahead and take        11:03AM

19 your first morning break.  I'll see you in 15 minutes.  Then         11:03AM

20 after we do the jury instructions, then I'll make sure that          11:03AM

21 they have lunch for you when you retire to deliberate.  Okay.        11:03AM

22 Please rise for the jury.                                             11:03AM

23          (Jury out at 11:04 a.m.)                                    11:04AM

24          THE COURT:  All right, Counsels.  Let me show you           11:04AM

25 the verdict forms that I received just to see if they're             11:04AM

```
 1    consistent.                                              11:04AM

 2              MR. GORMAN:  Can my client sit down?           11:04AM

 3              THE COURT:  Yes, you may sit.  Any objections,  11:04AM

 4    Mr. Gorman?                                              11:04AM

 5              MR. GORMAN:  None for the defense, Your Honor.  11:04AM

 6              THE COURT:  And Mr. Leon Guerrero, Mr. Collins?  11:04AM

 7              MR. LEON GUERRERO:  One moment, Your Honor.     11:04AM

 8              Yeah, no objections, Your Honor.               11:04AM

 9              THE COURT:  Okay, we'll see you in 15 minutes.  11:04AM

10              MR. LEON GUERRERO:  Thank you.                 11:04AM

11              MR. COLLINS:  Thank you, Your Honor.           11:04AM

12              THE CLERK:  The Court's in recess.             11:04AM

13              (Recess taken at 11:04 a.m.)                   11:04AM

14              (Back on the record at 11:24 a.m.)             11:24AM

15              THE COURT:  All Counsels present, defendant's   11:24AM

16    present, ready to go?                                    11:24AM

17              MR. GORMAN:  Yes, Your Honor.  Okay, I'll do    11:24AM

18    closing jury instructions.                              11:24AM

19              (Jury in at 11:25 a.m.)                        11:25AM

20              THE COURT:  Welcome back, ladies and gentlemen.  11:26AM

21    Okay, at this time, I'm going to give you my jury        11:26AM

22    instructions.  And so you'll be able to see it on the screen  11:26AM

23    in a few minutes here.  Takes about 30 minutes for me to do  11:26AM

24    it.  Maybe -- yeah, hopefully, I'm sorry if my voice -- I mean  11:26AM

25    if it's a little scratchy, but I think I talk a lot here in  11:26AM
```

the Court so I always lose my -- it's always scratchy.  All

right.

Ladies and gentlemen, this is *United States of*

*America v. Michael Louis McCarron*.  These are closing jury

instructions.  The first instruction is members of the jury,

now that you have heard all the evidence, it is my duty to

instruct you on the law that applies to this case.  A copy of

these instructions will be available in the jury room for you

to consult.  It is your duty to weigh and to evaluate all the

evidence received in the case and in that process, to decide

the facts.  It is also your duty to apply the law as I give it

to you to the facts as you find them.

Whether you agree with the law or not, you must

decide the case solely on the evidence and the law.  Do not

allow personal likes or dislikes, sympathy, prejudice, fear,

or public opinion to influence you.  You should also not be

influenced by any persons, race, color, religion, national

ancestry, or gender, sexual orientation, profession,

occupation, celebrity, economic circumstances, or position in

life or in the community.  You will recall that you took an

oath promising to do so at the beginning of the case.  You

must follow all these instructions and not single out some and

ignore others, they are all important.  Please do not read

into these instructions or into anything I may have said or

done, any suggestion as to what verdict you should return.

1    That is a matter entirely up to you.                          11:28AM

2            The indictment is not evidence.  Now, I had shown     11:28AM

3    you the indictment previously and that was a charging         11:28AM

4    document.  The defendant, Mr. McCarron, has pleaded not guilty 11:28AM

5    to the charges.  The defendant is presumed to be innocent     11:28AM

6    unless and until the government proves the defendant guilty   11:28AM

7    beyond a reasonable doubt.  In addition, the defendant does   11:28AM

8    not have to testify or present any evidence.  The defendant   11:28AM

9    does not have to prove innocence.  The government has the     11:28AM

10   burden of proving every element of the charges beyond a       11:28AM

11   reasonable doubt.                                             11:28AM

12           So what is reasonable doubt?  We heard the            11:28AM

13   attorneys argue about that.  This is the definition.  Proof   11:28AM

14   beyond a reasonable doubt is proof that leaves you firmly     11:28AM

15   convinced the defendant is guilty.  It is not required that   11:28AM

16   the government prove guilt beyond all possible doubt.  A      11:28AM

17   reasonable doubt is a doubt based upon reason and common      11:28AM

18   sense.  And it is not based purely on speculation.  It may    11:28AM

19   arise from a careful and impartial consideration of all the   11:28AM

20   evidence or from lack of evidence.                            11:29AM

21           If after a careful and impartial consideration of     11:29AM

22   all the evidence you are not convinced beyond a reasonable    11:29AM

23   doubt that the defendant is guilty, it's your duty to find the 11:29AM

24   defendant not guilty.  On the other hand, if after careful and 11:29AM

25   impartial consideration of all the evidence you are convinced 11:29AM

beyond a reasonable doubt the defendant is guilty, it is your
duty to find the defendant guilty.

The evidence you are to consider in deciding what
the facts are consist of the sworn testimony of any witness,
and the exhibits received in evidence.  In this case, there
were two witnesses and several exhibits.  So you will have all
those exhibits, I will send that back to you in the jury
deliberation room.  All the ones that were admitted, including
the video.  And the -- yeah, the videos.  And then that will
be all set up in the deliberation room if you want to view the
videos.

