IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

UNITED STATES OF AMERICA  )  Court of Appeals No. 20-10072
                  )
        Plaintiff,)  District Court No. 19-00012
                  )
MICHAEL LOUIS MCCARRON,   )
                  )
_____Defendant.)

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE FRANCES TYDINGCO-GATEWOOD
CHIEF JUDGE
FEBRUARY 11, 2020; 3:18 P.M.
HAGATNA, GUAM

**Sentencing**

Proceedings recorded *mechanical stenography*.

Veronica F. Flores, CSR-RPR
Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

APPEARANCES


Appearing on behalf of the plaintiff:


OFFICE OF THE UNITED STATES ATTORNEY
BY: STEPHEN LEON GUERRERO, AUSA
Sirena Plaza, Suite 502
108 Hernan Cortez Avenue
Hagatna, Guam 96910



Appearing on behalf of the defendant:


OFFICE OF THE FEDERAL PUBLIC DEFENDER
BY: JOHN T. GORMAN, FPD
First Hawaiian Bank Building
Suite 501
Maite, Guam 96910

I N D E X

Page

Court sentenced the defendant to 10 years
imprisonment for Count 1, 10 years imprisonment
for Count 2, both to run concurrently          27

Court will forfeit defendant's MacBook Pro     28

Veronica F. Flores, CSR-RPR
Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

1          February 11, 2020; 3:18 p.m.; Hagatna, Guam

2                              * * *

3

4          THE CLERK:  Good afternoon, Your Honor.  This is

5   Criminal Case No. 19-00012, *United States of America v.*

6   *Michael Louis McCarron*, Sentencing.

7          Counsel, please state your appearances.

8          MR. LEON GUERRERO:  Buenas and hafa adai, Your

9   Honor, Stephen Leon Guerrero on behalf of United States.

10         THE COURT:  Okay, hafa adai, Mr. Leon Guerrero.

11         MR. GORMAN:  Buenas hafa adai, Your Honor, John

12  Gorman, Federal Public Defender, for Mr. McCarron.  He's now

13  seated to my right.

14         THE COURT:  Buenas and hafa adai, Mr. Gorman and

15  Mr. Michael Louis McCarron.  Okay.  Good afternoon.  We are

16  here for a sentencing of the defendant.  He has been found

17  guilty by a jury of his peers.  The indictment was attempted

18  -- enticement of a minor, Count 1; attempted transfer of

19  obscene material to a minor, Count 2.  He was convicted of

20  both.  And let me just, first of all, ask Mr. Gorman, have you

21  had a full opportunity to review the defendant's file and the

22  presentence report and to discuss all of this with him before

23  today's sentencing?

24         MR. GORMAN:  Yes, Your Honor.

25         THE COURT:  And Mr. McCarron, have you had enough

03:18PM
03:18PM
03:18PM
03:18PM
03:18PM
03:18PM
03:18PM
03:18PM
03:18PM
03:18PM
03:18PM
03:18PM
03:18PM
03:18PM
03:18PM
03:18PM
03:19PM
03:19PM
03:19PM
03:19PM
03:19PM
03:19PM
03:19PM
03:19PM
03:19PM

1    time to speak to your lawyer, Mr. Gorman, regarding your case          03:19PM

2    and your sentencing today?                                             03:19PM

3              THE DEFENDANT:  Yes, Your Honor.                             03:19PM

4              THE COURT:  Okay.  And you've had an opportunity             03:19PM

5    to review the presentence report?                                     03:19PM

6              THE DEFENDANT:  Yes, Your Honor.                             03:19PM

7              THE COURT:  Any question, sir?                               03:19PM

8              THE DEFENDANT:  No, sir, or no, ma'am.                       03:19PM

9    Apologies.                                                            03:19PM

10             THE COURT:  That's all right.  Okay, so there's             03:19PM

11   no -- well there was an initial objection but it was taken            03:19PM

12   care of recording the 3E1.1 issue, Mr. Leon Guerrero?                 03:19PM

13             MR. LEON GUERRERO:  Yes, Your Honor, that's                  03:19PM

14   correct.                                                              03:19PM

15             THE COURT:  All right.  And I understand it, so             03:19PM

16   you adopt the presentence report?                                     03:19PM

17             MR. LEON GUERRERO:  We do.                                   03:20PM

18             THE COURT:  The final one.  And the same with               03:20PM

19   you, Mr. Gorman?                                                      03:20PM

20             MR. GORMAN:  Yes, Your Honor.                                03:20PM

21             THE COURT:  All right.  The Court does have a               03:20PM

22   sentencing memorandum filed by the U.S. Attorney's office.           03:20PM

23   And let's see... and I do not have any sentencing memorandum          03:20PM

24   or objections filed by the defendant's Counsel; is that              03:20PM

25   correct, Mr. Gorman?                                                  03:20PM

```
 1          MR. GORMAN:  Yes, Your Honor.                        03:20PM

 2          THE COURT:  All right.  Let's see.  So the Court     03:20PM

 3   will adopt the presentence investigation report at this time  03:20PM

 4   without change.  Let me just hear now from the U.S. Probation  03:20PM

 5   Officer, Ms. Yamashita, regarding what the exposure of    03:20PM

 6   defendant's sentencing range will be.                     03:20PM

 7          PROBATION OFFICER:  Thank you, Your Honor.  The    03:20PM

 8   defendant was convicted of Count 1, attempted enticement of a  03:20PM

 9   minor, and Count 2, attempted transfer of obscene material to  03:20PM

10   a minor.                                                  03:20PM

11          Pursuant to Section 3D1.1(a)(1) of the            03:21PM

12   guidelines, the Court shall group the counts resulting in  03:21PM

13   conviction into distinct groups of closely related counts by  03:21PM

14   applying the rules specified in Section 3D1.2.            03:21PM

15          In 3D1.2(a), when counts involve the same victim   03:21PM

16   and the same act or transaction, and in 3D1.2(c), when one of  03:21PM

17   the counts embodies conduct that is treated as a specific  03:21PM

18   offense characteristic in, or other adjustment to, the    03:21PM

19   guideline applicable to another of the counts.  In this case,  03:21PM

20   both grouping rules apply.                                03:21PM

21          So Group 1, Count 1, attempted enticement of a     03:21PM

22   minor, has a base offense level of 28 and is found in     03:21PM

23   Section 2G1.3 of the guidelines.  According to application  03:21PM

24   note 1(c) of that guideline, Minor means an undercover law  03:22PM

25   enforcement officer who represented to a participant that the  03:22PM
```