In reaching your verdict, you may consider only
testimony and exhibits received in evidence.  The following
things are not evidence and you must not consider them in
deciding what the facts are.  Questions, statements,
objections, and arguments by the lawyers are not evidence.
The lawyers are not witnesses, although you must consider a
lawyer's question to answer -- excuse me, to understand the
answers of a witness, the lawyers' questions are not evidence.
Similarly, what the lawyers have said in their opening
statements, their closing arguments and at other times is
intended to help you interpret the evidence, but it is not
evidence.  If the facts as you remember them differ from the
way the lawyers state them, your memory of them controls.  Any
testimony that I have excluded, stricken or instructed you to

1  disregard is not evidence.  Anything you may have seen or        11:30AM

2  heard when the court was not in session is not evidence.  You    11:30AM

3  are to decide the case solely on the evidence received at the    11:30AM

4  trial.                                                           11:30AM

5           Let's talk about circumstantial and direct             11:30AM

6  evidence.  Evidence may be either direct or circumstantial.      11:31AM

7  Direct evidence is direct proof of a fact such as testimony by   11:31AM

8  a witness about what that witness personally saw or heard or     11:31AM

9  did.  Circumstantial evidence is indirect evidence, that is,     11:31AM

10 proof one or more facts from which you can find another fact.    11:31AM

11 You are to consider both direct and circumstantial evidence.     11:31AM

12 Either can be used to prove any fact.  The law makes no          11:31AM

13 distinction between the weight to be given to either direct or   11:31AM

14 circumstantial evidence.  It is for you to decide how much       11:31AM

15 weight to give to any evidence.                                  11:31AM

16           Let's talk about the credibility of witnesses.        11:31AM

17 In deciding the facts in this case, you may have to decide       11:31AM

18 which testimony to believe and which testimony not to believe.   11:31AM

19 You may believe everything a witness says, or part of it or      11:31AM

20 none of it.  In considering the testimony of any witness, you    11:31AM

21 may take into account the opportunity and ability of the         11:31AM

22 witness to see or hear or know the things testified to, the      11:32AM

23 witness's memory, the witness's manner while testifying, the     11:32AM

24 witness's interest in the outcome of the case, if any, the       11:32AM

25 witness's bias, or prejudice, if any, whether other evidence     11:32AM

1   contradicted the witness's testimony, the reasonableness of

2   the witness's testimony in light of all the evidence and any

3   other factors that bear on believability.

4          Sometimes a witness may say something that is not

5   consistent with something else he or she said.  Sometimes

6   different witnesses will give different versions of what

7   happened.  People often forget things or make mistakes in what

8   they remember.  Also, two people may see the same event but

9   remember it differently.  You may consider these differences

10  but do not decide that testimony is untrue just because it

11  differs from other testimony; however, if you decide that a

12  witness has deliberately testified untruthfully about

13  something important, you may choose not to believe anything

14  that witness said.  On the other hand, if you think the

15  witness testified untruthfully about some things but not the

16  truth about others, you may accept the part you think is true

17  and ignore the rest.  The weight of the evidence as to a fact

18  does not necessarily depend on the number of witnesses who

19  testify.  What is important is how believable the witnesses

20  were and how much weight you think their testimony deserves.

21         A separate crime is charged against the defendant

22  in each count.  You must decide each count separately.  Your

23  verdict on one count should not control your verdict on any

24  other count.  The indictment charges that the offenses alleged

25  were committed between on or about certain dates.  Although it

1    is necessary for the government to prove beyond a reasonable          11:33AM
2    doubt that the offenses was -- that the offense was committed         11:33AM
3    between dates, reasonably near the dates alleged in the               11:33AM
4    indictment, it is not necessary for the government to prove           11:33AM
5    that the offenses were committed precisely between the dates          11:33AM
6    charged.                                                              11:34AM

7              Okay, the first charge, so the defendant is                 11:34AM
8    charged in Count 1 of the indictment with attempted enticement        11:34AM
9    of a minor in violation of Section 2422(b) of Title 18 of the         11:34AM
10   United States Code.  In order for the defendant to be found           11:34AM
11   guilty of the charge, the government must prove each of the           11:34AM
12   following elements beyond a reasonable doubt.  So you heard           11:34AM
13   the attorney's with their arguments, they said you've got the         11:34AM
14   prosecutor has to prove each and every element of the crime           11:34AM
15   beyond a reasonable doubt.  So these are the elements here for        11:34AM
16   the first charge:                                                     11:34AM

17             First, between on or about October 31, 2017, and            11:34AM
18   on or about November 30, 2017, in the District of Guam; number        11:34AM
19   2, the defendant, Michael Louis McCarron, knowingly attempted         11:34AM
20   to persuade, induce and entice an individual to engage in             11:34AM
21   sexual penetration using a computer connected to the internet;        11:34AM
22   and 3, the defendant believed that such individual was less           11:35AM
23   than 14 years of age.  It is not necessary for the government         11:35AM
24   to prove that the individual was, in fact, less than 14 years         11:35AM
25   of age, but it is necessary for the government to prove the           11:35AM