1    officer had not attained the age of 18 years.                03:22PM

2          Also the defendant was convicted under 18 United       03:22PM

3    States Code Section 2422(b), which resulted in a base offense 03:22PM

4    level of 28.  Under that guideline, there is a specific      03:22PM

5    offense characteristic under 2G1.3(b)(3), in this case, the  03:22PM

6    defendant used a computer and e-mail account to persuade,    03:22PM

7    induce, entice, coerce, or facilitate the travel of the minor 03:22PM

8    to engage in prohibited sexual conduct.  And a two-level     03:22PM

9    increase is warranted.  An adjusted offense level subtotal is 03:22PM

10   30.                                                          03:22PM

11         In Group 1, still Count 2, attempted transfer of       03:22PM

12   obscene material to a minor, the guideline for a violation of 03:22PM

13   that statute, which is 18 United States Code Section 1470, is 03:23PM

14   found in 2G3.1 and the same goes application note No. 1, Minor 03:23PM

15   meaning an undercover law enforcement officer who represented 03:23PM

16   to a participant that the officer had not attained the age of 03:23PM

17   18 years and had a base offense level of 10.                 03:23PM

18         For this count, the specific offense                   03:23PM

19   characteristics involved distribution to a minor that was    03:23PM

20   intended to persuade, induce, entice, coerce, or facilitate  03:23PM

21   the travel of, the minor to engage in prohibited sexual      03:23PM

22   conduct, specifically, the defendant sent Brit approximately 03:23PM

23   12 images and one video, which depicted him exposing his male 03:23PM

24   genitalia and this increased the offense level by seven      03:24PM

25   levels.                                                      03:24PM

1          Also, there was an addition of two levels under          03:24PM

2     specific offense characteristics because the offense involved     03:24PM

3     the use of a computer or an interactive computer service.  And     03:24PM

4     the adjusted offense level for Count 2 is 19.  When grouped     03:24PM

5     together, under -- pursuant to Section 3D1.2(a) through (c),     03:24PM

6     the offense level applicable to a group is the offense level     03:24PM

7     for the most serious of the counts.  In this case, it's 30.     03:24PM

8     And there is no reduction for acceptance of responsibility.     03:24PM

9     So resulting in a total offense level of 30.     03:24PM

10          The criminal history category is one.  One     03:24PM

11     moment.  So under the statute for Count 1, imprisonment is not     03:25PM

12     less than ten years or a maximum of life under Count 2.  There     03:25PM

13     is a maximum of ten years' imprisonment.  Under the     03:25PM

14     guidelines, for Count 1, the imprisonment range is 120 to     03:25PM

15     121 months.  And for Count 2, it's 10 years, 120 months.     03:25PM

16     Probation is not applicable under the statute or the     03:25PM

17     guidelines.  Supervised release under the statute for Count 1     03:25PM

18     is not less than five years.  So there is a mandatory minimum     03:25PM

19     of five years supervised release for Count 1.  And Count 2,     03:25PM

20     it's no more than three years.     03:25PM

21          Under the guidelines, it's five years to life.     03:25PM

22     And for Count 2, it's at least one year but not more than     03:25PM

23     three years.  The statutory provisions for both Counts 1 and 2     03:25PM

24     for the fine, there is a maximum of $250,000 per count.  And     03:26PM

25     under the guidelines, the fine range is 30,000 to 300,000,     03:26PM

however, because of the statutory maximum is $250,000 and    03:26PM

there is a total special assessment fee of $200 which is $100    03:26PM

per count.    03:26PM

        THE COURT:  Okay.  Thank you.  And do you have a    03:26PM

recommendation from U.S. Probation?    03:26PM

        PROBATION OFFICER:  Yes, Your Honor.  For both    03:26PM

Counts 1 and 2, we are recommending the mandatory minimum of    03:26PM

ten years to run concurrent and with credit for time served.    03:26PM

        THE COURT:  Okay.  Let's see.  Count 1 is, I'm    03:26PM

sorry, the mandatory minimum is related to which count here?    03:26PM

        PROBATION OFFICER:  For Count 1.    03:26PM

        THE COURT:  And then Count 2 is not mandatory,    03:26PM

but it just says for purposes of the guidelines, it starts --    03:26PM

the -- okay, I see it's 120 months for Count 2, is that right?    03:26PM

        PROBATION OFFICER:  That's correct.    03:27PM

        THE COURT:  I just saw that right now.  Thank    03:27PM

you.  And then to run concurrently?    03:27PM

        PROBATION OFFICER:  Yes, Your Honor.    03:27PM

        THE COURT:  Then with regard to supervised    03:27PM

release?    03:27PM

        PROBATION OFFICER:  With supervised release for    03:27PM

Count 1, we recommending the minimum of five years.  And for    03:27PM

Count 2, 3 years.  And Count 2 shall run concurrently to    03:27PM

Count 1.    03:27PM

        THE COURT:  Thank you.  All right.  Mr. Leon    03:27PM

1    Guerrero?                                                      03:27PM

2           MR. LEON GUERRERO:  Yes, Your Honor.  Thank you,        03:27PM

3    Your Honor.  At this time, the government asks that the        03:27PM

4    defendant be sentenced to the max under the sentencing         03:27PM

5    guideline range of 121 months, five years supervised release,  03:27PM

6    the $200 special assessment fee, the forfeiture of the laptop   03:27PM

7    that was --                                                    03:27PM

8           THE COURT:  They recovered that?                        03:27PM

9           MR. LEON GUERRERO:  Yes, we do have it but we ask       03:27PM

10   --                                                             03:28PM

11          THE COURT:  That's the one noted in the                 03:28PM

12   indictment?                                                    03:28PM

13          MR. LEON GUERRERO:  Yes, Your Honor.  And any           03:28PM

14   other conditions that probation or the Court imposes on this    03:28PM

15   defendant.  As Your Honor is aware, this was a case that we     03:28PM

16   had a trial on over the course of two-and-a-half days or so.    03:28PM

17   And during this trial, if Your Honor may recall, this was a     03:28PM

18   defendant that had sent really explicit and vile e-mails to an  03:28PM

19   individual that he believed, Brit, was a 13-year-old female.    03:28PM

20          And I'm not going to go into all the specific           03:28PM

21   e-mails but I'll just kind of highlight some of these more      03:28PM

22   concerning ones.  There was an e-mail or numerous e-mails       03:28PM

23   where he talked about sexual activity and that he liked to      03:28PM

24   kiss and use his tongue on people, talked about masturbation,   03:28PM

25   and how he would masturbate and asked Brit, this 13-year-old    03:28PM

female whether he imagined her masturbating.  He had comments

about him telling Brit that he's going to finish his night off

jerking himself off, dreaming of her, asking Brit to

masturbate and send a picture of her face while she stipulated

herself.  And he went into detail asking Brit to rub her

vagina and wanted to see her response while it occurred.  He

had him telling this 13-year-old girl, that again he believed

to be 13, he'd love to put his mouth around her nipples and

grab her butt.  And after sending a pic and video of his

exposed penis, he asked Brit if it made her wet in her private

parts.