1    defendant believed such individual to be under that age.    11:35AM

2              It is not necessary for the government to prove    11:35AM

3    that the individual was actually persuaded, induced, and    11:35AM

4    enticed to engage in sexual penetration, but it is necessary    11:35AM

5    for the government to prove that the defendant intended to    11:35AM

6    engage in sexual penetration with the individual, and    11:35AM

7    knowingly and willfully took some action that was a    11:35AM

8    substantial step toward bringing about or engaging in sexual    11:35AM

9    penetration.    11:35AM

10             So in that first count, that's the first charge I    11:35AM

11   just read, with all the elements, they talk about the word    11:35AM

12   *knowingly*.  Here's the definition here.  An act is done    11:35AM

13   knowingly if the defendant is aware of the act and does not    11:35AM

14   act through ignorance, mistake or accident.  You may consider    11:36AM

15   evidence of the defendant's words, acts or omissions along    11:36AM

16   with all the other evidence in deciding whether the defendant    11:36AM

17   acted knowingly.    11:36AM

18             Also, in the first charge -- these definitions    11:36AM

19   apply actually to both charges, knowingly and attempt.  This    11:36AM

20   is the definition of attempt, the defendant is charged in the    11:36AM

21   indictment with attempting to commit enticement of a minor to    11:36AM

22   engage in sexual activity and with attempting to commit    11:36AM

23   transfer of obscene material to a minor.    11:36AM

24             In order for the defendant to be found guilty of    11:36AM

25   each charge, the government must prove each of the following    11:36AM

1   elements beyond a reasonable doubt:  First, the defendant   11:36AM

2   intended to commit each element of the crime as set forth in   11:36AM

3   the instruction relating to the crime; and second, the   11:36AM

4   defendant did something that was a substantial step toward   11:37AM

5   committing the crime and that strongly corroborated the   11:37AM

6   defendant's intent to commit the crime.   11:37AM

7           Mere preparation is not a substantial step toward   11:37AM

8   committing the crime.  To constitute a substantial step, a   11:37AM

9   defendant's act or actions must unequivocally demonstrate that   11:37AM

10  the crime will take place unless interrupted by independent   11:37AM

11  circumstances.  Jurors do not need to agree unanimously as to   11:37AM

12  which particular act or actions constituted a substantial step   11:37AM

13  toward the commission of a crime.   11:37AM

14          Okay.  And so as I told you earlier, there was   11:37AM

15  another second charge and this is the second charge.  Count 2   11:37AM

16  of the indictment charges the defendant with attempted   11:37AM

17  transfer of obscene material to an individual who has not   11:37AM

18  attained the age of 16 years.  In order for you to find the   11:37AM

19  defendant guilty of this charge, the government must prove   11:37AM

20  each of the following elements beyond a reasonable doubt.   11:37AM

21          So again, this is what the prosecutor has to   11:38AM

22  prove and these are the seven elements, first, between on or   11:38AM

23  about October 31, 2017, and on or about November 30, 2017, in   11:38AM

24  the District of Guam, the defendant, Michael Louis McCarron,   11:38AM

25  knowingly attempted to transfer 12 images and one video which   11:38AM

1   depicted an adult male exposing his penis; and three, the          11:38AM

2   defendant knowingly attempted to transfer 12 images and one        11:38AM

3   video which depicted an adult male exposing his penis to an        11:38AM

4   individual less than 16 years old; and four, the defendant        11:38AM

5   knew the other individual was less than 16 years old; and         11:38AM

6   five, the defendant knew at the time of the attempted transfer    11:38AM

7   the content, character and nature of the material; and six,       11:38AM

8   the material charged in the indictment is obscene; and seven,     11:38AM

9   the defendant knowingly used the internet, a means or facility    11:38AM

10  of interstate commerce to attempt to transfer 12 images and       11:38AM

11  one video which depicted an adult male exposing his penis.        11:39AM

12          So let's go to the next instruction.  And so this         11:39AM

13  next instruction defines obscenity and this definition relates    11:39AM

14  back to the second count.  You know the charge that I just        11:39AM

15  gave you, which has the seven elements, material is obscene       11:39AM

16  when it meets all three of the following requirements:            11:39AM

17          The average person applying contemporary adult            11:39AM

18  community standards would find that the material taken as a       11:39AM

19  whole appeals to the prurient interest.  Material appeals to a    11:39AM

20  prurient interest when it is directed to an unhealthy or an       11:39AM

21  abnormally lustful or erotic interest, or to lascivious or        11:39AM

22  degrading interest or to shameful or morbid interest in sex or    11:39AM

23  nudity.  Two, the average person applying contemporary adult      11:39AM

24  community standards would find the material depicts or            11:40AM

25  describes sexual conduct in a patently offensive way.  Three,     11:40AM

a reasonable person would find the material taken as a whole

lacks serious literary, artistic, political or scientific

value.

Before you find material to be obscene, you must

find that it meets all three of these requirements.  You are

to apply these requirements from the standpoint of an average

adult in the community, namely, the villages in the District

of Guam in which you reside.  You are not to apply the

standards from the standpoint of the sender, the recipient or

the intended recipient of the material.  You must also avoid

applying subjective personal and privately-held views

regarding what is obscene.  Rather, the standard is that of an

average adult applying the collective view of the community as

a whole.

All right.  So now you heard some of the

definitions that apply to Count 1 and Count 2.  Now the next

instruction is you have heard testimony that the defendant

made a statement.  It is for you to decide, one, whether the

statement -- I'm sorry, whether the defendant made the

statement, and two, if so, how much weight to give to it.  In

making those decisions, you should consider all the evidence

about the statement, including the circumstances under which

the defendant may have made it.

You have heard testimony from an undercover agent

who was involved in the government's investigation in this

case. Law enforcement officials may engage in stealth and

deception, such as the use of undercover agents in order to

investigate criminal activities. An undercover agent may use

false names and appearances and assume the role of a

13-year-old girl.

All right. When you begin your deliberations,

okay, elect one member of the jury, so you guys should talk

amongst each other and elect one member of your jury as your

foreperson. He or she will preside over the deliberations and

speak for you here in Court. You will then discuss the case

with your fellow jurors to reach agreement if you can do so.

Your verdict, whether guilty or not guilty, must be unanimous.

So that means all 12 of you must make a decision whether

guilty or not guilty. Each of you must decide the case for

yourself. But you should do so only after you have considered

all the evidence, discussed it fully with the other jurors and

listened to the views of your fellow jurors. Do not be afraid

to change your opinion if the discussion persuades you that

you should. But do not come to a decision simply because

other jurors think it is right. It is important that you

attempt to reach a unanimous verdict but of course only if

each which you can do so after having made your own

conscientious decision. Do not change an honest belief about

the weight and effect of the evidence simply to reach a

verdict. Perform these duties fairly and impartially, ladies

and gentlemen.  Do not allow personal likes, or dislikes,

sympathy, prejudice for public opinion to influence you.  You

should also not be influenced by any person's race, color,

religion, national ancestry or gender, sexual orientation,

profession, occupation, celebrity, economic circumstances or

position in life or in the community.  It is your duty as

jurors to consult with one another and to deliberate with one

another with a view towards reaching an agreement if you can

do so.  During your deliberations, you should not hesitate to

reexamine your own views and change your opinion if you become

persuaded that it is wrong.

Because you must base your verdict only on the

evidence received in this case, and on these instructions, I

remind you that you must not be exposed to any other

information about the case or to the issues it involves

except for discussing the case with your fellow jurors during

your deliberations.  Let me give you the instruction, I've

read this before but I'm required to read it to you again.