          And, again, these are just some of the vile

e-mails, Your Honor, that this defendant, a 32-year-old male

at the time, was sending to a person again he believed was 13

at the time.

          The other concern that the government had is that

this defendant was exhibiting grooming behavior with this 13

year old, telling -- making her feel comfortable being able to

communicate about these mature and more adult kind of

communications; you know, asking Brit -- or telling Brit that

innocence should never be wasted, telling her that although

her age makes him nervous, that she was incredibly beautiful,

and even so much as gave personal information about himself to

Brit just so that she would feel comfortable with him, you

know, telling her that he likes electronics, that he drove a

1    Ford Taurus, his middle name is Louis, he was affiliated with     03:30PM

2    the military, he had base access and even to the point where      03:30PM

3    he told her where he was staying at, at the Sheraton Resort,       03:30PM

4    room 342.      03:30PM

5           So, again, that -- again, the fact that he was       03:30PM

6    exhibiting this grouping behavior during the period of time        03:30PM

7    that we allege is, of course, a big concern.  And, again,          03:30PM

8    coupled with these explicit e-mails that he was sending, shows     03:30PM

9    the kind of individual that this defendant is.  And if that        03:30PM

10   wasn't enough, you know, you had him sending 12 pics of his        03:31PM

11   exposed penis, again, to Brit, as well as a video of his           03:31PM

12   penis.  And if you recall the video, I think it was after          03:31PM

13   ejaculation but he sent it on two separate occasions to Brit.      03:31PM

14          And so, you know, I anticipate defense Counsel is       03:31PM

15   going to get up here, Your Honor, and say, "Hey, what's the        03:31PM

16   big deal?  Brit was Special Agent Adam Ring.  Okay, there was      03:31PM

17   no real female."  Or you know, I anticipate he's going to get      03:31PM

18   up here and say, "He never left his hotel room , so Brit was       03:31PM

19   really in no danger."      03:31PM

20          THE COURT:  I think he said that to the jury.       03:31PM

21          MR. LEON GUERRERO:  Oh and he did.       03:31PM

22          THE COURT:  He argued that to the jury.       03:31PM

23          MR. LEON GUERRERO:  And I anticipate he's going       03:31PM

24   to make the same argument that this -- there was really no         03:31PM

25   victim, there's no Brit, so why should, you know, his client       03:31PM

03:31PM
1   be given the 121 months that we're asking.  But I think what's

03:32PM
2   important to note and what was demonstrated during the trial

03:32PM
3   was what was his intent at the time and what was his belief at

03:32PM
4   the time.  That's what the law requires.  And the belief at

03:32PM
5   the time was that he actually thought he was communicating

03:32PM
6   with a 13-year-old female and his own video confession

03:32PM
7   corroborated that.  When asked by the agents, you know, did

03:32PM
8   you know she was 13, he admitted, "Yeah, I knew she was 13."

03:32PM
9   So even his own video confession admitted that.

03:32PM
10          And the reason why we are asking for 121 months,

03:32PM
11  and again, I anticipate, you know, defense Counsel is going to

03:32PM
12  get here 120 months, a 121 months, what's really the big deal

03:32PM
13  with the extra month that we're seeking.  But I'd like to

03:32PM
14  point Your Honor's attention to paragraph 8 of the PSR.  And

03:32PM
15  you know, what really is an aggravating factor in this case is

03:33PM
16  that this defendant, while he was on pretrial release, was

03:33PM
17  afforded the opportunity to get out of custody, he was allowed

03:33PM
18  to travel to, not only Idaho, but to Washington state and

03:33PM
19  Idaho, Utah, and Washington, so this defendant was allowed to

03:33PM
20  travel by the grace of the Court.  He was given conditions to

03:33PM
21  follow.  And what did this defendant do while he was on

03:33PM
22  pretrial release?  He, in essence, defied the Court's order

03:33PM
23  not to utilize any device or to get on the internet and pretty

03:33PM
24  much he posted approximately 100 posts on an ad escort service

03:33PM
25  site, skipthegames.  And so, you know, again, that just

demonstrates the kind of individual that this defendant is.   03:33PM
He has no regard for the law when he attempted to entice a   03:34PM
minor, to engage in sexual activity and even when he was   03:34PM
brought before the Court, not only here but even in the Court   03:34PM
in the mainland, again, he shows intent to defy Court orders   03:34PM
and he chose to take it upon himself to engage in this, what   03:34PM
we would perceive, as criminal conduct.   03:34PM

          And so, you know, that additional month is pretty   03:34PM
significant because the message needs to be sent to him that,   03:34PM
you know, court orders are court orders and they need to be   03:34PM
followed.   03:34PM