This instruction, in particular, is an instruction that

applies when we recess for lunch, for break, for even when you

go home, okay, when you leave the courtroom.  Do not

communicate with anyone in any way and do not let anyone else

communicate with you in any way about the merits of the case

or anything to do with it.  This restriction applies with

discussing the case in person, in writing, by phone, or

1 electronic means via e-mail, text messaging, or any internet 11:44AM

2 chat room, blog, website or any other forms of social media. 11:44AM

3 This restriction applies to communicating with your family 11:44AM

4 members, your employer, the media or press and people involved 11:44AM

5 in the trial.  If you're asked or approached in any way about 11:44AM

6 your jury service or anything about this case, you must 11:44AM

7 respond that you have been ordered not to discuss the matter 11:44AM

8 and to report the contact to the Court. 11:45AM

9           Ladies and gentlemen, do not read, watch or 11:45AM

10 listen to any news or media accounts or commentary about the 11:45AM

11 case or anything do with it.  Do not do any research such as 11:45AM

12 consulting dictionaries, searching the internet or using other 11:45AM

13 reference materials and do not make any investigation or in 11:45AM

14 any other way try to learn about the case on your own. 11:45AM

15           The law requires these restrictions to ensure 11:45AM

16 that the parties have a fair trial based on the same evidence 11:45AM

17 that each party has had an opportunity to address.  A juror 11:45AM

18 who violates these restrictions jeopardizes the fairness of 11:45AM

19 these proceedings and a mistrial could result that would 11:45AM

20 require the entire trial process to start over.  If any juror 11:45AM

21 is exposed to any outside information, please notify the Court 11:45AM

22 immediately. 11:45AM

23           Some of you may have taken notes during the 11:45AM

24 trial.  Whether or not you took notes, you should rely on your 11:45AM

25 own memory of what was said.  Notes are only to assist your 11:45AM

memory, you should not be overly-influenced by your notes or those of your fellow jurors.  The punishment provided by law for this crime is for the Court to decide.  You may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt.

A verdict form has been prepared for you, ladies and gentlemen.  After you have reached your unanimous agreement on verdicts, your foreperson should complete the verdict form according to your deliberations, sign and date it and advise the Court security officer that you are ready to return to the courtroom.

If it becomes necessary during your deliberations to communicate with me, you may send a note through the court security officer, signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question. Remember that you're not to tell anyone, including me, how the jury stands numerically or otherwise or on any question submitted to you including the question of the guilt of the defendant until after you have reached a unanimous verdict or

1    have been discharged.                                          11:47AM

2           So in other words, I don't want you to say oh,          11:47AM

3    judge, we're like, okay, there's 12 jurors, we're like 6 and   11:47AM

4    6, you know, guilt or non-guilt.  You're not supposed to tell  11:47AM

5    me that.  The only time that you're gonna let me know where    11:47AM

6    you stand is when we -- when you return the verdict.  Okay?    11:47AM

7    And then the verdict forms are now gonna be placed and you'll  11:47AM

8    see it.  It will say "Count 1, attempted enticement of a       11:47AM

9    minor.  We, the jury, in the above-entitled case..."           11:47AM

10          (Pause.)                                                 11:48AM

11          So it says, "We, the jury, in the above-entitled        11:48AM

12   cause unanimously find the defendant, Michael Louis McCarron,  11:48AM

13   in violation of Title 18 U.S. Code Section 2422(b) and 2,      11:48AM

14   attempted enticement of a minor" and there's a box that says,  11:48AM

15   "Not guilty," and "Guilty."  I'm sorry, I don't have that in   11:48AM

16   the PDF form but you'll get copy of this okay.  Count 1.  Then 11:48AM

17   Count 2, it will say, "We, the jury, in the above-entitled     11:48AM

18   case unanimously find the defendant, Michael Louis McCarron,   11:48AM

19   in violation of Title 18 U.S. Code Section 1470 and 2,         11:48AM

20   attempted transfer of obscene material to a minor" and there   11:48AM

21   will be a box, "Not guilty" and "Guilty."  Each of you will    11:48AM

22   get this.  Then it will have dated this date and the           11:48AM

23   foreperson will insert the date and then their signed their    11:48AM

24   name.  All right.  Let me show you the -- there's -- you're    11:49AM

25   gonna have a packet.  Carmen, can I see it, the packets.       11:49AM

11:49AM
11:49AM
11:49AM
11:49AM
11:49AM
11:49AM
11:49AM
11:49AM
11:49AM
11:49AM
11:49AM
11:49AM
11:50AM
11:50AM
11:50AM
11:50AM
11:50AM
11:50AM
11:50AM
11:50AM
11:50AM
11:50AM
11:50AM
11:50AM
11:50AM

1          (Discussion with clerk.)

2          THE COURT:  Can you pull that up?  So you're

3    going to get a packet, every juror will get a folder and

4    you'll have a copy, each of will you have your own jury

5    instructions, okay.  So it's always sometimes better to have

6    your own, especially because there's several of them.  And if

7    you have a note for me, this is the jury note that's gonna be

8    in your packet.  So, "We, the jury," so say, Dear Judge, I

9    have a question about X, I don't -- you know, whatever X might

10   be, or "we have a question, can you clarify something" or

11   whatever.  And then just sign it, put the date and time.

12   After you give that to us, then I will get ahold of

13   Mr. Gorman, and Mr. Leon Guerrero and Mr. Collins and I'll

14   talk to them about how should we answer the question.  So I

15   may write back the question, write back the answer to the

16   question to you or I may call you in the courtroom and we'll

17   talk about it if you have a question.  Sometimes jurors don't

18   have questions, sometimes they do.  But we just leave that

19   with you.  All right.  Okay.  So that was a little faster than

20   I thought -- that was about 30 minutes, I think, right?

21   Anything further, Counsels, anything with instructions?

22          MR. LEON GUERRERO:  No.

23          THE COURT:  Did I read anything wrong?

24          MR. LEON GUERRERO:  None from the government.

25          MR. GORMAN:  Nothing from the defense, Your

| | |
|---|---|
| 1 | Honor. | 11:50AM |
| 2 | THE COURT:  Everything was read okay?  I read a | 11:50AM |
| 3 | little slower than I usually go.  Okay.  So do we need to | 11:50AM |
| 4 | swear in the marshals and the CSOs?  Or the CSOs right, is it | 11:50AM |
| 5 | the CSO?  Yeah, we'll swear you in.  All right.  So ladies and | 11:51AM |
| 6 | gentlemen, that will be it.  We're going to -- today is -- | 11:51AM |
| 7 | today is Thursday, so we're going to break for lunch right | 11:51AM |
| 8 | now.  So you don't have to -- you could just get organized | 11:51AM |
| 9 | when you go in.  Lunch should be delivered by 12 noon.  I | 11:51AM |
| 10 | think they have -- or something like that for all of you. | 11:51AM |

So I do have two alternates, so you're still important, alternates, but the thing is, you won't be able to sit in with the 12 jurors.  Juror No. 35, Juror No. 39.  Okay. So you're not discharged, I still need to keep you on-call, so what you could do is if you're retired, then you could go back to whatever you're doing, if you're still working, you can go back to work or -- and -- but you'll be on-call.