          And in closing, Your Honor, who best to tell us   03:34PM
what kind of sentence he should get than the defendant   03:34PM
himself.  And in the video confession, there was a segment   03:34PM
toward the end of the interview when he was asked by Special   03:34PM
Agent Kipp, "What do you think should happen, Michael?  Put   03:34PM
yourself in Brit's dad's shoes."  And what was the defendant's   03:34PM
response?  "If I was him, I'd want the maximum punishment."   03:35PM
And so those are the words from the defendant.  And I think   03:35PM
it's also important to stress was, again, when he was   03:35PM
confronted about what he did and how morally wrong it was, he   03:35PM
agreed.  He said it was definitely wrong.  It was definitely   03:35PM
wrong.  It was definitely wrong.  Three times.  So I think   03:35PM
that really, Your Honor, just exemplifies the sentence and the   03:35PM
need to have that 121 months imposed and, therefore, we ask   03:35PM

```
1    that Your Honor impose that sentence along with the other        03:35PM
2    conditions that we've asked.                                      03:35PM
3              THE COURT:  Thank you, Leon Guerrero.                   03:35PM
4              MR. LEON GUERRERO:  Thank you, Your Honor.              03:35PM
5              THE COURT:  Mr. Gorman, you and your client want        03:35PM
6    to come up to the podium.                                         03:35PM
7              MR. GORMAN:  We agree with the U.S. Probation           03:36PM
8    Office and we're asking for a sentence of 120 months.  Reason     03:36PM
9    we're asking for that sentence is we want to prevent              03:36PM
10   unwarranted disparities between different defendants, not only    03:36PM
11   here but in Superior Court also.  So when we look back on --      03:36PM
12   we have a previous case, very similar to this, that was           03:36PM
13   Wilfredo Lopez.                                                   03:36PM
14             THE COURT:  Lopez, yeah.                                03:36PM
15             MR. GORMAN:  That Your Honor sentenced, little          03:36PM
16   bit over a year ago, back in January.                            03:36PM
17             THE COURT:  I did.  I sentenced --                      03:36PM
18             MR. GORMAN:  January 9th of 2019.                       03:36PM
19             THE COURT:  Right.                                      03:36PM
20             MR. GORMAN:  Very similar case where he was             03:36PM
21   sentenced to the 120-month mandatory minimum.                     03:36PM
22             THE COURT:  Right.                                      03:36PM
23             MR. GORMAN:  Mr. McCarron's case is not as bad as       03:36PM
24   Mr. Lopez's, because if you remember what happened to             03:36PM
25   Mr. Lopez, he was -- he actually went up to go meet with what     03:36PM
```

1  he thought was an underage woman and that's where he was

2  arrested.  He was arrested outside the residence of this, what

3  they said was the residence of an underage woman.

4          My client, in contrast, never left his hotel

5  room.  Ever.  And you remember from the trial, and I had

6  emphasized that on five different occasions, the FBI agents

7  said "Come meet with me, come meet with me, come meet with

8  me."  Five different times.  He never left his hotel room.

9  Finally they got frustrated and they just went arrested him at

10  his hotel room.  So I think that's shows something.  He was --

11  you know, the evidence shows something, some points he was

12  drinking, he was engaging in stupid illegal behavior but he

13  never left his hotel room.

14          And I think that -- so therefore, this case is

15  less egregious than Mr. Lopez's case and he received a

16  120-month sentence.  It's a harsh penalty.  You know, the

17  government is always saying Brit, Brit, Brit.  There is no

18  Brit.  There was never any Brit.  It's an FBI agent.  So he's

19  now going to receive a ten-year sentence, a man with no prior

20  criminal history, a veteran of the armed forces, he's now

21  going to get a 120-month sentence for engaging in offensive

22  conduct with an FBI agent.  So when we think about that, let's

23  think in terms of sentence disparity, I'm going to show the

24  Court, and these are just cases that have happened in the last

25  couple months.  This is a case -- this is an article from the

1   Pacific Daily News on December 4, 2019.  Sex offender                    03:38PM

2   sentenced to five years in jail.  This was a man who molested,           03:38PM

3   who raped a child, which my client never touched anyone.  He             03:38PM

4   got a five-year sentence.  That was just in December.  This              03:39PM

5   was a case from November 8th in Superior Court, a man                    03:39PM

6   assaulted an 8-year-old boy.  He received six years in jail.             03:39PM

7           So now, those are two people who actually had                    03:39PM

8   sexual conduct with minors that are getting half the sentence            03:39PM

9   that my client is getting for sending offensive e-mails and              03:39PM

10  videos and pictures to an FBI agent.  Now, we're not saying --           03:39PM

11          THE COURT:  Shouldn't we just focus really on the                03:39PM

12  federal sentencings though?                                              03:39PM

13          MR. GORMAN:  Sure, but if you're going to argue                  03:39PM

14  -- I mean, I agree, you cannot -- when we're talking about --            03:39PM

15          THE COURT:  Yeah.                                                03:39PM

16          MR. GORMAN:  -- defendants, but I mean, if we                    03:39PM

17  really have to be realistic when we look at what happens in              03:39PM

18  the real world, the people who actually rape children get half          03:40PM

19  the time of what he is going to get and he never touched                 03:40PM

20  anyone, he never left his hotel room.  So my point being,               03:40PM

21  120 months is a very, very stiff sentence.  To add this extra          03:40PM

22  one month on is -- first of all, it's disparate as compared to          03:40PM

23  Mr. Lopez who was a worse case and it's just -- it's totally            03:40PM

24  unnecessary.  He's getting -- this is a devastating sentence.           03:40PM