If anything were to happen to any of the 12 jurors, then I would call you up to come in and we would begin deliberation anew under the federal law.  Okay.  So you're still important.  And so the two of you will be excused at this time, No. 35 and No. 39, Mr. Balajadia and Ms. Wusstig. You can go ahead and go.  And we have your contact numbers, right?  We have your contact number.  Thank you for your service.  If I don't have to call you back, I do want you to

| | |
|---|---|
| 1 | know that I appreciate -- everybody appreciates, all the | 11:52AM |
| 2 | attorneys appreciate the time and attentiveness you gave to | 11:52AM |
| 3 | this trial.  Take care.  Thank you. | 11:52AM |
| 4 |             All right.  And then we'll swear in the court | 11:52AM |
| 5 | security officers.  Just the two?  You could do these two and | 11:52AM |
| 6 | do the other one afterwards as well, if they're not here. | 11:53AM |
| 7 | Just do these two then since you're here. | 11:53AM |
| 8 |             (Pause.) | 11:53AM |
| 9 |             THE COURT:  Is there anything else, Counsels, | 11:53AM |
| 10 | then? | 11:53AM |
| 11 |             MR. LEON GUERRERO:  Nothing from the government, | 11:53AM |
| 12 | Your Honor. | 11:53AM |

1    know that I appreciate -- everybody appreciates, all the                11:52AM
2    attorneys appreciate the time and attentiveness you gave to              11:52AM
3    this trial.  Take care.  Thank you.                                       11:52AM
4               All right.  And then we'll swear in the court                 11:52AM
5    security officers.  Just the two?  You could do these two and            11:52AM
6    do the other one afterwards as well, if they're not here.                11:53AM
7    Just do these two then since you're here.                                 11:53AM
8               (Pause.)                                                       11:53AM
9               THE COURT:  Is there anything else, Counsels,                 11:53AM
10   then?                                                                     11:53AM
11              MR. LEON GUERRERO:  Nothing from the government,              11:53AM
12   Your Honor.                                                               11:53AM
13              THE COURT:  We'll wait -- he's coming up?                     11:53AM
14              CSO MARATITA:  Yeah.                                           11:53AM
15              THE COURT:  Ladies and gentlemen, we will -- we              11:53AM
16   will go till 4:30 today.  I was going till 5 but maybe some of          11:53AM
17   you have Halloween plans with your children or grandchildren.           11:53AM
18   Do you?  If anyone does not, then we'll go till 5 but if you            11:53AM
19   do, do any of you have it?  I know some of you want -- some of          11:53AM
20   you are indicating yes, so we'll go till 4:30 today, ladies            11:53AM
21   and gentlemen.  And then I will let you know about tomorrow's          11:53AM
22   schedule.  Okay.  I'll let you know the next break.  I'll call         11:53AM
23   you and let you know.  I want to talk to the attorneys about           11:53AM
24   tomorrow's schedule.  All right.  We'll go ahead and swear in          11:54AM
25   the jurors.  I mean officers.                                           11:54AM

1    THE CLERK:  Please raise your right hand.  You do

2 solemnly swear to keep this jury together in some private and

3 convenient place and not to permit any person to speak to or

4 communicate with them, nor to do so yourself unless by order

5 of the Court or to ask whether they have agreed on a verdict

6 or to return them into Court when they have so agreed or when

7 ordered by the Court, so help you God?

8    OFFICERS:  I do.

9    (Officers Diana Slater, Boris Maratita and John

10 Concepcion.)

11    THE COURT:  Thank you, court security officers.

12 Okay, ladies and gentlemen, you may be -- go into the jury

13 deliberation room for your lunch and then to begin your

14 deliberations after lunch.  Thank you.

15    (Jury out at 11:55 a.m.)

16    THE COURT:  All right.  So tomorrow, so I did --

17 I just looked at the jurors' profile, so I want to see how

18 many of them were Gov Guam employees.  So I want to see

19 because it's a Gov Guam holiday, it's not a federal holiday,

20 so I was going to have them continue to deliberate tomorrow

21 but I wanted to talk to you guys about it.  So actually, two

22 of the jurors, let's see.  Two of them are Gov Guam employees

23 and I included the alternates, I'm not sure -- I gotta double

24 check this.  Two are federal employees, looks like six are

25 private employees and one -- two are housewives, so I don't

```
 1   know, you guys -- we do have federal court tomorrow.  And I      11:55AM
 2   mean if it was truly All Souls' Day tomorrow, there's some       11:55AM
 3   jurors that will say hey, judge, can I go to the cemetery, at     11:56AM
 4   you know, 9 o'clock.  So we'll kind of work around their         11:56AM
 5   schedule, but All Souls' Day is not going to be celebrated       11:56AM
 6   until Saturday.  And so what do you guys think?                  11:56AM
 7            MR. GORMAN:  I think they should deliberate             11:56AM
 8   tomorrow.                                                        11:56AM
 9            MR. LEON GUERRERO:  The government agrees, Your         11:56AM
10   Honor.                                                           11:56AM
11            MR. COLLINS:  (Nodded head.)                           11:56AM
12            THE COURT:  All right.  I'll let them know that         11:56AM
13   then.  Then with regard to recesses like the recess at the end  11:56AM
14   of the day, do you want to be here or do you want for me to     11:56AM
15   just say okay, keep an open mind and then come back at          11:56AM
16   8:00 a.m. the next day?                                        11:56AM
17            MR. GORMAN:  Defense does not have to be there, I      11:56AM
18   would -- for recesses.                                         11:56AM
19            MR. LEON GUERRERO:  Same thing with the               11:56AM
20   government.                                                    11:56AM
21            THE COURT:  It will be on the record.  The Court      11:56AM
22   will come back and tell the jurors to keep an open mind and    11:56AM
23   remember that long instruction about no social media.  Okay.   11:56AM
24            MR. LEON GUERRERO:  Yes, Your Honor.                  11:56AM
25            MR. GORMAN:  If -- yeah, I guess if the jurors        11:56AM
```