25          THE COURT:  Well, the aggravating factor he was                  03:40PM

```
 1    saying -- well, let me just back up.  I don't disagree that        03:40PM
 2    the fact that your client stayed in the hotel room and Lopez       03:40PM
 3    actually went out to seek her, not one time but, you know,         03:40PM
 4    more than one time, as I recall.                                   03:40PM
 5              MR. GORMAN:  Yes, yes.                                    03:40PM
 6              THE COURT:  But the aggravating factor that              03:40PM
 7    Mr. Leon Guerrero was really focusing in on was his pretrial       03:40PM
 8    supervision release activity where he violated conditions of       03:40PM
 9    release.                                                           03:41PM
10              MR. GORMAN:  No, that's not what Judge Manibusan         03:41PM
11    said.  Judge Manibusan dismissed it.  Remember, we had an         03:41PM
12    evidentiary hearing.  There was no finding of guilt there and     03:41PM
13    my client never admitted it.  In fact he was going to present     03:41PM
14    -- he was in the middle of presenting his wife who said she       03:41PM
15    was the one who did it when the hearing was cut off.  So there    03:41PM
16    was no finding there.  This is --                                 03:41PM
17              THE COURT:  True.                                        03:41PM
18              MR. GORMAN:  This was a mere allegation.                 03:41PM
19              THE COURT:  Right, there was no finding.  There         03:41PM
20    was a hearing before Judge Manibusan, then the defendant went     03:41PM
21    to trial and the petition was considered moot.                    03:41PM
22              MR. GORMAN:  Yes.                                        03:41PM
23              THE COURT:  So it was interrupted because the           03:41PM
24    defendant -- at least I'm looking at the notes here because I     03:41PM
25    wasn't the judge who --                                           03:41PM
```

```
 1          MR. GORMAN:  No, you have it absolutely right.    03:41PM
 2   That's exactly what happened.  We denied it and we had a  03:41PM
 3   hearing and the hearing was interrupted.  We certainly never  03:41PM
 4   admitted to it and it was never proven.  And then the trial  03:41PM
 5   happened and the judge said it's moot, rightly said it's moot.  03:41PM
 6          THE COURT:  All right.  So you're saying I       03:41PM
 7   shouldn't even consider it because there was never any finding  03:41PM
 8   whatsoever?  The defendant neither admitted to it or Judge  03:42PM
 9   Manibusan never found him to have committed these particular  03:42PM
10   violations?                                                03:42PM
11          MR. GORMAN:  Yes, Your Honor.                    03:42PM
12          THE COURT:  Okay.  Fair enough.  Go ahead.       03:42PM
13          MR. GORMAN:  So based on that, I mean I think    03:42PM
14   when you look at the Lopez case and this case, again, less  03:42PM
15   egregious, and certainly -- and you're a very experienced  03:42PM
16   jurist, you know what happens in local court and the fact that  03:42PM
17   people who actually harm children get sentences half as tough.  03:42PM
18   The 120-month sentence is a very stiff penalty for this    03:42PM
19   offense.  No doubt it was offense, but really, is it twice as  03:42PM
20   bad as actually harming children?  Because he certainly never  03:42PM
21   did that.                                                  03:42PM
22          THE COURT:  And so -- and I remember through his  03:42PM
23   interview and also through just reading the presentence report  03:42PM
24   and reviewing the exchanges of e-mails or messages that the  03:42PM
25   defendant initially said he was not going to -- it appeared he  03:42PM
```

```
 1    was not even going to be involved with this 13 year old.      03:43PM

 2                MR. GORMAN:  Yup.                                  03:43PM

 3                THE COURT:  I mean he says "no thank you" when     03:43PM

 4    Brit said I was 13 years old.                                 03:43PM

 5                MR. GORMAN:  Well and then -- one last thing, you  03:43PM

 6    got to remember too, he's talking about grooming.             03:43PM

 7                THE COURT:  What's that?                           03:43PM

 8                MR. GORMAN:  Well, they talked about grooming.     03:43PM

 9                THE COURT:  Right.                                 03:43PM

10                MR. GORMAN:  I think there was some grooming       03:43PM

11    going on, on the other side.  So they sent him a picture of a 03:43PM

12    very attractive 27-year-old woman who said she was 13.  Now it 03:43PM

13    doesn't excuse anything, but that's what they sent to him and 03:43PM

14    said she's a 13-year-old girl.  Look at the pose, the way her 03:43PM

15    lips are -- I think there's --                                03:43PM

16                THE COURT:  Now Mr. Gorman, just because --        03:43PM

17                MR. GORMAN:  -- some issue.                        03:43PM

18                THE COURT:  -- a young lady might dress            03:43PM

19    provocatively.                                                03:43PM

20                MR. GORMAN:  No, I'm saying it's age, they sent a  03:43PM

21    picture of a 27-year-old woman to entice him.                 03:44PM

22                THE COURT:  That doesn't give him an excuse to --  03:44PM

23                MR. GORMAN:  I know but I'm just saying.           03:44PM

24                THE COURT:  -- send photos of himself.            03:44PM

25                MR. GORMAN:  True, true but --                     03:44PM
```

```
 1            THE COURT:  -- of obscene material over the        03:44PM

 2   internet.  Okay.  Go ahead.  Proceed.                       03:44PM

 3            MR. GORMAN:  That's all I have.  I think I made     03:44PM

 4   the argument.  Now my client would like to address the Court. 03:44PM

 5            MR. LEON GUERRERO:  Your Honor, I'm sorry, could    03:44PM

 6   I just make some brief rebuttal real quick?                 03:44PM

 7            THE COURT:  Let me hear him first, let me hear      03:44PM

 8   the defendant first.  Go ahead.  Mr. McCarron, you want to say 03:44PM

 9   something?                                                   03:44PM

10            THE DEFENDANT:  Yes, Your Honor.  I really          03:44PM

11   appreciate the opportunity to be able to make a statement to 03:44PM

12   the Court and to yourself.  I don't want to take up too much 03:44PM

13   of your time.  I know it's very valuable.                   03:44PM

14            THE COURT:  No, no, no.  You can go ahead, take     03:44PM

15   your time.  Don't worry about it.                           03:44PM

16            THE DEFENDANT:  A little over two years ago, I      03:44PM

17   made -- I committed a serious and grave mistake.  I'm       03:44PM

18   supremely sorry to everyone affected by my actions.  I wish to 03:44PM

19   echo something that the prosecution said in trial, "Thank God 03:44PM

20   that there was no real victim.  Thank God."  Um, these      03:45PM

21   consequences have already changed my -- changed my life     03:45PM

22   forever and I -- sorry.                                     03:45PM

23            THE COURT:  It's okay.  That's good.  I'm glad      03:45PM

24   you're saying that, Mr. McCarron.                           03:45PM

25            THE DEFENDANT:  I never ever want to do this        03:45PM
```