came in tomorrow, said oh, we only want to work half day, I 11:56AM

wouldn't have any objection but I guess we would approach it 11:56AM

then tomorrow.  Do you think they're gonna object to... 11:57AM

THE COURT:  I think maybe -- you know, I guess if 11:57AM

I was a Government of Guam employee, be honest, they might say 11:57AM

hey, I'm supposed to be off.  Some of them might.  I mean, 11:57AM

they very well might feel like -- because they're not gonna -- 11:57AM

they just won't get the advantage of that.  They'll still be 11:57AM

working.  You know, I don't know, I mean -- what do you -- 11:57AM

what do you think, let me see -- 11:57AM

MR. GORMAN:  I would just leave it that way but 11:57AM

if there was strong opposition from the jury, I'd be open to 11:57AM

consider it. 11:57AM

THE COURT:  Let me see which one.  I was looking 11:57AM

at the -- I took a little thing here.  DOE, Juror No. 12.  So 11:57AM

she's one of the regular jurors and let's see, who's the other 11:57AM

1, Juror 23, public health.  Yeah, those are two social 11:57AM

services, the other ones are housewives or I think -- these 11:58AM

all sound like private firms and military, right, NAVFAC, 11:58AM

obviously federal.  DHL, private, CTSI, private.  Cafe N' 11:58AM

Play, I don't know what that is, I assume that's private. 11:58AM

USDA is Fed, Green Energy Solutions, I assume that's business. 11:58AM

Rest are housewives, DZSP, local.  Gov Guam I already said 11:58AM

that.  Farm to Table, I think that's local, right, I mean 11:58AM

that's a business. 11:58AM

| | |
|---|---|
| 1 | MR. GORMAN:  Private. | 11:58AM |
| 2 | THE COURT:  Private, right?  I don't know.  You | 11:58AM |
| 3 | want me to -- | 11:58AM |
| 4 | MR. GORMAN:  No, just saying -- | 11:58AM |
| 5 | THE COURT:  I don't think I'm going to give them | 11:58AM |
| 6 | a choice.  The only thing was really if we weren't celebrating | 11:58AM |
| 7 | All Souls' Day, if we were celebrating All Souls' Day | 11:58AM |
| 8 | tomorrow, then I would work it out, I'd still have Court | 11:58AM |
| 9 | because I'm going be here any way.  So okay, so let's -- we'll | 11:59AM |
| 10 | keep Court.  And then if there's any issues regarding it with | 11:59AM |
| 11 | any of the jurors, we'll let them know but I'll have Carmen | 11:59AM |
| 12 | relay to them that we're gonna do Court from 8 to 5 tomorrow. | 11:59AM |
| 13 | Okay. | 11:59AM |
| 14 | MR. LEON GUERRERO:  Yes, Your Honor. | 11:59AM |
| 15 | THE COURT:  Okay, all right.  Thank you.  See | 11:59AM |
| 16 | you. | 11:59AM |
| 17 | MR. GORMAN:  Thank you, Your Honor. | 11:59AM |
| 18 | THE COURT:  We got your number.  So with the | 11:59AM |
| 19 | defendant, will they keep the defendant here, Marshal | 11:59AM |
| 20 | Griffith, or does he go back? | 11:59AM |
| 21 | DEPUTY GRIFFITH:  He'll be here. | 11:59AM |
| 22 | THE COURT:  He'll wait here until 4:30? | 11:59AM |
| 23 | DEPUTY GRIFFITH:  Yes. | 11:59AM |
| 24 | THE COURT:  All right.  Thank you, thank you | 11:59AM |
| 25 | everyone.  Take care. | 11:59AM |

|     |                                                                        |          |
|-----|------------------------------------------------------------------------|----------|
| 1   | (Off the record at 11:59 a.m.)                                         | 11:59AM  |
| 2   | (Back on the record at 3:08 p.m.)                                      | 03:08PM  |
| 3   | THE COURT:  We're back on the record.  All,                            | 03:08PM  |
| 4   | Counsels present, defendant Michael McCarron's also present.           | 03:08PM  |
| 5   | The Court received a note at 2:34 p.m. and the note was, "We,          | 03:08PM  |
| 6   | the jury, have reached a decision" and it's signed by the              | 03:09PM  |
| 7   | foreperson, or juror.  I don't know who it is, it doesn't say.         | 03:09PM  |
| 8   | I mean I can't read the signature.  And I wrote, "Dear Jurors,         | 03:09PM  |
| 9   | thank you for your note.  I will contact the lawyers.  Please          | 03:09PM  |
| 10  | take a break and we will resume at about 3:00 p.m., Chief              | 03:09PM  |
| 11  | Judge FTG."  Okay.  We'll call in the jury.                            | 03:09PM  |
| 12  | (Jury in at 3:10 p.m.)                                                 | 03:10PM  |
| 13  | THE COURT:  Welcome back, ladies and gentlemen of                      | 03:10PM  |
| 14  | the jury.  Thank you for getting back to me.  I did receive            | 03:10PM  |
| 15  | your note at about 2:34 p.m., so I thank you for your                  | 03:10PM  |
| 16  | patience.  I had to get a hold of the lawyers.  I know you got         | 03:10PM  |
| 17  | my note back indicating I was going to get the lawyers to come         | 03:10PM  |
| 18  | in.  Of course, they're either at another Court hearing or at          | 03:10PM  |
| 19  | their office, so they've just been able to come back right             | 03:11PM  |
| 20  | now.  It's my understanding that the jurors have reached a             | 03:11PM  |
| 21  | verdict; is that correct?                                              | 03:11PM  |
| 22  | FOREPERSON:  Yes, Your Honor.                                          | 03:11PM  |
| 23  | THE COURT:  Can I just have that passed over to                        | 03:11PM  |
| 24  | my clerk.                                                              | 03:11PM  |
| 25  | (Pause.)                                                               | 03:11PM  |