1  again.  I never want to do anything to send me to jail again.  `03:45PM`

2  And my only goal in life right now is to get back to my wife a  `03:45PM`

3  better person than when I left and when I went into  `03:45PM`

4  incarceration.  And thank you again for your time and God  `03:45PM`

5  bless you and God bless the Court.  `03:45PM`

6  THE COURT:  Okay, Mr. McCarron, well, I'm going  `03:45PM`

7  to wish you luck.  I think -- you know, it was bad judgment on  `03:46PM`

8  your part.  And, you know, too bad you didn't listen to  `03:46PM`

9  yourself that very first time when Britney said she was 13 and  `03:46PM`

10  you said, "No thank you, I'm good.  Have a good night."  Too  `03:46PM`

11  bad you just didn't forever -- just leave the conversation  `03:46PM`

12  alone.  `03:46PM`

13  THE DEFENDANT:  I just wanted to -- when I was  `03:46PM`

14  watching the interview, I just wanted to say what the heck  `03:46PM`

15  were you thinking?  `03:46PM`

16  THE COURT:  Yeah.  `03:46PM`

17  THE DEFENDANT:  I wanted to -- I wish I could go  `03:46PM`

18  back in time and go back to that first e-mail where I said "no  `03:46PM`

19  thank you" and just said, what are you doing to yourself?  `03:46PM`

20  THE COURT:  Yeah.  Well, sometimes you -- you  `03:46PM`

21  know, and I look at your background, Mr. McCarron.  You have a  `03:46PM`

22  complicated life story.  I've read -- you know, I see what  `03:46PM`

23  your background is with regard to issues that you've had and  `03:46PM`

24  I'm not saying that they contributed, but I don't think that  `03:46PM`

25  -- well, they may have contributed to where you were on the  `03:46PM`

```
 1   days that you were involved in this crime but -- hold on a          03:47PM

 2   second.  Yeah, you wanted to say something?                         03:47PM

 3               MR. LEON GUERRERO:  Just a couple points, Your          03:47PM

 4   Honor.  So I just wanted to make sure the record was clear,         03:47PM

 5   the fact that he didn't leave his hotel room, that wasn't           03:47PM

 6   necessary.                                                          03:47PM

 7               THE COURT:  That what?                                  03:47PM

 8               MR. LEON GUERRERO:  It wasn't necessary or needed       03:47PM

 9   for us to prove, it wasn't a requirement for him to be             03:47PM

10   convicted of the offense, just the fact that he was enticing,      03:47PM

11   he was enticing a minor to engage in sexual activity.  I just      03:47PM

12   wanted to make sure that that was clear, that that attempt         03:47PM

13   that he actually left and tried to seek out Brit was               03:47PM

14   necessary, because it wasn't.                                      03:47PM

15               And then the other thing too is, with respect to       03:47PM

16   the conduct on pretrial release, he was with his wife who          03:47PM

17   accompanied him and it was also his wife that, in addition to      03:47PM

18   himself, that was posting ads on this escort service.              03:47PM

19               THE COURT:  I know but what about the fact that         03:47PM

20   -- I mean, the fact that you're coming into Court and telling      03:47PM

21   me to use this against him and it hasn't been -- the defendant     03:48PM

22   has not pled guilty to this or admitted to the violations or       03:48PM

23   there is not a finding by Judge Manibusan at the hearing.          03:48PM

24               MR. LEON GUERRERO:  I --                               03:48PM

25               THE COURT:  Just a minute.  Because the Court          03:48PM
```

1    said that the petition was moot, the Court had interrupted the    03:48PM

2    proceeding because he wanted to advise Linnea McCarron, his    03:48PM

3    wife, of her potential incriminatory issues she might have.  I    03:48PM

4    guess I do have a concern that you're asking me to use that    03:48PM

5    against him and that's never been -- that's actually never    03:48PM

6    been resolved.    03:48PM

7            MR. LEON GUERRERO:  And maybe that's something    03:48PM

8    can because, again, the government proceeded and put up a    03:48PM

9    couple witnesses to prove the matter at the evidentiary    03:48PM

10   hearing.  We called witnesses.    03:48PM

11           THE COURT:  Right, I don't think that there's any    03:48PM

12   question about that but there was no finding by Judge    03:48PM

13   Manibusan, he didn't make a report and recommendation.    03:48PM

14           MR. LEON GUERRERO:  And I understand --    03:49PM

15           THE COURT:  As to revocation of his release.    03:49PM

16           MR. LEON GUERRERO:  And it was only because the    03:49PM

17   defendant was set to go to trial, therefore, he rendered the    03:49PM

18   issue moot.  But again, it's just something, Your Honor, that    03:49PM

19   again, we believe that based on what was filed by the    03:49PM

20   probation officer and the information that was there and the    03:49PM

21   information that was provided to defense Counsel and the    03:49PM

22   information that we presented during that evidentiary hearing,    03:49PM

23   again, this is not a beyond-a-reasonable-doubt kind of    03:49PM

24   standard that we have to prove.    03:49PM

25           THE COURT:  Yeah, but there is no finding even    03:49PM

```
 1   beyond -- by the preponderance of the evidence or clear and      03:49PM
 2   convincing evidence.  There's no finding.  I would agree with    03:49PM
 3   you if there was an actual admission by the defendant and, you   03:49PM
 4   know, or Judge Manibusan found after an evidentiary hearing      03:49PM
 5   that the defendant committed the violations.  But you're         03:49PM
 6   asking me to give him one more month, which is extra just        03:49PM
 7   because of this, so I don't find that a proper argument by       03:49PM
 8   you, because that's not been resolved at all by the Court.       03:49PM
 9            MR. LEON GUERRERO:  All right.  Nothing further,        03:50PM
10   Your Honor.                                                      03:50PM
11            THE COURT:  All right.  Okay.  Anything else,           03:50PM
12   Mr. McCarron?                                                    03:50PM
13            THE DEFENDANT:  No, Your Honor.                         03:50PM
14            THE COURT:  Okay, so Mr. McCarron, like I said, I       03:50PM
15   know your background.  You know you've had -- I mean you         03:50PM
16   worked in your position -- you were in the United States Navy.   03:50PM
17            THE DEFENDANT:  I was.                                  03:50PM
18            THE COURT:  You were.  And you were honorably           03:50PM
19   discharged; is that correct?                                     03:50PM
20            THE DEFENDANT:  I was.                                  03:50PM
21            THE COURT:  You were honorably discharged.  So I        03:50PM
22   look at your situation here.  Why are you doing this?  Why are   03:50PM
23   you involved in something like this?  I don't know.  The Court   03:50PM
24   also notes that you had attended college, that -- and then      03:50PM
25   this particular issue came up.  Now I know you are now -- your   03:50PM
```

*Court of Appeals No. 20-10072, USA v. McCarron*

```
 1    wife is Linnea, right, that's what you're talking about?          03:50PM
 2               THE DEFENDANT:  Yes, my current wife is Linnea,         03:50PM
 3    yes.                                                               03:50PM
 4               THE COURT:  So that's who you're talking about          03:50PM
 5    going back to her?                                                 03:50PM
 6               THE DEFENDANT:  Yes.                                     03:50PM
 7               THE COURT:  All right.  And are you going to             03:50PM
 8    request that you -- you're going to request a judicial             03:50PM
 9    recommendation that the federal Bureau of Prisons designate        03:51PM
10    you in a location near where she's living?                         03:51PM
11               THE DEFENDANT:  Yes, please.                            03:51PM
12               MR. GORMAN:  Actually I did forget that.  Sorry,        03:51PM
13    I have two requests and that is in the northwest area part of      03:51PM
14    the United States, probably Sheridan.                             03:51PM
15               THE COURT:  Sheridan, where is that?                    03:51PM
16               MR. GORMAN:  In Oregon.                                 03:51PM
17               THE COURT:  Oregon?  She's in Oregon right now?         03:51PM
18               MR. GORMAN:  She's in Spokane.                          03:51PM
19               THE COURT:  Okay, so she's in Spokane,                  03:51PM
20    Washington.                                                        03:51PM
21               MR. GORMAN:  Relatively close, yeah.                    03:51PM
22               THE COURT:  So Sheridan, Oregon.                        03:51PM
23               MR. GORMAN:  And also that he is transferred as         03:51PM
24    soon as possible during his time here on Guam, of course three    03:51PM
25    months?  Four months?                                             03:51PM
```

|   |   |   |
|---|---|---|
| 1 | THE DEFENDANT:  It's been five months. | 03:51PM |
| 2 | MR. GORMAN:  Five months. | 03:51PM |
| 3 | THE DEFENDANT:  Yeah. | 03:51PM |
| 4 | THE COURT:  Yeah? | 03:51PM |
| 5 | MR. GORMAN:  He's lost 42 pounds. | 03:51PM |