1        THE COURT:  Okay, I'm going to have the clerk   03:11PM

2  read the verdict, ladies and gentlemen.  Court finds that the   03:11PM

3  verdict form is... properly filled out.  Okay, you may   03:11PM

4  proceed.  Yes, please stand, Mr. McCarron.   03:11PM

5        THE CLERK:  *United States of America versus*   03:11PM

6  *Michael Louis McCarron*, verdict.  "On Count 1, attempted   03:11PM

7  enticement of a minor, we, the jury, in the above-entitled   03:12PM

8  cause, unanimously find the defendant, Michael Louis McCarron,   03:12PM

9  in violation of Title 18 United States Code Sections 2422(b)   03:12PM

10  and 2, attempted enticement of a minor, guilty.  Count 2,   03:12PM

11  attempted transfer of obscenity to a minor, we, the jury, in   03:12PM

12  the above-entitled cause unanimously find the defendant,   03:12PM

13  Michael Louis McCarron, in violation of Title 18 United States   03:12PM

14  Code Sections 1470 and 2, attempted transfer of obscene   03:12PM

15  material to a minor, guilty.  Dated this 31st day of October,   03:12PM

16  2019 in Hagatna," signed by the foreperson.   03:12PM

17        THE COURT:  Okay, thank you.  Did any parties   03:12PM

18  wish to have the jurors polled?   03:12PM

19        MR. GORMAN:  Yes, Your Honor.   03:12PM

20        THE COURT:  Okay.  All right.  Very well.  Ladies   03:13PM

21  and gentlemen, at this time, when I specifically ask the   03:13PM

22  question "Do any members" -- you may be seated, yes, Mr.   03:13PM

23  McCarron and Mr. Gorman.  If you want to have the jurors   03:13PM

24  polled, so what that means is you will just confirm whether   03:13PM

25  this is your vote.  Okay.  So what we'll do is I'll have the   03:13PM

1  clerk go down the line and start with Juror No. 1, so Juror    03:13PM

2  No. 1 is seated right here in the front -- left and then you    03:13PM

3  just go from -- as I face you, left to right.  1 through 6 and    03:13PM

4  then 7 through 12.  Okay.  Hold on a second.    03:13PM

5            THE CLERK:  Juror No. 1, are these your verdicts    03:13PM

6  as read?    03:13PM

7            JUROR 1:  Yes.    03:13PM

8            THE CLERK:  Juror No. 2, are these your verdicts    03:13PM

9  as read?    03:14PM

10            JUROR 2:  Yes.    03:14PM

11            THE CLERK:  Juror No. 3, are these your verdicts    03:14PM

12  as read?    03:14PM

13            JUROR 3:  Yes.    03:14PM

14            THE CLERK:  Juror No. 4, are these your verdicts    03:14PM

15  as read?    03:14PM

16            JUROR 4:  Yes.    03:14PM

17            THE CLERK:  Juror No. 5, are these your verdicts    03:14PM

18  as read?    03:14PM

19            JUROR 5:  Yes.    03:14PM

20            THE CLERK:  Juror No. 6, are these your verdicts    03:14PM

21  as read?    03:14PM

22            JUROR 6:  Yes.    03:14PM

23            THE CLERK:  Juror No. 7, are these your verdicts    03:14PM

24  as read?    03:14PM

25            JUROR 7:  Yes.    03:14PM

| | | |
|---|---|---|
| 1 | THE CLERK: Juror No. 8, are these your verdicts | 03:14PM |
| 2 | as read? | 03:14PM |
| 3 | JUROR 8: Yes. | 03:14PM |
| 4 | THE CLERK: Juror No. 9, are these your verdicts | 03:14PM |
| 5 | as read? | 03:14PM |
| 6 | JUROR 9: Yes. | 03:14PM |
| 7 | THE CLERK: Juror No. 10, are these your verdicts | 03:14PM |
| 8 | as read? | 03:14PM |
| 9 | JUROR 10: Yes. | 03:14PM |
| 10 | THE CLERK: Juror No. 11, are these your verdicts | 03:14PM |
| 11 | as read? | 03:14PM |
| 12 | JUROR 11: Yes. | 03:14PM |
| 13 | THE CLERK: Juror No. 12, are these your verdicts | 03:14PM |
| 14 | as read? | 03:14PM |
| 15 | JUROR 12: Yes. | 03:14PM |
| 16 | THE CLERK: Your Honor, the verdicts are | 03:14PM |
| 17 | unanimous. | 03:14PM |
| 18 | THE COURT: All right. Thank you. All right, | 03:14PM |
| 19 | ladies and gentlemen, first of all, I want to thank each and | 03:14PM |
| 20 | every one of you on behalf of District Court of Guam and also | 03:15PM |
| 21 | on behalf of the attorneys, the prosecutors, Mr. Leon Guerrero | 03:15PM |
| 22 | and Mr. Collins, and Mr. Gorman on behalf of his client, Mr. | 03:15PM |
| 23 | McCarron. I'd like to thank you for performing your civic | 03:15PM |
| 24 | duty. It is hard to be a juror. And everybody knows it's not | 03:15PM |
| 25 | an easy task, but the Court notes that each of you were very | 03:15PM |

```
1   attentive as you listened to all of the evidence in this case,      03:15PM
2   even though the case was a short trial, there were only two         03:15PM
3   witnesses, it's just still as important as a trial that would       03:15PM
4   take 5 or 6 weeks and it's just as important because we are         03:15PM
5   talking about a defendant who has been charged with a crime,        03:15PM
6   but he also has been judged by his peers and you are his            03:15PM
7   peers, so I thank you for your performance in your civic duty       03:15PM
8   today and I hope you have a nice weekend.  I would like to          03:15PM
9   speak to you right after the next recess in about 5,                03:16PM
10  10 minutes, if I may.  But you will be discharged, ladies and       03:16PM
11  gentlemen.  All right.  So thank you very much and please rise      03:16PM
12  for the jury.                                                       03:16PM
13              (Jury out at 3:16 p.m.)                                 03:16PM
14              THE COURT:  Mr. Gorman, did you want to look at         03:16PM
15  the verdict?                                                        03:16PM
16              MR. GORMAN:  Yes.                                       03:16PM
17              THE COURT:  Why don't I pass this to you, this is       03:16PM
18  the jury note, then I could also ask the prosecution, you guys      03:16PM
19  can walk over.                                                      03:16PM
20              MR. LEON GUERRERO:  Yes, Your Honor.                    03:16PM
21              THE COURT:  Let them look at it first and he can        03:16PM
22  pass it over to you.  I'll let them review the verdict form,        03:16PM
23  Mr. Gorman and his client first.                                    03:16PM
24              (Pause.)                                                03:17PM
25              THE COURT:  And then once you're done, Mr.              03:17PM
```