1    THE DEFENDANT:  It's been five months.                03:51PM

2    MR. GORMAN:  Five months.                             03:51PM

3    THE DEFENDANT:  Yeah.                                 03:51PM

4    THE COURT:  Yeah?                                     03:51PM

5    MR. GORMAN:  He's lost 42 pounds.                     03:51PM

6    THE COURT:  I was going to say you look like you      03:51PM

7    lost a lot of weight.                                 03:51PM

8    MR. GORMAN:  He's lost a lot of weight.               03:51PM

9    THE COURT:  I remember your picture in the video.     03:51PM

10   MR. GORMAN:  Yes, so we'd ask for immediate           03:51PM

11   transfer if possible.  He didn't join the complaints about the   03:51PM

12   conditions but he does agree that the diet is insufficient.      03:52PM

13   THE COURT:  Okay.  Well, okay, so the Court has       03:52PM

14   heard the statements by Counsels and the recommendations by      03:52PM

15   the prosecution, and defense, and the U.S. probation officer.    03:52PM

16   And let me just ask, before I enter sentence, the Court also     03:52PM

17   will -- I noted that there's no request for departure,           03:52PM

18   downward departure or variance here.  But after hearing          03:52PM

19   everything and after having gone through the trial with the      03:52PM

20   defendant and after knowing that the defendant was found         03:52PM

21   guilty of the two counts, the Court hereby sentences the         03:52PM

22   defendant to ten years imprisonment for Count 1, 10 years        03:52PM

23   imprisonment for Count 2, both to run concurrently with one      03:52PM

24   another.  After your sentence, for supervised release , the      03:52PM

25   Court will order you to five years supervised release,           03:53PM

1    Count 1, 3-year supervised release Count 2, to run                03:53PM

2    concurrently with one another.  The Court will not order any       03:53PM

3    fine because you can't afford a fine.  Special assessment will     03:53PM

4    be $200.  That will be due immediately.  There is no               03:53PM

5    restitution.  With regard to -- with regard to forfeiture, I       03:53PM

6    see in the -- indictment contains a notice of forfeiture as to     03:53PM

7    the Mac Pro, I think it's Mac Pro?                                 03:53PM

8              MR. LEON GUERRERO:  Yes, Your Honor, MacBook Pro         03:53PM

9    model.                                                             03:53PM

10             THE COURT:  Yeah, MacBook Pro model.  And so you         03:53PM

11   have not filed a motion for preliminary order of forfeiture;       03:53PM

12   is that correct?                                                   03:53PM

13             MR. LEON GUERRERO:  That's correct, Your Honor.          03:53PM

14             THE COURT:  All right.  So the Court will forfeit        03:53PM

15   this MacBook Pro model.                                            03:54PM

16             MR. GORMAN:  No objection.                               03:54PM

17             THE COURT:  Okay, 1707, with no objections.  And        03:54PM

18   let's see.  So that will be forfeited.  The Court finds that       03:54PM

19   the sentence imposed is sufficient but not greater than            03:54PM

20   necessary and does comply with the purposes of sentencing          03:54PM

21   under 18 U.S.C. 3553(a).  Let's see.                               03:54PM

22             With regard to conditions of supervised -- oh,           03:54PM

23   the Court will make a judicial recommendation as well, Mr.         03:54PM

24   McCarron, that you be designated by the United States Federal      03:54PM

25   Bureau of Prisons to Sheridan, Oregon and that the Court will      03:54PM

1  also make a judicial recommendation that the U.S. Marshals          03:54PM

2  attempt to try to get you immediately transferred or actually       03:54PM

3  get the U.S. Bureau of Prisons to immediately designate, so         03:54PM

4  that you can receive an immediate transfer.                         03:54PM

5         With regard to supervised release, the Court will            03:54PM

6  order that -- so after you get out of prison, you'll go into        03:55PM

7  supervised release and during that period of time, you're not       03:55PM

8  to commit any federal, state or local crimes and not               03:55PM

9  unlawfully possess a controlled substance.  Are there any          03:55PM

10 issues with him having drug --                                      03:55PM

11         MR. GORMAN:  No, Your Honor.                                03:55PM

12         THE COURT:  So I guess I'll -- okay, should I               03:55PM

13 just have him assessed for unlawful use of controlled              03:55PM

14 substance?  And he'll be ordered to obtain -- to undergo drug       03:55PM

15 test within 15 days of release from imprisonment and at least      03:55PM

16 two periodic tests thereafter not to exceed eight drug tests        03:55PM

17 per month if necessary.  Is that right?  Because if he's not        03:55PM

18 considered a --                                                     03:55PM

19         PROBATION OFFICER:  Well, that's why I didn't               03:55PM

20 include no more than eight drug tests, Your Honor, because by       03:55PM

21 statute, there is a mandatory three.                               03:55PM

22         THE COURT:  Right, okay.                                    03:55PM

23         PROBATION OFFICER:  And if those turned out to             03:55PM

24 be, if he turns out to test positive for one of those, they        03:55PM

25 can amend his conditions as needed.                                03:56PM

THE COURT: Okay. You understand then? 03:56PM

THE DEFENDANT: Yes, Your Honor. 03:56PM

THE COURT: You're not to attempt to obstruct or 03:56PM
tamper with testing results and submit to collection of a DNA 03:56PM
sample. The Court will order that you register with the sex 03:56PM
offender registry in the state where you will reside or work 03:56PM
or you're a student as directed by U.S. probation. So when 03:56PM
you get out of prison, you have to do that. 03:56PM