1    Gorman, if you could pass it over to Mr. Leon Guerrero and          03:17PM

2    Mr. Collins.  All right, you may be seated, Counsels.              03:17PM

3              All right, Mr. McCarron is confined so let me            03:17PM

4    just set this for sentencing then.  The Court has the             03:17PM

5    sentencing scheduling order already, I'll set this for            03:17PM

6    sentencing for January 29, 2010 [sic] at 9:30 a.m.  And the       03:17PM

7    Court will order that the U.S. Probation Officer, and I'll        03:17PM

8    make sure you get a copy -- 2020, that's right.  This says        03:17PM

9    2010.  All right.  Let me see.  Let me fix this.  All right.      03:17PM

10   So my scheduling order, it will say January 29, 2020, at          03:17PM

11   9:30 a.m. will be sentencing.  U.S. Probation Officer will        03:17PM

12   file and serve a draft sentence report -- presentence report      03:18PM

13   December 16, 2019 and a response will be due December 30,         03:18PM

14   2019, any objections January 6, 2020, final presentence report   03:18PM

15   January 12, 20 -- is something wrong with this, 2020.  Change     03:18PM

16   this.  And sentencing memorandum and any motions for upward or    03:18PM

17   downward departure and other motions will be due January 20,      03:18PM

18   2020.  All right.  Is there anything further, Counsels?           03:18PM

19              MR. GORMAN:  Nothing for the defense, Your Honor.      03:18PM

20              MR. LEON GUERRERO:  Your Honor, I think the only       03:18PM

21   outstanding issue is just the forfeiture of the -- there was a    03:18PM

22   forfeiture allegation of the laptop MacBook Pro.                  03:18PM

23              THE COURT:  Right.                                     03:18PM

24              MR. LEON GUERRERO:  So guess I don't know how we       03:18PM

25   want to go about addressing that.                                 03:18PM

| | |
|---|---|
| 1 | THE COURT:  Well, let's see.  Were you guys going | 03:18PM |
| 2 | to handle that administratively, Counsels? | 03:18PM |
| 3 | MR. LEON GUERRERO:  Well it was -- I mean it was | 03:18PM |
| 4 | seized by the government.  And we can present evidence to show | 03:19PM |
| 5 | that that was an item that was used to facilitate the crime | 03:19PM |
| 6 | that was -- | 03:19PM |
| 7 | THE COURT:  Can you speak into the -- | 03:19PM |
| 8 | MR. LEON GUERRERO:  Yes. | 03:19PM |
| 9 | THE COURT:  -- microphone.  What was that? | 03:19PM |
| 10 | MR. LEON GUERRERO:  So the government can present | 03:19PM |
| 11 | evidence to show that that laptop, the MacBook Pro, was used | 03:19PM |
| 12 | to facilitate the crime that defendant was charged with.  So | 03:19PM |
| 13 | -- | 03:19PM |
| 14 | THE COURT:  Sometimes we have it either with the | 03:19PM |
| 15 | Court or with the jury, so I don't know.  Let me see with | 03:19PM |
| 16 | Mr. Gorman how you guys want to proceed on that. | 03:19PM |
| 17 | MR. GORMAN:  I'd have to consult with my client. | 03:19PM |
| 18 | THE COURT:  Okay.  'Cause -- I mean we might have | 03:19PM |
| 19 | to do it in front -- if you want to have it with the jury, | 03:19PM |
| 20 | we'll use the same jury then, I'll have to undischarge them. | 03:19PM |
| 21 | Or sometimes you can just waive the jury and it will just be | 03:19PM |
| 22 | heard before the Court.  I've done it both ways. | 03:19PM |
| 23 | MR. GORMAN:  May I have a moment, Your Honor? | 03:20PM |
| 24 | THE COURT:  Sure. | 03:20PM |
| 25 | (Pause.) | 03:20PM |

1    THE COURT:  Is it just the laptop?    03:20PM

2    MR. LEON GUERRERO:  Yes, Your Honor.    03:20PM

3    MR. GORMAN:  I think it's a laptop, a hard drive    03:20PM

4  and tablet.    03:20PM

5    MR. LEON GUERRERO:  No, what was forfeited, Your    03:20PM

6  Honor, it was just the MacBook Pro model.  That's all it was.    03:20PM

7    THE COURT:  Says MacBook Pro model, so --    03:20PM

8    MR. LEON GUERRERO:  That's the only item we're    03:20PM

9  looking to forfeit.    03:20PM

10    THE COURT:  Yeah, I'm looking at this.  So    03:20PM

11  nothing else?    03:20PM

12    MR. LEON GUERRERO:  No.    03:20PM

13    THE COURT:  Was there anything else seized    03:20PM

14  though?  Apparently there were other things seized.    03:21PM

15    MR. LEON GUERRERO:  Yes, there was a hard disk    03:21PM

16  and I believe a Samsung tablet but --    03:21PM

17    THE COURT:  You're not wanting that?  You didn't    03:21PM

18  notice that for forfeiture?    03:21PM

19    MR. LEON GUERRERO:  No; correct.    03:21PM

20    THE COURT:  You're just talking about the MacBook    03:21PM

21  Pro model?    03:21PM

22    MR. LEON GUERRERO:  Because that's what was used    03:21PM

23  to facilitate the offense.    03:21PM

24    MR. GORMAN:  Your Honor, we have no -- we will    03:21PM

25  waive the argument or waive our right to it.    03:21PM

1          THE COURT:  So you'll just forfeit it?          03:21PM

2          MR. GORMAN:  Yes.          03:21PM

3          THE COURT:  Your client will just forfeit it?          03:21PM

4  All right.  Okay, very well.  So then Court need not schedule          03:21PM

5  this for either bench trial or jury trial.  Okay.  That's          03:21PM

6  fine.  Okay, anything further?          03:21PM

7          MR. LEON GUERRERO:  Nothing from the government.          03:21PM

8          THE COURT:  I'll put that in the -- we'll put          03:21PM

9  that in for the presentence report.  If nothing further, then          03:21PM

10  I'll see you at sentencing.  Thank you, Counsel.          03:21PM

11          MR. GORMAN:  Thank you, Your Honor.          03:21PM

12          MR. LEON GUERRERO:  Thank you, Your Honor.          03:21PM

13          THE COURT:  Take care.          03:21PM

14          (Proceedings concluded at 3:24 p.m.)          03:21PM

15                        *  *  *

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER


CITY OF HAGATNA      )
                     )  ss.
TERRITORY OF GUAM    )


       I, Veronica F. Flores, Official Court Reporter for the United States District Court of Guam, do hereby certify the foregoing pages, 1 to 84, to be a true and correct transcript of the proceedings held in the above-entitled matter to the best of my ability.

       Dated this 25th day of April 2020.


                   /s/Veronica F. Flores
                   Veronica F. Flores