THE DEFENDANT: Okay. 03:56PM

THE COURT: Don't forget that. That's important, 03:56PM
okay. Because if you do forget that, you're going to be 03:56PM
charged again. 03:56PM

THE DEFENDANT: Okay. 03:56PM

THE COURT: All right. 03:56PM

THE DEFENDANT: Yes, Your Honor. 03:56PM

THE COURT: Perform -- comply with standard 03:56PM
conditions of supervision, perform 25 hours of community 03:56PM
service in lieu of a fine and it will be suspended if you're 03:56PM
gainfully employed. Participate in a sex offender treatment 03:56PM
program approved by U.S. Probation and you will incur the cost 03:56PM
associated with treatment based on your ability to pay. 03:56PM
Participate in a mental health treatment program to include 03:56PM
taking any prescribed medications. Do you have any now? 03:56PM

THE DEFENDANT: I do not right now. I'm working 03:56PM
with Guam Behavioral Health to try and get on some. 03:56PM

```
1            THE COURT:  Okay.  Very well.  And you must make          03:57PM
2    a co-payment for treatment at a rate to be determined by U.S.      03:57PM
3    Probation.  You're restricted from employment involving direct     03:57PM
4    contact with minors under the age of 18 without prior approval     03:57PM
5    of the U.S. Probation Office.  No contact with minors under        03:57PM
6    the age of 18 nor are you allowed to approach minors -- such       03:57PM
7    minors without prior permission of U.S. Probation.  Do you         03:57PM
8    understand?                                                        03:57PM
9            THE DEFENDANT:  Yes, Your Honor.                           03:57PM
10           THE COURT:  So when you are released, you'll be            03:57PM
11   submitted to the search of any property, house, residence,         03:57PM
12   vehicle, papers, computers or other electronic communications      03:57PM
13   or data storage devices or media and effects at any time with      03:57PM
14   or without a warrant by any law enforcement officer or             03:57PM
15   probation officer who has reasonable suspicion concerning a        03:57PM
16   violation of a condition of your supervised release or of          03:57PM
17   other unlawful conduct and by any probation officer in the         03:57PM
18   lawful discharge of the officer's supervision functions.  Do       03:57PM
19   you understand?                                                    03:57PM
20           THE DEFENDANT:  Yes, Your Honor.                           03:57PM
21           THE COURT:  Okay.  You must provide probation              03:57PM
22   office advance notice of any computer, automated service           03:58PM
23   connected device, digital storage device, to include but not       03:58PM
24   limited to cell phones, gaming consoles, cameras, video            03:58PM
25   recorders that you will use during your term of supervision.       03:58PM
```

1   And the United States probation officer is authorized to

2   install any application as necessary to conduct surveillance

3   of all activity and computers, cell phones or other connected

4   devices owned or operated by you.

5           The court will order that you not attempt to

6   remove, tamper with or in any way circumvent the monitoring

7   software.  You may be required to pay the cost of the

8   monitoring software, services at a monthly rate to be

9   determined by probation.  And a schedule of payment and rate

10  may be periodically adjusted by probation.  Do you understand?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  So basically, they want to have

13  supervision over your usage of electronic devices.  Okay?  You

14  must disclose all online account information, like your

15  usernames and passwords to U.S. Probation and if requested,

16  you must provide a list of all the software and hardware on

17  your computers and cell phones, upon request, provide cable

18  and internet service, provider billing records and any other

19  information deemed necessary by U.S. probation to monitor your

20  computer and cellphone usage.  U.S. probation may seek

21  modification of this condition as deemed appropriate.  Are

22  there any other conditions that we need to add?

23          PROBATION OFFICER:  No, nothing further, Your

24  Honor.

25          THE COURT:  Okay.  The Court has already

1  indicated that it has reached the sentence after due                03:59PM

2  consideration of the factors set forth under 3553(a) and the        03:59PM

3  sentence imposed is within a guideline range that is greater        03:59PM

4  than 24 months and I've already imposed the sentence and given      03:59PM

5  the reasons.  You have the right to appeal your conviction,         04:00PM

6  Mr. McCarron, and the right to appeal your sentence if you          04:00PM

7  believe it was illegally or incorrectly imposed.                    04:00PM

8            You have a statutory right to appeal your                 04:00PM

9  sentence under circumstances if you think the sentence is           04:00PM

10 contrary to law.  Any notice of appeal must be filed within         04:00PM

11 14 days of entry of judgment or the filing of notice appeal by      04:00PM

12 the prosecution.  If you cannot pay the cost of an appeal, you      04:00PM

13 may apply to file for a free appeal, and if you request,            04:00PM

14 Mr. McCarron, the clerk, Ms. Quinata, will prepare and file a      04:00PM

15 notice of appeal on your behalf.  I'm also advising that you        04:00PM

16 if you cannot attorney to handle your appeal, one will be           04:00PM

17 appointed to represent you upon request.  Any questions?            04:00PM

18            MR. GORMAN:  (Shaking head.)                             04:00PM

19            THE COURT:  Or any comments, anything further,           04:00PM

20 Mr. Leon Guerrero?                                                  04:00PM

21            MR. LEON GUERRERO:  Nothing from the government.        04:00PM

22            THE COURT:  Ms. Yamashita?                               04:00PM

23            PROBATION OFFICER:  I just want to clarify, Your        04:00PM

24 Honor, that you did indicate a total special assessment fee?       04:00PM

25            THE COURT:  $200, I believe I did.                       04:00PM

1    MR. GORMAN:  Yeah, you did.                          04:00PM

2    THE COURT:  All right, Mr. McCarron.  Good luck      04:01PM

3 to you.                                                  04:01PM

4    THE DEFENDANT:  Thank you, Your Honor.               04:01PM

5    THE COURT:  I hope you will work out your life.      04:01PM

6 Take care.                                               04:01PM

7         (Proceedings concluded at 4:01 p.m.)            04:01PM

8                        * * *

9    ---------------------------------------------

10              CERTIFICATE OF OFFICIAL REPORTER

11

12 CITY OF HAGATNA            )
                              )  ss.
13 TERRITORY OF GUAM          )

14

15

16      I, Veronica F. Flores, Official Court Reporter for

17 the United States District Court of Guam, do hereby certify

18 the foregoing pages, 1 to 34, to be a true and correct

19 transcript of the proceedings held in the above-entitled

20 matter to the best of my ability.

21      Dated this 16th day of March 2020.

22

23                        /s/Veronica F. Flores
                          Veronica F. Flores
24

25